**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **Maglula, Ltd.,** | ) |
|    13 Gad Feinstein Street, Suite 236 | ) |
|    Rehovot 76385, Israel, | ) |
| | ) |
|                Plaintiff, | )   CIVIL ACTION NO. |
| | ) |
|           v. | )   COMPLAINT FOR TRADEMARK |
| | )   COUNTERFEITING, TRADEMARK |
| **Amazon.com, Inc.,** | )   INFRINGEMENT, COPYRIGHT |
|    410 Terry Avenue North | )   INFRINGEMENT, PATENT |
|    Seattle, WA 98109, | )   INFRINGEMENT, AND UNFAIR |
| | )   COMPETITION |
| and | ) |
| | )   **JURY TRIAL DEMANDED** |
| **Amazon.com Services, Inc.,** | ) |
|    410 Terry Avenue North | ) |
|    Seattle, WA 98109, | ) |
| | ) |
|                Defendants. | ) |

As its Complaint in this action, Plaintiff Maglula, Ltd. ("Maglula"), by its undersigned attorneys, alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

## NATURE OF THE CASE

1.      This is an action for trademark counterfeiting, trademark infringement, copyright infringement, and unfair competition under federal, state, and/or common law arising from Defendants Amazon.com, Inc.'s and Amazon.com Services, Inc.'s (collectively, "Amazon") unauthorized use of Maglula's trademarks and copyrights in connection with the advertising, distributing, displaying, offering for sale, and/or selling of unlicensed, infringing, and/or

counterfeits of Maglula's innovative loaders and unloaders (the "Accused Products").  Maglula

also asserts U.S. Patent No. 7,503,138 ("the '138 patent") and U.S. Patent No. 7,637,048 ("the

'048 patent") (collectively, "the Asserted Patents") against Amazon for the unauthorized offering

to sell, selling, and/or importing of the Accused Products covered by at least one claim of each of

the Asserted Patents.

2.       Amazon has become so overrun with counterfeit products—and its meager efforts

to address this problem have been so ineffective—that counterfeit products are now leaving

Amazon warehouses all over the United States at an alarming rate.  Amazon knowingly sells

such products, leaving U.S. consumers and intellectual property ("IP") owners to suffer while

Amazon profits handsomely, adding to its multibillion-dollar annual revenue and reported

trillion-dollar valuation.  Amazon's ineffective processes to stop the sale of knock-off products

do not apply to unregistered IP, such as trademarks protected by common law, and are easily

circumvented by Amazon's business partners.  Making matters worse, IP owners who try to

defend themselves and their valued customers utilizing Amazon's procedures face lip service,

long delays, growing frustration, and significant expense—all to virtually no avail.

3.       Amazon's proliferation of counterfeit products hurts more than just IP owners.  It

hurts customers duped out of their hard-earned money and exposes them to poor-quality and/or

potentially dangerous knock-off products.  Amazon's conduct also hurts those retailers

committed to selling genuine products—many of whom struggle to compete with Amazon's size,

scale, and pricing.  Counterfeiting is a prolific problem with a widespread negative impact.

Amazon, as the largest online seller, contributes immensely to this problem and must be part of

the solution, for the sake of the IP owners, its customers, and the public at large.

4.      Since 2016, Amazon has and continues to:

a.      Sell knock-off products (invoiced as "**Sold by: Amazon.com Services Inc.**") that infringe Maglula's patents, copyrights, and trademarks detailed below;

b.      Sell knock-off products that infringe Maglula's patents, copyrights, and trademarks via **Amazon Renewed**;

c.      Sell knock-off products that infringe Maglula's patents, copyrights, and trademarks via **Amazon Warehouse Deals**;

d.      Sell knock-off products that infringe Maglula's patents, copyrights, and trademarks via **Amazon pallet liquidation**;

e.      Deceive customers as to the origin of Maglula's products by selling Chinese-made knock-offs as "Made in Israel";

f.      Sell knock-off products with Amazon labels reading "Made In China" (Amazon knows that genuine products are made in Israel);

g.      Fail to provide Maglula information needed to stop others from contributing to Amazon's sales of knock-off products that infringe Maglula's patents, copyrights, and trademarks;

h.      Ignore Maglula's repeated requests to acknowledge its U.S. registered utility patents and common-law trademark rights to delist knock-offs;

i.      Ignore Maglula's industry-known common law trademarks "Maglula" and "UpLULA", when Maglula attempted to join Amazon's "Brand Registry" and use this process to stop the sale of knock-off products that infringe Maglula's patents, copyrights, and trademarks;

j.    Ignore that genuine Maglula UpLULA® products come in distinctive packaging easily distinguishable from an array of different packaging used for various knock-offs; and

k.    Ill-treat repeated IP infringement complaints by Maglula for three years.

5.    To demonstrate just how ineffective Amazon is at stopping its sale of counterfeits, Amazon even sold a counterfeit of the Maglula UpLULA® product—clearly marked as "COUNTERFEIT"—and wrapped in an Amazon-branded plastic bag:





6.      Since September 2016, Maglula has identified and collected eleven knock-off versions of its best-selling UpLULA® product—the genuine version of which is manufactured only in Israel.  These knock-offs infringe Maglula's IP in various ways.  Five versions completely copy Maglula's trademarks, copyrights, and patents (top row in the following photo).



These knock-off versions of Maglula's genuine UpLULA® product are molded with

"UpLULA™," "maglula.com," "Made in Israel," and Maglula's patent numbers. Each also

contains a copy of Maglula's product insert cards, including the text, UPC barcode, "Made in

Israel," and instructional photos (showing the hands of Maglula's inventor as depicted in genuine

materials). Each is also packed in a copy of Maglula's blister packaging. In the middle row of

the photo above are two knock-off versions that have confusingly similar product names

"UpLood" and "MagLoad" and infringe Maglula's trademarks, copyrights, and patents. Two

6

additional clones "Castellan" and "QBloader" and two "unnamed" clones in that row infringe

Maglula's copyrights and patents.  Two other Maglula products have been counterfeited as well,

the BabyUpLULA® product and 1911AI® product, including Maglula's product insert cards

with "Made in Israel," and blister packaging (see the bottom row of the photo above).

       7.     Despite extensive and repeated requests from Maglula over the course of three

years (including meetings with Amazon's in-house counsel), Amazon failed to take reasonable

steps to stop the extensive and persistent infringement of Maglula's IP.  Over the years, Maglula:

       a.     Sent Amazon many letters reporting instances of its sale of knock-off

products infringing Maglula's IP, including cease-and-desist letters (examples attached as

**Exhibits 1A-1C**);[1]

       b.     Provided Amazon with memos (1) detailing its continued sale of knock-

off products infringing Maglula's IP and (2) educating Amazon on how to differentiate

between Maglula's genuine IP-protected products and knock-offs;

       c.     Had at least twelve telephone conferences with Amazon and its officers,

including its in-house attorneys, regarding its continued sale of knock-off products

infringing Maglula's IP;

       d.     Emailed Amazon officers, including its in-house attorneys, multiple times

regarding its continued sale of knock-off products infringing Maglula's IP;

       e.     Submitted over one hundred infringement complaints through Amazon's

official reporting systems;

---

[1] Maglula's letters sometimes included detailed comparisons between genuine and knock-off products.  These comparisons have been redacted from public filing to prevent counterfeiters from exploiting the information.

   f.  Emailed jeff@amazon.com and Amazon officers over fifty times clearly detailing the infringement problem, including providing comparison pictures of some knock-off products infringing Maglula's IP, copies of Maglula's various IP, patent claim charts, names, links, and Amazon Standard Identification Numbers ("ASIN") for knock-off products infringing Maglula's IP;

   g.  Offered to provide Amazon employees with in-person instruction on how to distinguish between Maglula's IP-protected products and knock-offs;

   h.  Ordered from Amazon ten knock-off products that infringe Maglula's IP addressing them directly to Amazon's headquarters (including five to Amazon's Copyright Agent in its legal department office in Seattle) to further illustrate and materialize the problem;

   i.  Monitored Amazon on a daily basis, often twice a day, looking for knock-offs, and filing complaints if found;

   j.  Hired a specialized third-party service (BrandShield.com) at considerable expense to monitor Amazon daily and report infringements, in parallel with Maglula's internal scans—an arrangement that is still ongoing; and

   k.  Filed two U.S. lawsuits against Chinese entities, believed to be in partnership with Amazon, selling knock-off products infringing Maglula's IP.

8.  Despite repetitive and extensive efforts undertaken at great expense to Maglula, Amazon seldom made useful efforts and ultimately failed to enact effective measures to stop its sale of infringing products.  Amazon demonstrated a lack of care, failing to timely and effectively stop its sale of infringing products and hurting Maglula's business.  Maglula has done everything possible to avoid filing this Complaint.

9.      Amazon's refusal to take meaningful steps to stop its sale of products infringing the IP rights of others, like Maglula's, forces Maglula and other IP owners to shoulder the burden of doing Amazon's job for it.  Despite being the largest online seller with vast resources, Amazon's "efforts" to stop its counterfeit sales have been shockingly poor and ineffective.

10.      Maglula seeks to enjoin Amazon's infringement of Maglula's IP.  Maglula also seeks actual and statutory damages, Defendants' profits, and other relief, including attorneys' fees and costs.  Maglula further seeks compensation for the time and expenses dedicated to monitoring Amazon's sales and submitting infringement reports to Amazon, and all other relevant expenses.

