**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| MAGLULA, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES, INC.,<br><br>Defendants. | Civil Action No. 1:19-cv-01570-LO-IDD |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND, AS A RESULT, DISMISS OR, IN THE ALTERNATIVE, STAY THIS ACTION**

# TABLE OF CONTENTS

**Pages**


INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ...................................................................................................2

ARGUMENT ...........................................................................................................................4

I. THIS CASE SHOULD BE ARBITRATED, NOT LITIGATED IN DISTRICT COURT. ...........................................................................................................................4

A. Pursuant To The Parties' Agreement, This Court Should Defer To The Arbitrator To Determine Arbitrability. ..........................................................6

B. Regardless Of Who Determines Arbitrability, This Case Belongs In Arbitration. ...............................................................................................8

1. A Dispute Exists Between The Parties. .............................................8

2. The BSA Purports To Cover The Dispute. .......................................9

3. The BSA Relates To Interstate And Foreign Commerce....................10

4. Maglula Neglected To Arbitrate Its Dispute With The Amazon Defendants. .......................................................................................11

II. THE COURT SHOULD DISMISS; OR, IN THE ALTERNATIVE STAY, THE CASE. ..............................................................................................................11

CONCLUSION ......................................................................................................................12

**TABLE OF AUTHORITIES**

**Cases** **Pages**

*Adkins v. Labor Ready, Inc.*,
303 F.3d 496 (4th Cir. 2002) ..... 5, 8

*Aggarao v. MOL Ship Mgmt Co., Ltd.*,
675 F.3d 355 (4th Cir. 2012) ..... 5, 12

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ..... 6

*American Home Assur. Co. v. Vecco Concrete Constr. Co.*,
629 F.2d 962 (4th Cir. 1980) ..... 11

*Brenco Enter. v. Bitesquad.com, LLC*,
297 F. Supp. 3d 608 (E.D. Va. 2018) ..... 7, 10

*Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*,
252 F.3d 707 (4th Cir. 2001) ..... 12

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) ..... 11

*Connel v. Apex Sys., LLC*,
No. 3:19-cv-299-JAG, 2020 WL 354742 (E.D. Va. Jan. 21, 2020) ..... 9

*Dewan v. Walia*,
544 F. App'x 240 (4th Cir. 2013) ..... 11

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
139 S. Ct. 524 (2019) ..... 6

*In re White Mountain Mining Co.*,
403 F.3d 164 (4th Cir. 2005) ..... 5

*Innospec Ltd. v. Ethyl Corp.*,
Civ. Action No. 3:14-cv-158-JAG, 2014 WL 5460413 (E.D. Va. Oct. 27, 2014) ..... 7, 12

*Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ..... 5, 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ..... 5, 8

*Novic v. Credit One Bank Nat'l Ass'n*,
757 F. App'x 263 (4th Cir. 2019) ..... 6

**TABLE OF AUTHORITIES (cont'd)**

**Pages**

*Oracle America, Inc. v. Myriad Group A.G.*,
724 F.3d 1069 (9th Cir. 2013) ........................................ 1

*Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*,
665 F.3d 96 (4th Cir. 2012) ........................................ 6, 8

*Peters v. Amazon Servs. LLC*,
2 F. Supp. 3d 1165 (2013), *aff'd* 669 F. App'x 487 (9th Cir. 2016)........................................ 6

*Sanho Corp. v. Amazon.com Servs., Inc.*,
Case No. 18CV336575 (Cal. Super. Ct. (Santa Clara), Jan. 21, 2020) ........................................ 7

*Terra Holding GmbH v. Unitrans Int'l, Inc.*,
124 F. Supp. 3d 745 (E.D. Va. 2015) ........................................ 7

*Weckesser v. Knight Enters. S.E., LLC*,
735 F. App'x 816 (4th Cir. 2018) ........................................ 6

