**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| MAGLULA, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES, INC.,<br><br>Defendants. | Civil Action No. 1:19-cv-01570-LO-IDD |

# PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY

# TABLE OF CONTENTS


I. INTRODUCTION .................................................................... 1

II. BACKGROUND .................................................................... 2

III. ARGUMENT .................................................................... 3

A. Amazon Cannot Compel Arbitration Through the BSA .................................. 3

1. The BSA Does Not Govern This Dispute, Which Means Its Arbitration Clause Is Not Applicable .................................. 3

2. Even if the BSA Applies, It Has a Carve-out for Intellectual Property Infringement .................................. 3

B. The Threshold Decision of Arbitrability Must be Determined by This Court ....... 6

1. The BSA Does Not Clearly and Unmistakably Designate an Arbitrator to Decide what Disputes the Parties Agreed to Arbitrate .............................. 6

2. The *Schein* Case Amazon Relies on Is Inapposite and Does Not Support Sending the Question of Arbitrability to the Arbitrator ............................. 7

C. Amazon's Assertion that It Has a License to All Maglula's Technology and Material by Virtue of the BSA Is Incorrect and Irrelevant to this Motion ........... 10

D. Amazon Waived Use of the BSA to Compel Arbitration by Seeking a Substantive Federal Court Disposition on the Merits Under Rule 12(b)(6)............................ 13

IV. CONCLUSION .................................................................... 16

# TABLE OF AUTHORITIES


**Page(s)**

**Federal Cases**

*Aetna Cas. & Sur. Co. v. Holsten*,
1996 U.S. App. Lexis 29055 (4th Cir. Nov. 7, 1996)....................11

*Aggarao v. MOL Ship Mgmt Co., Ltd.*,
675 F.3d 355 (4th Cir. 2012) ....................5

*Amazon.com v. Kurth*,
2019 U.S. Dist. LEXIS 126777 (W.D. Wash. July 30, 2019) ....................16

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
935 F.3d 274 (5th Cir. 2019) ....................9, 12

*AT&T Techs., Inc. v. Commc'n Workers of Am*.,
475 U.S. 643 (1986)....................6, 9

*Bosse v. New York Life Insur. Co.*,
No. 19 2019 U.S. Dist. LEXIS 196555 (D.N.H. Nov. 13, 2019) ....................8

*Brenco Entertainm't v. Bitessquad.com, LLC*,
297 F. Supp. 3d 608 (E.D. Va. 2018) ....................11, 12, 13

*Carson v. Giant Food, Inc.*,
175 F.3d 325 (4th Cir. 1999) ....................6

*Connell v. Apex Sys., LLC*,
2020 U.S. Dist. LEXIS 10165 (E.D. Va. Jan. 21, 2020) ....................3, 13

*Dow Chem. Co. v. Nova Chems. Corp. (Can.)*,
458 Fed. Appx. 910 (Fed. Cir. Jan. 24, 2012)....................11

*Federated Dep't Stores v. Moitie*,
452 U.S. 394 (1981)....................14

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)....................6

*Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*,
817 F.2d 250 (4th Cir. 1987) ....................13, 15

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*,
815 F.2d 840 (2d Cir. 1987)....................12

*Gibbs v. Stinson*,
2019 U.S. Dist. LEXIS 170198 (E.D. Va. Sept. 30, 2019)....................8

*Gingras v. Think Fin., Inc.*,
922 F.3d 112 (2d Cir. 2019)....................9

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010)....................4

*Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*,
58 F. Supp. 3d 1166 (W.D. Wash. 2014)....................16

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
139 S. Ct. 524 (2019).................... *passim*

*Khan v. Parsons Global Servs., Ltd.*,
521 F.3d 421 (D.C. Cir. 2008)....................15

*Lewallen v. Green Tree Servicing, L.L.C.*,
487 F.3d 1085 (8th Cir. 2007)....................14

*Lovelady v. Five Star Quality Care-VA, LLC*,
2018 U.S. Dist. LEXIS 125414, 2018 WL 3580768 (E.D. Va. July 25, 2018)....................3

*Mutual Life Ins. Co. v. Hill*,
193 U.S. 551 (1904)....................11

*Novic v. Credit One Bank*,
757 F. App'x 263 (4th Cir. 2019)....................7

*Peabody Holding Co., LLC v. United Mine Workers of Am. Int'l Union*,
665 F.3d 96 (4th Cir. 2012)....................6

