**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| MAGLULA, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES, INC.,<br><br>Defendants. | Civil Action No. 1:19-cv-01570-LO-IDD |

**<u>DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE TO THE WESTERN DISTRICT OF WASHINGTON PURSUANT TO 28 U.S.C. § 1404(a)</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

ARGUMENT ....................................................................................................1

I. MAGLULA'S CLAIMS FALL SQUARELY WITHIN THE BSA'S MANDATORY FORUM SELECTION CLAUSE. ....................................................1

A. The BSA Applies To Maglula's Claims ....................................................1

II. THE WESTERN DISTRICT OF WASHINGTON IS THE PROPER FORUM FOR THIS CASE. ....................................................................................8

A. Maglula's Choice Of Forum Is Owed Minimal Or No Deference Because It Has No Unique Ties To This District And The Cause Of Action Is Not Uniquely Related To This District. ....................................................10

1. The Location Of Maglula's Litigation Counsel Is Unrelated To The Transfer Inquiry. ....................................................10

2. Maglula Has Not Shown Any Unique Ties To This District. ....................12

3. Maglula's Allegations Bear No Substantial Relation To This District. ....................................................13

B. The Convenience Of The Parties and Witnesses Weighs Strongly In Favor Of Transfer. ....................................................16

1. Maglula Cannot Name A Single Possible Witness In The District. ..........16

2. The Probable Discovery And Sources Of Proof Maglula Identified Are Located In The Western District Of Washington. ..............................17

C. The Interests Of Justice Weigh In Favor Of Transfer. ..........................................18

1. The Court Should Not Reward Maglula's Conceded Forum Shopping. ....................................................19

2. The Western District Of Washington Is Well-Suited To Interpret Maglula's State Law Claims. ....................................................19

CONCLUSION ....................................................................................................20

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Acterna, L.L.C. v. Adtech, Inc.*,
129 F. Supp. 2d 936 (E.D. Va. 2001) .......... 11, 15

*Agilent Techs., Inc. v. Micromuse, Inc.*,
316 F. Supp. 2d 322 (E.D. Va. 2004) .......... 11

*Beam Laser Sys., Inc. v. Cox Commc'ns, Inc.*,
117 F. Supp. 2d 515 (E.D. Va. 2000) .......... 13

*Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*,
83 F. Supp. 2d 689 (E.D. Va. 2000) .......... 11, 19

*comScore, Inc. v. Integral Ad Sci., Inc.*,
924 F. Supp. 2d 677 (E.D. Va. 2013) .......... 13, 14, 17

*Glob. Tel Link Corp. v. Securus Techs. Inc.*,
No. 3:13-CV-713, 2014 WL 860609 (E.D. Va. Mar. 5, 2014).......... 12, 13

*In re Genentech*,
566 F.3d 1338 (Fed. Cir. 2008).......... 18

*Intranexus, Inc. v. Siemens Med. Solutions Health Servs. Corp.*,
227 F. Supp. 2d 581 (E.D. Va. 2002) .......... 20

*JTH Tax, Inc. v. Lee*,
482 F. Supp. 2d 731 (E.D. Va. 2007) .......... 20

*Koh v. Microtek Int'l, Inc.*,
250 F. Supp. 2d 627 (E.D. Va. 2003) .......... 11

*Lasoff v. Amazon.com, Inc.*,
No. 15-2886 (MAS) (DEA), 2016 U.S. Dist. LEXIS 9878 (D.N.J. Jan. 28, 2016)........ 5, 6

*Limelight Networks, Inc. v. XO Commc'ns, LLC*,
No. 3:15-cv-720-JAG, 2016 U.S. Dist. LEXIS 168684 (E.D. Va. Aug. 3, 2016)............ 14

*Lycos, Inc. v. TiVo, Inc.*,
499 F. Supp. 2d 685 (E.D. Va. 2007) .......... 15, 17

*Meijer v. Thomson*,
655 F. Supp. 2d 607 (E.D. Va. 2009) .......... 2

*NanoEntek, Inc. v. Bio-Rad Labs., Inc.*,
No. 2:11CV427, 2011 WL 6023189 (E.D. Va. Dec. 2, 2011)............................. 12, 14, 15

*Original Creatine Patent Co. v. Met-Rx USA, Inc.*,
387 F. Supp. 2d 564 (E.D. Va. 2005) ......................................................................... 11, 12

*Peters v. Amazon Servs. LLC*,
2 F. Supp. 3d 1165 (W.D. Wash. 2013)................................................................................ 6

*Samsung Elecs. Co. v. Rambus Inc.*,
386 F. Supp. 2d 708 (E.D. Va. 2005) ................................................................................. 18

*Telepharmacy Sols., Inc. v. Pickpoint Corp.*,
238 F. Supp. 2d 741 (E.D. Va. 2003) ......................................................................... 14, 19

*Unistaff, Inc. v. Koosharem Corp.*,
667 F. Supp. 2d 616 (E.D. Va. 2009) ................................................................................... 8

*Virginia Innovation Scis., Inc. v. Samsung Elecs. Co.*,
928 F. Supp. 2d 863 (E.D. Va. 2013) ................................................................................. 10

*VS Techs., LLC v. Twitter, Inc.*,
No. 2:11CV43, 2011 U.S. Dist. LEXIS 157536 (E.D. Va. June 28, 2011).................... 4, 5

**Statutes**

28 U.S.C. §1404(a) ................................................................................................ 1, 9, 11, 20

**Other Authorities**

Virginia Trademark and Service Mark Act, Virginia Code § 59.1-92.12 ................................... 19

# INTRODUCTION

Maglula attempts to justify its blatant attempt at forum shopping by beginning its opposition to Amazon.com, Inc.'s and Amazon.com Services, Inc.'s (collectively, "Amazon's") Motion to Transfer with a narrative that is entirely unrelated to the transfer inquiry. While Amazon certainly disagrees with Maglula's characterization of its efforts to address the alleged counterfeiting of Maglula's products, a motion to transfer is not the proper place for that dispute.

