**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| MAGLULA, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES, INC.,<br><br>Defendants. | Civil Action No. 1:19-cv-01570-LO-IDD |

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND, AS A RESULT, DISMISS OR, IN THE ALTERNATIVE, STAY THIS ACTION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

ARGUMENT .........................................................................................................................2

I. THE QUESTION OF ARBITRABILITY IS FOR THE ARBITRATOR—NOT THIS COURT. ..............................................................................................................2

A. The BSA's Carve-Out Does Not Create Any Ambiguity As To The Parties' Intent To Delegate Questions Of Arbitrability To The Arbitrator. ............3

B. The *Schein* Cases Support Amazon, Not Maglula. ..............................................4

II. MAGLULA'S CLAIMS ARE ARBITRABLE. ..............................................................7

A. The BSA Applies. ..............................................................................................7

B. The Carve-Out Does Not Apply. ........................................................................12

C. The BSA Mandatory Arbitration Provision Is Not Ambiguous. ..........................14

D. Maglula's Claims Are Also Arbitrable Under The Brand Registry Terms. ..........15

III. AMAZON DID NOT WAIVE ARBITRATION. ..........................................................16

A. Maglula Has Not Been Prejudiced. ......................................................................17

B. Amazon Has Not Substantially Utilized The Litigation Machinery. .....................18

CONCLUSION ....................................................................................................................20

# TABLE OF AUTHORITIES

**Pages**

## CASES

*Aerpio Pharms., Inc. v. Quaggin*,
No. 1:18-cv-794, 2019 WL 4717477 (S.D. Ohio Sept. 26, 2019) .................................... 3

*American Recovery Corp. v. Computerized Thermal Imaging, Inc.*,
96 F.3d 88 (4th Cir. 1996) .................................................................................. 16

*Archer and White Sales Inc. v. Henry Schein, Inc.*,
935 F.3d 274 (5th Cir. 2019) ........................................................................... 5, 14

*Brenco Enters. v. Bitesquadcom LLC*,
297 F. Supp. 3d 608 (E.D. Va. 2018) ................................................................ 4, 13

*Connell v. Apex Sys., LLC*,
No. 3:19-cv-299, 2020 WL 354742 (E.D. Va. Jan. 21, 2020) ........................................ 18

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
748 F.3d 249 (5th Cir. 2014) ............................................................................. 3, 6

*Fasig-Tipton Kentucky, Inc. v. Michaelson*,
955 F.2d 40 (Table) (4th Cir. 1992) .................................................................... 17

*Federated Dep't Stores v. Moitie*,
452 U.S. 394 (1981) .......................................................................................... 19

*Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*,
817 F.2d 250 (4th Cir. 1987) ............................................................................. 18

*Gibbs v. Stinson*,
No. 3:18-cv-676, 2019 WL 4752792 (E.D. Va. Sept. 30, 2019) ................................ 4, 20

*Henry Schein Inc. v. Archer and White Sales, Inc.*,
139 S. Ct. 524 (2019) ......................................................................................... 4

*Hersman Inc. v. Fleming Co.*,
19 F. Supp. 1282 (M.D. Al. 1998) ........................................................................ 12

*Khan v. Parsons Global Servs.*,
521 F.3d 421 (D.C. Cir. 2008) ............................................................................ 20

*Lewallen v. Green Tree Servicing, LLC*,
487 F.3d 1085 (8th Cir. 2007) ....................................................................... 17, 19

*Maxum Founds. v. Salus Corp.*,
779 F.2d 974 (4th Cir. 1985) .......... 18

*Meijer v. Thomson*,
655 F. Supp. 2d 607 (E.D. Va. 2009) .......... 7

*Newbauer v. Jackson Hewitt Tax Serv., Inc.*,
No. 2:18-cv-679, 2019 WL 1398172 (E.D. Va. Mar. 28, 2019).......... 20

*Oracle America, Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013) .......... 3, 4

*Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*,
380 F.3d 200 (4th Cir. 2004) .......... 16

*Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*,
665 F.3d 96 (4th Cir. 2012) .......... 2

*Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*,
575 F.3d 476 (5th Cir. 2009) .......... 19

*Polar Commc'ns Corp. v. Oncor Commc'ns, Inc.*,
927 F. Supp. 894 (D. Md. 1996).......... 13

*Ritzel Commc'ns v. Mid-Am. Cellular Tel. Co.*,
989 F.2d 966 (8th Cir. 1993) .......... 19, 20

*Verinata Health Inc. v. Ariosa Diagnostics, Inc.*,
830 F.3d 1335 (Fed. Cir. 2016).......... 14

*Vroom v. Gen. Elec. Co.*,
No. 1:10-cv-1250, 2011 WL 13076919, *2 (E.D. Va. Jan. 28, 2011).......... 20

*Wheeling-Pittsburgh Steel Corp. v. CSX Transp., Inc.*,
112 F.3d 512 (Table) (4th Cir. 1997).......... 11

## **STATUTES**

28 U.S.C. § 1404(a) .......... 2, 20

## **RULES**

Fed. R. Civ. P. 12(b) .......... 18

Fed. R. Civ. P. 12(b)(6).......... 2

Fed. R. Civ. P. 12(h)(1)(B) .......... 18

## INTRODUCTION

In opposing Amazon's Motion to Compel arbitration, Maglula tries to escape its obligations under the Amazon Business Solutions Agreement (BSA) by advancing arguments about an irrelevant carve-out, purported prejudice, and waiver that are unsupported by the law. However, it is indisputable that the first, and possibly only, question before this Court is a simple one: who determines whether Maglula's claims are arbitrable—the arbitrator or this Court?

