# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| MAGLULA, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES, INC.,<br><br>Defendants. | Civil Action No. 1:19-cv-01570-LO-IDD |

**PLAINTIFF'S SUR-REPLY TO DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE TO THE WESTERN DISTRICT OF WASHINGTON**

# TABLE OF CONTENTS


I. ARGUMENT .......... 1

A. The BSA Does Not Apply to Maglula's Claims .......... 1

1. If Anything, Brand Registry Applies .......... 1

2. Maglula's Claims Are Not Related to the Pictures Uploaded to Maglula's Account .......... 3

3. Amazon Has Not Proven that the "Elected Country" Is the U.S. .......... 4

B. Maglula Has Unique Contacts in Virginia .......... 5

C. Amazon's Claim that It Has Insufficient Contacts with Virginia Is Wrong .......... 6

II. CONCLUSION .......... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bd. of Trs. v. Sullivant Ave. Props., LLC*,
508 F. Supp. 2d 473 (E.D. Va. 2007) ....................4

*Samsung Elecs. Co. v. Rambus Inc.*,
386 F. Supp. 2d 708 (E.D. Va. 2005) ....................5

*United Fixtures Co. v. Base Mfg.*,
6:08-cv-506-Orl-28GJK (M.D. Fla. Aug. 4, 2008)....................8

**Federal Statutes**

18 U.S.C. § 2320....................6

**Rules**

Fed. R. Civ. P. 45(c)(1)(a) ....................7

Maglula files this sur-reply to address new facts and arguments raised in Amazon's reply regarding the BSA and the convenience factors. (Dkt. 43.) For the reasons below, as well as the reasons stated in Maglula's opposition (Dkt. 41), Amazon's motion to transfer should be denied.

# I. ARGUMENT

## A. The BSA Does Not Apply to Maglula's Claims

### 1. If Anything, Brand Registry Applies

Amazon asserts that the forum selection clause in the BSA applies. (Dkt. 41-3, ¶ 8.) In support, Amazon submits a new declaration from Jesse Jensen, an employee who provides new factual and legal interpretations of the BSA. (*See*, *e.g.*, Dkt. 43-1, ¶ 8 (assessing the breadth of the BSA's preamble).)[1,2]

Amazon's litigation arguments conflict with its past representations to Maglula. Specifically, on December 10, 2018, a "vendor manager at Amazon" named Josh Cowan represented to Maglula's CEO, Mr. Guy Tal, that: "You can handle these [counterfeit] problems through the Brand Registry Amazon platform." (Tal Sur-Reply Decl., ¶ 2, Ex. 1.) When Mr. Tal asked Mr. Cowan to forward his earlier email regarding Amazon's sale of counterfeit Maglula

[1] Notably, Mr. Jensen's interpretation of the BSA changed between Amazon's initial motion and its reply. In his initial declaration, Mr. Jensen stated that the BSA "governed Maglula's *'access to and use of the services.'*" (Dkt. 27-2, ¶ 12 (emphasis added).) Mr. Jensen now claims that the BSA governs a seller's (including Maglula's) "use of Amazon.com" and that the "General Terms" of the BSA "apply to all registered sellers" without any limitations. (*See* Dkt. 43-1, ¶ 7.)

[2] Amazon also asserts for the first time in its reply—and without any basis in fact or law—that Maglula's relationships with third-party dealers and distributors selling genuine products on Amazon somehow binds Maglula to whatever agreements those third parties may have with Amazon. (*See* Dkt. 43 at 7-8.) This argument fails because the BSA's provisions, even assuming they apply, can only be imputed to a nonparty when the seller has substantial "control" over that party (e.g., the nonparty is an "Affiliate"). (*See* Dkt. 24-2 at 9-10.) Here, Maglula neither controls nor is controlled by dealers and distributors of its products who may have their own BSAs with Amazon. (Declaration of Guy Tal in Support of Maglula's Sur-Reply ("Tal Sur-Reply Decl."), ¶ 11.)

products "to Amazon's legal department," Mr. Cowan responded:

> Let me be clear in saying that I am a vendor manager at Amazon, and I have direct relationships with Amazon vendors to help them solve these problems when necessary. ***<u>You are not an Amazon vendor</u>***. . . . ***In regard to your issues, they are ABSOLUTELY due to Brand Registry***.

(*Id.* (capitalization in original, other emphases added).)[3]

This was not the first time Amazon represented to Maglula that Maglula's counterfeiting complaints related to Brand Registry, as opposed to the BSA and Maglula's "seller" account. In 2017, Maglula's outside counsel corresponded with Amazon's in-house counsel about the counterfeiting issue, the possibility of joining Brand Registry, and how disputes under Brand Registry were resolved. (Tal Sur-Reply Decl., ¶ 3, Ex. 2.) Amazon directed Maglula to the Brand Registry agreement, not the BSA or Maglula's "seller" account, even though the account was open at the time of the exchange (just as it was during Maglula's exchange with Mr. Cowan). (*Id.*) Several other Amazon employees also directed Maglula to Brand Registry as the preferred channel for reporting counterfeit issues. (Tal Sur-Reply Decl., ¶ 4.)