11.      Maglula also seeks a recall of all knock-off Maglula products sold by Amazon, along with distribution of a notice to all effected customers that they received a knock-off Maglula product.  Maglula seeks this relief because Amazon should (1) be held accountable for defrauding unsuspecting customers and (2) repair the damage it caused to Maglula's recognized brands and associated goodwill/reputation by disseminating low-quality knock-offs.

12.      Maglula also brings this action to address Amazon's abysmal handling of IP infringement reports and direct sales of knock-offs, all of which, in one form or another, hurt hard-working IP owners and manufacturers, like Maglula, and their authorized distributors and dealers, both locally and worldwide.

## THE PARTIES

13.      Maglula, Ltd. is a corporation organized and existing under the laws of Israel, having a principal place of business at 13 Gad Feinstein Street, Suite 236, Rehovot 76385, Israel.

14.      Defendant Amazon.com, Inc. is a Delaware corporation with an address at 410 Terry Avenue North, Seattle, WA 98109.

15.     Defendant Amazon.com Services, Inc. is a Delaware corporation with an address at 410 Terry Avenue North, Seattle, WA 98109.

## JURISDICTION AND VENUE

16.     This action arises under the federal Trademark Act, 15 U.S.C. §§ 1051 *et seq.*; the related law of the commonwealth of Virginia; the federal Copyright Act, 17 U.S.C. §§ 101 *et seq.*; and the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.* This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121; 28 U.S.C. §§ 1331, 1338(a) and (b), 2201, and 2202; and 17 U.S.C. §§ 501 *et seq.*

17.     This Court has personal jurisdiction over Defendants because Defendants have established minimum contacts with the forum such that the exercise of personal jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice.

18.     This Court has personal jurisdiction over Defendants, and venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) because Maglula is being harmed in this District; Defendants are doing business in this District, including through facilities located in Petersburg, Virginia, Chester, Virginia, and Ashland, Virginia; Defendants have regularly and purposefully availed themselves of the privilege of conducting business activities within Virginia and this District; Defendants are using Maglula's IP in connection with products shipped from and/or into this District and carried by Defendants within this District; the infringing activity has occurred and continues to occur in this District; and this action arises from activities Defendants directed towards Virginia.

## MAGLULA'S INNOVATIVE PRODUCTS AND INTELLECTUAL PROPERTY

19.     Founded in 2003, Maglula is a privately held company employing a modest ten employees in Israel. Maglula is a pioneer in the field of magazine loaders and manufactures

professional military-grade tools for loading and unloading magazines.  Its products save valuable time when loading/unloading magazines, prevent pain associated with loading/unloading magazines, prevent magazine damage, and reduce jams.  Among its customers are leading manufacturers like Sturm Ruger, Smith & Wesson, and Heckler & Koch, and around twenty leading sporting-goods distributors in the United States.  Maglula's products are sold in Academy Sports + Outdoors, Bass Pro Shops, Cabela's, and Dick's Sporting Goods stores, and in thousands of independent brick-and-mortar shops across the United States.  Users include private individuals, police officers, federal agents, and military personnel.

20.     Maglula offers a variety of loader and unloader products under the marks UpLULA®, 22UpLULA®, BabyUpLULA®, LULA®, StripLULA®, BenchLoader®, and 1911AI®.

21.     The UpLULA® loader (shown below) is a hand-held device that assists users in loading and unloading magazines.  It is Maglula's top-selling product (on the market since January 2007), offered in multiple colors, and used by millions in the United States.  *See* https://www.maglula.com/product/uplula-9mm-to-45acp.



22.     Maglula takes great pride in the quality and safety of its loaders/unloaders. Maglula undertakes extensive quality-control standards throughout the manufacturing process, leading to minimal returns or complaints.  Maglula manufactures all UpLULA® products in Israel, and each is inspected and tested post manufacturing in Israel.

23.     Maglula's UpLULA® product is well known as the premier loader/unloader due to its innovative technology, high-quality craftsmanship, and effectiveness in assisting users of all ages and levels of experience in loading and unloading magazines.

24.     Maglula has received awards and accolades for its products, including the *American Rifleman* Golden Bullseye "Accessory of the Year" Award in 2018.  The UpLULA® product has been independently reviewed by magazines in the field and is the subject of hundreds of online videos from experts in the field.  As of December 10, 2019, the UpLULA® product has over 13,992 five-star verified customer reviews on Amazon (92% of total reviews) and many equally positive reviews in the printed press and other online venues.  Review ratings on Amazon have been negatively impacted by disappointed customers who received knock-offs that infringe Maglula's IP instead of a genuine UpLULA® product.

**Maglula's Trademarks**

25.     Maglula owns the following trademarks, which are the subject of federal registrations (individually and collectively, the "Maglula Trademarks"):

| Mark | Goods | App. No. Reg. No. | First Use in Commerce | Reg. Date |
|------|-------|-------------------|-----------------------|-----------|
| LULA | Loader and/or unloader for firearm magazines | 78392639<br><br>3001252 | 1/30/2002 | 9/27/2005 |
| 22UpLULA | Firearm magazine loaders and unloaders | 87256370<br><br>5269613 | 1/9/2013 | 8/22/2017 |

| Mark | Goods | App. No. Reg. No. | First Use in Commerce | Reg. Date |
|------|-------|-------------------|----------------------|-----------|
| BenchLoader | Firearm magazine loaders | 87256971  5315117 | 6/24/2008 | 10/24/2017 |
| BabyUpLULA | Firearm magazine loaders and unloaders | 87256375  5321129 | 7/6/2011 | 10/31/2017 |
| 1911AI | Aligning insert for firearm magazine loader | 87466966  5355180 | 2/14/2013 | 12/12/2017 |
| StripLULA[2] | Firearm magazine loaders and unloaders | 87258099  5894011 | 9/2/2008 | 10/29/2019 |
| Maglula[2] | Firearm magazine loaders and unloaders | 87258071  5894010 | 1/7/2003 | 10/29/2019 |
| UpLULA[2] | Firearm magazine loaders and unloaders | 87258110  5894012 | 12/30/2006 | 10/29/2019 |

26.     The Maglula Trademarks appear on the UpLULA® product and its packaging

insert card, as shown, for example, here:



---

[2] An individual from China filed fraudulent U.S. trademark applications for MAGLULA, MAGLULA LTD, and UpLULA a day before Maglula filed some of its applications.  It took nearly three years for Maglula to resolve this issue with the USPTO and have these three trademarks registered.



*[Genuine Maglula 2017 Insert Card - Front]*



*[Genuine Maglula 2017 Insert Card- Rear]*

**Maglula's Copyrights**

27.     Maglula owns U.S. copyright registrations covering the various photographs depicted on the UpLULA® product packaging insert card shown above (U.S. Copyright Registration Nos. VA0002084097, registered July 31, 2017; VA0002084096, registered July 31, 2017; VA0002084095, registered July 31, 2017; VA0002083361, registered July 31, 2017; VA0002084093, registered July 31, 2017; VA0002083359, registered July 31, 2017; and VA0002146376, registered April 11, 2019), as well as original design elements of the UpLULA® loader itself (U.S. Copyright Registration Nos. VA0002083626, VA0002083624, VA0002083628, VA0002083358, VA0002083627, VA0002083357, VA0002083625, and VA0002083356) (individually and collectively, the "Maglula Copyrights").

28.     The Maglula Copyrights cover the following original design elements of the UpLULA® loader:

| Reg. No.<br>Reg. Date | Deposit Material |
|---|---|
| VA0002083626<br>July 24, 2017 | UpLULA® back view:<br> |

| Reg. No.<br>Reg. Date | Deposit Material |
|---|---|
| VA0002083624<br>July 24, 2017 | UpLULA® top view:<br> |
| VA0002083628<br>July 24, 2017 | UpLULA® engraving:<br> |
| VA0002083358<br>July 24, 2017 | UpLULA® arch:<br> |

| Reg. No.<br>Reg. Date | Deposit Material |
|---|---|
| |  |
| VA0002083627<br>July 24, 2017 | UpLULA® lock:<br> |

| Reg. No.<br>Reg. Date | Deposit Material |
|---|---|
| VA0002083357<br>July 24, 2017 | UpLULA® ridged waterfall grip:<br> |
| VA0002083625<br>July 24, 2017 | UpLULA® ridged waterfall grip (2013):<br> |

| Reg. No.<br>Reg. Date | Deposit Material |
|---|---|
| VA0002083356<br>July 24, 2017 | UpLULA® beak with reverse bevel:<br> |

**Maglula's Utility Patents**

29.     Maglula's expertise in the field has been recognized by the U.S. Patent and

Trademark Office ("USPTO") by numerous patent awards, including the following U.S. patents:

| Patent No. | Title | Issue Date |
|---|---|---|
| 6,810,616 | Magazine Loader and Unloader Accessory | 11/2/2004 |
| 7,059,077 | Heavy Duty Magazine Loader | 6/13/2006 |
| 7,503,138 | Magazine Aligner for Pistol Magazine Loaders | 3/17/2009 |
| 7,637,048 | Universal Pistol Magazine Loader | 12/29/2009 |
| 7,805,874 | Multi-Round Magazine Loader and Unloader | 10/5/2010 |
| 9,057,570 | Loader for Magazines with Projecting Side Button | 6/16/2015 |
| 9,212,859 | Self-Raising Magazine Loader | 12/15/2015 |

30.     U.S. Patent Nos. 7,503,138 and 7,637,048 are the Asserted Patents in this case.

31.    The USPTO issued the '138 patent on March 17, 2009.  The '138 patent bears the title "Magazine Aligner for Pistol Magazine Loaders."  A true and accurate copy of the '138 patent is attached as **Exhibit 2**.