**Statutes**

9 U.S.C. § 2........................................ 5

9 U.S.C. § 3........................................ 14

9 U.S.C. §§ 201-208 ........................................ 5

# INTRODUCTION

In 2016, Maglula entered into an agreement—the Amazon Services Business Solutions Agreement ("BSA")—in which the parties agreed to resolve disputes like this one solely through binding arbitration "rather than in court." (BSA ¶ 18.)[1] The arbitration provision provides that both parties "consent that ***any dispute with Amazon or its Affiliates*** or claim relating in any way to the BSA or [Maglula's] use of the Services ***will be resolved by binding arbitration***."[2] (*Id.* (emphasis added).) By filing this case in district court, Maglula attempts to shirk that obligation and violates the terms of the BSA. Because Maglula entered into a valid, enforceable agreement to arbitrate disputes with Amazon and its affiliates, the Court should compel arbitration.

As a threshold matter, this Court need not address the preliminary question of whether the BSA covers the parties' disputes or Maglula's claims—i.e., the "arbitrability" of the claims. By agreeing that the American Arbitration Association (AAA) Rules would govern the arbitration (*see* BSA ¶ 18), the parties delegated that threshold question to an arbitrator. *See Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's

---

[1] Maglula attached to the Complaint a version of the BSA dated April 10, 2017. (*See* Doc. 1-3 at 84-124.) All references to "BSA" in this motion refer to that version of the agreement. That version of the BSA was in effect from June 17, 2016, through May 22, 2017. Because Maglula entered into the BSA on December 16, 2016 (*see* Declaration of Jesse Jensen ("Jensen Decl.") ¶¶ 5, 7), that version is operative. Moreover, the relevant portions of the BSA have not materially changed from June 17, 2016, through the present. *See* Jensen Decl. ¶ 10.

[2] The BSA defines Amazon as the "Amazon Contracting Party"—as applicable here, Amazon Services LLC (*see* BSA Definitions)—"and any of its applicable Affiliates" (BSA Definitions ("General Terms")). The Defendants named in Maglula's Complaint are affiliates and therefore are incorporated by reference as parties to the BSA. However, effective December 30, 2019, Amazon.com Services, Inc. converted to Amazon.com Services LLC. (*See* Declaration of Priyanka Dev ("Dev Decl."), Ex. A (Certificate of Conversion).) In addition, effective January 1, 2020, Amazon Services LLC merged into Amazon.com Services LLC. (*See* Dev Decl., Ex. B (Certificate of Merger).) Therefore, this Motion, while addressing the named defendants, also incorporates Amazon.com Services LLC, the surviving entity that constitutes an "Amazon Contracting Party" pursuant to the terms of the BSA.

(AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." (listing cases)). But if the Court were to reach the arbitrability inquiry, the Court, applying the BSA arbitration provision and the law of the Fourth Circuit, should still order the parties to arbitrate. Therefore, regardless of who determines arbitrability, the Court should compel arbitration and, as a result, dismiss or stay this action.[3]

## FACTUAL BACKGROUND

On December 16, 2016, Maglula entered into Amazon's BSA and assented to its terms by registering as a third-party seller on Amazon.com. (*See* Jensen Decl. ¶¶ 5-12.) A third-party seller cannot register or set up a seller account on Amazon.com without clicking through and accepting the terms of the BSA. (*Id.* ¶ 7.) During the registration process, Maglula was required to check a box indicating that it agreed to and accepted all of the terms and conditions of "the Agreement"—as reflected at the bottom of the screenshot below:


**Do you already have an Amazon.com account, or would you like to resume a previous incomplete registration? Click here**

**Sign-In Information**
First and Last Name:
E-mail Address:
Use an e-mail address that is checked frequently and/or dedicated to business use.
Re-type E-mail Address:
Password:
Re-type Password:
**Seller Information**
Legal Name:
If registering on behalf of a business, enter the business's legal name. If registering as an individual, enter your name.
**Amazon Services Business Solutions Agreement:** I have read and accepted the terms and conditions of the Agreement

Continue

(*Id.* ¶ 9(a).) The underscored reference to the "Agreement" in the above screenshot is a hyperlink to the BSA. (*Id.* ¶ 9(b).) By clicking on that link, Maglula would have been taken to a page displaying the full terms of the BSA. (*Id.*) That registration process, including the required