*Petrol. Pipe Ams. Corp. v. Jindal Saw, Ltd.*,
575 F.3d 476 (5th Cir. 2009)....................14

*Ritzel Commc'ns, Inc. v. Mid-Am. Cellular Tel. Co.*,
989 F.2d 966 (8th Cir. 1993)....................14

*Sanmedica Int'l, Ltd. Liab. Co. v. Amazon.com, Inc.*,
2015 U.S. Dist. LEXIS 50470 (D. Utah Mar. 27, 2015)....................16

*St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*,
969 F.2d 585 (7th Cir. 1992)....................15

*Steelworkers v. Warrior & Gulf Nav. Co.*,
363 U.S. 574 (1960)....................10

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
830 F.3d 1335 (Fed. Cir. 2016)..........5, 6

**Federal Statutes**

Copyright Act..........4

Lanham Act..........4

Patent Act..........4

**State Statutes**

Virginia Trademark and Service Mark Act..........4

**Rules**

Fed. R. Civ. P. 12(b)(6).......... *passim*

Fed. R. Civ. P. 12(d)..........15

Fed. R. Civ. P. 56..........15

## I. INTRODUCTION

Amazon.com, Inc. and Amazon.com Services, Inc.'s (collectively "Amazon") strategy for addressing Maglula Ltd.'s ("Maglula") infringement claims has been to put them off for as long as possible while continuing to profit from selling counterfeit Maglula products. Maglula tried for years to work out-of-court with Amazon to end the rampant counterfeiting that Amazon was allowing, but to no avail. Having now filed suit in federal court on its claims of intellectual property misuse, Amazon attempts still to frustrate Maglula's efforts by needlessly delaying this case. Amazon not only demands arbitration based on an inapplicable agreement—one that, even if it applied, has a clear carve-out for intellectual property disputes—it further contends that the Court must defer the very question of arbitrability to an arbitrator. Its motion should be denied.

Amazon contends that the arbitration provision in the Business Solutions Agreement (the "BSA") compels arbitration in this case. For the reasons addressed in depth in Plaintiff's Response to Amazon's Motion to Transfer to the Western District of Washington (at §§ II-III.A), the BSA does not apply to this dispute, which means that the arbitration clause of that agreement also does not apply. Even if it did, the BSA's arbitration provision *has an explicit carve-out for intellectual property cases* that allows them to be filed in federal court. (*See* BSA § 18.) Thus, under no circumstances should the merits of Maglula's claims be resolved by an arbitrator. Amazon's further argument that this Court cannot even decide the threshold question of arbitrability is nonsensical in that it would immediately return the case to this Court based on the express provision in BSA § 18—a provision Amazon eventually concedes is effective. (*See* Dkt. 24, at 10, n.7.) For these reasons and others—including Amazon's own waiver of arbitration by filing of a substantial Rule 12(b)(6) dismissal motion on the merits—Amazon's motion to compel arbitration, or to stay or dismiss the action in the alternative, should be denied.

## II. BACKGROUND[1]

Maglula registered as a seller with Amazon in December 2016, which involved accepting one of the numerous adhesion contracts that Amazon requires for its various services. (Declaration of Guy Tal ("Tal Decl.") ¶ 8.) This particular adhesion contract was the BSA, and it applied to the suite of services that Maglula gained access to by registering as a seller on Amazon. (Dkt. 27-3, Ex. A to Jensen Decl., at 1.) Maglula never sold *any* products through this account, however, and it requested that Amazon close the account in May 2019, which Amazon finally did in September 2019. (Tal Decl., ¶ 8.)

The BSA contains the following general arbitration clause *and* express carve-out allowing lawsuits involving intellectual property rights to be brought in court:

> Amazon and you both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court, ***except that*** (i) you may assert claims in small claims court that is a Governing court if your claims qualify and (ii) ***you or we may bring suit*** in the Governing Courts, submitting to the jurisdiction of the Governing Courts and waiving our respective rights to any other jurisdiction, ***to enjoin infringement or other misuse of intellectual property rights***.

BSA § 18 (emphasis added).