In the substance of its response, Maglula has failed to put forth any viable opposition to Amazon's Motion to Transfer. As an initial matter, Maglula does not dispute that it entered into a binding contract that includes a forum selection clause governing the enforcement of intellectual property rights—the very rights Maglula asserts in this case. Instead, Maglula makes a series of hollow arguments that the contract should not apply to its claims or should be interpreted in such a narrow way as not to apply to those claims. As described below and in Amazon's Reply In Support Of Its Motion To Compel Arbitration, each of these arguments lacks merit.

Moreover, even if this Court were to find that the forum selection clause does not apply, Maglula has failed to rebut any of Amazon's arguments that the factors considered by this Court when evaluating a motion to transfer under 28 U.S.C. §1404(a) strongly favor transferring this case to the Western District of Washington.

# ARGUMENT

## I. MAGLULA'S CLAIMS FALL SQUARELY WITHIN THE BSA'S MANDATORY FORUM SELECTION CLAUSE.

### A. The BSA Applies To Maglula's Claims

Maglula claims that, for various reasons, the BSA does not apply to this dispute. (*See* Plaintiff's Response to Amazon's Transfer Motion (Dkt. 41) (Transfer Opp.) at 7-16.). First, Maglula argues that its claims do not arise out of Maglula's "access to and use of" Amazon's

services—a phrase pulled from the Preamble of the BSA—because Maglula is accusing Amazon and other sellers of selling counterfeit goods. (*See* Transfer Opp. at 11.) As an initial matter, that argument ignores that the language of the forum selection clause—the specific provision—controls over the general Preamble. *See, e.g.*, *Meijer v. Thomson*, 655 F. Supp. 2d 607, 617 (E.D. Va. 2009) ("It is a basic canon of contract law that specific language is given greater weight than general provisions.") (citation omitted). The language of the forum selection clause is not limited to Maglula's "access to and use of" Amazon's services. Instead, the forum selection clause provision governs "any dispute with Amazon or its Affiliates" and claims "relating in any way to this Agreement or your use of the Services":

> Amazon and you both consent that ***any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services*** will be resolved by binding arbitration as described in this paragraph, rather than in court, ***except that*** (i) you may assert claims in a small claims court that is a Governing Court if your claims qualify and (ii) ***you or we may bring suit in the Governing Courts, submitting to the jurisdiction of the Governing Courts and waiving our respective rights to any other jurisdiction, to enjoin infringement or other misuse of intellectual property rights***.

(BSA ¶ 18.)[1] That language requires transfer of Maglula's claims to the Western District of Washington, because as explained in Amazon's opening brief, Maglula raises a dispute with Amazon and a claim that relates to the BSA.

Furthermore, even if the preamble applied, Maglula's claims do arise out of its access to and use of the Amazon services. Indeed, there is no dispute that Maglula knowingly entered into the BSA, gained access to the Amazon Services by registering as a seller, and utilized Amazon Services. (*See, e.g.*, Declaration of Guy Tal ("Tal Decl.") ¶¶ 8-10; Transfer Opp. at 2.) Maglula even provided its allegedly protected images to Amazon in conjunction with its status as an

---

[1] Emphasis has been added unless otherwise noted.

Amazon Seller. Although Maglula claims that the images that it uploaded as a registered seller are unrelated, those images are identical to the ones that Maglula relies on to allege infringement of its alleged trademarks and copyrights:

| **Images That Maglula Uploaded Through Its Seller Account (Declaration of Jesse Jensen in Support of Amazon's Motion to Transfer ("Jensen Decl. ISO Motion"), Ex. B (Dkt. 27-4) at 6, 7)[2]** | **Maglula's Complaint ("Complaint") (Dkt. 1) ¶¶ 21, 26** |
|---|---|
|  | 21. The UpLULA® loader (shown below) is a hand-held device that assists users in loading and unloading magazines. It is Maglula's top-selling product (on the market since January 2007), offered in multiple colors, and used by millions in the United States. *See* https://www.maglula.com/product/uplula-9mm-to-45acp.<br> |
|  | 26. The Maglula Trademarks appear on the UpLULA® product and its packaging insert card, as shown, for example, here:<br> |

Moreover, Maglula's claims implicate the BSA's licensing provision. Maglula alleges that its product images (including the ones above) are covered by copyrights and trademarks. (Complaint ¶¶ 25-27, Claims 1-4) But it used its seller account to upload those very images, and

[2] Maglula's CEO does not contest that Maglula uploaded these images through its Amazon seller account. (Tal Decl. ¶ 8.)

the BSA licensing provision grants a broad license to Maglula's intellectual property. (*See* BSA ¶ 4; *see also* Mot. at 9.) Maglula's claims thus both arise out of and relate "in [some] way" to the BSA and Maglula's use of Amazon's Services.[3] Therefore, Maglula is wrong that the license provision has "no relationship to Maglula's claims." (*See* Transfer Opp. at 11.)