Because the parties invoked the AAA rules and that presents "clear and unmistakable" evidence that arbitrability is reserved for the arbitrator, the Court's inquiry should end there. Maglula does not contest that legal principle at the heart of Amazon's Motion. Instead, by arguing that an inapplicable carve-out removes the question of arbitrability from an arbitrator (*see* Plaintiff's Response to Defendants' Motion to Compel Arbitration and Dismiss or Stay (Dkt. 40) ("Opp.") at 3-5), Maglula conflates the question of ***who*** determines arbitrability with the question of ***whether*** claims are arbitrable. In so doing, Maglula asks the Court to enter the arbitrability inquiry, which the parties have clearly and unmistakably delegated to an arbitrator.

Should the Court entertain the second question of whether Maglula's claims are arbitrable, for the reasons set out in Amazon's Motion and below, Maglula's claims fall squarely within the mandatory arbitration provision of the BSA.[1] Maglula does not dispute that it willingly entered into the BSA, uploaded images (some of which are identical to those that it now claims are subject to copyrights and trademarks that Amazon violated), and reaped the benefits of Amazon's Services. (Declaration of Guy Tal ("Tal Decl.") ¶¶ 6, 8.)) Now it tries to escape its obligation to arbitrate by pointing to a "carve-out" that does not apply because it is limited to entire ***suits*** to enjoin infringement. Because the BSA's mandatory arbitration provision covers Maglula's claims,

[1] BSA citations refer to the version attached to Maglula's Complaint. (*See* Doc. 1-3 at 84-124.)

the Court should compel arbitration.[2]

## ARGUMENT

### I. THE QUESTION OF ARBITRABILITY IS FOR THE ARBITRATOR—NOT THIS COURT.

Maglula does not dispute that the decision of ***who*** assesses arbitrability—i.e., whether claims are within the scope of an arbitration provision—is a threshold decision. *See* Opp. at 6 (referring to the "issue of whether the disputes raised in the Complaint even qualify for arbitration" as a "threshold issue"). Indeed, Maglula relies on the very same case that Amazon cited—*Peabody Holding Co, LLC v. United Mine Workers of America, International Union*—for the two-step inquiry: ***First***, the court determines *who* decides whether a particular dispute is arbitrable — the arbitrator or the court; and ***second,*** if the court concludes that the court should adjudicate arbitrability, the court determines whether the dispute is, in fact, arbitrable. *See* Memorandum of Law in Support of Defendants' Motion to Compel Arbitration and, As a Result, Dismiss, or, in the Alternative, Stay This Action (Dkt. 24) ("Mot.") at p. 6 (citing *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 101 (4th Cir. 2012)). The parties agree that this Court should first decide whether it or the arbitrator should determine arbitrability—before, and if ever, it reaches the second question of arbitrability.

Regarding that threshold decision, Maglula does not dispute the key facts: (1) Maglula willingly entered into the BSA; (2) Maglula conducted activity as a seller and sent materials to Amazon under the BSA; and (3) the BSA arbitration provision invokes the AAA rules. (*See, e.g.*,

---

[2] Amazon concurrently filed a Motion to Transfer Venue to the Western District of Washington Pursuant to 28 U.S.C. § 1404(a) ("Transfer Motion") and a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss"). Maglula contends that those motions have caused it "prejudice" and that Amazon has "utilized the litigation machinery" by filing them. (Opp. at 13-16.) For the reasons in Section III *infra*, those arguments lack merit, especially given that the Court need not consider those motions if it grants in whole or in part the present Motion.

Tal Decl. ¶ 8 (admitting Maglula registered as a seller on Amazon).) Indeed, Maglula completely ignores the crux of Amazon's Motion: By invoking the AAA rules, which delegate arbitrability questions to an arbitrator, the parties "clearly and unmistakably" delegated arbitrability to an arbitrator. *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013); *see also* Mot. at 6-9. Maglula never disputes and instead ignores this key point.

### A. The BSA's Carve-Out Does Not Create Any Ambiguity As To The Parties' Intent To Delegate Questions Of Arbitrability To The Arbitrator.

Rather than address that principle head-on, Maglula argues that "Amazon's AAA contention . . . ignores the carve-out in the BSA for intellectual property cases where injunctions are sought." (Opp. at 7.) However, the principle that invoking AAA rules—or other rules delegating arbitrability to an arbitrator—constitutes "clear and unmistakable" evidence that the question is reserved for an arbitrator applies with equal force to arbitration provisions that contain similar carve-outs. *See Oracle America*, 724 F.3d at 1071; *Aerpio Pharms., Inc. v. Quaggin*, No. 1:18-cv-794, 2019 WL 4717477, *17 (S.D. Ohio Sept. 26, 2019) ("[W]here the parties have agreed to submit their disputes to arbitration but have expressly carved out some exception for claims of injunctive relief, courts have held that the carve-out clause does not create any ambiguity as to the parties' intent to delegate arbitrability." (citing *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 256 (5th Cir. 2014))). For example, in *Oracle America*, the Ninth Circuit determined that the express adoption of AAA or similar arbitration rules that delegated arbitrability to an arbitrator constituted "clear and unmistakable" evidence, despite the following carve-out:

> Any dispute arising out of or relating to this License shall be finally settled by arbitration as set out herein, except that either party may bring any action, in a court of competent jurisdiction (which jurisdiction shall be exclusive), with respect to any dispute relating to such party's Intellectual Property Rights or with respect to Your compliance with the TCK license. Arbitration shall be administered: (i) by the American Arbitration Association (AAA) . . . .

724 F.3d at 1071. The court rejected the argument that the carve-out affected its analysis, stating that "argument conflates the scope of the arbitration provision, i.e., ***which*** claims fall within the carve-out provision, with the question of ***who*** decides arbitrability." *Id*. at 1076.[3] The provision in *Brenco Enterprises v. Bitesquad.com LLC* (*see* Mot. at 7) stated that mandatory arbitration was "[w]ithout prejudice to each party's right to seek injunctive or mandatory relief from a court," but that did not affect that the agreement's incorporation of the AAA rules met the "clear and unmistakable standard." 297 F. Supp. 3d 608, 610 (E.D. Va. 2018).