Thus, it is clear from Amazon's past representations and conduct that if any agreement applies, it is the Brand Registry agreement and not the BSA. This is significant because the

---

[3] Mr. Cowan's note continued, largely blaming Maglula for Amazon's failures:

> The reason that counterfeit product would have made it to liquidation is due to the fact that claims were not submitted against those sellers by you, the manufacturer. Like any major marketplace, these issues are very difficult to manage for a company the size of Amazon, so we've created tools for brand owners to use to manage those issues and bring them forward so we can action them appropriately. If you action all of your suspected counterfeit claims through brand registry, naturally product would not hit liquidation anymore and those sellers would have to find another outlet to sell these products.

(Tal Sur-Reply Decl., ¶ 2, Ex. 1.)

Brand Registry agreement does not contain a forum selection clause. (Dkt. 41-3, Exs. 2-3.).[4]

### 2. Maglula's Claims Are Not Related to the Pictures Uploaded to Maglula's Account

Amazon contends that certain pictures uploaded to Maglula's "seller" account somehow bring this case under the BSA's purview. (*See* Dkt. 43 at 3, 5.) But the infringement allegations in Maglula's Complaint, all of which are based on knock-off products sold by Amazon, are separate from (and have nothing to do with) Maglula's now-terminated "seller" account or the photos uploaded to it. ***Amazon would still have made each of the infringing knock-off sales had Maglula never became a "seller."*** Indeed, Amazon's counterfeit sales started before Maglula registered and continued after Maglula's account closed.

Amazon's strained attempt to tie its counterfeiting to the BSA's license provision also fails. That provision is intended to facilitate the lawful use of intellectual property in connection with the sale of *genuine* products through Amazon's website. The license gives Amazon no right to sell counterfeits or undertake other infringing activity. (*See* Dkt. 41 at 10-11.)

Further, and contrary to Amazon's assertions, the images uploaded to Maglula's "seller" account do not form "the basis for Maglula's claims of trademark and copyright infringement." (Dkt. 43 at 5.) Maglula's Complaint does not assert trademark rights in the uploaded photos. (*See*, Dkt. 1, ¶ 25 (defining the "Maglula Trademarks" as various marks registered with the USPTO).) And Maglula's copyright claims relate to (1) the photographs depicted on the UpLULA® product packaging insert card (Dkt. 1, ¶ 26) and (2) design elements of the

---

[4] Even without Amazon's prior representations, its reply brief reinforces that the BSA provisions raised are, at minimum, ambiguous, which means they must be construed in Maglula's favor. *See*, *e.g.*, 11 Samuel Williston & Richard A. Lord, *A Treaties on the Law of Contracts* § 32:12, at 476-81 (4th ed. 1993 & Supp. 2005) ("Indeed, any contract of adhesion, a contract entered without any meaningful negotiation by a party with inferior bargaining power, is particularly susceptible to the rule that ambiguities will be construed against the drafter.").

UpLULA® product itself. (*Id.*, ¶¶ 27-28). A comparison between the images in the Complaint and those uploaded to Maglula's "seller" account shows they are different. (*Compare* Dkt. 1, ¶¶ 26-28 *with* Dkt. 27-4.) Thus, whatever "license"[5] Amazon claims it has to the uploaded photos, it has no bearing on the actual intellectual property rights Maglula asserts in this case.

### 3. Amazon Has Not Proven that the "Elected Country" Is the U.S.

The BSA's forum selection clause only applies if the "Elected Country" is the U.S., Canada, or Mexico. (Dkt. 27-3 at 7.) According to Amazon, "a seller must *elect* a country associated with its account" when registering, and Maglula "chose" the U.S. (Dkt. 43-1, ¶ 6 (emphases added).) But Amazon provides *no proof* that Maglula actually elected the U.S.—just a bare, self-serving allegation. (*See generally*, Dkt. 27; Dkt. 43 at 5 n.4; Dkt. 41 at 16.) *See also Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 478 (E.D. Va. 2007) (denying motion to transfer and finding defendants' assertion—through an unsupported declaration—"conclusory and unsupported by persuasive evidence").