32.    Maglula is the owner and assignee of all rights, title, and interest in the '138 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

33.    The USPTO issued the '048 patent on December 29, 2009.  The '048 patent bears the title "Universal Pistol Magazine Loader."  A true and accurate copy of the '048 patent is attached as **Exhibit 3**.

34.    Maglula is the owner and assignee of all rights, title, and interest in the '048 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

35.    Maglula has marked and continues to mark its UpLULA® products with patent notices, including the '138 and '048 patents, as shown, for example, on the product insert shown above, as well as on the genuine UpLULA® product here:





36.     Maglula's products, in association with the Maglula Trademarks, the Maglula

Copyrights, and the Asserted Patents, are promoted, offered, and sold nationwide in the United

States through national, regional, independent, and specialty dealers.  Maglula's products

marketed and sold in connection with the Maglula Trademarks, the Maglula Copyrights, and the

Asserted Patents have enjoyed commercial success throughout the United States.  In addition to

its own advertising and promotional activities, Maglula and its marks and products receive

significant unsolicited media coverage, attention, and praise.

## AMAZON AND ITS INFRINGING CONDUCT

37.     Amazon is reportedly the world's largest Internet-based seller, with revenues of

over $232 billion in 2018, and employs over half a million people.  Amazon sells a vast array of

products to its subscribers and consumers located throughout the United States and abroad.

However, the company continues to perform poorly in combating online counterfeiting—hurting

inventors and legitimate brands as well as consumers, who are left with increasingly fewer

options for online commerce.

38.     Amazon uses its website, www.amazon.com, to sell products directly to its

subscribers and customers.  Products identified on Amazon's website as "Ships from and sold by

Amazon.com" (see below) are sold and shipped directly by and from Amazon.  Amazon receives payments from its subscribers and customers for the sale and delivery of these products.  These products include Amazon-branded products, such as the Kindle, Fire, Echo, and Alexa devices, as well as products Amazon obtains from manufacturers, wholesalers, and other sources.



39.     Amazon also uses its website to sell "Amazon Renewed" products to its subscribers and consumers.  Amazon Renewed products are refurbished, pre-owned, or open-box products.  Amazon Renewed products "have been inspected and tested by qualified suppliers to work and look like new, and come with the Amazon Renewed Guarantee."  Amazon's testing and inspection process purportedly includes "a full diagnostic test, replacement of any defective parts, and a thorough cleaning process carried out by the supplier, or by Amazon."  *See* **Exhibit 4**.

40.     Amazon also uses its website to sell "Amazon Warehouse" products to its subscribers and customers.  Amazon explains that purchasers of Amazon Warehouse products "[g]et deep discounts on open-box and used products."  Amazon also advertises that it "inspect[s] and certif[ies] all items for sale on Amazon Warehouse based on physical and functional condition . . . ."  *See* **Exhibit 5**.

41.     Amazon also partners with third parties for Amazon to sell products to Amazon's subscribers and customers.

42.     Amazon partners with online liquidators like DirectLiquidation.com, Liquidation.com, and BIDRL.com, through which Amazon sells products such as customer returns and unsold inventory.  Amazon's liquidated products can also be found at wholesale liquidators like Xcess Limited (which has a web store on eBay) and at brick-and-mortar discount stores like Gimme a $5, World Liquidators, and others.  *See* **Exhibit 1C**.

43.     Amazon's business practices have enabled counterfeiting to reach new heights. Amazon's own reports reveal that it receives an infringement notice for 1 out of every 100 customer page views.  *See* **Exhibit 6**.

## Amazon's Sale of Knock-Off UpLULA® Products

### "Sold by Amazon"

44.     Amazon has infringed and continues to infringe the Maglula Trademarks, the Maglula Copyrights, and the Asserted Patents by selling the Accused Products, including the knock-offs, fakes, and copies of the UpLULA® loaders/unloaders.  On its website, Amazon advertises and sells these products directly under the designation "Ships from and sold by Amazon.com," as shown in the example below:



*[NAME REDACTED]*

45.     Customers who believed they were purchasing genuine UpLULA®

loaders/unloaders "[s]hip[ped] from and sold by Amazon.com" received from Amazon

counterfeits or infringing products such as the counterfeit product shown below.  This product,

its insert card (also shown below), and its blister packaging are copies of Maglula's genuine

UpLULA® product and, as such, infringe the Maglula Trademarks, Maglula Copyrights, and

Asserted Patents.





*[Infringing copy of Maglula's 2016 insert card - Front]*



*[Infringing copy of Maglula's 2016 insert card - Rear]*

46.     Maglula has collected over forty knock-offs of Maglula's IP-protected

UpLULA® loader from customers who purchased directly from Amazon, were suspicious of the

loader received, and then directly contacted Maglula about it.  Following Maglula's instructions,

these customers signed or engraved their names on the counterfeits, photographed them signed,

and shipped them to Maglula (example shown below).  Each customer invoice issued by

Amazon shows the product was sold by Amazon, i.e., "Sold by: Amazon.com Services, Inc."

(example shown below).  In addition, Maglula has received pictures and communications from

many other Amazon customers regarding knock-offs of Maglula's IP-protected UpLULA®

product "[s]old by: Amazon.com Services, Inc." (examples also shown below).




## Shipped on September 21, 2018

**Items Ordered**                                                                                         **Price**
1 of: *Maglula ltd. UpLula Magazine Loader/Unloader, Fits 9mm-45 ACP, Brown UP60BO*   $22.37
Sold by: Amazon.com Services, Inc

Condition: New

**Shipping Address:**                                                    Item(s) Subtotal: $22.37
Dave Smith                                                               Shipping & Handling:   $0.00

Picture shows 32 of the collected counterfeits signed each by a customer of Amazon, invoices reading "Sold by: Amazon.com Services, Inc."



47.     Upon information and belief, Amazon has offered for sale and/or sold Accused Products that infringe the Maglula Trademarks, the Maglula Copyrights, and the Asserted Patents bearing labels showing an Amazon ASIN, Maglula's Trademarks Maglula® and UpLULA®, and the designation "Made In China" as shown for example below:





48.      Upon information and belief Amazon has on occasion removed from its website one or more of its webpage advertisements offering to sell Accused Products that infringe Maglula's IP after Maglula lodged complaints with Amazon about such advertisements but rather than ceasing all advertisement of the Accused Products Amazon subsequently posted on its website the same or a similar advertisement offering to sell the Accused Products and/or offered for sale and sold such an Accused Product using a different sales channel such as through pallet sales or liquidation.

### **"Amazon Renewed" and "Amazon Warehouse"**

49.      Amazon also sells knock-offs of Maglula's IP-protected UpLULA® product using the "Amazon Renewed" designation, as shown in the example below.  These "Renewed" products are "[s]old by Amazon Warehouse and [f]ulfilled by Amazon."



*[NAME REDACTED]*

50.      On July 26, 2019, a representative of Maglula did a test purchase of what Amazon advertised as a "Maglula Ltd. UpLULA Magazine Speed Loader 9mm, 0.45 ACP UP60B (Renewed)," designated "Amazon Renewed."  As shown below, Amazon's invoice listed the product as "Sold by: Amazon.com Services, Inc."  As also shown below, the received product

31

(delivered to an address in Reston, Virginia) and its packaging are copies of Maglula's genuine

UpLULA® loader and, as such, infringe the Maglula Trademarks, Maglula Copyrights, and

Asserted Patents.





*[NAME REDACTED]*






51.     On October 4, 2019, a representative of Maglula did another test purchase from Amazon of a "Maglula UpLULA Magazine Speed Loader 9mm, 0.45 ACP UP60B (Renewed)," designated "Amazon Renewed."  As shown below, Amazon specified the "Seller Information" as "amazon warehouse" and explained "FULFILLMENT BY AMAZON" as meaning "Stored, Packed & Shipped by Amazon!"  As also shown below, the invoice for this purchase lists the product as "Sold by: Amazon.com Services, Inc."  Further, the received product (also delivered to an address in Reston, Virginia) and its packaging are copies of Maglula's genuine UpLULA® loader/packaging and, as such, infringe the Maglula Trademarks, Maglula Copyrights, and Asserted Patents.





*[NAME REDACTED]*







### **Amazon Pallet Liquidation**

52.     Amazon offers for sale and sells pallets containing assorted customer returns, outdated stock, and other products via bulk liquidation, often in truckloads.