[3] Concurrent with the filing of this Motion, Amazon filed a Motion to Transfer Venue to the Western District of Washington Pursuant to 28 U.S.C. § 1404(a) and a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).

acceptance of the BSA, has been in effect since at least December 16, 2016. (*Id.*)

The BSA governs various aspects of Maglula's access to and use of many Amazon services and interactions with Amazon.com. (*See* Jensen Decl. ¶¶ 3,12.) Maglula "agree[d] to be bound by the terms of the" BSA "[b]y registering for and using the Services." (BSA General Terms; Jensen Decl. ¶ 12.) "Service" is broadly defined to include Selling on Amazon, Fulfillment by Amazon, and other Amazon e-commerce services:

> Service means each of the following services: ***Selling on Amazon, Fulfillment by Amazon***, Amazon Clicks (including Amazon Sponsored Products), the Marketplace Web Service, and, if the Elected Country for a Service is the United States, the Transaction Processing Services, ***together in each case with any related services and materials we make available***.

(BSA Definitions (emphasis added).) The BSA therefore controls, for example, Maglula's access to its Amazon seller site, Maglula's use of Selling on Amazon—for example, its creation of product postings—plus "any related services and materials" provided by Amazon. (*See id*.)

The BSA also contains a mandatory arbitration provision:

> The Governing Laws will govern this Agreement . . . . If the Elected Country is the United States, Canada, or Mexico, ***Amazon and you both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court,*** except that (i) you may assert claims in a small claims court that is a Governing Court if your claims qualify and (ii) you or we may bring suit in the Governing Courts, submitting to the jurisdiction of the Governing Courts and waiving our respective rights to any other jurisdiction, to enjoin infringement or other misuse of intellectual property rights.

(BSA ¶ 18 (emphasis added).) "Governing Laws" is defined, in applicable part, as "the laws of the State of Washington, United States together with the ***Federal Arbitration Act*** and other applicable federal law . . . ." (BSA Definitions ("Governing Laws") (emphasis added).) The arbitration provision also invokes the rules of the American Arbitration Association:

> The arbitration will be conducted by the American Arbitration Association (AAA) ***under its rules***. . . .

(BSA ¶ 18 (emphasis added).) The BSA also requires the seller to initiate arbitration:

> To begin an arbitration proceeding, ***you must send a letter requesting arbitration and describing your claim to our registered agent*** . . . .

(BSA ¶ 18 (emphasis added); *see also id.* General Terms Preamble (defining "you" as "the applicant (if registering for or using a Service as an individual), or the business employing the applicant (if registering for or using a Service as a business) and any of its Affiliates").)

Maglula entered into the BSA, registered for Amazon services, and used and accessed Amazon services. (Jensen Decl. ¶¶ 5-9, 11-12.) As a registered third-party seller on Amazon.com, Maglula accessed its seller account, uploaded several product images to Amazon.com, created at least one product listing, and added offers to at least three other product listings. (Jensen Decl. ¶ 11; *id.* at Ex. B.)

On May 17, 2019—shortly before filing this litigation in district court—Maglula requested to terminate its registration as a third-party seller, and its account was formally terminated on September 15, 2019. (Jensen Decl. ¶ 11.) However, various provisions of the BSA, including the mandatory arbitration provision in Section 18, survive termination:

> Upon termination, all rights and obligations of the parties under this Agreement will terminate, except that <u>Sections 2, 3, 4, 5, 6, 7, 8, 9, 11, 14, 15, 16,</u> and <u>18</u> will survive termination.

(BSA ¶ 3 (emphasis in original).)