Maglula's Opposition to Amazon's Motion to Transfer also refers to another service agreement called the "Brand Registry" agreement. Maglula joined the Brand Registry program after discussing counterfeiting issues with Amazon. (Tal Decl., ¶ 9.) Like the BSA, the Brand Registry agreement has an arbitration clause with a carve-out allowing parties to bring lawsuits involving intellectual property rights in court. (Tal Decl., ¶¶ 9-10.) In particular, the Brand Registry Agreement states that any disputes or claims are "subject to the arbitration, class action

[1] A fulsome background section is provided in Plaintiff's Response to Amazon's Motion to Transfer to the Western District of Washington (at § II) and is incorporated herein by reference.

waiver, and governing law provisions in the Amazon.com *Conditions of Use*, which are incorporated by reference." (Tal Decl., ¶¶ 9-10.) But the incorporated provisions from the Conditions of Use also include an express carve-out allowing lawsuits involving intellectual property rights to be filed in court: "you or we may bring suit in court to enjoin infringement or other misuse of intellectual property rights." (*See Id.*)

## III. ARGUMENT

### A. Amazon Cannot Compel Arbitration Through the BSA

#### 1. The BSA Does Not Govern This Dispute, Which Means Its Arbitration Clause Is Not Applicable

"A court ruling on a motion to compel arbitration must determine whether the parties entered into a valid agreement to arbitrate." *Lovelady v. Five Star Quality Care-VA, LLC*, No. 4:18-cv-18, 2018 U.S. Dist. LEXIS 125414, at *21 (E.D. Va. July 25, 2018) (quotation omitted). Here, the BSA's arbitration clause does not apply because the BSA does not govern this dispute. As explained in Plaintiff's Response to Amazon's Motion to Transfer to the Western District of Washington (at § III.A), the BSA has limits. It only applies to disputes relating to the suite of services that Maglula gained access to by registering as a seller. The fact that the BSA does not apply to the disputes raised in Maglula's Complaint alone warrants denial of Amazon's motion to compel arbitration.

#### 2. Even if the BSA Applies, It Has a Carve-out for Intellectual Property Infringement

"The party seeking to compel arbitration bears the burden of establishing the existence of an arbitration provision that purports to cover the dispute." *Id*. (quotation omitted); *Connell v. Apex Sys., LLC*, Civil Action No. 3:19-cv-299-JAG, 2020 U.S. Dist. LEXIS 10165, at *10-11 (E.D. Va. Jan. 21, 2020) (court should not order arbitration of a particular dispute when the

parties did not agree "'to arbitrate *that dispute*'") (emphasis original) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010)).

Amazon's contention that "the parties agreed to resolve *disputes like this one* solely through binding arbitration 'rather than in court,'" defies logic and the plain language of the BSA. (Dkt. 24, at 1 (quoting BSA § 18) (emphasis added).) The arbitration clause in the BSA, in fact, expressly carves out lawsuits to enjoin intellectual property infringement: "you or we may bring suit in the Governing Courts, submitting to the jurisdiction of the Governing Courts and waiving our respective rights to any other jurisdiction, to enjoin infringement or other misuse of intellectual property rights." (BSA § 18 (emphasis added).)

Amazon does not, and cannot, dispute that Maglula's Complaint alleges infringements and other misuses of intellectual property rights. (*See* Dkt. 24, at 8 ("Maglula filed a complaint against Amazon, asserting claims of copyright, patent, and trademark infringement, trademark counterfeiting, and unfair competition.") (citing Dkt. 1).) *All* of Maglula's claims are intellectual property-based claims that allege violations of either the Patent Act (Counts V and VI), the Copyright Act (Count IV), the Lanham Act (Counts I-III), the Virginia Trademark and Service Mark Act (Count VII), or common-law trademark infringement and unfair competition practices (Count VIII). (*See* Dkt. 1, ¶¶ 92-151.)

Moreover, Amazon does not, and cannot, dispute that Maglula has requested injunctive relief for the intellectual property-based harms that Amazon committed. (Dkt. 1, E-L (requesting various types of injunctions in its Prayer for Relief).) Because Maglula's Complaint alleges infringements and other misuses of intellectual property rights for which it seeks injunctive

relief, it necessarily follows that, even if the BSA applies (which it does not), the arbitration carve-out would permit Maglula to file its Complaint in a federal court.[2]

Exposing the fundamental flaws in its arbitration demand, Amazon first argues that the BSA requires arbitration on the merits (Dkt. 24, at 6-10), while then admitting later in the same brief: (A) that the arbitration provision in fact includes the carve-out "for claims to enjoin infringement or other misuse of intellectual property rights," (B) that Maglula asserts "claims of copyright, patent, and trademark infringement, trademark counterfeiting, and unfair competition," and (C) that "Maglula's complaint requests injunctive relief," (Dkt. 24, at 8, 10, n.7 (internal quotations omitted). Amazon therefore concedes all necessary elements (albeit buried in a footnote *ten* pages into its motion) that this case need not be arbitrated after all, revealing its true purpose to interpose this motion as make-work and delay.