To the extent that Maglula is asserting that it did not "access" or "use" Amazon services because it did not sell products, that argument reflects a misunderstanding of what it means to "access" and "use" Amazon's services. Maglula does not dispute that it accessed its seller account and used it by creating product listings and uploading images. (Tal. Decl. ¶ 10.) Maglula should not be permitted to hide behind its "authorized vendors and distributors"—who do sell Maglula's products on Amazon (Tal Decl. ¶ 6)—and escape applicability of the BSA simply because Maglula did not use its personal seller account to sell products and instead acted through its authorized agents.

Maglula relies on *VS Techs., LLC v. Twitter, Inc.*, No. 2:11CV43, 2011 U.S. Dist. LEXIS 157536 (E.D. Va. June 28, 2011) to assert that registering as a seller on Amazon.com does not qualify as "access to or use of" Amazon's relevant services. 2011 U.S. Dist. LEXIS 157536, at *15, 17; *see* Transfer Opp. at 14. Maglula's reliance on *VS Techs* is misplaced. In that case, the Court concluded that the plaintiffs' "***patent infringement claims*** . . . simply are not based on [plaintiffs'] access to and use of services provided by Twitter's website." *VS Techs.*, 2011 U.S.

[3] Maglula challenges the validity of the licensing provision in the BSA agreement; however, the validity of that licensing provision is not a question raised through Amazon's Motion. (Transfer Opp. at 10, n.4.) Because the BSA contains a licensing provision by which Maglula plausibly licensed certain intellectual property rights to Amazon, there is a sufficient tie between Maglula's claims and the BSA such that there is a dispute between Maglula and Amazon relating to the BSA and Maglula's use of Amazon's Services. Moreover, by identifying the license provision as relevant to the Court's analysis in this particular dispute, under these particular circumstances, Amazon does not argue for a "carte blanche to denigrate the IP it licenses and sell counterfeits and knockoffs," as Maglula claims. (Transfer Opp. at 10.).

Dist. LEXIS 157536, at *15-16 (internal quotation marks omitted). While the Court agreed that some intellectual property claims could fall within Twitter's forum selection clause because Twitter's Terms of Service included a "Copyright Policy," it concluded that "the inclusion of a specific Copyright Policy and the absence of an analogous patent infringement policy bolster the Court's opinion that Twitter's Terms of Service do not cover patent infringement claims." *Id.* (internal quotation marks omitted). Thus, *VS Techs* stands for nothing more than the unremarkable, fact-specific conclusion that Twitter's Terms of Service specific to copyrights do not apply to patent infringement claims. That has nothing to do with this case.

Here, the BSA forum selection clause applies broadly to "infringement or other misuse of intellectual property rights" (BSA ¶ 18), and Maglula has asserted patent, copyright, trademark, and unfair competition claims against Amazon. As explained above, the BSA clearly applies to all of Maglula's claims. In addition, Maglula not only signed up as a seller on Amazon.com, and therefore agreed to the terms of the BSA, it also uploaded product images on the Amazon.com website, several of which now form part of the basis for Maglula's claims of trademark and copyright infringement. (Complaint ¶¶ 21, 26.) Thus, further unlike the plaintiff in *VS Techs*, Maglula took actions under the BSA that are directly tied to its present claims.[4]

Likewise, Maglula's attempt to distance itself from the District of New Jersey's decision in *Lasoff v. Amazon.com, Inc.*, No. 15-2886 (MAS) (DEA), 2016 U.S. Dist. LEXIS 9878 (D.N.J. Jan. 28, 2016) is similarly misplaced. In *Lasoff*, the plaintiff signed up as a seller on Amazon.com and agreed to the terms of the BSA. 2016 U.S. Dist. LEXIS 9878, at *3-5. The Court concluded

[4] Maglula also attempts to argue that Amazon has not specifically shown the Elected Country that applies to Maglula's registration. Notably, Maglula did not deny that the Elected Country is the United States – nor could it, because that is exactly the country that Maglula elected when it registered. (Declaration of Jesse Jensen in Support of Amazon's Reply in Support of Its Motion to Transfer ("Jensen Decl. ISO Reply") ¶ 6.)

that the BSA forum selection clause applied to the plaintiff's ***trademark***, anti-trust, and ***unfair practices*** claims. *Id*. Thus, it is clear that the BSA's forum selection clause applies to precisely the type of claims Maglula has brought in this case. Maglula argues that *Lasoff* is distinguishable because the plaintiff in *Lasoff* sold products on Amazon.com. (Transfer Opp. at 15.) However, as described above, after agreeing to the BSA, Maglula uploaded images of its products to Amazon.com. Several of those photographs now form the basis for Maglula's claims of trademark, copyright, and unfair competition. (Complaint ¶¶ 21, 26.)[5]

Maglula next claims that Amazon's proposed interpretation of the BSA would "render the BSA's reach limitless." (Transfer Opp. at 8 (stating that an "injured customer" who had a seller account "would be prohibited from litigating a products liability claim")). That example misconstrues Amazon's position. Maglula is not an individual that experienced an injury unrelated to use of its seller account. Instead, here, Maglula is a commercial entity raising a dispute with Amazon after meaningfully accessing and using its seller account and various Amazon services and benefiting from its access to Amazon's services. As a registered seller under the BSA, Maglula created product detail pages and added three product detail pages through its own seller account. (Jensen Decl. ISO Motion ¶ 11.) Maglula also uploaded product images that it alleges are protected by intellectual property rights that it now tries to assert. (Jensen Decl. ISO Motion Ex. B.) Maglula also sells products to authorized distributors who sell its products on Amazon. (Tal Decl. ¶ 6.) Those facts, at a minimum, bring this dispute under the BSA.[6] No interpretation that

---

[5] Moreover, sales of product are not required for the BSA to apply. *See, e.g., Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1171-73 (W.D. Wash. 2013).