The *Gibbs v. Stinson* case that Maglula cites does not change that analysis. *See* No. 3:18-cv-676, 2019 WL 4752792, *11-12 (E.D. Va. Sept. 30, 2019); *see also* Opp. at 8. In *Gibbs*, the court analyzed the validity of an arbitration agreement—"not the arbitrability or non-arbitrability of issues within the agreement"—and the defendants contended that the court was not permitted to consider the validity of the agreement. 2019 WL 4752792, at *11. Here, other than its vague and unsupported statement that "no valid arbitration delegation provision applies" (Opp. at 8), Maglula does not contest the validity of the agreement; instead, it contends that there are no arbitrable claims under an arbitration provision whose validity it does not challenge. Because *Gibbs* did not consider arbitrability or who decides arbitrability, that case has no bearing here.

### B. The *Schein* Cases Support Amazon, Not Maglula.

Instead of addressing the incorporated AAA rules, Maglula focuses on the *Schein* cases. But, as explained in Amazon's opening brief (Mot. at 6), the Supreme Court's *Schein* decision establishes that ***when*** a provision delegates the arbitrability question to an arbitrator, a court possesses no power to decide the arbitrability issue. *Henry Schein Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (hereinafter *Schein I*).

[3] Emphasis has been added unless otherwise noted.

Moreover, in an attempt to spin those cases in its favor, Maglula inaccurately omits a critical portion of the court's analysis in quoting the Fifth Circuit's remand decision in *Schein II*. *See Archer and White Sales Incorporated v. Henry Schein, Inc.*, 935 F.3d 274, 279-80 (5th Cir. 2019) *(*hereinafter *Schein II*; collectively referred to as *Schein*). Although the court ultimately determined that the clear and unmistakable delegation stemming from the AAA rules applied only to disputes falling outside of a carve-out, that case is distinguishable because the carve-out in *Schein* followed a different syntax than the one in the BSA:

> Any dispute arising under or related to this Agreement ***(except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of Pelton & Crane)***, shall be resolved by binding arbitration in accordance with the ***arbitration rules of the American Arbitration Association [(AAA)] . . . .***

*Schein II*, 935 F.3d at 277. As shown above, the carve-out in *Schein II* appears in the middle of the sentence incorporating the AAA rules. The different syntax is significant because, in a portion of the Fifth Circuit's opinion that ***Maglula omitted using ellipses*** (Opp. at 9), the *Schein II* court stated that "the placement of the carve-out here is dispositive":

> Defendants urge that *Crawford* [a case involving an arbitration provision containing a carve-out where the Fifth Circuit found clear and unmistakable evidence of delegation to an arbitrator] controls and the only difference between that arbitration agreement and the one here is syntax—the ordering of words. But that is precisely the point—***the placement of the carve-out here is dispositive***.

*Id*. at 281. Because of the *Schein* carve-out's "placement" in the middle of the sentence that compelled arbitration, the court found that it functioned as an exception to the applicability of the AAA rules, such that the AAA rules delegated arbitrability to the arbitrator "for all disputes ***except*** those under the carve-out." *Id*. Notably, Maglula ignores the "dispositive" discussion regarding placement and syntax of the carve-out in its discussion of the *Schein* cases. (Opp. at 7-10.)

In discussing the syntax, *Schein II* specifically distinguished *Crawford*. In that case, the

carve-out in an arbitration provision appeared separately from the sentence compelling arbitration. The court determined that the entire question of arbitrability—notwithstanding the carve-out—was clearly and unmistakably delegated to an arbitrator. *See Crawford*, 748 F.3d at 262-63. The provision at issue in *Crawford* appears below:

> Any and all disputes in connection with or arising out of the Provider Agreement by the parties ***will be exclusively settled by arbitration before a single arbitrator in accordance with the Rules of the American Arbitration Association*** . . . . Arbitration shall be the exclusive and final remedy for any dispute between the parties in connection with or arising out of the Provider Agreement; ***provided, however, that nothing in this provision shall prevent either party from seeking injunctive relief for breach of this Provider Agreement in any state or federal court of law.***

*Id.* at 256. Here, as in *Crawford*, the alleged carve-out in the BSA provision does not appear in the middle of the text compelling arbitration but instead many sentences removed, at the end:

> Amazon and you both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court, except that (i) you may assert claims in a small claims court that is a Governing Court if your claims qualify and ***(ii) you or we may bring suit in the Governing Courts, submitting to the jurisdiction of the Governing Courts and waiving our respective rights to any other jurisdiction, to enjoin infringement or other misuse of intellectual property rights***. There is no judge or jury in arbitration, and court review of an arbitration award is limited. . . . **The *arbitration will be conducted by the American Arbitration Association (AAA) under its rules*** . . . .

(BSA ¶ 18.) As in *Crawford*, the language invoking the AAA rules in the BSA provision is untethered from the carve-out; invocation of the AAA rules appears at the very end of the sentence, effectually applying to the entire provision. As a result, the BSA does not carve-out the applicability of the AAA rules, which delegate the question of arbitrability to the arbitrator. Thus, Maglula's reliance on *Schein II* is misplaced, and the Court should follow *Crawford*.