In fact, Amazon's current seller sign-up process affords no such "election" before a would-be seller accepts the BSA. (*See generally*, Declaration of Morgan E. Smith in Support of Maglula's Sur-Reply ("Smith Sur-Reply Decl.").) The only place to identify a country before accepting the BSA is in response to a request for a "business location." (*Id.*, ¶ 5.) Maglula identified itself as located in Israel when registering as a "seller." (Tal Reply Decl., ¶ 5.) Indeed, Amazon recently requested a tax form from Maglula that is only required for ***foreign persons***. (*Id.*, ¶ 6, Ex. 4.) Amazon's own conduct makes clear that, whatever country is "associated with [Maglula's] account," it is not the U.S. (Dkt. 43-1, ¶ 6.) Thus, the BSA and its

---

[5] For at least the reasons stated in Maglula's response to Amazon's motion, this "license" is invalid. (*See* Dkt. 41 at 10, n.4.)

forum selection clause do not apply to Maglula's claims.[6]

**B. Maglula Has Unique Contacts in Virginia**

Amazon's reply mischaracterizes the law in suggesting that Maglula's contacts with Virginia must be "unique," and that its contacts through Cabela's, Dick's, and Bass Pro Shop are insufficient because those stores also have outlets in other districts. *See Samsung Elecs. Co. v. Rambus Inc.*, 386 F. Supp. 2d 708, 716 (E.D. Va. 2005) (respecting South Korean plaintiff's choice of forum as "legitimate" even when its only U.S. office was outside the forum because "the plaintiff's choice of forum is certainly a relevant consideration so long as there is a connection between the forum and the plaintiff's claim that reasonably and logically supports the plaintiff's decision to bring the case in the chosen forum."). In any event, Maglula identified additional contacts with Virginia in its opposition brief that "reasonably and logically" support its decision to bring the case here. Specifically, Maglula described direct sales to Marine Corps exchanges in Quantico and Camp Allen, Virginia, as well as Coast Guard exchanges in Centreville and Chesapeake, Virginia. (Dkt. 41 at 19; Dkt. 41-3, ¶ 4-5.)

Beginning in June 2017, the Marine Corps expressed interest in Maglula's StripLULA® product, which was brought to Maglula's attention by ADS, Inc. of Virginia Beach, Virginia. (Tal Reply Decl., ¶ 7, Ex. 5.) Maglula supplied ADS with the requested StripLULA® products. (*Id.*, ¶ 7.) Then, in February 2019, a Logistics Management Specialist with Marine Corps Systems Command in Quantico contacted Maglula stating that the Marine Corps was interested in cataloguing the StripLULA® product, and requested technical data for this product. (*Id.*, ¶ 8.) Maglula provided the requested information after consulting Israel's IDF Cataloging Service,

[6] While Amazon also claims "Maglula did not deny that the Elected Country is the United States" (Dkt. 43 at 5 n.4), Amazon made *no allegations* regarding the Elected Country until its reply brief, so there was nothing for Maglula to admit or deny until now.

and a National Stock Number was issued in July 2019. (*Id.*, ¶ 8, Ex. 6.) In a separate transaction, Maglula met a Marine Corps Captain at an industry conference in Las Vegas, NV in January 2020. (*Id.*, ¶ 9.) After the conference, he contacted[7] Guy Tal to inform him that the Marine Corps would begin evaluating the UpLULA® product at issue in this case. (*Id.*) Maglula has been facilitating this evaluation. (*Id.*) These interactions—and the potential sale of numerous Maglula products to the Marine Corps—reinforce the unique and strong connections Maglula has with this District.[8]

### C. Amazon's Claim that It Has Insufficient Contacts with Virginia Is Wrong

Amazon incorrectly suggests in its reply brief that counterfeit products sold in, shipped to, or shipped from Virginia were inconsequential because they were purchased by Maglula's attorney. Maglula's attorneys investigated Amazon's counterfeiting through a pre-suit Fed. R. Civ. P. 11 investigation, and Maglula is entitled to rely on the results, including purchases, in the Complaint. Amazon also overlooks that there were non-attorney counterfeit purchases as well. As alleged in the Complaint, Amazon sold and distributed counterfeits to customers in this District. (*See* Dkt. 1, ¶ 18.) These allegations should be taken as true for purposes of evaluating Amazon's motion. In any event, Amazon has not denied them. Two of the counterfeits pictured

[7] Maglula has copies of its confidential correspondence with both Marine Corps members. Maglula will produce them once a protective order is entered in this case.