53.     These liquidation pallets are commonly purchased from Amazon by third parties who then resell the products either online via websites like eBay.com or at brick-and-mortar stores.  On multiple occasions, purchases were made of what was advertised as an UpLULA® product on eBay and, upon receiving the product, it was confirmed that the purchased product was a knock-off once sold by Amazon, as evident by the Amazon-specific barcodes placed on the product and/or packaging.  Indeed, several eBay sellers confirmed to Maglula that they purchased the products from Amazon via pallet liquidation such as DirectLiquidation.com, Liquidation.com, and BIDRL.com.  *See* **Exhibit 1C**.  In doing so, Amazon contributes to each third party's infringement of Maglula's patents, copyrights, and trademarks by their advertising, offering for sale, and selling knock-offs.  The picture below is an example of liquidated pallets from Amazon (https://www.directliquidation.com/liquidation-102/buying-amazon-returns-pallets-near/).



54.   Based on information from several eBay sellers, between March and June 2019 Maglula made nine purchases of liquidated boxes from Liquidation.com from "Seller: Sourced_from_Amazon_Liquidations" (Liquidation.com invoice below).  A Liquidation.com representative verified that the boxes came from Amazon.



55.   These boxes contained a counterfeit of Maglula's UpLULA® product, often listed on Amazon's manifests as "*Maglula UpLULA* Magazine Speed Loader 9mm, 0.45 ACP UP60B" or "*Maglula UpLULA* Universal Pistol Magazine Loader," and often packed in an Amazon-branded clear plastic wrap, indicating that Amazon handled each infringing product.  *See* **Exhibit 7**.  The received products and packaging bear the Maglula Trademarks and Maglula Copyrights, and they infringe the Asserted Patents (examples below).  Even a product clearly identified as "COUNTERFEIT" (*see supra* ¶ 5) was sold by Amazon via its pallet/box liquidation.  Rather than destroy or quarantine counterfeits and knock-offs as it should, Amazon simply sells the infringing products for profit and passes the problem (and products) on to someone else.







Picture showing the nine counterfeits sold by Amazon via Liquidation.com



56.     As another example of Amazon's liquidated counterfeits, on October 27, 2019, the website BIDRL.com posted thirty UpLULA® counterfeit products bearing Amazon's ASIN B001HBHNHE label.









**Amazon's Advertising of Products "Sold by Amazon.com"**

57.     Amazon has been a source of genuine UpLULA® loaders from one or more

authorized U.S. distributors of Maglula.

43

58.     Amazon requires every product type it sells to have a unique Amazon Standard Identification Number ("ASIN"), and the same ASIN should be used across all listings for a particular product.  Among other functions, the ASIN identifier is used to display the entity with whom Amazon has partnered to offer a product.  *See* **Exhibit 8**.

59.     Consumers purchase products that are "sold by Amazon.com" to avoid unwittingly purchasing counterfeit/infringing products.  In fact, online resources specifically suggest purchasing items "sold by Amazon" to reduce the chance of receiving counterfeit products.  *See*, *e.g.*, **Exhibit 9** ("If you asked me last year how to safeguard yourself against counterfeit . . . items on Amazon . . . I would have advised you to stick to . . . those items that are 'shipped from and sold by Amazon.com'"); **Exhibit 10** (items shipped from and sold by Amazon "should be legitimate" and are "your best bet"); **Exhibit 11** (ships from and sold by Amazon "should almost certainly be legitimate"); **Exhibit 12** ("Experts say [sold by Amazon] items are the most legitimate for authenticity"); and **Exhibit 9** (83% of parents surveyed claimed they shop for toys on Amazon and 90% felt confident that Amazon is a safe place to make such purchases).

60.     Amazon sells products it identifies as "Maglula's UpLULA™" and often fills customer orders with knock-offs that infringe Maglula's IP.  Amazon charges, and its customers pay, a premium for products that "ship[] from" and are "sold by Amazon.com," as expressed in the customer post attached as **Exhibit 13**.

61.     When Amazon's customers receive counterfeit/infringing products "sold by Amazon" of a quality inferior to the genuine UpLULA® product, they are likely to attribute that inferior quality to Maglula—thus harming the reputation Maglula worked so hard to build.  For example, many knock-offs of Maglula's UpLULA® product have a defective metal plunger that

breaks or bends under pressure.  The photos below, from Amazon customers, show the metal

plunger in knock-off UpLULA® loaders broken out of place (or bent upward under pressure).

 



Sample negative reviews of the UpLULA® product from Amazon are below.  These comments associate a knock-off's poor quality with Maglula.



Y. RAMIREZ

★☆☆☆☆ **Will not last more than 5 magazines with of reloads**

December 23, 2018

Color: Black | Verified Purchase

First time at the range with this loader, and by the fifth 10 round mag, the bar that lowers the round bent out of shape, and does not lower the rounds anymore. Bent it back into position and it only worked for one more mag. Waste of money.

8 people found this helpful

Helpful | ⌄ 2 comments | Report abuse



Amazon Customer

★☆☆☆☆ **Will not hold up if loading a 45 ACP!**

March 18, 2019

Color: Brown | Verified Purchase

I bought this as an extra for loading my Sig 227, one day at the range a man was there and did not have a speed loader so I gave him my old one knowing I had this new one I had purchased. I should have given him the new one because this one stinks! after loading only one 10 round magazine the metal that pushes down the bullets is bent up and will no load. I can bend it with my fingers back in place BUT surprise...it does not hold. SO SAD! A TOTAL WASTE OF MONEY.



NYNRA

★☆☆☆☆ **Broke within a month**

June 16, 2019

Color: Dark Green | Verified Purchase

Seeing others at the range using this product to load seemed like a no brainer. So I ordered one. Took it to a couple competitions and classes. Within a month it became unusable. Thee black metal ramp like tongue I'm pointing at shifted or bent, I'm not sure which. But it is no longer at the proper angle to load ammo. This product will not function at all. Very disappointed especially since it lasted only a couple of weeks.





Molly Macbeth

★☆☆☆☆ **The tongue that pushes the cartridges down broke**

January 8, 2019

Color: Black | Verified Purchase

I was very pleased with this item at first. It worked great for the first few times I used it. I have only used it for my M&P Shield 9 mm magazines. But about the third or fourth time I used it, when I pushed one of the cartridges down to load the next one, the tongue part that physically pushes the cartridges down bent up rendering the entire system inoperable. I'm very disappointed in this product. I advise everyone to invest in a higher quality loader. The section that takes all the stress is made of plastic, which caused it to deform under stress. I would recommend getting a loader with an aluminum or steel tongue part.



Marq Kensworth

★☆☆☆☆ **Cheaply made product.**

April 14, 2019

Color: Black | Verified Purchase

Not even 100 rounds into using this loader the metal part that pushes the rounds down started to bend and essentially ceased to function. It was supposed to save my thumbs from the pain of loading a magazine but by the end of the session my thumb hurt from trying to bend the metal feeder piece back into place. For that much money I expected better quality.



Amazon Customer

★☆☆☆☆ **Broke after just a few uses**

May 31, 2019

Color: Dark Green | Verified Purchase

The piece that forces the ammo carrier down to allow me to load the rounds appears to be made out of plastic (why not metal?!) and that piece bent upwards and then snapped after about ten uses! This thing is too expensive to have broken so quickly/easily!





## Amazon and Its Use of Partners

62.     Amazon contracts with partners for Amazon to sell products on Amazon's website, using Amazon's ASIN numbering system referenced above.  Partners provide Amazon with contact information and a description of the product, including its brand, model, dimensions, and weight.  Amazon's partners are even permitted by Amazon to pass off products infringing Maglula's IP on Amazon's website as though those infringing products are genuine.

63.     Amazon controls all aspects of the sales process with its partners.  Amazon formats the product's listing on the Amazon website.  Amazon has the sole discretion to determine the content, appearance, design, functionality, and all other aspects of the listing.  Amazon can redesign, modify, remove, or restrict access to any listing.  To the extent its partners wish to communicate with Amazon's customers about Amazon orders, they must do so through Amazon.  Amazon may, at any time, in its sole discretion and without notice, suspend, prohibit, or remove product listings associated with Amazon and its partners.  Amazon requires its partners to agree that Amazon has the "exclusive right" to receive all proceeds from all of Amazon's sales on behalf of its partners.  For its sales on behalf of its partners, Amazon controls all aspects of cancellations, returns, and refunds.

47

64.     Amazon does not generally take precautions to ensure that its partners are in good standing under the laws of the country in which their businesses are registered.  Amazon also has no vetting process in place to ensure that its partners are amenable to legal process.  Further, Amazon has acknowledged that it may not know the true identity of its partners, thus making it impossible for Maglula to bring partners to court and investigate sources of knock-offs.

<b><u>Amazon's Fulfillment Practices</u></b>

65.     Partners uniting with Amazon on the sale of products to Amazon's customers on Amazon's website have several options for fulfilling orders.  They can ship inventory directly to customers or they can coordinate with Amazon to receive, store, and accept orders; pick and handle the shipping; and provide customer service using what Amazon calls "Fulfillment by Amazon," or "FBA" for short.  Amazon accepts all orders from its customers.  If a partner ships directly to Amazon's customers, Amazon is required to send the partner the shipping information for each customer order.  Partners selecting FBA ship products to Amazon fulfillment centers, and Amazon stores and ships the products to Amazon's customers.