## <u>ARGUMENT</u>

### I. THIS CASE SHOULD BE ARBITRATED, NOT LITIGATED IN DISTRICT COURT.

The BSA's arbitration provision states that the Governing Laws, which are defined as "the laws of the State of Washington, United States[,] together with the Federal Arbitration Act [FAA],

and other applicable federal law," govern the agreement.[4] (*See* BSA ¶ 18, Definitions ("Governing Laws").) Under the FAA, a written agreement to arbitrate "in any . . . contract evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable." 9 U.S.C. § 2. "The FAA reflects a liberal federal policy favoring arbitration agreements." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). That federal policy "applies with special force in the field of international commerce." *See Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

The BSA arbitration provision broadly covers "any dispute with Amazon or its Affiliates:"

> . . . Amazon and you both consent that ***any dispute with Amazon or its Affiliates*** or claim relating in any way to this Agreement or your use of the Services ***will be resolved by binding arbitration*** as described in this paragraph, rather than in court, except that (i) you may assert claims in a small claims court that is a Governing Court if your claims qualify and (ii) you or we may bring suit in the Governing Courts, submitting to the jurisdiction of the Governing Courts and waiving our respective rights to any other jurisdiction, to enjoin infringement or other misuse of intellectual property rights.

[4] Because Maglula is a foreign party, the BSA entered into between Amazon and Maglula also falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards Act ("New York Convention"). *See* 9 U.S.C. §§ 201-208; *see In re White Mountain Mining Co.*, 403 F.3d 164, 168 (4th Cir. 2005) (determining that an order to arbitrate would be based on the New York Convention where one of the parties to the underlying agreement was a foreign investment trust). Even if the Court analyzes Amazon's motion in light of the New York Convention, the Court should compel arbitration because Amazon has proven that the following jurisdictional requirements are met in this case: (1) there is an agreement in writing within the meaning of the New York Convention; (2) the agreement provides for arbitration in the territory of a signatory of the New York Convention (i.e., the United States); (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement (i.e., Maglula Ltd.) is not an American citizen. *See Aggarao v. MOL Ship Mgmt Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012). Further, because the relevant FAA provisions do not conflict with the New York Convention, those provisions, and cases relying on those provisions apply with equal force here. *See Aggarao*, 675 F.3d at 376 ("[Section] 208 of the Convention incorporates those provisions of the FAA that are not in conflict with the Convention or the Convention Act.").

(BSA ¶ 18 (emphasis added).) Other courts considering the BSA arbitration provision have relied on its breadth to compel arbitration. *See, e.g.*, *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1173 (W.D. Wash. 2013) (compelling arbitration and noting that "the BSA's arbitration provision is broad, applying to *any* dispute between the parties") (emphasis in original), *aff'd*, 669 F. App'x 487, 488 (9th Cir. 2016). Because Maglula entered into an agreement containing a broad, mandatory arbitration provision, Maglula's claims belong in arbitration, not in this Court.

### A. Pursuant To The Parties' Agreement, This Court Should Defer To The Arbitrator To Determine Arbitrability.

According to the Fourth Circuit, "[a]rbitrability disputes often necessitate a two-step inquiry": (1) the court determines *who* decides whether a particular dispute is arbitrable: the arbitrator or the court; and (2) if the court concludes that the court should adjudicate arbitrability, the court determines *whether* the dispute is, in fact, arbitrable. *See Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 101 (4th Cir. 2012) (emphasis in original). As to the first part of the inquiry, parties can agree in "clear and unmistakable language [] that an arbitrator will decide which disputes the parties have agreed to arbitrate." *See Novic v. Credit One Bank Nat'l Ass'n*, 757 F. App'x 263, 264 (4th Cir. 2019). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); *see also Weckesser v. Knight Enters. S.E., LLC*, 735 F. App'x 816, 819 (4th Cir. 2018) ("Arbitration is a 'matter of contract,' and courts 'must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes, and the rules under which that arbitration will be conducted.'" (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013))).