Thus, even if the BSA applies (again, it does not), Amazon's motion to compel arbitration should still be denied. *See Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 830 F.3d 1335, 1337-41 (Fed. Cir. 2016) (motion to compel arbitration of IP rights denied because pertinent language of arbitration provision made clear that disputes relating to patent infringement were not subject to mandatory arbitration).

---

[2] Amazon's other arguments are irrelevant in the face of the clear carve-out for this case. Even if the Court analyzes the Amazon's motion under the terms of the New York Convention because Maglula is an Israeli corporation, the result is no different—there is no way to compel arbitration in this matter because a valid agreement to arbitrate a dispute of this type does not exist. This is a necessary precondition to using the New York Convention as well, i.e. "Factors 1 & 2," requiring that "there [be] an agreement in writing within the meaning of the Convention; [and that] the agreement provide[] for arbitration in the territory of a signatory of the Convention." *See Aggarao v. MOL Ship Mgmt Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012). As explained, such an agreement is lacking here.

### B. The Threshold Decision of Arbitrability Must be Determined by This Court

#### 1. The BSA Does Not Clearly and Unmistakably Designate an Arbitrator to Decide what Disputes the Parties Agreed to Arbitrate

Amazon incorrectly argues that an arbitrator must decide the threshold issue of whether the disputes raised in the Complaint even qualify for arbitration in the first instance. (Dkt. 24, at 6.) A district court should not grant a motion to compel arbitration when the moving party fails to demonstrate that a valid arbitration agreement exists[3] *and that the dispute falls within its purview*. *Verinata Health, Inc.*, 830 F.3d at 1338-39.

It is well-established that arbitrability is decided by a court unless an agreement "clearly and unmistakably provide[s]" that the arbitrator shall determine what disputes the parties agreed to arbitrate. *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 645, 649, 651 (1986) (holding that "[i]t was for the court, not the arbitrator, to decide in the first instance whether the dispute was to be resolved through arbitration"); *accord First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("courts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so'"). The "clear and unmistakable" standard is a high bar. *Peabody Holding Co., LLC v. United Mine Workers of Am. Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012) (stating that "[t]he 'clear and unmistakable' standard is exacting, and the presence of an expansive arbitration clause, without more, will not suffice," and "[c]lauses that contain general provisions requiring arbitration for disagreements 'relating to' or 'arising out of' a contract do not meet the standard"); *Carson v. Giant Food, Inc.*, 175 F.3d 325, 330 (4th Cir. 1999) (holding that an arbitration clause does not satisfy the clear

[3] If this Court accepts Maglula's position (explained more fully in Plaintiff's Response to Amazon's Motion to Transfer to the Western District of Washington (at §§ II-III.A)), that the BSA does not apply to this dispute (as described above), then no issue is decided by an arbitrator, including the threshold issue of whether the dispute is arbitrable in the first place.

and unmistakable test simply by "committ[ing] all interpretive disputes 'relating to' or 'arising out of' the agreement" to arbitration).[4]

Nowhere does the BSA "clearly and unmistakably" state that the arbitrator, as opposed to a court, must make the determination about which disputes the parties agreed to arbitrate. To the contrary, the BSA *expressly removes* specific dispute types from the arbitrator's purview, such as those involving intellectual property and requested injunctions. (BSA § 18.) Thus, even if this Court finds that the BSA applies (which it does not), under no circumstances should the arbitrator be tasked with determining the threshold issue of whether disputes involving intellectual property rights and requested injunctions are arbitrable.

### 2. The *Schein* Case Amazon Relies on Is Inapposite and Does Not Support Sending the Question of Arbitrability to the Arbitrator

Amazon contends that the BSA incorporates the American Arbitration Rules (AAA), which delegate arbitrability to the arbitrator in this case. (Dkt. 24, at 6-8.) Again assuming that the BSA applies for argument's sake, Amazon's AAA contention that an arbitrator must decide whether the dispute is arbitrable fails because it still ignores the carve-out in the BSA for intellectual property cases where injunctions are sought.