[6] In addition to registering to be an Amazon seller under the BSA, uploading images of its products to Amazon.com, creating a product listing, and adding offers to other product listings, Maglula also allowed authorized distributors to sell its products and create listings of its products on the Amazon website. (Transfer Opp. at 3.) Those authorized distributors use Maglula's product images in their listings of the Maglula products. (Tal Decl. Ex. 1.)

renders the provision "limitless" is necessary for Maglula to be bound by its agreement to the BSA, much less an interpretation that would cover an injured seller's hypothetical product liability claim.

Maglula also contends that applying the BSA to this circumstance would render other clauses in the BSA "superfluous and meaningless." (Transfer Opp. at 12.) First, Maglula raises the statement in the Preamble that the BSA governs "access to and use of the Services." (Transfer Opp. at 12.) However, there is no tension between that statement and Amazon's position, as explained above. Second, Maglula raises the service-specific terms that follow the General Terms of the BSA. But the service-specific terms are not at issue here. Moreover, there is no tension between Amazon's argument and the relationship between those sets of terms; Maglula misconstrues the relationship between the two. The General Terms of the BSA apply to all registered sellers, including Maglula (*see* Jensen Decl. ISO Reply ¶ 7)—regardless of whether a seller chooses to use one of the "optional services" that is listed in the Preamble. The service-specific detailed terms relate to each of the additional, optional services and a seller's participation in that service, such as Fulfillment by Amazon. (*See* Jensen Decl. ISO Reply ¶ 8.) Enforcing the forum selection clause over a dispute between a seller and Amazon does not render the service-specific terms meaningless.[7]

Lastly, Maglula attempts to argue that the BSA forum selection clause is not mandatory because the version Maglula executed uses the word "may" rather than "shall." (Transfer Opp. at 15.) This interpretation is incorrect and ignores the broader mandatory language in the clause as a whole. As described above, paragraph 18 of the BSA reads as follows:

---

[7] Maglula also argues that Amazon has "numerous adhesion contracts" that govern distinct interactions with Amazon. (*See* Transfer Opp. at 13.) But the fact that legal agreements to govern various types of relationships—including the BSA to govern the relationship between it and registered third-party sellers—does not affect the scope and applicability of the forum selection clause in any of those contracts, including the provision in the BSA.

> Amazon and you both consent that ***any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services*** will be resolved by binding arbitration as described in this paragraph, rather than in court, ***except that*** (i) you may assert claims in a small claims court that is a Governing Court if your claims qualify and (ii) ***you or we may bring suit in the Governing Courts, submitting to the jurisdiction of the Governing Courts and waiving our respective rights to any other jurisdiction, to enjoin infringement or other misuse of intellectual property rights***.

(BSA ¶ 18.) Maglula attempts to inject ambiguity into the clear language of the paragraph by asking this Court to read the forum selection clause independent of the rest of the paragraph and conclude that it means a party "may bring suit to enjoin infringement or other misuse of intellectual property rights, but it does not have to." (Transfer Opp. at 15.) A proper reading of the paragraph as a whole demonstrates that "any dispute" under the BSA "will be resolved by binding arbitration," but a party "may" also bring a suit to enjoin misuse of intellectual property rights in the Governing Courts (here, a "state or Federal court in King County, Washington"). The clause also requires signatories to the BSA to "waiv[e] [their] respective rights to any other jurisdiction." (BSA ¶ 18.) Thus, the clause provides one forum with exclusive jurisdiction if Maglula chooses to assert claims in federal court—the very definition of a mandatory forum selection clause. *See, e.g., Unistaff, Inc. v. Koosharem Corp.*, 667 F. Supp. 2d 616, 619 (E.D. Va. 2009) (stating that a mandatory forum selection clause is one that "contains some language requiring that the designated courts are the only ones which have jurisdiction") (internal quotation marks omitted).

Maglula has failed to demonstrate that the forum selection clause of the BSA does not apply to its claims in this case, and transfer to the Western District of Washington is appropriate.

## II. THE WESTERN DISTRICT OF WASHINGTON IS THE PROPER FORUM FOR THIS CASE.

This case does not belong in this District. Maglula has failed to rebut Amazon's arguments that all the factors considered by this Court favor transfer to the Western District of Washington

pursuant to 28 U.S.C. §1404(a). Instead, Maglula attempts to obfuscate its forum shopping by arguing that Amazon has not shown that the Eastern District of Virginia would be an *inconvenient* forum. This is incorrect.

Amazon demonstrated in several different ways in its Opening Memorandum of Law in Support of its Motion to Transfer that this District would be an inconvenient forum to hear this dispute. For example, all probable Amazon witnesses named in Maglula's complaint work and reside in Seattle, Washington. In addition, all sources of proof relevant to this case identified in Maglula's complaint—and even those additional sources of proof newly identified in Maglula's Response to Amazon's Motion to Transfer—are located in or are accessible from Seattle, Washington. Maglula grounded its Complaint allegations in its dissatisfaction with Amazon's responses to Maglula's complaints. (Complaint ¶¶ 2, 4, 6-9, 12, 48, 69-86, 89, 91.) Maglula's allegations of contributory liability for trademark counterfeiting, trademark infringement and unfair competition, copyright infringement, induced patent infringement, willful patent infringement, and common-law trademark infringement and unfair competition all reference Amazon's response to Maglula's notification of allegedly infringing and counterfeit products. (*Id.* ¶¶ 94, 99, 104, 116, 122, 124, 128, 135, 137, 141, 150) Maglula echoed that same theme throughout its responsive briefs. (*See, e.g.*, Transfer Opp. at 1, 4-5; Plaintiff's Response to Amazon's Motion to Dismiss (Dkt. 39) at 1-4.) As explained in Amazon's opening brief, the witnesses knowledgeable about Maglula's notices and complaints are all located in Washington, and they all have access to the relevant documents. (Amazon's Memorandum of Law in Support of Its Motion to Transfer (Dkt. 27) ¶ 13-14; Declaration of Debra Yang ("Yang Decl.") ¶ 7-8.) The "center of the accused activity" of this case is thus undoubtedly the Western District of Washington. In addition, Maglula is not at home in the Eastern District of Virginia and has not