## II. MAGLULA'S CLAIMS ARE ARBITRABLE.[4]

### A. The BSA Applies.

The BSA arbitration provision applies to this dispute and requires Maglula to arbitrate its claims. In addressing Amazon's Transfer Motion, Maglula claims that, for various disparate reasons, the BSA does not apply to this dispute. (*See* Plaintiff's Response to Amazon's Transfer Motion (Dkt. 41) ("Transfer Opp.") at 7-16.). First, Maglula argues that its claims do not arise out of Maglula's "access to and use of" Amazon's services—a phrase pulled from the preamble of the BSA—because Maglula is accusing Amazon and other sellers of selling counterfeit goods. (*See* Transfer Opp. at 11.) As an initial matter, that argument ignores that the language of the arbitration provision—the specific provision—controls over the general preamble. *See, e.g.*, *Meijer v. Thomson*, 655 F. Supp. 2d 607, 617 (E.D. Va. 2009) ("It is a basic canon of contract law that specific language is given greater weight than general provisions." (citation omitted)). The arbitration provision is not limited to Maglula's "access to and use of" Amazon's services. Instead, the language makes clear that arbitration is required for "any dispute with Amazon or its affiliates" and claims "relating in any way to this Agreement or your use of Services." (BSA ¶ 18.) That compels arbitration of Maglula's claims because, as explained in Amazon's opening brief, Maglula raises a dispute with Amazon and a claim that relates to the BSA.

Furthermore, even if the preamble applied, Maglula's claims do arise out of its access to and use of the Amazon services. Indeed, there is no dispute that Maglula knowingly entered into the BSA, gained access to the Amazon Services by registering as a seller, and utilized Amazon Services. (*See, e.g.*, Tal Decl. ¶¶ 8-10; Opp. at 2.) Maglula even provided its allegedly protected

[4] All four *Adkins* factors support a finding that Maglula's claims are arbitrable. (Mot. at 8-11.) Maglula's silence as to three of the four factors—all except whether there is a valid agreement to arbitrate that purports to cover the dispute—shows that those factors are largely undisputed.

images to Amazon in conjunction with its status as an Amazon Seller. Although Maglula claims that the images that it uploaded as a registered seller are unrelated, those images are identical to the ones that Maglula relies on to allege infringement:

| **Images That Maglula Uploaded Through Its Seller Account (Declaration of Jesse Jensen in Support of Amazon's Motion to Transfer ("Jensen Decl. ISO Motion"), Ex. B (Dkt. 24-3) at 6, 7)[5]** | **Maglula's Complaint ("Complaint") (Dkt. 1) ¶¶ 21, 26** |
|---|---|
|  | 21. The UpLULA® loader (shown below) is a hand-held device that assists users in loading and unloading magazines. It is Maglula's top-selling product (on the market since January 2007), offered in multiple colors, and used by millions in the United States. *See* https://www.maglula.com/product/uplula-9mm-to-45acp.<br> |
|  | 26. The Maglula Trademarks appear on the UpLULA® product and its packaging insert card, as shown, for example, here:<br> |

Moreover, Maglula's claims implicate the BSA's licensing provision. Maglula alleges that its product images (including the ones above) are covered by copyrights and trademarks. (Complaint ¶¶ 25-27, Claims 1-4.) But it used its seller account to upload those very images, and the BSA licensing provision grants a broad license to Maglula's intellectual property. (*See*

---

[5] Maglula's CEO does not contest that Maglula uploaded these images through its Amazon seller account. (Tal Decl. ¶ 8.)

BSA ¶ 4; *see also* Mot. at 9.) Maglula's claims thus both arise out of and relate "in [some] way" to the BSA and Maglula's use of Amazon's Services.[6] Therefore, Maglula is wrong that the license provision has "no relationship to Maglula's claims." (*See* Transfer Opp. at 11.).

To the extent that Maglula is asserting that it did not "access" or "use" Amazon services because it did not sell products, that argument reflects a misunderstanding of what it means to "access" and "use" Amazon's services. Maglula does not dispute that it accessed its seller account and used it to create product listings and upload images. (Tal. Decl. ¶ 10.) Maglula should not be permitted to hide behind its "authorized vendors and distributors"—who do sell products on Amazon (Tal Decl. ¶ 6)—and escape applicability of the BSA simply because Maglula did not use its personal seller account to sell products and instead acted through its authorized agents.

Contrary to Maglula's argument, Amazon's proposed interpretation of the BSA would ***not*** "render the BSA's reach limitless." (Transfer Opp. at 8 (stating that an "injured customer" who had a seller account "would be prohibited from litigating a products liability claim").) Nor is Maglula's hypothetical products liability scenario relevant to the issues here or a correct application of the BSA to that scenario. Maglula is not an individual seller that experienced an injury unrelated to use of its seller account. Instead, Maglula raised a dispute with Amazon after benefiting from meaningfully accessing and using its seller account and various Amazon services. As a registered seller under the BSA, Maglula created product detail pages and added three product

[6] Maglula challenges the validity of the licensing provision in the BSA; however, Amazon's motion does not ask the Court to decide the validity of the license provision. (Transfer Opp. at 10, n.4.) Because the BSA contains a licensing provision by which Maglula plausibly licensed intellectual property rights that it now asserts, this is a dispute between Maglula and Amazon relating to the BSA and Maglula's use of Amazon's Services. Moreover, Amazon identified the license provision as relevant to the Court's analysis in this particular dispute and under these particular circumstances. Contrary to Maglula's argument, Amazon does not seek "carte blanche to denigrate the IP it licenses and sell counterfeits and knockoffs." (Transfer Opp. at 10.)

detail pages through its own seller account. (Jensen Decl. ISO Motion ¶ 11.) Maglula also uploaded product images that it alleges are protected by intellectual property rights that it now tries to assert. (Jensen Decl. ISO Motion Ex. B.) Maglula also sells products to authorized distributors who sell its products on Amazon. (Tal Decl. ¶ 6.) Those facts undoubtedly show that Maglula's disputes and claims are covered by the BSA.[7] No interpretation that renders the provision "limitless" is necessary for Maglula to be bound by its agreement to the BSA, much less an interpretation that would cover an injured seller's hypothetical product liability claim.