[8] The military connections are also potentially significant because they, combined with Amazon's counterfeit sales, may implicate 18 U.S.C. § 2320, which makes it a crime to sell certain "counterfeit military good[s] or service[s]." While any decision to enforce 18 U.S.C. § 2320 lies with a federal prosecutor (and not Maglula), the mere existence of this statute—and its potential application to Amazon's conduct in this District—overrides Amazon's forum shopping arguments and shows that Amazon does not grasp the severity of its counterfeiting conduct. Notably, a criminal action initiated under 18 U.S.C. § 2320 would overlap with Maglula's civil action because any Lanham Act defenses in this case could also be asserted in the criminal action. 18 U.S.C. § 2320(d). For these reasons, there is a strong public interest in allowing Maglula to *quickly* resolve its dispute with Amazon in this District, and not letting it languish in the Western District of Washington.

on page 29 of the Complaint (which were reported to Maglula by customers) were sold *by Amazon* to customers *in Virginia*, while another invoice for a counterfeit product was received from a customer who resides in this District (in Montpelier, Virginia). (Tal Sur-Reply Decl., ¶ 12-13, Exs. 7-8.) In contrast, none of the page 29 counterfeits were sold to customers in Washington state. (*Id.*, ¶ 14.) It would prejudice Maglula to transfer its case from a district where it knows counterfeiting activity has occurred.

Maglula's Complaint also describes how Amazon sells Maglula counterfeits and knock-offs through pallet liquidation. (Dkt. 1, ¶¶ 52-56.) Maglula provided examples of purchases from Liquidation.com containing counterfeit Maglula products. (*Id.* at ¶¶ 54-55.) A Liquidation.com representative verified that the liquidated boxes containing these products came from Amazon. (*Id.*, ¶ 54.) At least one of the invoices provided by Liquidation.com lists a Washington, D.C. address, while the company's website suggests it may be headquartered in Bethesda, Maryland. (Dkt. 1, ¶ 54; Smith Reply Decl., ¶ 6, Ex. 4.) Either way, this third party is within the Court's subpoena power, and not within the subpoena power of the Western District of Washington. Fed. R. Civ. P. 45(c)(1)(a).

Amazon's reply argument that this dispute is confined to a small set of Amazon witnesses residing in Seattle thus misses the mark.[9] The current dispute between Maglula and Amazon implicates Amazon warehouses. Significant to this particular case is Amazon's comingling of genuine UpLULA® products with counterfeits—sometimes in the same inventory "bins" and in the same facilities, *including the facilities Amazon operates in this District*—such that Amazon

[9] Despite referencing a small number of relevant employees, Amazon touts having 8,000 employees who focus on "preventing counterfeits, unsafe products, and other types of abuse in [Amazon's] store." (*See* Smith Sur-Reply Decl., ¶ 7, Ex. 5.) Thus, the universe of potentially relevant witnesses appears far broader than Amazon pretends.

sells and/or ships counterfeits in response to orders for genuine products.[10, 11] Maglula plans to obtain information from these Virginia warehouses in discovery and understand how and why they are shipping counterfeit Maglula products.

## II. CONCLUSION

For the foregoing reasons, Maglula respectfully requests that the Court deny Amazon's motion to transfer this action to the Western District of Washington. To the extent this Court believes Maglula has not shown a sufficient connection between Maglula's claims and this District, Maglula requests permission to take targeted discovery of Amazon on this issue before deciding the motion. *United Fixtures Co. v. Base Mfg.*, No. 6:08-cv-506-Orl-28GJK (M.D. Fla. Aug. 4, 2008) (granting targeted discovery, including interrogatories and deposition, before deciding transfer motion). Here, good cause exists for this discovery—there is no doubt Amazon has more ties to this District than Maglula currently knows of at this time, and discovery will help Maglula identify the extent of those connections.

[10] Amazon has not denied that it operates facilities in this District. Nor has it denied that its facilities in this District are involved in the sale and/or distribution of counterfeit products as alleged in the Complaint.

[11] Earlier this week, Amazon's Vice President of Worldwide Customer Trust and Partner Support testified to the House Subcommittee on Consumer Protection and Commerce that Amazon "virtually" comingles product from different sellers, fills orders from inventory closest to customers, and does not inform customers as to whose product the customers *actually receive*. (*See* March 4, 2020 Hearing on "Buyer Beware: Fake and Unsafe Products on Online Marketplace," https://energycommerce.house.gov/committee-activity/hearings/hearing-on-buyer-beware-fake-and-unsafe-products-on-online-marketplaces at 1:15:20 - 1:19:20.)

Dated: March 6, 2020

Respectfully submitted,

*/s/ Jeffrey A. Berkowitz*

Jeffrey A. Berkowitz (Virginia Bar No. 65149)
jeffrey.berkowitz@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Telephone: (571) 203-2700
Facsimile: (202) 408-4400

Danny M. Awdeh (*pro hac vice*)
danny.awdeh@finnegan.com
David K. Mroz (Virginia Bar No. 94011)
david.mroz@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

Morgan E. Smith (*pro hac vice*)
morgan.smith@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, CA 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

Attorneys for Plaintiff Maglula, Ltd.