66.     Amazon's FBA requires barcodes to identify and track inventory throughout the fulfillment process.  Amazon uses manufacturer barcodes (UPC, EAN, ISBN, etc.) or Amazon barcodes (specific to Amazon) for these purposes.  Each sellable product must have a barcode on it.  Partners can satisfy Amazon's barcode requirement in three ways: (1) print labels themselves and label each product before sending to Amazon; (2) use Amazon's label service, through which Amazon labels products for an additional per-unit fee; or (3) use a "sticker-less," commingled inventory option.  Sticker-less commingling does not require individual labels and instead relies on manufacturer barcodes to identify and track products.

48

67.     Amazon typically fulfills orders with products located closest to the location to where the products are to be shipped.

**Partnership Sales of the Accused Products,**
**Including Knock-Offs of Maglula's UpLULA® Loader, on Amazon's Website**

68.     Amazon and its partners, together, continue selling knock-offs of Maglula's UpLULA® loader/unloader on Amazon's website despite Maglula's diligent efforts to police and report instances of infringement.

69.     Beginning in about October 2016, Maglula began systematically reporting to Amazon the Amazon listings on Amazon's website for ASINs and the Amazon partners who, together with Amazon, were identified as offering knock-off UpLULA® products.  Amazon was slow to remove its listings, often allowed infringing product listings to remain active for days (while sales continued), and allowed previously identified infringing listings and sellers to reappear almost immediately after delisting.

70.     Maglula sent Amazon a cease-and-desist letter in December 2016 identifying eleven ASINs for products that infringe Maglula's patents and asked Amazon to remove these ASINs, identify its partners, and stop selling the infringing products.  Maglula sent Amazon another cease-and-desist letter in April 2017 addressing Amazon's direct sale of knock-off UpLULA® and infringing products.

71.     Maglula also communicated by email with Amazon executives and Amazon's infringement reporting division frequently—often daily—about the continued availability of knock-off UpLULA® and infringing products on the Amazon website.

72.     On or about March 24, 2017, Maglula provided Amazon with a detailed 12-page memorandum explaining how to identify knock-off UpLULA® and infringing products addressed to Amazon's "Manager, Vendor Management, Sporting Goods" and its "Global

Relations Manager, Product Integrity." Despite having received Maglula's detailed instructions, Amazon continued to offer for sale and sell, alone and with its partners, the Accused Products, thus willfully infringing Maglula's Trademarks, Maglula's Copyrights and the Asserted Patents.

73. Throughout 2017 and 2018, Maglula's attorneys had numerous telephone calls with Amazon to discuss the knock-off UpLULA® and infringing products available on the Amazon website. Maglula repeatedly detailed the difficulties it was experiencing with reporting infringements, including slow response time by Amazon, Amazon partners being allowed to continue to list products using ASINs associated with infringing products, known knock-off partners relisting products on new or different ASINs, relisting of previously removed products on ASINs already identified as knock-offs, and continued fulfillment of orders from inventory known to contain knock-off products.

74. On information and belief, over time, Amazon received from Maglula's authorized distributors more than 100 pallets of genuine Maglula® UpLULA® loaders/unloaders in Maglula's distinctive packaging as shown below. The larger "Master Pack" boxes show "Maglula Ltd. Magazine Loaders and UnLoaders" in large font, and each of the inner smaller 6-pack boxes shows Maglula's product barcode and description in large font. While Amazon was familiar with this distinctive packaging (originating from Maglula's authorized distributors) and could have also used it to distinguish genuine Maglula® UpLULA® loaders/unloaders from knock-offs, Amazon repeatedly chose to disregard Maglula's distinctive packaging when stocking its inventory of knock-offs.



**Amazon's Inaction in Response to Infringement Reports**

75.     IP rights owners can report counterfeits and/or infringing products found on the Amazon websites through an Amazon "Report Infringement" form.  The form has four choices: copyright concerns, trademark concerns, patent concerns, and other concerns.  The information required to complete the form changes based on which "concern" is selected.  The form is generally unfriendly and cumbersome for repeated use.

76.     Amazon not only refused to acknowledge Maglula's well established common law trademarks "Maglula" and "UpLULA", Amazon also went so far as to accuse Maglula of submitting "inaccurate or invalid" reports.

77.     Amazon's method of dealing with infringement reports is heavily automated and ineffective.  Even after Amazon removes a webpage advertisement for an infringing product, Amazon often relists the same or virtually the same webpage advertisement under a new ASIN.

78.     As detailed above, Maglula has faced extreme difficulties getting Amazon to review, respond to, or even acknowledge infringement reports.  When Amazon eventually decided to "take down" a listing for a counterfeit/infringing product for sale on its website, it was often after repeated complaints and after stock was sold and depleted.

79.     By way of example, between April 9 to July 18, 2019, Maglula complained at least ***thirty-one times*** over a ***fourteen-week*** period about one Amazon partner—Straight Hair Splint—that, together with Amazon, offered a product referred to as a "ShateDOWN" before Amazon removed the knock-off products from its website.

80.     The ShateDown (see below) is a "QBloader" knock-off that infringes the Maglula Copyrights and the Asserted Patents.  Maglula submitted copyright infringement reports via Amazon's systems regarding Straight Hair Splint.  After repeated complaints (some of which were ***rejected*** because Amazon failed to timely and aggressively act on Maglula's earlier complaints), Amazon removed several of its product listings.  Amazon then relisted ShateDown products under ***sixteen*** "new" ASINs.  Maglula submitted additional infringement reports regarding the "new" ASINs, and the cycle continued.



81.     ShateDown knock-off products were stocked and shipped by Amazon via FBA and were also stocked and shipped from Amazon's partner. Amazon did not remove the products from its website until **_twelve weeks_** after Maglula first submitted infringement reports about the partner. ShateDown products remained off the Amazon website for a mere **_two weeks_** before Amazon again began selling the same knock-offs under different ASINs. Maglula submitted new infringement reports for the new listings. Even though Amazon has deactivated the individual listings complained of, it listed the ShateDown knock-off products (which it knows infringe the Maglula Copyrights and the Asserted Patents) on the Amazon website for some time longer.

82.     Despite Maglula having spent three years pursuing relief from Amazon, Amazon continues to promote and sell knock-off products up to the filing of this action.  *See*, for example, the listings depicted below from October 2019:









83.    Despite the obvious infringement addressed through Maglula's complaints,

Amazon rejected many of Maglula's trademark-infringement reports asserting common-law

trademark rights because, according to the Amazon representatives Maglula communicated with,

Amazon only removes product listings when the infringed mark is federally registered.  When Maglula asserted registered trademark rights in the mark(s) appearing on knock-off UpLULA® product packaging, Amazon rejected the infringement reports on the basis that the reported registered mark (e.g., LULA®) was not the name of the product (UpLULA®).  In other words, Amazon either did not recognize the use of LULA® on the product insert (despite Maglula explaining it) or did not deem its use sufficient to warrant removal of the listings.  With respect to patent infringement, Amazon refused to remove listings absent a court order declaring that the products infringed the Asserted Patents.

84.     After considerable effort and persistence, Amazon selectively provided some contact information and email addresses for some of its partners in response to infringement reports so that Maglula could contact them as well.  Maglula sent cease-and-desist letters to Amazon partners after receiving this information.  But most of these letters went unanswered.

85.     In some instances, the email addresses Amazon provided were nonfunctional.  In other instances, it became clear that the information Amazon collected from its partners was fraudulent.  For example, Maglula corresponded with at least three individuals who were victims of documented identity theft and whose information (e.g., names and addresses) Amazon wrongly linked to Amazon's partners' accounts.  These individuals were not, in fact, the individuals who partnered with Amazon selling knock-off UpLULA® products.  Ultimately, the vast majority of Amazon partner contact information that came from Amazon led to dead ends.

86.     Despite Maglula's diligence and repeated communications with Amazon to identify and prevent infringement of the Maglula Trademarks, the Maglula Copyrights, and the Asserted Patents, knock-off UpLULA® and infringing products remain available on Amazon's website to this day, including products that are "[s]hip[ped] from and sold by Amazon.com, Inc."

Counterfeits bearing Amazon's labels also appear on eBay to this day, most likely sourced from Amazon's liquidation pallets.

## INJURY TO THE PUBLIC AND MAGLULA

87.    Amazon's counterfeiting and unauthorized uses of the Maglula Trademarks, Maglula Copyrights, and Asserted Patents have caused and are likely to cause confusion, mistake, and deception as to the source or origin of Amazon's products, and are likely to falsely suggest a sponsorship, connection, or association between Amazon, its products, and/or its commercial activities with Maglula.

88.    Maglula has no control over the nature and quality of the products offered by Amazon bearing the Maglula Trademarks, Maglula Copyrights, and Asserted Patents, and Amazon's continued use of the Maglula Trademarks, Maglula Copyrights, and Asserted Patents will damage Maglula's reputation and goodwill and the value of the Maglula Trademarks, Maglula Copyrights, and Asserted Patents.  Because Amazon's use of the Maglula Trademarks, Maglula Copyrights, and Asserted Patents is likely to confuse consumers as to the source of the products, any defects, objections, or faults found with Amazon's knock-off UpLULA® products marketed under the Maglula Trademarks, Maglula Copyrights, and Asserted Patents are likely to be attributed to Maglula and thus reflect negatively upon and injure the reputation that Maglula has established for its products under the Maglula Trademarks, Maglula Copyrights, and Asserted Patents.

89.    Further, Amazon's sluggish response to multiple and repeated IP infringement reports has forced Maglula to shift focus from running its business normally, including developing new products and markets, to figuring out how to survive against low-cost knock-offs, all while Amazon profits from each unit sold.