If parties integrate arbitration rules that require that an arbitrator determines arbitrability, such as the AAA rules, that is "clear and unmistakable language" that an arbitrator will decide arbitrability. *See Brenco Enter. v. Bitesquad.com, LLC*, 297 F. Supp. 3d 608, 611-612 (E.D. Va. 2018); *Terra Holding GmbH v. Unitrans Int'l, Inc.*, 124 F. Supp. 3d 745, 748-49 (E.D. Va. 2015); *Innospec Ltd. v. Ethyl Corp.*, Civ. Action No. 3:14-cv-158-JAG, 2014 WL 5460413, *3-4 (E.D. Va. Oct. 27, 2014); *Oracle*, 724 F.3d at 1074 ("Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." (listing cases)). Other courts considering this very same question have determined that, because the BSA incorporates AAA rules, the parties to the BSA delegated questions of arbitrability to the arbitrator. *See Sanho Corp. v. Amazon.com Servs., Inc.*, Case No. 18CV336575, slip op. at *2-3 (Cal. Super. Ct. Santa Clara Cnty. Jan. 21, 2020) (ordering parties to arbitrate based on the mandatory arbitration provision in Amazon's BSA) (Dev Decl., Ex. C).

The BSA's arbitration provision explicitly integrates the AAA rules:

> The arbitration will be conducted by the American Arbitration Association (AAA) ***under its rules***.

(BSA ¶ 18 (emphasis added).) Rule R-7(a) of the AAA rules provides that an arbitrator determines arbitrability:[5]

> ***The arbitrator shall have the power to rule on his or her own jurisdiction***, including any objections with respect to the existence, ***scope***, or validity ***of the arbitration agreement or to the arbitrability of any claim or counterclaim.***

---

[5] The current AAA commercial rules apply. Those rules have been active since October 1, 2013 (*see* Dev Decl., Ex. D (AAA Commercial Arbitration Rules and Mediation Procedures) at 1), and thus were in place when Maglula entered into the BSA in 2016 through Maglula's termination in September 2019.

(Dev Decl., Ex. D at 13 (emphasis added).) Maglula and Amazon agreed to be bound by the AAA rules, and those rules require that an arbitrator determine the "scope . . . of the arbitration agreement" and the "arbitrability of any claim or counterclaim." In light of the clear and unmistakable language of the parties' agreement that an arbitrator should determine the arbitrability of Maglula's claims, this Court should dismiss this case and compel the arbitrability decision to an arbitrator.

### B. Regardless Of Who Determines Arbitrability, This Case Belongs In Arbitration.

Even if the Court concludes that it should determine arbitrability and reaches the second part of the two-step *Peabody* inquiry, the Court should still compel arbitration. "In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [other party] to arbitrate the dispute." *Adkins*, 303 F.3d at 500-01. "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . [The FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Mitsubishi*, 473 U.S. at 626 (quoting *Moses*, 460 U.S. at 24-25).

#### 1. A Dispute Exists Between The Parties.

On December 12, 2019, Maglula filed a complaint against Amazon, asserting claims of copyright, patent, and trademark infringement, trademark counterfeiting, and unfair competition. (Compl. ¶ 1.) A dispute unquestionably exists between the parties as to the allegations in Maglula's complaint. *See Connel v. Apex Sys., LLC*, No. 3:19-cv-299-JAG, 2020 WL 354742, *3

n.9 (E.D. Va. Jan. 21, 2020) ("[P]laintiffs filed this lawsuit alleging that [Defendant] violated the FLSA, so a dispute exists.").

**2. The BSA Purports To Cover The Dispute.**

The BSA requires arbitration to resolve "any dispute" between the parties:

> . . . Amazon and you both consent that ***any dispute with Amazon or its Affiliates*** or claim relating in any way to this Agreement or your use of the Services ***will be resolved by binding arbitration*** as described in this paragraph, rather than in court, except that (i) you may assert claims in a small claims court that is a Governing Court if your claims qualify and (ii) you or we may bring suit in the Governing Courts, submitting to the jurisdiction of the Governing Courts and waiving our respective rights to any other jurisdiction, to enjoin infringement or other misuse of intellectual property rights.