Amazon relies heavily on *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) for the proposition that: "'When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue.'" (*See* Dkt. 24, at 6 (quoting *Schein*, 139 S. Ct. at 529).) But the predicate under *Schein* is *not* present here—the BSA has not clearly and

---

[4] Notably, the federal presumption generally favoring arbitration does not apply when the relevant matter involves determining *whom* the parties intended to decide issues of arbitrability. *Novic v. Credit One Bank*, 757 F. App'x 263, 265-66 (4th Cir. 2019) ("[W]e routinely have rejected parties' attempts to rely on general contractual language to submit questions of arbitrability to the arbitrator.").

unmistakably made the necessary delegation of "the arbitrability question to an arbitrator." *Id*. Instead, the BSA's arbitration provision reserves cases like the current dispute for federal courts "to enjoin infringement or other misuse of intellectual property rights." (BSA § 18.) Thus, the threshold determination remains fully with this Court, as numerous courts, including within the Eastern District of Virginia, have found in the wake of *Schein* decided barely a year ago.

For example, last fall in *Gibbs v. Stinson*, No. 3:18-cv-676, 2019 U.S. Dist. LEXIS 170198, *27-28 (E.D. Va. Sept. 30, 2019) (citations omitted), the Court dismissed arguments that "the Supreme Court's recent decision in *Schein* requires a district court to . . . inquire no further into the arbitrability of a dispute that falls within the scope of the agreement to arbitrate . . . [because] 'a court may not decide for itself that the Agreements to Arbitrate are not enforceable . . . .'" The faulty premise, adopted wholesale by Amazon here, was roundly rejected in this District:

> Defendants misread *Schein*. In that case, the Supreme Court abrogated the judge-made "wholly groundless" exception to the gateway arbitrability decision. . . . But that doctrine does not apply here. In this case, Plaintiffs challenge both the validity of the arbitration agreement and the validity of the delegation clause, not the arbitrability or non-arbitrability of issues within the agreement. *Indeed,* Schein *directly contravenes Defendants' position when it reaffirms that "[t]o be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. The Court's task is not to determine whether certain issues are arbitrable, but whether a valid delegation provision exists.*

*Id*. at *28-29 (internal citations omitted) (emphasis added). So too here; the Court as a threshold matter should determine whether a valid delegation provision exists under the BSA as applied to Maglula's claims against Amazon. *Id*. In this case, no valid arbitration delegation provision applies to intellectual property disputes seeking an injunction for misuse of Maglula intellectual property rights. (*See* BSA § 18 ("to enjoin infringement or other misuse of intellectual property rights")); *accord Bosse v. New York Life Insur. Co.*, No. 19 2019 U.S. Dist. LEXIS 196555

(D.N.H. Nov. 13, 2019) ("The Supreme Court, in *Schein*, plainly understood that the Act requires enforcement of arbitration clauses with respect to disputes '*thereafter arising out of such contract*.' The Act does not provide for enforcement of arbitration clauses with respect to disputes plainly *not* 'arising out of such contract.'") (emphasis original).

The *Schein* case on remand to the Fifth Circuit, is highly relevant. *See Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274 (5th Cir. 2019). The Fifth Circuit recognized that the "wholly groundless" exception, inapplicable here, was abolished by the Supreme Court. *Id*. at 277-78. Yet the court rejected the same argument Amazon presents now:

> The agreement states that "[a]ny dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of [the predecessor]), shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association." . . . . We cannot re-write the words of the contract. *The most natural reading of the arbitration clause at issue here states that any dispute, except actions seeking injunctive relief, shall be resolved in arbitration in accordance with the AAA rules. The plain language incorporates the AAA rules—and therefore delegates arbitrability—for all disputes except those under the carve-out.* Given that carve-out, we cannot say that the Dealer Agreement evinces a "clear and unmistakable" intent to delegate arbitrability.

*Id*. at 280-82 (emphasis added) (citing *AT&T Techs., Inc.*, 475 U.S. at 643, 649). The Fifth Circuit ultimately affirmed on these other grounds the denial of the motion to compel arbitration. *Id*. at 284; *accord Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 n.3 (2d Cir. 2019) ("Defendants would have us believe that the Supreme Court's recent decision in [*Schein*] requires a different outcome. But *Schein* dealt with an exception to the threshold arbitrability question—the so-called 'wholly groundless' exception—not a challenge to the validity of an arbitration clause itself. As such, Schein has no bearing on this case.").