shown any substantial or unique ties to the District, so its initial choice of forum is owed minimal, if any, deference.[8]

### A. Maglula's Choice Of Forum Is Owed Minimal Or No Deference Because It Has No Unique Ties To This District And The Cause Of Action Is Not Uniquely Related To This District.

Maglula does not attempt to argue that it has a substantial presence in this District. Instead, it relies on a handful of "test purchases" placed by its litigation counsel, who resides in the District, and made almost exclusively after the filing of the Complaint, to argue that Amazon makes sales of the allegedly infringing products in Virginia. (Transfer Opp. at 19, 25.) It also points to the fact that Maglula sells some products in the District, which is unsurprising and inconsequential considering Maglula represents that its "products are sold . . . across the United States." (Transfer Opp. at 3.) Finally, Maglula points to Amazon's plan to open a new headquarters in this District in the future but fails to specify how that fact is related to its cause of action in this case.

#### 1. The Location Of Maglula's Litigation Counsel Is Unrelated To The Transfer Inquiry.

Maglula seeks to inject the convenience of its litigation counsel as a factor this Court should consider in its transfer analysis. But Courts in this District have made abundantly clear that the convenience of counsel is not an appropriate consideration when assessing a transfer under 28

---

[8] Maglula further argues that this District is not inconvenient for Amazon because it has litigated disputes here in the past. (Transfer Opp. at 24.) However, the cases listed by Maglula involved either (a) plaintiffs whose home forum was the Eastern District of Virginia, *see, e.g.*, *Virginia Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 869 (E.D. Va. 2013); *Premium Prods. v. Pro Performance Sports, LLC*, Civil Action No. 1:13-cv-1119 (Declaration of Thomas Derbish in Support of Amazon's Reply In Support of Its Motion to Transfer ("Derbish Decl. ISO Reply"), Ex. D at 2), or (b) entirely different subject matter and possible sources of proof, *see, e.g.*, *Foster v. Amazon Web Services, Inc.*, Civil Action No. 1:16-cv-00983 (Derbish Decl. ISO Reply, Ex. E at 3) (accusing Amazon Web Services, Inc., of copyright infringement and alleging that Amazon Web Services, Inc. "maintains the majority of the company's data centers in the Northern Virginia region"). These cases present wholly different scenarios from here, where a foreign plaintiff with no ties to this District is seeking to take advantage of this District's reputation for "speedy litigation." (Transfer Opp. at 28.)

U.S.C. §1404(a). *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 698 (E.D. Va. 2000) ("The convenience to counsel is not an appropriate matter for consideration in resolving the appropriateness of a motion to transfer venue."); *Agilent Techs., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 328 n.5 (E.D. Va. 2004) ("In making this determination, the Court has not considered which venue might be more convenient to parties counsel."); *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 635 (E.D. Va. 2003) ("Of course, convenience to counsel is not an appropriate consideration in resolving a motion to transfer venue."); *Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001) ("[L]ocation of counsel for the litigant is not entitled to deference in a determination whether the Court should transfer venue.").

Here, Maglula attempts to circumvent this Court's clear precedents by having its litigation counsel—Mr. Berkowitz—conduct six different "test purchases" of allegedly infringing products from Amazon. (Declaration of Jeffrey A. Berkowitz ("Berkowitz Decl.") ¶1-6.) Maglula now claims that because Amazon "ship[ped] counterfeit Maglula products to and from warehouses to customers located in this District," this case should remain in the Eastern District of Virginia (*See* Transfer Opp. at 19-20, 25), despite knowing full well that the "customers" in question were limited to its own lawyer, Mr. Berkowitz, and the products were shipped to his law offices in Reston, Virginia. (Berkowitz Decl. ¶¶ 1-6.) Courts in this District have dealt with and rejected similar tactics in the past. *See, e.g.*, *Original Creatine Patent Co. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 571 (E.D. Va. 2005) ("[N]o consideration is given to the convenience of counsel . . . Were it otherwise, a plaintiff could ship relevant documents and evidence to counsel in any district and use this as the basis for defeating a motion to transfer and establishing venue."). In *Original Creatine*, the Plaintiff relied on the fact that it had sent all relevant documents to its

litigation counsel in this District as an argument against transfer. *Original Creatine*, 387 F. Supp. 2d at 569. The Court rejected this argument because it would undermine the purpose of the transfer inquiry if a plaintiff could simply hire counsel in any district, send documents to its counsel, and thereby defeat any transfer motion. *Id*. Likewise, here, Maglula could have hired counsel in any district in the United States and requested that counsel conduct "test purchases" on Amazon.com—which would have then been fulfilled by the nearest capable distribution center or warehouse. If that alone is sufficient to defeat transfer, this Court's inquiry becomes meaningless.