Maglula also contends that applying the BSA to this circumstance would render other clauses in the BSA "superfluous or meaningless." (Transfer Opp. at 12.) First, Maglula raises the preamble statement that the BSA governs "access to and use of the Services." (Transfer Opp. at 12.) However, there is no tension between that statement and Amazon's position, as explained above. Second, Maglula raises the service-specific terms that follow the General Terms of the BSA. But the service-specific terms are not at issue here. Nor is there tension between Amazon's argument and the relationship between those sets of terms; Maglula misconstrues the relationship between the two. The General Terms of the BSA apply to all registered sellers (*see* Declaration of Jesse Jensen in Support of Amazon's Reply in Support of Its Motion to Transfer ("Jensen Decl. ISO Reply") ¶ 7)—regardless of whether a seller chooses to use one of the "optional services" that is listed in the Preamble. The service-specific detailed terms relate to each of the additional, optional services and a seller's participation in that service, such as Fulfillment by Amazon. (*See*

[7] In addition to registering to be an Amazon seller under the BSA, uploading images of its products to Amazon.com, creating a product listing, and adding offers to other product listings, Maglula also allowed authorized distributors to sell its products and create listings of its products on the Amazon website. (Transfer Opp. at 3.) Those authorized distributors use Maglula's product images in their listings of the Maglula products. (Tal Decl. Ex. 1.)

Jensen Decl. ISO Reply ¶ 8.) Enforcing the arbitration provision over a dispute between a seller and Amazon does not render the service-specific terms meaningless.[8]

Finally, Maglula argues that interpreting "any dispute with Amazon or its affiliates . . . will be resolved by binding arbitration" according to the plain meaning would render meaningless the other portion of the arbitration clause ("[any] claim relating in any way to this Agreement or your use of the Services"), and accordingly, only those disputes ***that also*** relate in any way to the BSA or Maglula's use of the Services fall within scope of the arbitration provision. (Transfer Opp. at 12.) But that point is irrelevant here, where Maglula's disputes with Amazon ***and*** its claims relate to the BSA and Maglula's use of Amazon Services. Moreover, Maglula's analysis supports Amazon's position: If the modifier "relating in any way to this Agreement or your use of Services" applied to "any dispute with Amazon or its affiliates," the provision would, in effect, say:

> Amazon and you both consent that any dispute with Amazon or its Affiliates [relating in any way to this Agreement or your use of Services] or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court ….

(BSA ¶ 18.) As shown above, extending "relating in any way to this Agreement or your use of the Services" to the "dispute with Amazon or its Affiliates" provision—as Maglula proposes—renders the terms "dispute" and "claim" provisions redundant, which violates the tenets of contract interpretation. *See Wheeling-Pittsburgh Steel Corp. v. CSX Transp., Inc.*, 112 F.3d 512 (Table) (4th Cir. 1997) (rejecting the district court's interpretation of a contract provision because it did

[8] Maglula also argues that Amazon has "numerous adhesion contracts" that govern distinct interactions with Amazon. (*See* Transfer Opp. at 13.) But the fact that different legal agreements govern various types of relationships—including the BSA to govern the relationship between it and registered third-party sellers—does not affect the scope and applicability of the arbitration provision in any of those contracts, including the provision in the BSA.

"not give each term in the contract meaning").[9] Maglula's interpretation thus cannot be right.

**B. The Carve-Out Does Not Apply.**

The carve-out in the BSA mandatory arbitration provision does not affect the analysis here. The carve-out provides the parties to the BSA a vehicle to pursue immediate relief, such as a preliminary injunction. Accordingly, the plain language of the carve-out is limited to entire ***lawsuits*** (not just claims) that seek injunctive relief:

> Amazon and you both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration . . . except that . . . (ii) ***you or we may bring suit*** in the Governing Courts, submitting to the jurisdiction of the Governing Courts and waiving our respective rights to any other jurisdiction, ***to enjoin infringement or other misuse of intellectual property rights.***

(BSA ¶ 18.) Indeed, the carve-out states that "you or we may bring ***suit***," not "you or we may bring a claim or claims." It does not apply to all allegations of intellectual property infringement or misuse but rather entire actions brought solely to enjoin infringement or misuse. The carve-out thus does not apply here because Maglula asserts some claims for injunctive relief among many others and did not bring an entire suit solely to enjoin Amazon. The carve-out also allows the parties to bring such suits only "in the Governing Courts," i.e., in state or federal courts in King County, Washington. *See* BSA Definitions, "Governing Courts." Maglula did not do that. Should

[9] Maglula attempts to avoid the plain language of the arbitration provision, relying on cases that involved substantively different facts. (*See, e.g.*, Transfer Opp. at 9 (citing *Hersman Inc. v. Fleming Co.*, 19 F. Supp. 2d 1282 (M.D. Al. 1998).) For example, in *Hersman*, the agreement-at-issue was between the plaintiff (a store owner) and a third-party architectural firm that the owner had hired to do architectural work. 19 F. Supp. 2d at 1283-84. The defendant (a party that had agreed to assist the plaintiff after representing that it was qualified) had signed below one provision of the agreement, which obligated the defendant to pay money to the architectural firm. *See Id*. The court denied the defendant's attempt to invoke the arbitration provision because the plaintiff's allegations were unrelated to the defendant's obligation, and the claims did not implicate the agreement. *Id*. at 1286-87. Here, unlike in *Hersman*, all parties are parties to the BSA (*see* Mot. at 1, n.2), the dispute involves parties to the BSA, and the claims relate to the BSA.

the Court find that the carve-out applies, Maglula sued Defendants in the wrong District.