90.     Amazon's use of the Maglula Trademarks, Maglula Copyrights, and Asserted Patents has damaged and irreparably injured, and, if permitted to continue, will further damage and irreparably injure Maglula, the Maglula Trademarks, Maglula Copyrights, and Asserted Patents, its reputation and goodwill, and the public's interest in being free from confusion.

91.     Amazon knows and has known for at least three years that its use of the Maglula Trademarks, Maglula Copyrights, and Asserted Patents to sell knock-off products is neither permitted nor authorized.  As a result, Amazon has acted knowingly, willfully, in reckless disregard of Maglula's rights, and in bad faith.

**FIRST CLAIM FOR RELIEF**
**Federal Trademark Counterfeiting Under**
**Sections 32(1)(b) and 34(d) of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d)**

92.     Maglula repeats and realleges each and every allegation set forth in paragraphs 1 through 91 of this Complaint.  Defendants have used and continue to use counterfeits of Maglula's federally registered Maglula®, UpLULA®, StripLULA®, 22UpLULA®, BabyUpLULA®, LULA®, and BenchLoader® marks listed in paragraph 25, which are registered for firearm magazine loaders and unloaders, in connection with the sale, offering for sale, and distribution of firearm magazine loaders and unloaders in violation of Sections 32(1)(b) and 34(d) of the Lanham Act, 15 U.S.C. §§ 1114(b), 1116(d).

93.     Defendants are directly liable to Maglula for such counterfeiting.

94.     In addition, Defendants are contributorily liable for their partners' direct counterfeiting.  Defendants have knowledge and/or have reason to know of their partners' sale, offering for sale, and distribution of counterfeit magazine loaders and unloaders, and materially contribute to or induce this conduct by offering a website known for its lax IP-enforcement policies (and taking a share of sales proceeds), refusing to collect accurate contact information for their partners listing products on the website, refusing to remove reported counterfeit product

listings, refusing to remove/quarantine/destroy reported counterfeit inventory, filling genuine orders with reported counterfeit inventory, allowing counterfeit product listings to be regenerated, allowing reported counterfeit products to be relisted under "new" ASINs, and refusing to ban repeat offenders, among other things.

95.     Defendants are vicariously liable for their partners' direct counterfeiting. Defendants and their partners have apparent or actual partnerships, and Defendants and their partners have the authority to bind one another in transactions with third-party customers and/or exercise joint ownership or control over the counterfeit products.

## SECOND CLAIM FOR RELIEF
### Trademark Infringement Under
### Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

96.     Maglula repeats and realleges each and every allegation set forth in paragraphs 1 through 95 of this Complaint.

97.     Without Maglula's consent, Defendants used and continue to use in commerce reproductions, copies, and colorable imitations of Maglula's federally registered Maglula®, UpLULA®, StripLULA®, 22UpLULA®, BabyUpLULA®, LULA®, BenchLoader®, and 1911AI® marks, in connection with the offering, distribution, and advertising of firearm magazine loaders and unloaders, which is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

98.     Defendants are directly liable to Maglula for such infringement.

99.     In addition, Defendants are contributorily liable for their partners' direct infringement.  Defendants have knowledge and/or have reason to know of their partners' sale, offering for sale, and distribution of infringing magazine loaders and unloaders, and materially contribute to or induce this conduct by offering a website known for its lax IP-enforcement policies (and taking a share of sales proceeds), refusing to collect accurate contact information

for the partners with whom they sell products on Amazon's website, refusing to remove reported

infringing product listings, refusing to remove/quarantine/destroy reported infringing inventory,

filling genuine orders with reported infringing inventory, allowing reported infringing product

listings to be regenerated, allowing reported infringing products to be relisted under "new"

ASINs, and refusing to ban repeat offenders, among other things.

100.    Defendants are vicariously liable for their partners' direct infringement.

Defendants and their partners have apparent or actual partnerships, and Defendants and their

partners have the authority to bind one another in transactions with third-party customers and/or

exercise joint ownership or control over the infringing products.

**THIRD CLAIM FOR RELIEF**
**Trademark Infringement, False Designation**
**of Origin, Passing Off, and Unfair Competition Under**
**Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**

101.    Maglula repeats and realleges each and every allegation set forth in paragraphs 1

through 100 of this Complaint.

102.    Defendants' use of the Maglula Trademarks, as described above, is likely to cause

confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of

Defendants, their products, and/or their commercial activities with Maglula, and thus constitutes

trademark infringement, false designation of origin, passing off, and unfair competition in

violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

103.    Defendants are directly liable to Maglula for such infringement, false designation

of origin, passing off, and unfair competition.

104.    In addition, Defendants are contributorily liable for their partners' direct

infringement, false designation of origin, passing off, and unfair competition.  Defendants have

knowledge and/or have reason to know of their partners' sale, offering for sale, and distribution

60

of infringing magazine loaders and unloaders, and materially contribute to or induce this conduct by offering a website with an online e-commerce platform known for its lax IP-enforcement policies (and taking a share of sales proceeds), refusing to collect accurate contact information for the partners with whom they sell products on Amazon's website, refusing to remove reported infringing product listings, refusing to remove/quarantine/destroy reported infringing inventory, filling genuine orders with reported infringing inventory, allowing reported infringing product listings to be regenerated, allowing reported infringing products to be relisted under "new" ASINs, and refusing to ban repeat offenders, among other things.

105.    Defendants are vicariously liable for their partners' direct infringement, false designation of origin, passing off, and unfair competition.  Defendants and their partners have apparent or actual partnerships, and Defendants and their partners have the authority to bind one another in transactions with third-party customers and/or exercise joint ownership or control over the infringing products.

## FOURTH CLAIM FOR RELIEF
## Copyright Infringement Under 17 U.S.C. § 106

106.    Maglula repeats and realleges each and every allegation set forth in paragraphs 1 through 105 of this Complaint.

107.    The Maglula Copyrights are original works of authorship subject to copyright protection under 17 U.S.C. §§ 101 *et seq.*

108.    Maglula owns valid and subsisting copyright registrations, listed in paragraph 27, for various original photographs depicted on the UpLULA® product insert card.

109.    Maglula owns valid and subsisting copyright registrations, listed in paragraphs 27 and 28, for various original design elements of the UpLULA® loader itself.

110.    Defendants had access to the Maglula Copyrights and copied them without authorization.

111.    Defendants' knock-off/infringing products are at least substantially similar to the Maglula Copyrights.

112.    The product insert card accompanying Defendants' knock-off/infringing products is at least substantially similar to the Maglula Copyrights.

113.    The photographs contained in the product insert card accompanying Defendants' knock-off/infringing products are at least substantially similar to the Maglula Copyrights.

114.    Defendants violated Maglula's exclusive copyright in the Maglula Copyrights by reproducing, creating unauthorized derivative works, publicly displaying, and/or distributing them without authorization, or creating unauthorized derivative works.

115.    Defendants are directly liable to Maglula for such infringement.

116.    In addition, Defendants are contributorily liable for their partners' direct infringement.  Defendants have knowledge and/or have reason to know of their partners' sale, offering for sale, and distribution of infringing magazine loaders and unloaders, and materially contribute to, cause, or induce this conduct by offering a website with an online e-commerce platform known for its lax IP-enforcement policies (and taking a share of sales proceeds), refusing to collect accurate contact information for the partners with whom they sell products on Amazon's website, refusing to remove reported infringing product listings, refusing to remove/quarantine/destroy reported infringing inventory, filling genuine orders with reported infringing inventory, allowing reported infringing product listings to be regenerated, allowing reported infringing products to be relisted under "new" ASINs, and refusing to ban repeat offenders, among other things.

117.    Defendants are vicariously liable for their partners' direct infringement.

Defendants have the right and ability to supervise their partners' infringing conduct, and

Defendants have an obvious, direct financial interest in the exploitation of the Maglula

Copyrights.

**FIFTH CLAIM FOR RELIEF**
**Infringement of U.S. Patent No. 7,503,138**

118.    Maglula repeats and realleges each and every allegation set forth in paragraphs 1

through 117 of this Complaint.

119.    The '138 patent is valid and enforceable.

120.    Defendants, in violation of 35 U.S.C. § 271, have directly infringed and continue

to directly infringe, either literally and/or under the doctrine of equivalents, at least claim 1 of the

'138 patent by offering to sell, selling, and/or importing the Accused Products without authority.

Defendants' infringement of the '138 patent arises from its own actions.  Defendants'

infringement also arises from its actions alone, or jointly with one or more partners (or third

parties), as an agent, pursuant to a joint enterprise, or an equivalent arrangement.  A claim chart

setting forth certain nonlimiting examples of Defendants' infringement accompanies this

Complaint as **Exhibit 14**, herein incorporated by reference.

121.    Defendants have indirectly infringed and continue to indirectly infringe at least

claim 1 of the '138 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of

equivalents, by at least as of the date of this Complaint, knowingly and intentionally inducing

others to directly infringe the '138 patent by, among other things, supplying the Accused

Products to end users for use in an infringing manner.