(BSA ¶ 18 (emphasis added).) Maglula alleges that Amazon infringed its trademarks, infringed its copyrights and patents, and committed unfair competition by selling and allowing other Amazon sellers to sell counterfeit Maglula products. (*See* Compl. ¶ 1.) The BSA, however, grants Amazon a broad license to Maglula's intellectual property and a broad release from any claims between Maglula and other sellers on Amazon. The license provides:

> [Maglula] grant[s] [Amazon] a royalty-free, non-exclusive, worldwide, perpetual, irrevocable right and license to use, reproduce, perform, display, distribute, adapt, modify, re-format, create derivative works of, and otherwise commercially or non-commercially exploit in any manner, any and all of Your Materials . . . .

(BSA¶ 4.)[6] The release provision states:

> BECAUSE AMAZON IS NOT INVOLVED IN TRANSACTIONS BETWEEN CUSTOMERS AND SELLERS OR OTHER PARTICIPANT DEALINGS, IF A DISPUTE ARISES BETWEEN ONE OR MORE PARTICIPANTS, EACH PARTICIPANT RELEASES AMAZON (AND ITS AGENTS AND EMPLOYEES)

[6] "Your Materials" includes "all Technology" and trademarks: "'Your Materials' means all Technology, [Maglula's] Trademarks, Content, [Maglula's] Product information, data, materials, and other items or information provided or made available by [Maglula] or [Maglula's] Affiliates to Amazon or its Affiliates." (BSA Definitions ("Your Materials")).

> FROM CLAIMS, DEMANDS, AND DAMAGES (ACTUAL AND CONSEQUENTIAL) OF EVERY KIND AND NATURE, KNOWN AND UNKNOWN, SUSPECTED AND UNSUSPECTED, DISCLOSED AND UNDISCLOSED, ARISING OUT OF OR IN ANY WAY CONNECTED WITH SUCH DISPUTES.

(BSA¶ 7(b).) By registering as a seller and entering into the BSA, Maglula enjoyed the benefits of having access to and using Amazon services and information; in exchange for those benefits, Maglula assented to the terms of the BSA, including the license and release provisions above. Whether those agreement provisions preclude Maglula from asserting the very claims that it improperly asserts in this litigation is for an arbitrator to decide, based upon the parties' express agreement to arbitrate "any dispute" between them.[7]

**3. The BSA Relates To Interstate And Foreign Commerce.**

The underlying transaction between Amazon and Maglula, including the BSA, relates to interstate and foreign commerce. The BSA is an agreement between Amazon Services LLC and its affiliates and Maglula Ltd. (*See* BSA Preamble ("General Terms") and Definitions ("Amazon Contracting Party.")) It is undisputed that Amazon is headquartered in the state of Washington and Maglula is an Israeli company headquartered in Israel. (Compl. ¶¶ 13-15.) That alone relates

[7] The arbitration provision includes two carve-outs—one for claims that could be brought in small claims court and another for claims "to enjoin infringement or other misuse of intellectual property rights." (BSA ¶ 18.) First, Maglula's claims are not claims that could be brought in small claims court. Second, while Maglula's complaint requests injunctive relief, it also requests damages and other non-equitable relief. Moreover, the license and release provisions dominate both the equitable and non-equitable claims, so the arbitration must proceed. *See Brenco*, 297 F. Supp. 3d at 613 n.5 ("Many other courts have noted that even where a claim as pled does not fall within the arbitration clause, courts have broad authority to stay actions where arbitrable claims dominate the suit between the parties. Such a rule is necessary to prevent artful pleading from nullifying otherwise broad arbitration agreements between parties." (listing cases)). Even if Maglula were to invoke the carve-out for injunctive relief, that provision requires that those claims be brought in the "Governing Courts," which is limited in relevant part to the state or federal courts in King County, Washington. (BSA ¶ 18, Definitions.) Therefore, venue for Maglula's injunctive relief claims is not proper in the Eastern District of Virginia.

the underlying transaction to interstate and foreign commerce, as required by the FAA. *See American Home Assur. Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 962, 963 (4th Cir. 1980) (determining that a contract between a Delaware corporation and a Virginia corporation evidenced a transaction involving interstate commerce under the FAA); *Dewan v. Walia*, 544 F. App'x 240, 244 (4th Cir. 2013) ("Commerce [under the FAA] includes foreign commerce.") (citation omitted). Furthermore, the BSA relates to interstate commerce because it governs Maglula's "access to and use of" Amazon's services, including Amazon's e-commerce platform. *See* BSA Preamble ("General Terms"); *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.").