In sum, the language of BSA § 18 plainly creates this claim-specific carve-out from arbitration when seeking to enjoin infringement in IP cases, and there is no delegation to

determine arbitrability under the Complaint. (*See id*.) It is still the law that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

### C. Amazon's Assertion that It Has a License to All Maglula's Technology and Material by Virtue of the BSA Is Incorrect and Irrelevant to this Motion

Amazon argues that elsewhere in the BSA it has been granted generally "a broad license to Maglula's intellectual property and a broad release from any claims between Maglula and other sellers on Amazon." (Dkt. 24, at 9-10 (citing BSA §§ 4, 7(b)).) According to Amazon: "The BSA . . . grants Amazon a broad license to Maglula's intellectual property and a broad release from any claims between Maglula and any other sellers on Amazon. . . . By registering as a seller and entering into the BSA . . . Maglula assented to the terms of the BSA, including the license and release provisions above." (Dkt. 24, at 9.)

Amazon's assertion is as audacious as it is absurd—taken to its logical extent, it would mean that Amazon can with impunity infringe or counterfeit any seller's product, technology, or material appearing on its platform based on an alleged license made through the BSA. (*See id*.) Maglula reserves the right to challenge Amazon's position and will raise all contract defenses at law and in equity, including as to the formation and/or unconscionability of enforcing such a provision interpreted this way. This is not necessary for disposition of this motion to compel arbitration, however. Amazon uses the "license and release" argument for just two purposes related to arbitration:

First, Amazon contends that "[w]hether those [license and release] provisions preclude Maglula from asserting the very claims that it improperly asserts in this litigation is for an arbitrator to decide, based upon the parties' express agreement to arbitrate '*any dispute*' between them." (Dkt. 24, at 10.) But reliance on that broad language in the BSA is belied by black-letter

contract interpretation principles giving effect to the more specific carve-out of BSA § 18 for intellectual property disputes like this one. *See, e.g.*, *Mutual Life Ins. Co. v. Hill*, 193 U.S. 551, 558 (1904) ("The special controlled the general; that which must have been in the minds of the contracting parties controls that which may not have been, although included within the language of the latter stipulation. This is the general rule in the construction of all documents—contracts as well as statutes."); *Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 458 Fed. Appx. 910, at *10 (Fed. Cir. Jan. 24, 2012) (quotation omitted) (finding that broad provisions cannot be relied on to supersede more specific provisions of a contract: "[S]pecific language in a contract controls over general language, and where specific and general provision conflict, the specific provision ordinarily qualifies the meaning of the general one."); *Aetna Cas. & Sur. Co. v. Holsten*, 1996 U.S. App. Lexis 29055, *8 (4th Cir. Nov. 7, 1996) ("[W]hen interpreting a contract, a court should follow the interpretive philosophy that specific language trumps general text."). A license permits, moreover, Amazon only to do that which Maglula authorized it to do under the BSA, but nothing more. The "license and release," provisions cannot possibly apply here as Amazon broadly asserts when BSA § 18 very clearly says Amazon *can* be sued in the specific carve-out context for intellectual property misuse.

Second, Amazon also uses its "license and release" arguments to imply that there are other questions that are allegedly "arbitrable" intermixed with the admittedly non-arbitrable ones. (Dkt. 24, 10 n.7.) Amazon suggests in footnote that "while Maglula's complaint requests injunctive relief, it also requests damages and other non-equitable relief," and that "the license and release provisions dominate both the equitable and non-equitable claims, so the arbitration must proceed." *Id*. (citing *Brenco*, 297 F. Supp. 3d at 613 n.5). This is irrelevant, and Amazon's argument is directly contradicted by *Schein* and the cases in its wake.

Again, the Fifth Circuit deciding the *Schein* remand also rejected the follow-on argument that Amazon raises now. The remand court noted that "where an arbitration clause contains a carve-out for injunctive relief and one party files a complaint seeking both injunctive relief and damages," it does not change the ultimate conclusion: "[T]he arbitration clause creates a carve-out for 'actions seeking injunctive relief'" but "does not limit the exclusion to 'actions seeking *only* injunctive relief,' nor 'actions for injunction in aid of an arbitrator's award.'" 935 F.3d at 282-83 ("The mere fact that the arbitration clause permits Archer to avoid arbitration by adding a claim for injunctive relief does not change the clause's plain meaning. . . . Even if we re-wrote the carve-out clause to apply only to actions seeking significant injunctive relief—which we cannot—this particular action would still fall within that exception . . . alleg[ing] multiple continuing violations of federal and state antitrust laws."). So Amazon's attempt to parse this finely is ineffective, as the presence of the applicable injunction carve-out governs all.