**2. Maglula Has Not Shown Any Unique Ties To This District.**

Maglula, belatedly, attempts to tie itself to this District by arguing that it makes sales in Virginia through individual outlets of nationwide chain stores, such as Cabela's, Dick's Sporting Goods, and Bass Pro Shop—all of which also have outlets in the Western District of Washington that sell Maglula products (Derbish Decl. ISO Reply ¶ 2-4)—as well as sales to various companies and organizations through its "authorized distributors." (*See* Transfer Opp. at 19) Maglula did not allege that it or its distributors made sales in Virginia in its Complaint, nor did Maglula allege that any of its "authorized distributors" are located in this District. In addition, Maglula does not argue that these sales are any different from the sales it makes "across the United States" or are in any way uniquely related to the claims in this case. (*See* Transfer Opp. at 3) Courts in this District have stated that where a plaintiff's sales in this District are "no . . . more significant than in any other judicial district in the nation," those sales do not significantly weigh against transferring the case. *Glob. Tel Link Corp. v. Securus Techs. Inc.*, No. 3:13-CV-713, 2014 WL 860609, at *5 (E.D. Va. Mar. 5, 2014); *see also NanoEntek, Inc. v. Bio-Rad Labs., Inc.*, No. 2:11CV427, 2011 WL 6023189, at *2 (E.D. Va. Dec. 2, 2011) ("[P]roduct sales to a forum far from entitle a party to substantial deference in its choice of venue."). Here, Maglula's generic sales in Virginia, which it does not argue are "greater in this forum than in any other district in the country," *Glob. Tel Link*,

2014 WL 860609, at *5, do not weigh against transferring this case to the Western District of Washington.

In addition, Maglula attempts to rely on *comScore, Inc. v. Integral Ad Sci., Inc.*, 924 F. Supp. 2d 677 (E.D. Va. 2013), for the proposition that its meager evidence of generic sales in this District should be sufficient to garner substantial deference to its choice of forum. (*See, e.g.*, Transfer Opp. at 18.) Maglula's reliance on *comScore* is misplaced. The Plaintiff in *comScore* was a Virginia resident that had brought suit in its "home district." *comScore*, 924 F. Supp. at 682, 686 (stating that plaintiff's "principal place of business and global headquarters [is] in Reston, Virginia"). Against that backdrop, the Court performed the transfer analysis, reasoning that it was not proper to transfer a plaintiff away from its home district simply because the locus of facts and evidence concerning alleged infringement was centered elsewhere. *Id*. at 686 (concluding that because plaintiff had sued in its home forum, there was no need for a "center of gravity" analysis looking at the relationship between the cause of action and the forum); *see also Glob. Tel Link*, 2014 WL 860609, at *4 (distinguishing *comScore* because a foreign plaintiff "does not produce or develop the disputed technology at any location in this district"). Contrary to Maglula's contention (*see* Transfer Opp. at 18-20), the Court did not state that a plaintiff's choice of forum is owed deference even when it has no substantial ties to this District.

**3. Maglula's Allegations Bear No Substantial Relation To This District.**

Maglula argues that the case should remain in the Eastern District of Virginia because of the "significance of the contacts" between this District and Maglula's allegations. However, the contacts on which Maglula relies are nothing more than the small handful of "test purchases" carried out by its lawyer. (*See* Berkowitz Decl. ¶¶ 1-6.) Despite the fact that these sales could have occurred anywhere in the country, Maglula attempts to rely on *Beam Laser Sys., Inc. v. Cox Commc'ns, Inc.*, 117 F. Supp. 2d 515 (E.D. Va. 2000) and *Limelight Networks, Inc. v. XO*

*Commc'ns, LLC*, No. 3:15-cv-720-JAG, 2016 U.S. Dist. LEXIS 168684 (E.D. Va. Aug. 3, 2016).[9] But Maglula over-reads and misinterprets these two cases.

In *Beam*, the Court concluded that transfer was not warranted because the plaintiff had alleged significant ties to this District, including allegations that defendant had used plaintiff's "patented commercial insertion system in [defendant's] operations in the Eastern District of Virginia." *Beam*, 117 F. Supp. 2d at 518. The Court in *Limelight* also applied the same analysis. *Limelight*, 2016 U.S. Dist. LEXIS 168684 at *8-9. However, a Court in this District later clarified that *Beam* involved a situation where this District was "the ***center*** of accused activity" and distinguished a scenario where the allegedly infringing sales were minimal, stating that a "single lease of the [defendant's] system in Virginia hardly qualifies it as the center of infringement activity." *Telepharmacy Sols., Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 743 n.1 (E.D. Va. 2003) (internal citations and quotation marks omitted). In addition, this Court has made clear on multiple occasions that mere sales activity in the District, including sales of an infringing product, does not constitute a substantial connection to this forum. *See, e.g.*, *NanoEntek*, 2011 WL 6023189, at *3 ("Even assuming that [plaintiff's] assertion that such sales constitute acts of infringement is true, and that such sales occur within this District, they do not rise to the level of a strong relation with this forum."); *see also Agilent*, 316 F. Supp. 2d at 327 ("Plaintiff [] argues that this matter is connected to this forum because Defendant's primary infringing activity in the United States, sales and offers to sell the infringing software products, occurred in or near this

[9] Maglula also relies on *comScore*, 924 F. Supp. 2d at 686, for the proposition that transfer is strongly disfavored because Maglula's alleged ties to this district "overlap with the alleged harm." (Transfer Opp. at 20.) *comScore* does not support that proposition. In addition, as described above, *comScore* involved a plaintiff litigating in its home forum and does not stand, as Maglula suggests, for the proposition that generic sales activity in this District "***strongly*** counsels against transfer." *Id.*

District. This is not a strong connection.") (internal citations and quotation marks omitted); *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 692 (E.D. Va. 2007) ("It is well-settled that the mere existence of limited sales activity within Virginia does not require this court to give the plaintiff's choice of forum substantial weight when balancing the convenience and justice factors."); *Acterna*, 129 F. Supp. 2d at 938-39 ("[T]he Court discounts Defendant's sales volume in Virginia as a basis for claiming Virginia the home forum because Defendant's sales are not unique to Virginia.").