Even if the carve-out were applicable, Maglula seeks several other types of relief—including but not limited to compensatory, statutory, and punitive monetary damages and several orders directing Amazon to perform various actions, such as issue an apology, serve a report, destroy product, and provide information (Compl. at 72-75)—that are not subject to the carve-out. Maglula should not be permitted to escape the BSA's mandatory arbitration provision simply because, among four pages of requested relief, it included a single claim to enjoin infringement. Indeed, courts routinely reject that type of "artful pleading." *Brenco*, 297 F. Supp. 3d at 613 n.5; *see also Polar Commc'ns Corp. v. Oncor Commc'ns, Inc.*, 927 F. Supp. 894, 896 (D. Md. 1996) (*sua sponte* granting leave to file a motion to stay pending arbitration in light of an arbitration clause, rejecting the possibility of a party "nullify[ing] compulsory arbitration clauses at will simply by artful pleading"). Maglula attempts to distance itself from the court's reasoning in *Brenco*, arguing that arbitrable claims do not predominate this lawsuit because "*every* claim in the Maglula Complaint is non-arbitrable since all are directed to infringement of intellectual property rights." (Opp. at 12-13 (emphasis in original).) However, because the scope of the carve-out applies only to suits to enjoin infringement or other misuse of intellectual property rights (*see supra*), not to any claims of infringement or misuse, Maglula's contention that "every claim in the Maglula Complaint is non-arbitrable" is wrong. (*See id*.)

Finally, none of the cases that Maglula relies on to escape coverage by the arbitration provision changes the analysis. For example, Maglula relies on *Schein II* to assert that "the presence of the applicable injunction carve-out governs all." (*See* Opp. at 12.). However, again, the arbitration clause at issue in *Schein II* is distinguishable. It appeared in the middle of the arbitration provision and explicitly carved out "disputes related to" intellectual property:

> Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief ***and disputes related to trademarks, trade secrets, or other intellectual property*** . . . shall be resolved by binding arbitration

*Schein II*, 935 F.3d at 277. And, it contained broad language directed to "actions seeking injunctive relief," but seemingly encompassed actions seeking other relief, in contrast to language that implies "actions seeking *only* injunctive relief." *Id*. at 282, 283 (emphasis in original). Contrary to the carve-out in *Schein II*, the BSA carve-out excludes "suits ***to enjoin infringement***"**—**i.e., it is specific to actions that specifically only seek injunctive relief. Consequently, the court's analysis in *Schein II* does not apply and Maglula's reliance on that case is misplaced.

In other cases that Maglula cites, the carve-outs applied to claims of intellectual property infringement. For example, in *Verinata Health Inc. v. Ariosa Diagnostics, Inc.*, 830 F.3d 1335, 1337 (Fed. Cir. 2016) (*see* Opp. at 5), the arbitration provision explicitly stated that "no arbitration shall resolve [] disputes relating to issues of scope, infringement, validity and/or enforceability of any Intellectual Property Rights." That specifically carves out "issues of infringement," unlike the BSA provision, which is more limited. As another example, *Schein II* involved a broader carve-out that excluded from arbitration actions seeking injunctive relief and disputes related to intellectual property. *See Schein II*, 935 F.3d at 277.

**C. The BSA Mandatory Arbitration Provision Is Not Ambiguous.**

Maglula claims that because BSA is a contract of adhesion and "Amazon's bargaining and market power was [*sic*] far superior to Maglula," ambiguities in the BSA should be resolved against Amazon. (Transfer Opp. at 14.) As an initial matter, Maglula's argument that the BSA's forum selection clause creates ambiguities is wrong for the reasons discussed in Amazon's Reply in support of its Transfer Motion. Moreover, even if the Court were to find ambiguities in the arbitration provision, Maglula's argument rings hollow. On one hand, Maglula claims that it sells

goods "in thousands of . . . independent brick-and-mortar shops across the United States" and "directly to military/tactical gear stores" and that it authorizes dealers and distributors to sell its products—all facts portraying a sophisticated seller and party. (Tal Decl. ¶¶ 3-6.) Maglula even contacted Amazon to discuss the terms of the Brand Registry program. (*Id.* ¶ 9.) Now, Maglula purports to be less sophisticated, asking for special treatment in the context of interpreting the BSA—an agreement that it willingly and knowingly entered, without force or coercion. Maglula's alleged lack of bargaining power should not affect this Court's interpretation of the BSA.

**D. Maglula's Claims Are Also Arbitrable Under The Brand Registry Terms.**

Throughout its opposition briefs, Maglula repeatedly references its participation in Amazon's Brand Registry program ("Brand Registry"). (Opp. at 2-3; Tal Decl. ¶¶ 9-10, Exs. 2-3; Transfer Opp. at 4-5, 7.) Maglula, through its CEO Guy Tal, admits that it joined Amazon's Brand Registry program in August 2018, that it received a copy of the Brand Registry Terms, and that the Brand Registry Terms incorporate by reference a mandatory arbitration provision within the Amazon.com Conditions of Use ("Conditions of Use"). (Tal Decl. ¶¶ 9-10.) Mr. Tal even attached a copy of the Brand Registry Terms and the applicable Conditions of Use to his declaration (Tal Decl. Exs. 2-3) and explains that he discussed certain terms "with Amazon." (Tal Decl. ¶ 9.) The Brand Registry Terms attached to his declaration include a "Disputes" provision that states "Any dispute or claim relating to these terms or any Brand Registry service" is subject to the arbitration provision in the Amazon.com Conditions of Use.[10] (Tal Decl., Ex. 2 ¶ 8.) Maglula repeatedly

[10] To the extent that the Conditions of Use provision that "any dispute or claim relating in any way to any Amazon Service . . . will be resolved by binding arbitration" is the controlling scope, Maglula's claims also fall within that scope. (*See* Tal Decl., Ex. 3.) "Amazon Services" in the Conditions of Use is defined as "website features and other products and services . . . when you visit or shop Amazon.com, use Amazon.com products or services, use Amazon applications for mobile, or use software provided by Amazon in connection with any of the foregoing." (*See id.*) By accessing Amazon's Brand Registry and using Amazon's Brand Registry services, Maglula used that Amazon Service.

acknowledges the Disputes provision, including its incorporation by reference of the arbitration provision. (*See* Mot. at 2-3; Transfer Opp. at 7.)