122.    Defendants had actual or constructive knowledge of Maglula's patent rights;

knew or should have known that the advertisement, offer for sale, sale, importation, and/or the

facilitation of sales of the Accused Products would induce infringement of at least claim 1 of the '138 patent; and/or had a subjective belief that others, including end users, infringe the '138 patent, but remained willfully blind to the infringement, at least because Defendants also advertise, offer for sale, sell, and facilitate the sale of Maglula's products, which are marked with information of Maglula's patent rights.

123.    Defendants have contributed to the infringement of, and continue to contribute to the infringement, either literally and/or under the doctrine of equivalents, of, at least claim 1 of the '138 patent under 35 U.S.C. § 271 by selling, offering to sell, and/or importing within or into the United States the Accused Products.  These products constitute at least a material part of the invention of the '138 patent, are known by Defendants to be especially made or adapted for use in infringing the '138 patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

124.    Defendants have had actual knowledge of the '138 patent at least by virtue of the 2016 cease-and-desist letter and/or this Complaint, providing notice of the '138 patent and detailing Defendants' infringement.  Defendants further had actual knowledge of the '138 patent at least because Defendants also advertise, offer for sale, sell, and facilitate the sale of Maglula's products, which are marked with information of Maglula's patent rights.

125.    Defendants import, offer for sale, and/or sell the Accused Products in connection with the operation, by Defendants and/or one or more others, of one or more websites accessible on the Internet by Defendants' subscribers and customers, for example, at https://www.amazon.com/ and/or https://www.liquidation.com/, in violation of 35 U.S.C. § 271(a).  Defendants hold themselves out to their customers and the public at large as sellers, and/or fulfilling sales, of the Accused Products, by, among other things, electronically receiving

orders for the Accused Products, electronically processing orders for the Accused Products, physically handling shipment of orders for the Accused Products, directing or being involved in the shipment of orders for the Accused Products, and electronically receiving payment from customers for sales of the Accused Products.  Unless enjoined by this Court and ordered to discontinue such infringing activities, Defendants will continue to infringe Maglula's patent rights under the Asserted Patents in violation of 35 U.S.C. § 271(a).

126.    Defendants created, operated, and currently operate or control operation of the Amazon website accessible on the Internet, for example, at https://www.amazon.com/, and in connection with the operation or control of such website, Defendants import, offer for sale, and/or sell the Accused Products in violation of 35 U.S.C. § 271(a).  In connection with the operation of said website, Defendants direct others in the importation, offer for sale, and/or sale of the Accused Products in violation of 35 U.S.C. § 271(a).  Unless enjoined by this Court and ordered to discontinue such infringing activities, Defendants will continue to infringe Maglula's patent rights under the Asserted Patents in violation of 35 U.S.C. § 271(a).

127.    Any act/s performed by one or more entities other than the Defendants and involved in the importation, offer for sale, and/or sale of the Accused Products in violation of 35 U.S.C. § 271(a), is/are attributable to the Defendants.  Defendants have acted and continue to act as agents on behalf of such entities.  Defendants have formed joint enterprises with one or more such entities, and together, the Defendants and such entity/entities import, offer to sell, and/or sell the Accused Products in violation of 35 U.S.C. § 271(a).  Defendants and such entity/entities have entered into an agreement(s), express or implied, related to the importation, offer for sale, and/or sale of the Accused Products in violation of 35 U.S.C. § 271(a).  Defendants and such entity/entities have formed a common purpose related to the importation,

offer for sale, and/or sale of the Accused Products in violation of 35 U.S.C. § 271(a). Defendants and such entity/entities have formed a community of pecuniary interest related to the importation, offer for sale, and/or sale of the Accused Products in violation of 35 U.S.C. § 271(a). And Defendants and such entity/entities each have had an equal voice in the direction of the enterprise related to the importation, offer for sale, and/or sale of the Accused Products in violation of 35 U.S.C. § 271(a). Unless enjoined by this Court and ordered to discontinue such infringing activities, Defendants will continue to infringe Maglula's patent rights under the Asserted Patents in violation of 35 U.S.C. § 271(a).

128.    Maglula is entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for Defendants' infringement. Defendants' ongoing infringement is willful and deliberate, as Defendants became aware of the infringing nature of the Accused Products at least by virtue of the 2016 cease-and-desist letter and/or the date of this Complaint. Despite having actual knowledge of the '138 patent, Defendants have continued their infringing activities.

129.    Maglula has been and continues to be damaged and irreparably harmed by Defendants' infringement of the '138 patent. This irreparable harm will continue unless this Court enjoins Defendants.

130.    Defendants' conduct in infringing the '138 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

**SIXTH CLAIM FOR RELIEF**
**Infringement of U.S. Patent No. 7,637,048**

131.    Maglula repeats and realleges each and every allegation set forth in paragraphs 1 through 130 of this Complaint.

132.    The '048 patent is valid and enforceable.

133.    Defendants, in violation of 35 U.S.C. § 271, have directly infringed and continue to directly infringe, either literally and/or under the doctrine of equivalents, at least claim 1 of the '048 patent by offering to sell, selling, and/or importing the Accused Products without authority. Defendants' infringement of the '048 patent arises from its own actions.  Defendants' infringement also arises from its actions alone, or jointly with one or more partners (or third parties), as an agent, pursuant to a joint enterprise, or an equivalent arrangement.  A claim chart setting forth certain nonlimiting examples of Defendants' infringement accompanies this Complaint as **Exhibit 14**, herein incorporated by reference.

134.    Defendants have indirectly infringed and continue to indirectly infringe at least claim 1 of the '048 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by, at least as of the date of this Complaint, knowingly and intentionally inducing others to directly infringe the '048 patent by, among other things, supplying the Accused Products to end users for use in an infringing manner.

135.    Defendants had actual or constructive knowledge of Maglula's patent rights; knew or should have known that the advertisement, offer for sale, sale, importation, and/or the facilitation of sales of the Accused Products would induce infringement of at least claim 1 of the '048 patent; and/or had a subjective belief that others, including end users, infringe the '048 patent, but remained willfully blind to the infringement, at least because Defendants also advertise, offer for sale, sell, and facilitate the sale of Maglula's products, which are marked with information of Maglula's patent rights.

136.    Defendants have contributed to the infringement of, and continue to contribute to the infringement, either literally and/or under the doctrine of equivalents, of, at least claim 1 of the '048 patent under 35 U.S.C. § 271 by selling, offering to sell, and/or importing within or into

the United States the Accused Products.  These products constitute at least a material part of the

invention of the '048 patent, are known by Defendants to be especially made or adapted for use

in infringing the '048 patent, and are not a staple article or commodity of commerce suitable for

substantial noninfringing use.

137.    Defendants have had actual knowledge of the '048 patent at least by virtue of the

2016 cease-and-desist letter and/or this Complaint, providing notice of the '048 patent and

detailing Defendants' infringement.  Defendants further had actual knowledge of the '048 patent

at least because Defendants also advertise, offer for sale, sell, and facilitate the sale of Maglula's

products, which are marked with information of Maglula's patent rights.

138.    Defendants import, offer for sale, and/or sell the Accused Products in connection

with the operation, by Defendants and/or one or more others, of one or more websites accessible

on the Internet by Defendants' subscribers and customers, for example, at

https://www.amazon.com/ and/or https://www.liquidation.com/, in violation of 35 U.S.C.

§ 271(a).  Defendants hold themselves out to their customers and the public at large as sellers,

and/or fulfilling sales, of the Accused Products, by, among other things, electronically receiving

orders for the Accused Products, electronically processing orders for the Accused Products,

physically handling shipment of orders for the Accused Products, directing or being involved in

the shipment of orders for the Accused Products, and electronically receiving payment from

customers for sales of the Accused Products.  Unless enjoined by this Court and ordered to

discontinue such infringing activities, Defendants will continue to infringe Maglula's patent

rights under the Asserted Patents in violation of 35 U.S.C. § 271(a).

139.    Defendants created, operated, and currently operate or control operation of the

Amazon website accessible on the Internet, for example, at https://www.amazon.com/, and in

connection with the operation or control of such website, Defendants import, offer for sale, and/or sell the Accused Products in violation of 35 U.S.C. § 271(a).  In connection with the operation of said website, Defendants direct others in the importation, offer for sale, and/or sale of the Accused Products in violation of 35 U.S.C. § 271(a).  Unless enjoined by this Court and ordered to discontinue such infringing activities, Defendants will continue to infringe Maglula's patent rights under the Asserted Patents in violation of 35 U.S.C. § 271(a).

140.    Any act/s performed by one or more entities other than the Defendants and involved in the importation, offer for sale, and/or sale of the Accused Products in violation of 35 U.S.C. § 271(a), is/are attributable to the Defendants.  Defendants have acted and continue to act as agents on behalf of such entities.  Defendants have formed joint enterprises with one or more such entities, and together, the Defendants and such entity/entities import, offer to sell, and/or sell the Accused Products in violation of 35 U.S.C. § 271(a).  Defendants and such entity/entities have entered into an agreement(s), express or implied, related to the importation, offer for sale, and/or sale of the Accused Products in violation of 35 U.S.C. § 271(a).  Defendants and such entity/entities have formed a common purpose related to the importation, offer for sale, and/or sale of the Accused Products in violation of 35 U.S.C. § 271(a).  Defendants and such entity/entities have formed a community of pecuniary interest related to the importation, offer for sale, and/or sale of the Accused Products in violation of 35 U.S.C. § 271(a).  And Defendants and such entity/entities each have had an equal voice in the direction of the enterprise related to the importation, offer for sale, and/or sale of the Accused Products in violation of 35 U.S.C. § 271(a).  Unless enjoined by this Court and ordered to discontinue such infringing activities, Defendants will continue to infringe Maglula's patent rights under the Asserted Patents in violation of 35 U.S.C. § 271(a).