#### 4. Maglula Neglected To Arbitrate Its Dispute With The Amazon Defendants.

When its disputes with "Amazon or its affiliates" arose, Maglula was required to begin an arbitration proceeding by sending a letter requesting arbitration and describing its claims, pursuant to the following section of the mandatory arbitration provision:

> To begin an arbitration proceeding, ***you must send a letter requesting arbitration and describing your claim to our registered agent*** . . . .

(BSA ¶ 18 (emphasis added).) Rather than file a demand for arbitration to resolve its dispute with Amazon, as required under the BSA, Maglula improperly brought suit against Amazon in this Court. Maglula thus neglected to arbitrate the dispute.

### II. THE COURT SHOULD DISMISS; OR, IN THE ALTERNATIVE STAY, THE CASE.

As discussed above, whether the Court decides that the power to determine arbitrability lies with an arbitrator or the Court, in accordance with the laws of the Fourth Circuit, the Court

should order the parties to arbitrate pursuant to the BSA's mandatory arbitration provision. In light of that outcome, the Court should dismiss or stay the pending litigation. In the Fourth Circuit, "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Innospec*, 2014 WL 5460413 at *4 (quoting *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001)).[8] Here, where all issues presented—including the question of arbitrability—are arbitrable, the Court should compel arbitration and dismiss all of Maglula's claims.

In the alternative, the Court should stay the entire case pending the parties' resolution of the arbitration. *See* 9 U.S.C. § 3 ("[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, [the court in which such suit is pending] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.").[9]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court compel arbitration of all of Maglula's claims and dismiss; or, in the alternative, stay the entire action pending resolution of arbitration.

---

[8] Dismissal, or in the alternative, staying the full case is appropriate even under the New York Convention. *See Aggarao*, 675 F.3d at 376 (applying Section 3 of the FAA to an arbitration dispute falling under the New York Convention, reasoning that Section 3 does not conflict with the Convention or the Convention Act).

[9] Defendants also concurrently move to transfer this case to the Western District of Washington. In the event that the Court orders a stay rather than dismissing Maglula's claims, Defendants respectfully request that the Court transfer the pending case to the Western District of Washington, for the reasons set out in Defendants' Motion to Transfer Venue to the Western District of Washington Pursuant to 28 U.S.C. § 1404(a).

Dated: February 5, 2020

By: */s/ Justin P.D. Wilcox*

Justin P.D. Wilcox (#66067)
John M. Desmarais (*pro hac vice* admission pending)
Laurie Stempler (*pro hac vice* admission pending)
Priyanka R. Dev (*pro hac vice* admission pending)
Thomas Derbish (*pro hac vice* admission pending)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401
Email: jwilcox@desmaraisllp.com
jdesmarais@desmaraisllp.com
lstempler@desmaraisllp.com
pdev@desmaraisllp.com
tderbish@desmaraisllp.com

*Attorneys for Defendants Amazon.com, Inc. and Amazon.com Services, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

Dated: February 5, 2020

By: */s/ Justin P.D. Wilcox*

Justin P.D. Wilcox (#66067)
John M. Desmarais (*pro hac vice* admission pending)
Laurie Stempler (*pro hac vice* admission pending)
Priyanka R. Dev (*pro hac vice* admission pending)
Thomas Derbish (*pro hac vice* admission pending)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401
Email: jwilcox@desmaraisllp.com
jdesmarais@desmaraisllp.com
lstempler@desmaraisllp.com
pdev@desmaraisllp.com
tderbish@desmaraisllp.com

*Attorneys for Defendants Amazon.com, Inc. and Amazon.com Services, Inc.*