And Amazon's reliance on a cited footnote in *Brenco* for this point is also unavailing and does not apply here for numerous reasons:

- *Brenco* was decided before *Schein* and its progeny which focus on this point specifically, as the Fifth Circuit remand did persuasively above. *See* 935 F.3d at 282-83.
- In *Brenco*, the Court first determined that "in this instance, the 'clear and unmistakable' standard is met" with respect to the main agreement. *Id*. at 611. That is not the case here. The *Brenco* court also recognized that the section was *dicta. See id*. at 612-613.
- *Brenco*, 297 F. Supp. 3d at 613 n.5 was specifically concerned about situations where the "arbitrable claims *predominate* the lawsuit and the nonarbitrable claims are of questionable merit." *Id*. (quoting *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 856 (2d Cir. 1987).) Here, it is just the opposite: *every claim* in the Maglula Complaint is

non-arbitrable since *all* are directed to infringement of intellectual property rights and *all* are meritorious. Thus the *non-arbitrable* claims predominate over *arbitrable* claims, of which there are *none*: any "license and release" question *also* triggers the carve-out of BSA §18 because it is an affirmative defense to the intellectual property misuse. (And if Amazon argues a "license and release" question is an independently arbitrable issue, it certainly does not "predominate" over eight well-pleaded claims seeking injunction.)

- *Brenco*'s footnote, 297 F. Supp. 3d at 613 n.5, was addressing a mischief unique to *declaratory judgment claims* susceptible to artful pleading *under the particular facts of that case*. *Id*. at 613 (an agreement and promissory note which "refer to one another").

Therefore, for all these reasons Amazon's "license and release" arguments (Dkt. 24, at 9-10), should be rejected.

### D. Amazon Waived Use of the BSA to Compel Arbitration by Seeking a Substantive Federal Court Disposition on the Merits Under Rule 12(b)(6)

Even assuming *arguendo* that the parties agreed to arbitrate their dispute, Amazon has waived or defaulted its right to compel arbitration. A party is in default if it has substantially utilized the litigation machinery such that subsequent arbitration would prejudice the party opposing. *See Degidio v. Crazy Horse Saloon & Rest. Inc*, 880 F.3d 135, 140-41 (4th Cir. 2018). If the party seeking arbitration has invoked "litigation machinery" to some degree, *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc*., 683 F.3d 577, 586-87 (4th Cir. 2012), it can serve as a waiver or default to arbitration if "the party objecting to arbitration has suffered actual prejudice." *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir. 1987). Prejudice can refer to the unfairness in terms of delay, expense, or damage to a party's legal position that occurs when forced to litigate an issue for which arbitration is also sought. *See id*. "No bright line defines when a party has been sufficiently prejudiced by a delay

to invoke waiver." *Connell*, 202 U.S. Dist. 10165, *12 (quotation omitted). The Court will examine the extent of the delay, what litigation activity has transpired before the demand for arbitration, the burdens and expenses, and all other circumstances. *Id.*

Maglula is prejudiced by Amazon's efforts thus far. In addition to many years of Amazon stonewalling on this issue generally, there was a delay of roughly two months before Amazon invoked arbitration after the filing of Maglula's Complaint on December 12, 2019. Amazon chose not to answer the Complaint, but instead sought an extension of time (Dkt. 17), during which it made no mention of its intent to pursue arbitration. While a two-month delay does not alone create prejudice *per se*, the fact that Amazon used that time to draft three briefs—including one seeking substantive disposition on the merits of the claims from this Court by means of Rule 12(b)(6) motion for dismissal—meant that Maglula would have to expend substantial resources and reveal litigation positions in opposition. That is prejudice to Maglula. *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090, 1092-93 (8th Cir. 2007) ("likely would incur duplicative expenses if forced to arbitrate issues that have already been presented to the courts").

Filing a Rule 12(b)(6) motion, for example, has been recognized as an overt act in federal court showing an intent to resolve an otherwise arbitrable dispute through litigation rather than arbitration; a "dismissal for failure to state a claim" is a "judgment on the merits" and a request to dispose of a case on the merits before reaching arbitration "is inconsistent with resolving the case through arbitration," *Id.*; *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399 n.3 (1981); *see also Petrol. Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480, 482 (5th Cir. 2009) ("party waives arbitration by seeking a decision on the merits before attempting to arbitrate"); *Ritzel Commc'ns, Inc. v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir.

1993) ("The motion for dismissal represents a substantial, active invocation of the litigation process," and supported a finding of waiver of arbitration).