Here, the handful of allegedly infringing sales made to Maglula's lawyer do not constitute a substantial connection to this forum. This is especially true in light of Maglula's own statements, which allege that the actions of Amazon's administration, including the Amazon employees responsible for the "Brand Registry" program, are related to the alleged infringing conduct. (*See, e.g.*, Transfer Opp. at 4; Complaint ¶¶ 75-86.) Those employees and the relevant documents are located in the Western District of Washington. (Jensen Decl. ISO Reply ¶¶ 4-5.)

Lastly, Maglula argues that there is a connection between Amazon and this District because Amazon is currently in the process of planning a second headquarters in the District. However, Maglula has not stated (and cannot state) any rationale for how this planned future headquarters is connected to its cause of action and fails to dispute the fact that Amazon's Seattle, Washington headquarters is much more related to its allegations and certainly constitutes the "center of the accused activity." *See NanoEntek*, 2011 WL 6023189, at *3 n.1 ("[D]efendant's general ties to the forum are not dispositive of, or carry great weight in, the venue analysis."). Moreover, if the location of Amazon's headquarters were dispositive, this case belongs in the Western District of Washington, where Amazon's headquarters are and where they have been for years, including during the relevant time period at issue in this case. It does not belong in Virginia, where Amazon's second headquarters will be at some undetermined point in the future.

On balance, because Maglula is a foreign plaintiff with no unique ties to this District and because Maglula's allegations are not related to this District in a substantial way, this Court owes Maglula's choice of forum little or no deference.

**B. The Convenience Of The Parties and Witnesses Weighs Strongly In Favor Of Transfer.**

Though Maglula claims transfer "will only serve to shift the balance of inconvenience from one party to the other" (Transfer Opp. at 21), it fails to put forward any reason why litigating in the Western District of Washington would be less convenient for it than the Eastern District of Virginia. In addition, Maglula cannot name a single witness or source of proof that resides or is located in this District and fails to dispute the fact that all the potential witnesses and sources of proof it has identified to date are located in or accessible from the Western District of Washington.

**1. Maglula Cannot Name A Single Possible Witness In The District.**

While Maglula argues that the three Amazon employees named in the Exhibits to its Complaint—all of whom are located in the Western District of Washington—"may ultimately be inconsequential to this case" (Transfer Opp. at 23-24), glaringly absent from its response is the name of a single witness who resides in this District. *See Original Creatine*, 387 F. Supp. 2d at 571 (granting transfer where "the plaintiff has identified no witnesses in this district who appear to have testimony that is either relevant or unique enough to warrant venue in this district"). Instead, Maglula hints that it may seek to depose hypothetical Amazon employees from "Amazon warehouses across the country" without providing any further details.[10] (Transfer Opp. at 24.) Yet, merely "rais[ing] the specter" of "nonspecific [] witnesses" that may reside in or near this

[10] Maglula has not identified any unique aspects about Amazon's warehouse in this District. Amazon maintains similar warehouses and distribution centers in at least 44 states. (Jensen Decl. ISO Reply ¶ 3.)

District should "not counterweigh the substantial convenience to [Amazon] and the witnesses and records it has identified." *Original Creatine*, 387 F. Supp. 2d at 571.

Lastly, Maglula argues that this Court should ignore the fact that most of the probable witnesses in the case reside in the Western District of Washington because those witnesses are Amazon employees and therefore "are presumed to be more willing to testify in a different forum." (Transfer Opp. at 26.) Maglula again relies on *comScore*, 924 F. Supp. 2d at 688, to support this argument. As explained above, *comScore* involved a plaintiff that brought suit in its home district, and is, therefore, not a useful analogy this case. Moreover, Maglula's reliance on *comScore* is misplaced. Maglula has not named a single witness whose convenience would be served by keeping the case in the Eastern District of Virginia and cannot dispute that Amazon's principal place of business and the majority of its employees are in the Western District of Washington. Thus, while this Court may consider the convenience of party witnesses as less significant than non-party witnesses, this factor still weighs in favor of transfer. *Lycos*, 499 F. Supp. 2d at 693. Maglula also ignores the additional point that the attorney who prosecuted the patents it asserts in this case, is located in San Francisco, California, much closer to the Western District of Washington than the Eastern District of Virginia.

Because no dispute exists that the probable witnesses so far identified in this litigation are located in or near the Western District of Washington, it is therefore a far more convenient forum than the Eastern District of Virginia.

**2. The Probable Discovery And Sources Of Proof Maglula Identified Are Located In The Western District Of Washington.**

Maglula attempts to argue that "the availability of electronically stored information ('ESI') abrogates the importance of the physical location of documents." (Transfer Opp. at 23.) However, this assertion contradicts the positions of both Courts in this District and the United States Court

of Appeals for the Federal Circuit. *Glob. Tel*, 2014 WL 860609, at *6 ("[T]he Federal Circuit has held that entirely discounting the inconvenience associated with record transportation would render superfluous the access to evidence factor.") (citing *In re Genentech*, 566 F.3d 1338, 1346 (Fed. Cir. 2008)).