To the extent that the Brand Registry Terms apply here, Maglula's claims are arbitrable under that agreement, too. Maglula admits that it used Brand Registry and that its use of Brand Registry is central to its claims: In opposing Amazon's Transfer Motion, Maglula states that it "attempted to use Brand Registry to stop the sale of knockoff products" and even complains that Brand Registry was "ineffective" in dealing with the alleged counterfeit issues it raises in its Complaint. (Transfer Opp. at 4-5.) The purpose of Brand Registry is to aid sellers in tracking and curbing IP infringement; Maglula now alleges IP infringement against Amazon and claims that Brand Registry was ineffective in so doing. Accordingly, in addition to falling within the scope of the BSA arbitration provision, Maglula's claims fall within the scope of arbitrable disputes under the Brand Registry Terms to the extent Maglula contends those terms apply.

## III. AMAZON DID NOT WAIVE ARBITRATION.

Maglula's arguments that it is prejudiced by Amazon's "efforts thus far" and that Amazon has waived its right to arbitrate by engaging in litigation are completely unsubstantiated. A party opposing arbitration "bears a heavy burden of proving waiver." *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95, 97 (4th Cir. 1996) (no waiver based on "utilization of the litigation machinery," though party seeking arbitration filed two separate declaratory judgment actions and responded to a motion to dismiss); *see also Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 205 (4th Cir. 2004) (finding no waiver despite eight-month delay, stating that "[w]e previously concluded that delays of such length, without more, are insufficient to demonstrate a party's waiver of its right to arbitration" (listing cases)). Maglula does not come close to carrying that heavy burden; Amazon's motion to compel arbitration is timely, and Maglula cannot demonstrate prejudice as to justify waiver or default.

**A. Maglula Has Not Been Prejudiced.**

Though delay in invoking arbitration may constitute waiver when it prejudices the opposing party, the "heavy burden . . . is not necessarily satisfied even if the party has spent time and resources in discovery activity and motions practice over a period of years." *Fasig-Tipton Kentucky, Inc. v. Michaelson*, 955 F.2d 40 (Table) (4th Cir. 1992).

Maglula identifies only one alleged prejudice: it claims that having to respond to Amazon's three motions—which were timely filed in response to Maglula's Complaint after the parties' agreed-upon 30-day extension—forced them to "reveal litigation positions in opposition."[11] (Opp. at 14.) But two of the three pending motions—the Transfer Motion (Dkt. 26) and the present Motion—are procedural motions that do not require Maglula to reveal any legal positions regarding the substance of its claims. Amazon's third pending motion—the Motion to Dismiss (Dkt. 20)—is a motion based on the ***pleadings***, not the merits of Maglula's claims. Maglula's decision to insert substantive arguments about the merits was of Maglula's own making and should not be held against Amazon.

The cases that Maglula relies on to claim prejudice are inapposite. In *Lewallen v. Green Tree Servicing, LLC*, 487 F.3d 1085 (8th Cir. 2007), the court determined that a creditor seeking arbitration had waived its right to arbitrate because the debtor was prejudiced, but that case is distinguishable: (1) there was an "approximately eleven-month delay" between the creditor's notice of the claim and his seeking arbitration; (2) the parties had engaged in discovery; and (3) the court determined that the debtor opposing arbitration was sent down the "road of trial preparation at a time when [it could] ill afford to waste resources." *Id.* at 1091-93. Here, Amazon

[11] Maglula incorrectly states that Amazon "made no mention of its intent to pursue arbitration" during the agreed-upon 30-day extension (Opp. at 14). Amazon met and conferred with Maglula on this Motion, the Transfer Motion, the Motion to Dismiss, and availability for a hearing.

moved to compel arbitration at the first opportunity, neither party has engaged in discovery, and the unique circumstances of the debtor in *Lewallen* are inapplicable. Thus, the salient facts that led to a finding of prejudice in *Lewallen* do not exist here.

Likewise, Maglula's other cases involve very different facts, and in particular, a pattern of rigorous litigation before arbitration was invoked. In *Fraser v. Merrill Lynch Pierce, Fenner & Smith*, the party moving to compel arbitration waited five years from the filing of the complaint, "extensive discovery efforts were made in the interval," and the court considered "at least eight discovery motions, four of which were made" by the party seeking arbitration. 817 F.2d 250, 251 (4th Cir. 1987). The opposing party had to respond to "damaging motions," including a partial summary judgment motion, and prepare for two trials. *Id.* at 252.[12]

**B. Amazon Has Not Substantially Utilized The Litigation Machinery.**

Amazon moved to compel arbitration at its first opportunity—in response to Maglula's Complaint. The fact that Amazon concurrently filed two other alternative motions—the Motion to Dismiss and the Transfer Motion—does not change that it moved to compel arbitration without delay. Had Amazon not filed its Motion to Dismiss concurrently, there can be no serious doubt that Maglula would instead argue that Amazon had waived its ability to contest the sufficiency of Maglula's pleading. Fed. R. Civ. P. 12(b), 12(h)(1)(B). There is no rule that a party must choose between waiving arbitration and preserving its other legal rights in the litigation. *See Maxum Founds. v. Salus Corp.*, 779 F.2d 974, 982 (4th Cir. 1985). And waiting to move the Court to transfer the case to the more convenient venue of the Western District of Washington—should litigation proceed—would have wasted this Court's resources.