141.    Maglula is entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for Defendants' infringement.  Defendants' ongoing infringement is willful and deliberate, as Defendants became aware of the infringing nature of the Accused Products at least by virtue of the 2016 cease-and-desist letter and/or the date of this Complaint.  Despite having actual knowledge of the '048 patent, Defendants have continued their infringing activities.

142.    Maglula has been and continues to be damaged and irreparably harmed by Defendants' infringement of the '048 patent.  This irreparable harm will continue unless this Court enjoins Defendants.

143.    Defendants' conduct in infringing the '048 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

**SEVENTH CLAIM FOR RELIEF**
**Trademark Infringement Under**
**Virginia Trademark and Service Mark Act,**
**<u>Virginia Code § 59.1-92.12</u>**

144.    Maglula repeats and realleges each and every allegation set forth in paragraphs 1 through 143 of this Complaint.

145.    Defendants' uses, without Maglula's consent, of reproductions, copies, counterfeits, or colorable imitations of Maglula's federally registered Maglula®, UpLULA®, StripLULA®, 22UpLULA®, BabyUpLULA®, LULA®, BenchLoader®, and 1911AI® marks in connection with the sale, offering for sale, distribution, and advertising of products in a manner likely to cause consumer confusion, mistake, or deception as to the source or origin of Defendants or its products, constitute trademark infringement under the Virginia Trademark and Service Mark Act, Va. Code Ann. § 59.1-92.12.

146.    Defendants have committed the acts described above with knowledge of and intent to cause confusion or mistake or to deceive.

## EIGHTH CLAIM FOR RELIEF
## Common-Law Trademark Infringement and Unfair Competition

147.    Maglula repeats and realleges each and every allegation set forth in paragraphs 1 through 146 of this Complaint.

148.    Defendants' activities described above constitute common-law trademark infringement and misappropriation of the goodwill associated with the Maglula Trademarks and constitute unfair competition in violation of Virginia common law.

149.    Defendants are directly liable to Maglula for such infringement and unfair competition.

150.    In addition, Defendants are contributorily liable for their partners' direct infringement and unfair competition.  Defendants have knowledge and/or have reason to know of their partners' sale, offering for sale, and distribution of infringing firearm magazine loaders and unloaders, and materially contribute to or induce this conduct by offering a website with an online e-commerce platform known for its lax IP-enforcement policies (and taking a share of sales proceeds), refusing to collect accurate contact information for the partners with whom they sell products on Amazon's website, refusing to remove reported infringing product listings, refusing to remove/quarantine/destroy reported infringing inventory, filling genuine orders with reported infringing inventory, allowing reported infringing product listings to be regenerated, allowing reported infringing products to be relisted under "new" ASINs, and refusing to ban repeat offenders, among other things.

151.    Defendants are vicariously liable for their partners' direct infringement and unfair competition.  Defendants and their partners have apparent or actual partnerships, and Defendants and their partners have the authority to bind one another in transactions with third parties and/or exercise joint ownership or control over the infringing products.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Maglula respectfully demands a trial by jury on all issues properly triable by a jury in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Maglula requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A.      An Order declaring that Defendants' use of the Maglula Trademarks infringes Maglula's rights in those marks and constitutes trademark counterfeiting, trademark infringement, and unfair competition under federal and/or state law, as detailed above.

B.      An Order declaring that Defendants' use of the Maglula Copyrights infringes Maglula's rights in those copyrights and constitutes copyright infringement under federal law, as detailed above.

C.      A judgment against Defendants as to infringement of the '138 patent.

D.      A judgment against Defendants as to infringement of the '048 patent.

E.      A permanent injunction enjoining Defendants and their employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them:

1.      From unauthorized use of the Maglula Trademarks and/or any other marks, logos, or designs that are confusingly similar to the Maglula Trademarks;

2.      From representing by any means whatsoever, directly or indirectly, that any products offered by Defendants, or any activities undertaken by

72

> Defendants, are associated or connected in any way with Maglula or
> sponsored or authorized by or affiliated with Maglula except in cases
> involving Maglula genuine products; and
>
> 3. From further acts of infringing, inducing infringement, and/or contributing
> to the infringement of the Asserted Patents.

F. An Order directing Defendants to issue a notice and apology to all customers to whom it sold knock-off Maglula products, explaining that the products are knock-offs and recalling all said products.

G. An Order directing Defendants to, within thirty (30) days after the entry of the injunction, file with this Court and serve on Maglula's attorneys a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction and recall.

H. An Order directing Defendants to immediately destroy all unauthorized products, advertisements, promotional materials, stationery, forms, and/or any other materials and things that contain or bear the Maglula Trademarks and/or any other marks, logos, or designs that are confusingly similar to or substantially similar to the Maglula Trademarks.

I. An Order directing Defendants to destroy all unauthorized products, advertisements, promotional materials, stationary, forms, and/or any other materials and things that contain or bear the Maglula Copyrights and/or any other works that are substantially similar to the Maglula Copyrights.

J. An Order requiring Defendants to provide Maglula with any and all information in Defendants' possession, custody, or control regarding the partner-retailers of any product that infringes the Maglula Trademarks, the Maglula Copyrights, and/or the Asserted Patents.

K.      An Order requiring Defendants to provide Maglula with any and all information in Defendants' possession, custody, or control regarding Defendants' sales via pallet liquidation of any product that infringes the Maglula Trademarks, the Maglula Copyrights, and/or the Asserted Patents.

L.      An Order requiring Defendants to provide Maglula with any and all information in Defendants' possession, custody, or control regarding Defendants' source(s) of any product Defendants sold that infringes the Maglula Trademarks, the Maglula Copyrights, and/or the Asserted Patents.

M.      An Order requiring Defendants to account for and pay to Maglula any and all actual damages, including Maglula's lost profits and Defendants' profits arising from the foregoing acts, and increasing such profits, including trebling them, in accordance with 15 U.S.C. § 1117, 17 U.S.C. § 504, and other applicable laws.

N.      An Order requiring Defendants to pay Maglula damages in an amount as yet undetermined caused by the foregoing acts, and trebling such damages in accordance with 15 U.S.C. § 1117, 17 U.S.C. § 504, 35 U.S.C. § 284, and other applicable laws, including enhanced damages due to, for example, Defendants' willful infringement of the Maglula Copyrights and the Asserted Patents.

O.      A judgment that Maglula be awarded the attorneys' fees, costs, and expenses that it incurs in prosecuting this action, and expenses it has incurred in monitoring the Amazon.com website and reporting IP infringements through Amazon's designated (and unsuccessful) channels.

P.      An Order requiring Defendants to pay statutory damages in accordance with 15 U.S.C. § 1117(c) of up to $2,000,000 for each and every Maglula Trademark that Defendants have counterfeited.

Q.      An Order requiring Defendants to pay statutory damages in accordance with 17 U.S.C. § 504(c)(2) of up to $150,000 for each and every Maglula Copyright that Defendants have infringed.

R.      An Order requiring Defendants to pay Maglula punitive damages in an amount to be determined due to the foregoing willful acts of Defendants.

S.      An accounting for infringing sales not presented at trial and an award by the Court of additional damages for any such infringing sales.

T.      An Order requiring Defendants to pay Maglula its costs and attorneys' fees in this action pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 505, and other applicable laws.

U.      An award of prejudgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein.

V.      A finding that this is an exceptional case under 15 U.S.C. § 1117(a) and/or 35 U.S.C. § 285.

W.      A compulsory future royalty.

X.      Other relief as the Court may deem just and appropriate.

Dated:  December 12, 2019                    Respectfully submitted,


                                             */s/ Jeffrey A. Berkowitz*

                                             Jeffrey A. Berkowitz (Virginia Bar No. 65149)
                                             jeffrey.berkowitz@finnegan.com
                                             **FINNEGAN, HENDERSON, FARABOW,
                                               GARRETT & DUNNER, LLP**
                                             Two Freedom Square
                                             11955 Freedom Drive
                                             Reston, VA  20190
                                             Telephone:   (571) 203-2700
                                             Facsimile:    (202) 408-4400

                                             Danny M. Awdeh (*pro hac vice* to be filed)
                                             danny.awdeh@finnegan.com
                                             **FINNEGAN, HENDERSON, FARABOW,
                                               GARRETT & DUNNER, LLP**
                                             901 New York Avenue, NW
                                             Washington, DC  20001-4413
                                             Telephone:   (202) 408-4000
                                             Facsimile:    (202) 408-4400

                                             Morgan E. Smith (*pro hac vice* to be filed)
                                             morgan.smith@finnegan.com
                                             **FINNEGAN, HENDERSON, FARABOW,
                                               GARRETT & DUNNER, LLP**
                                             3300 Hillview Avenue
                                             Palo Alto, CA  94304
                                             Telephone:   (650) 849-6600
                                             Facsimile:    (650) 849-6666

                                             Attorneys for Plaintiff Maglula, Ltd.