In this case, Amazon has also relied on evidence beyond the pleadings, attempting to buttress and prevail on the merits of its Rule 12(b)(6) motion. It is particularly prejudicial under the arbitration-waiver analysis where the Rule12(b)(6) motion can be converted by the Court into a Rule 56 summary judgment posture. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co*., 969 F.2d 585, 589 (7th Cir. 1992) (motion to dismiss or in the alternative for summary judgment is an "[e]specially telling" factor in assessing whether a party waived a right to arbitration). In this regard *Khan v. Parsons Global Servs., Ltd*., 521 F.3d 421, 427 (D.C. Cir. 2008) is instructive. Defendant filed "a single motion to dismiss or, alternatively, for summary judgment or to compel arbitration." *Khan*, 521 F.3d at 424. The appeals court determined that, "irrespective of other indicators of involvement in litigation," this litigious act was already inconsistent with arbitration:

> [W]here, as here, a party moves for summary judgment through a motion including or referring to 'matters outside the pleading[],' *see* Fed. R. Civ.P. 12(d); *see also* Fed. R. Civ. P. 12(b)(6), *that party has made a decision to take advantage of the judicial system and should not be able thereafter to seek compelled arbitration.* A less rigorous approach to summary judgment based on materials outside the pleadings would encourage parties to attempt repeat litigation of merits issues not resolved to their satisfaction, undermining the policy that arbitration may not be used as a strategy to manipulate the legal process. . . . *We hold that, irrespective of other indicators of involvement in litigation, filing a motion for summary judgment based on matters outside of the pleadings is inconsistent with preserving the right to compel arbitration . . . .*

*Khan*, 521 F.3d at 427, 428 (emphasis added) (internal quotations omitted). The necessity and expense of Maglula responding to Amazon's multiple motions, and especially a Rule 12(b)(6) motion relying on matter outside the pleadings, thus supports finding prejudice here for the same reasons. *See Khan*, 521 F.3d at 428; *Fraser*, 817 F.2d at 252 (finding prejudice in part because

opposing party "had to respond to a number of potentially damaging motions including a motion for partial summary judgment and three motions to dismiss."). Because Amazon has availed itself of merits consideration before a federal court, this Court should not give effect to a purported arbitration agreement, but find it waived and subject to default. [5]

## IV. CONCLUSION

For the forgoing reasons, and for the independent reason explained in the incorporated materials from Maglula's opposition to Amazon's transfer motion, Amazon's motion to compel arbitration should be denied.

[5] Amazon has also previously litigated similar intellectual property infringement claims—numerous involving the BSA on closely analogous facts—further obscuring an actual intent to arbitrate here, beyond the delay it may cause. *See, e.g.*, *Amazon.com v. Kurth*, No. 2:18-cv-00353-RAJ, 2019 U.S. Dist. LEXIS 126777, at *8 (W.D. Wash. July 30, 2019) (Amazon sued defendant, who had signed the BSA, in federal court); *Sanmedica Int'l, Ltd. Liab. Co. v. Amazon.com, Inc.*, No. 2:13-cv-00169-DN, 2015 U.S. Dist. LEXIS 50470, at *3-5 (D. Utah Mar. 27, 2015) (trademark infringement and unfair competition action filed by plaintiff who had signed the BSA, yet Amazon sought summary judgment in Utah federal court rather than arbitrating); *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1169-70 (W.D. Wash. 2014) (former seller on Amazon, required to accept and abide by the BSA, brought action against Amazon, yet Amazon did not arbitrate, filing Rule 12(b)(6) motion to dismiss in federal court instead).

Dated: February 19, 2020

Respectfully submitted,

*/s/ Jeffrey A. Berkowitz*
Jeffrey A. Berkowitz (Virginia Bar No. 65149)
jeffrey.berkowitz@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Telephone: (571) 203-2700
Facsimile: (202) 408-4400

Danny M. Awdeh (*pro hac vice)*
danny.awdeh@finnegan.com
David K. Mroz (Virginia Bar No. 94011)
david.mroz@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

Morgan E. Smith (*pro hac vice)*
morgan.smith@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, CA 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

*Attorneys for Plaintiff Maglula, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2020, I electronically filed the foregoing **Plaintiff's Response to Defendants' Motion to Compel Arbitration and Dismiss or Stay** with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

*/s/ Jeffrey A. Berkowitz*
Jeffrey A. Berkowitz (Virginia Bar No. 65149)
jeffrey.berkowitz@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Telephone: (571) 203-2700
Facsimile: (202) 408-4400

*Counsel for Plaintiff Maglula, Ltd.*