In addition, Maglula does not dispute that all possible sources of proof it has so far identified are located in or accessible from the Western District of Washington. In an attempt to identify new sources of proof, Maglula states in its Response that it "intends to seek discovery from Amazon on the extent of its counterfeiting practices and the number of counterfeit Maglula goods that shipped from Amazon's various warehouses, including warehouses in this District" and "also intends to seek discovery on the policies, if any, those warehouses had or have in place to prevent shipping counterfeit goods and whether such policies were followed." (Transfer Opp. at 25.) But even these sources of proof do not favor keeping this case in the Eastern District of Virginia. The Amazon employees charged with maintaining policies and data related to the handling of counterfeiting complaints are located in Seattle, Washington. (Jensen Decl. ISO Reply ¶ 4-5.) That data is accessible from Seattle, Washington. (*Id*.)

### C. The Interests Of Justice Weigh In Favor Of Transfer.

Maglula admits that the speed of litigation in this District was a significant motivation in filing suit. (Transfer Opp. at 27-28.) Courts in this District have warned that when "the so-called rocket docket is the primary motivation" for filing suit in the District, "the interests of justice are not served by such blatant forum shopping." *Samsung Elecs. Co. v. Rambus Inc.*, 386 F. Supp. 2d 708, 723-24 (E.D. Va. 2005) (internal quotation marks and citation omitted). In addition, Maglula attempts to argue that this Court should not transfer the case because of several Virginia state law claims it has added into its Complaint, but it provides no reason why the Western District of Washington is incapable of applying those laws as well.

**1. The Court Should Not Reward Maglula's Conceded Forum Shopping.**

Courts in this District have repeatedly recognized that they "cannot stand as a willing repository for cases which have no real nexus to this district" simply because plaintiffs are seeking this District's so-called "rocket docket." *Cognitronics*, 83 F. Supp. 2d at 699 ("The rocket docket certainly attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner.") (internal quotation marks and citation omitted); *Telepharmacy*, 238 F. Supp. 2d at 744; *Agilent*, 316 F. Supp. 2d at 329. Yet Maglula is doing just that. Maglula admits that it filed suit in this forum because it sought "the prospect of speedy litigation," even going as far as comparing the median time to trial between the Eastern District of Virginia and the Western District of Washington. (Transfer Opp. at 27-28.) While Maglula claims it filed suit in this District for "myriad reasons," the only reason it specifies is "the prospect of speedy litigation." (*Id.* at 28.) Lacking any ties to this District, Maglula's forum shopping does not serve the interests of justice and should not be permitted.

**2. The Western District Of Washington Is Well-Suited To Interpret Maglula's State Law Claims.**

Maglula attempts to argue that this case should remain in the Eastern District of Virginia because it included two Virginia state law claims in its Complaint. (Transfer Opp. at 28.) However, as Courts in this District have stated in the past, "it would defy logic to permit defendant's transfer motion to be defeated by [plaintiff's] tacking on state law [] claims that essentially mirror" the other claims in the case. *Cognitronics*, 83 F. Supp. 2d at 699. Here, Maglula's state law claims mirror its federal trademark claims. Maglula added claims of trademark infringement under the Virginia Trademark and Service Mark Act, Virginia Code § 59.1-92.12, and common-law trademark infringement and unfair competition as the final two Claims for Relief in its Complaint. (Complaint ¶¶ 70-71.) However, those state law claims do not accuse different

activities from the ones that are the basis for Maglula's federal trademark claims. As a result, those claims should not weigh against transferring this case.

In addition, as Courts in this District have recognized in the past, "[t]he nature of federal practice requires the Court to routinely interpret laws from jurisdictions across the nation." *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 739 (E.D. Va. 2007) (citing *Intranexus, Inc. v. Siemens Med. Solutions Health Servs. Corp.*, 227 F. Supp. 2d 581, 585 (E.D. Va. 2002)) (internal quotation marks omitted). Maglula has not provided any reason why the Western District of Washington would be incapable of interpreting the state law claims in this action. Thus, the interest of justice do not favor keeping this case in the Eastern District of Virginia.

Because Maglula has no ties to this District and the remaining transfer factors all weigh strongly in Amazon's favor, this Court should transfer the case to the Western District of Washington.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court transfer this action to the Western District of Washington pursuant to 28 U.S.C. §1404(a).

Dated: February 25, 2020

By: */s/ Justin P.D. Wilcox*
Justin P.D. Wilcox (#66067)
John M. Desmarais (*pro hac vice*)
Laurie Stempler (*pro hac vice*)
Priyanka R. Dev (*pro hac vice*)
Thomas Derbish (*pro hac vice*)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401
Email: jwilcox@desmaraisllp.com
jdesmarais@desmaraisllp.com
lstempler@desmaraisllp.com
pdev@desmaraisllp.com
tderbish@desmaraisllp.com

*Attorneys for Defendants Amazon.com, Inc. and Amazon.com Services, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

Dated: February 25, 2020

By: */s/ Justin P.D. Wilcox*

Justin P.D. Wilcox (#66067)
John M. Desmarais (*pro hac vice*)
Laurie Stempler (*pro hac vice*)
Priyanka R. Dev (*pro hac vice*)
Thomas Derbish (*pro hac vice*)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401
Email: jwilcox@desmaraisllp.com
jdesmarais@desmaraisllp.com
lstempler@desmaraisllp.com
pdev@desmaraisllp.com
tderbish@desmaraisllp.com

*Attorneys for Defendants Amazon.com, Inc. and Amazon.com Services, Inc.*