---

[12] The court in *Connell v. Apex Sys., LLC*, No. 3:19-cv-299, 2020 WL 354742 (E.D. Va. Jan. 21, 2020)—another case that Maglula cites—determined no delay or actual prejudice resulted because the party seeking arbitration "filed its first motion to compel arbitration shortly after the plaintiffs filed their complaint," like Amazon did here. *See id*. at *4.

Maglula's argument that Amazon's filing of its Motion to Dismiss waived its right to arbitrate is also wrong. Maglula's reliance on *Lewallen* again is misplaced here. There, the party seeking arbitration delayed for approximately eleven months, let opportunities to seek arbitration pass, engaged in discovery, and moved the court to "dispose of the case on the merits [with prejudice] ***prior*** to even reaching the arbitration." *See* 487 F.3d at 1092. In addition to the distinctions above (*see supra* Section III.1), here, Amazon indicates in all three motions that it is moving the Court to compel arbitration (*see* Transfer Mot. at 8 n.4; Mot. to Dismiss (Dkt. 21) at 1 n.1), and the Court need only consider its other motions if it does not compel arbitration.

Likewise, *Federated Department Stores v. Moitie*, 452 U.S. 394 (1981), *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476 (5th Cir. 2009), and *Ritzel Communications v. Mid-American Cellular Telephone Co.*, 989 F.2d 966 (8th Cir. 1993)—the other cases relied on by Maglula (*see* Opp. at 14-15)—are all factually distinct. *Federated* did not involve arbitration at all; in dicta, the court merely stated that a dismissal for failure to state a claim was a judgment on the merits for the purposes of *res judicata*. 452 U.S. at 399 n.3. In *Petroleum Pipe*, the party seeking arbitration had answered the claims, filed counterclaims, exchanged documents regarding the substantive claims, engaged in settlement negotiations, and engaged the court in several off-the-record conferences through which the court had expressed opinions on the merits that were unfavorable to the party seeking arbitration. 575 F.3d at 479-80, 482. In *Ritzel*, the court's finding of waiver was based on the fact that the party seeking arbitration continued to litigate—through pre-trial conferences, numerous motions, and a six-day bench trial—while its appeal of the arbitration decision was pending, rather than seeking a stay or moving to expedite that appeal. *See*

989 F.2d at 968, 971.[13] None of Maglula's cases contain facts similar to those here.

Finally, the cases cited by Maglula in which the party seeking arbitration attached evidence beyond the pleadings to a Rule 12(b)(6) motion—which became a factor in finding waiver—are irrelevant. Amazon's Motion to Dismiss does not rely on evidence beyond the pleadings—and Maglula has not identified any such evidence. Maglula relies heavily on *Khan v. Parsons Global Services*, 521 F.3d 421 (D.C. Cir. 2008) (*see* Opp. at 15-16), but there, the D.C. Circuit was concerned about the fact that the moving party moved for summary judgment:

> We hold that, irrespective of other indicators of involvement in litigation, filing ***a motion for summary judgment*** based on matters outside of the pleadings is inconsistent with preserving the right to compel arbitration.

*Id*. at 428. Here, Amazon has not moved for summary judgment, nor has it sought any adjudication on the merits. And, Amazon's reliance on evidence beyond the pleadings to support its other concurrent motions, is squarely permitted for those types of motions. *See, e.g.*, *Gibbs*, 2019 WL 4752792 at *20 ("[M]otions to compel arbitration often require courts to consider evidence outside of the pleadings."); *Newbauer v. Jackson Hewitt Tax Service, Inc.*, No. 2:18-cv-679, 2019 WL 1398172, *3 (E.D. Va. Mar. 28, 2019) (same regarding transfer motions under § 1404(a)).

## <u>CONCLUSION</u>

For the reasons stated in Defendants' opening Memorandum of Law and in this Reply, Defendants respectfully request that this Court (a) compel arbitration of all of Maglula's claims and dismiss, or (b) in the alternative, stay the entire action pending resolution of arbitration. *See* *Vroom v. Gen. Elec. Co.*, No. 1:10-cv-1250, 2011 WL 13076919, *2 (E.D. Va. Jan. 28, 2011).

---

[13] To the extent that the *Ritzel* court discussed that the party seeking arbitration had filed a motion to dismiss, it made clear that the party's "first response ***was not*** to demand arbitration." 989 F.2d at 969. The party seeking arbitration also filed a motion to sever the claims against it for a separate trial, which the court interpreted as "request[ing] a trial." *Id*. That is not the case here, where Amazon's first response ***was*** to demand arbitration, and Amazon has not requested a trial.

Dated: February 25, 2020

By: *<u>/s/ Justin P.D. Wilcox</u>*

Justin P.D. Wilcox (#66067)
John M. Desmarais (*pro hac vice*)
Laurie Stempler (*pro hac vice*)
Priyanka R. Dev (*pro hac vice*)
Thomas Derbish (*pro hac vice*)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401
Email: jwilcox@desmaraisllp.com
jdesmarais@desmaraisllp.com
lstempler@desmaraisllp.com
pdev@desmaraisllp.com
tderbish@desmaraisllp.com

*Attorneys for Defendants Amazon.com, Inc. and Amazon.com Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

Dated: February 25, 2020

By: */s/ Justin P.D. Wilcox*

Justin P.D. Wilcox (#66067)
John M. Desmarais (*pro hac vice*)
Laurie Stempler (*pro hac vice*)
Priyanka R. Dev (*pro hac vice*)
Thomas Derbish (*pro hac vice*)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401
Email: jwilcox@desmaraisllp.com
jdesmarais@desmaraisllp.com
lstempler@desmaraisllp.com
pdev@desmaraisllp.com
tderbish@desmaraisllp.com

*Attorneys for Defendants Amazon.com, Inc. and Amazon.com Services, Inc.*