UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

MAGLULA, LTD.,                    )
                                  )
          Plaintiff,              )  Civil Action
                                  )  No. 1:19-CV-01570-LO-IDD
     v.                           )
                                  )  October 23, 2020
AMAZON.COM, INC.,                 )  10:32 a.m.
                                  )
          Et al.,                 )
                                  )
          Defendants.             )

        *TRANSCRIPT OF MOTION HEARING PROCEEDINGS*
                *(Viz Zoom Conference)*
        *BEFORE THE HONORABLE IVAN D. DAVIS,*
      *UNITED STATES DISTRICT COURT MAGISTRATE JUDGE*

APPEARANCES:

  For the Plaintiff:          **Sonja Wolf, Sahlsten, Esq.**
                              Finnegan Henderson Farabow Garrett &
                              Dunner LLP (DC)
                              901 New York Ave NW
                              Washington, DC 20001-4413
                              202-408-4000
                              Fax: 202-408-4400
                              Sonja.wolf@finnegan.com

                              **David Kenneth Mroz, Esq.**
                              Finnegan Henderson Farabow Garrett &
                              Dunner LLP (DC)
                              901 New York Ave NW
                              Washington, DC 20001-4413
                              202-408-4000
                              Fax: 202-408-4400
                              David.mroz@finnegan.com

                              **Jeffrey Allen Berkowitz, Esq.**
                              Finnegan, Henderson, Farabow,
                              Garrett, & Dunner, LLP
                              11955 Freedom Drive
                              Reston, VA 20190
                              (571) 203-2700
                              Jeffrey.berkowitz@finnegan.com

APPEARANCES:  Cont.

For the Plaintiff:          **Jency J. Mathew, Esq.**
                            Finnegan, Henderson, Farabow,
                            Garrett, & Dunner, LLP
                            11955 Freedom Drive
                            Reston, VA 20190
                            (571) 203-2700
                            Jency.mathew@finnegan.com

For the Defendants:         **Justin Wilcox, Esq.**
                            Desmarais LLP
                            230 Park Ave.
                            26th Floor
                            New York, NY 10169
                            212-351-4905
                            Jwilcox@desmaraisllp.com

                            **John M. Desmarais, Esq.**
                            Desmarais LLP
                            230 Park Ave.
                            26th Floor
                            New York, NY 10169
                            212-351-3420
                            Jdesmarais@desmaraisllp.com

                            **Laurie Stempler, Esq.**
                            Desmarais LLP
                            230 Park Ave.
                            26th Floor
                            New York, NY 10169
                            212-808-2917
                            Lstempler@desmaraisllp.com

                            **Priyanka R. Dev, Esq.**
                            Desmarais LLP
                            230 Park Ave.
                            26th Floor
                            New York, NY 10169
                            212-808-2917
                            Pdev@desmaraisllp.com

Court Reporter:             **Scott L. Wallace, RDR, RMR, CRR**
                            Official Court Reporter
                            United States District Court
                            401 Courthouse Square
                            Alexandria, VA  2231-5798
                            703.549.4626
                            Scottwallace.edva@gmail.com

1        <u>FRIDAY MORNING SESSION, OCTOBER 23, 2020</u>

2        THE COURTROOM CLERK:  The Court calls the final matter,

3   Civil Action Number 19-1570, *Maglula, Ltd. versus Amazon.com,*

4   *Inc., et al*.

5        May we have the appearances of counsel, starting with the

6   plaintiff, please.

7        MS. SAHLSTEN:  Good morning, Your Honor.  This is Sonja

8   Sahlsten on behalf of the plaintiff, Maglula.  I'm here with my

9   colleagues Jeff Berkowitz, Dave Mroz, and Jency Mathew.

10       THE COURT:  Good morning.

11       MR. WILCOX:  Good morning, Your Honor.  This is Justin

12   Wilcox from Desmarais LLP on behalf of Defendant Amazon with my

13   colleagues John Desmarais, Laurie Stempler, and Priyanka R. Dev.

14   And also on the line is a client representative from Amazon, Ajit

15   Pai {sp}.

16       THE COURT:  Good morning.  All right.  This matter is

17   before the Court on a motion by the plaintiffs --

18       MS. SAHLSTEN:  The defendants, Your Honor.

19       MR. WILCOX:  The defendants, Your Honor.

20       THE COURT:  The defendants for the plaintiff to supplement

21   their answer to Interrogatories Number 1 and 3 and, essentially,

22   to provide additional information concerning the claim charts

23   about the accused infringing products in this case.

24       The Court has had an opportunity to review the motion,

25   memorandum in support, the opposition to the motion, and reply to

1    that opposition.

2         Is there anything that the defendants would like to add to

3    your motion at this time?

4         MR. WILCOX:  Yes, Your Honor.  If you would indulge some

5    argument on our motion, we're prepared to go forward.

6         THE COURT:  All right.

7         MR. WILCOX:  May it please the Court, Your Honor.  Amazon

8    is seeking supplemental infringement contentions from the

9    plaintiff, Maglula.  Those contentions are required by the

10   parties' scheduling order, and they're requested through

11   Interrogatories Number 1 through 3.

12        This is a case about magazine loaders, and in case the

13   Court is not familiar, magazine loaders are devices that are used

14   to help a weapon's owner reload empty magazines with additional

15   ammunition.

16        Amazon does not manufacture any magazine loaders.  The

17   accused products in this case were provided by third parties and

18   sold on Amazon's Website.

19        Now, Maglula's patents in this case cover a very specific

20   magazine loader.  Maglula doesn't claim to have invented the

21   magazine loader, just to propose an improvement to it, and that

22   particular improvement has a very specific internal structure,

23   and, according to the claims, has to interact with a magazine and

24   ammunition they load in a very particular way, and one cannot

25   tell from pictures on a Website or the product just sitting in

1    the packaging whether or not that device is going to supposedly

2    meet Maglula's patent claims, and that's evidenced by the fact

3    that in Maglula's own contentions in their charts for the

4    particular products they did chart, they actually provide

5    pictures of an internal structure.  And, you know, Your Honor

6    could view that as Exhibit E at 13 through 15.  That's Exhibit E

7    of docket number 73.

8           Our problem with Maglula's contentions and interrogatory

9    responses is they don't provide adequate notice for all the

10   products that Maglula is currently accusing in the case.  In

11   their infringement contentions, they've identified over 300

12   different products, but they've only charted nine of those

13   products, and they want to say that these products -- these nine

14   products they charted are representative, but there's no factual

15   basis in order to support that contention.  You know, it's

16   evident that Maglula has done some analysis for the nine.  They

17   charted them.  We don't have an issue with those particular

18   charts for those nine products.  What we do have a problem with

19   are what Maglula's contentions are for the other 300 products

20   that were never charted, and this is a particular problem because

21   sitting here today we're a little over five weeks away from the

22   close of fact discovery on November 30th.

23           (Noise interference.)

24           MR. WILCOX:  Your Honor, that's not on my end.  That's

25   background noise.  Could we ask everybody else to mute?  I've

1    been hearing some background noise.

2         THE COURT:  It appears everyone is muted.

3         MR. WILCOX:  All right.  Thank you, Your Honor.  So what

4    we're concerned with here is that they charted nine products,

5    they have another 300 products that haven't been charted, and

6    they provided no basis for why they weren't the same as the nine,

7    and here we're very close to the end of fact discovery, and we're

8    concerned about a shifting stance here, that somehow the nine

9    that they charted aren't really the ones that, you know, they're

10   going to focus on in their case going forward.

11        And for us to be able to prepare our defense, we need to

12   get an actual factual basis for these products, and that's what

13   we're seeking in this motion.

14        I would like to next turn to why representative charting

15   doesn't work in this case.  This is a case, as Maglula says,

16   about counterfeits and knockoffs, and they've identified a

17   hundred different suppliers that have either supplied or sold

18   products on Amazon's Website, and that list of suppliers is on

19   exhibit -- is in Exhibit L at pages 6 through 9.

20        So, unlike the cases that Maglula cited where, for

21   example, there's an industry standard of how all particular

22   products are supposed to work, there is no such common or

23   standard design required by a standard body or anyone else for

24   magazine loaders.  There's no requirement that the different

25   suppliers and manufacturers of the alleged knockoffs make the

1  magazine loaders according to the claims of Maglula's patents.

2  And, you know, we provided an analogy in our brief to cookies in

3  a supermarket, you know.  If a bakery accuses particular cookie

4  brands, you know, Nabisco or Pepperidge Farm or Keebler of all

5  infringing their chocolate chip cookies' recipe, you know, but

6  only points to Keebler in its charts, then what's the basis that

7  the other, you know, suppliers of cookies are all following the

8  same recipe or providing, you know, the same finished product?

9  And that's the problem here.  There's no basis for why these

10 uncharted products somehow conform to the ones they have charted.

11        And now I would direct Your Honor to Exhibit D to our

12 motion at page 4, and this is the cover pleading to Maglula's

13 infringement contentions, and this is where they supposedly

14 provide their basis for why these products all work the same, and

15 they say -- they provide a quote, it's in a quote -- "regardless

16 of classification, all products are structurally and functionally

17 the same."  There's no other explanation, there's no citation to

18 any documents, and there's no expert declaration, so there's

19 literally no basis for us to go on as to why these products all

20 supposedly work the same.

21        THE COURT:  Well, how do you define "structurally and

22 functionally the same"?  Because you came back, I believe, in

23 your reply saying something about putting chocolate chips in the

24 cookie.  I have to admit to you, I didn't get that analogy at

25 all, but, you know -- because you talked about the cookie, and

1    then you talked about them stocking it on the shelves, which

2    doesn't seem to me to have anything to do with the cookie itself,

3    unless you were going to relate that they somehow infringed and

4    there was a method infringement based on the way they stacked

5    them on the shelves, because they sell more of their cookies when

6    they have Keebler first, this one second, and this one third on

7    the shelf, but that's neither here nor there.

8            If you said structurally the same, and you said this one

9    has ten chocolate chip cookies, how do we know this one has ten?

10   Then doesn't the term structurally identical -- if this one has

11   ten chocolate chips and you say structurally identical, that has

12   to include the fact that the other cookie has ten chocolate

13   chips.  So how else do you define the word structurally?

14           MR. WILCOX:  Your Honor, our problem --

15           THE COURT:  {Indiscernible}.  It's made up, correct?

16           MR. WILCOX:  I'm sorry, Your Honor, I didn't catch that

17   last point.

18           THE COURT:  This cookie is really how -- the makeup of

19   something, correct?

20           MR. WILCOX:  Correct, Your Honor.

21           THE COURT:  Operationally, it's how it functions.  If it's

22   made up identically and it functions identically to a product

23   they do name in the nine, how is that not a fact?

24           MR. WILCOX:  Your Honor, it's not a fact --

25           THE COURT:  How does that not put you on notice that

1    they're basically saying that these other 298 products are the

2    same as the nine we gave you?  That's how I read it.  I mean, all

3    those -- you just want them to go through the extra effort of,

4    okay, somehow they must have explained what you considered was

5    sufficient enough facts in the actual claim, right?  Well, they

6    can just then say, well, in a supplemental statement to you, the

7    other 292 function like this and use the exact same facts that

8    they put in the claim chart for the nine that they gave you on

9    how it's structurally -- how it is structurally and how

10    these nine, how they're structured, how these nine, how they

11    function.  And instead of just saying for those 292 others that

12    they're structurally and operationally identical, they could just

13    repeat the exact same language for how the nine are structured

14    and how they operate and say these other 292 are structured and

15    operate the same, which is what they did.

16         So, I'm confused on how those aren't facts.  Because if

17    it's six -- if the first nine says that the plunger has to be at

18    a 90-degree angle and it has to be a plastic or rubber coating on

19    the back, and when you push this button, the thumb in the middle

20    of it, the V opens up to a regular V rather than an inverted V,

21    and all of those would be facts, and then they go to the 292 and

22    say it's structurally the same, to me that would mean that those

23    other 292, once you put your thumb on the -- you know, the

24    inverted V, it turns into a regular V, that that's what that

25    means.  How can you interpret that to mean anything else?

1    MR. WILCOX:  Your Honor, our problem with what they have

2    done is that they lack a factual basis for that statement, and if

3    we look at other cases --

4    THE COURT:  Okay.  So, then, you -- what do you mean?  You

5    don't get a motion to dismiss because they state those are the

6    facts.  For a 12(b)(6), those facts are assumed to be true.  If

7    you go through the discovery process and find that those facts

8    are not true, if you all didn't agree to an uncontested statement

9    of undisputed or uncontested facts, then you file a summary

10   judgment motion and you win, but the discovery process in the

11   case goes on until you do that.  That's why we have discovery.

12   No one has all the facts in discovery.  That's why we go through

13   the discovery process.

14   MR. WILCOX:  Yes, Your Honor.

15   THE COURT:  What you're saying is they had no basis upon

16   which to state the facts they stated for the first nine in the

17   chart.  If they had a factual basis for those nine and they say

18   these are structurally in whatever it is that's being studied,

19   then why do you think they don't have -- what do you know that

20   they didn't do that you believe that they were supposed to do to

21   acquire the factual basis for the 292 that weren't included in

22   the chart that they did do an investigation for, the nine that

23   were included?

24   MR. WILCOX:  Your Honor, so I will answer it like -- I'm

25   not sure if I'm clear or not.  This is not a motion to dismiss.

1    We're seeking to compel admissions or contentions.

2           THE COURT:  I know that, but I'm saying you're saying they

3    have no facts.  They have -- you're obviously arguing or stating

4    that they have sufficient facts for the claimed chart they set

5    forth or provided for with the nine.  If they say everything

6    about these other 292 is the same as those nine, how does that

7    not place you on notice of how these other 292 are structured and

8    operate?  They're structured and operate the exact same way as

9    the nine representatives they provided you.  That's what they're

10   saying.

11          MR. WILCOX:  Your Honor, our position is that Maglula

12   needs to come forward with some facts.

13          THE COURT:  It's the facts in the nine they placed on the

14   chart.

15          MR. WILCOX:  Your Honor, but they haven't presented any

16   facts as to why there's hundreds of other unclassified --

17          THE COURT:  {Indiscernible}.  How are they structured?

18   How does it operate?  Why it operates that way has nothing to do

19   with a patent.

20          MR. WILCOX:  A patent --

21          THE COURT:  Why?  Because someone wanted it to.  That's

22   the answer to that question.  I make a product.  Why did I make

23   it?  Because actually I wanted to make money.  That's the answer

24   to every why.

25          MR. WILCOX:  Your Honor, we're not --

```
 1        THE COURT:  To sell them to make money.  There's your why.

 2   We're not talking about why, we're talking about how.  How did

 3   this product function?  And how -- what is it made up of?  And

 4   how did those parts, when they interact with each other, make

 5   this product function?  And if the product is -- they're claiming

 6   you infringed upon them because you either sold them or you

 7   posted them on your Website, and they say you assisted or aided

 8   in the infringement; that those other 292 products have the exact

 9   or substantially the same or similar components.  Those

10   components interact with each other, they say, the same way, and

11   this is the end result.

12        MR. WILCOX:  Your Honor, in similar situations courts have

13   held that what Maglula has done here is not sufficient.  For

14   example, we cite the Alacritech versus CenturyLink case, that's

15   2017-WL-3007464, and I direct the Court to page 4.  So there the

16   plaintiff in that case did something similar to Maglula.  They

17   said, Look, take our word for it, we charted a couple just the

18   same as all these other ones where --

19        THE COURT:  I don't understand what you mean by "take our

20   word for it".  Their words are the facts that they place on the

21   claim chart for the nine representative samples.  They didn't

22   give you a claim chart with all 300 with the other 292 stating

23   the exact same language that they put on the claim chart for the

24   nine that were in the process.  How does that get you anywhere

25   when they already tell you that's exactly what we're going to do
```

1    by saying it's structurally and operationally the same?

2        MR. WILCOX:  Your Honor, we're seeking the basis for that

3    statement that they're structurally and operationally the same.

4    There's no evidence that they --

5        THE COURT:  You're asking a different question.  You're

6    asking a question that sometimes people provide in motions when

7    they file motions to compel.  What investigation did you do

8    pursuant to your ethical rules -- or Federal Rules of Civil

9    Procedure 11?  What investigations did you do to come to the

10   conclusion that these other 292 accused products have a basis in

11   law -- a basis in law and fact for us to make the allegations

12   that they infringe our product?  That's the question you're

13   asking.  What investigation did they do that they can say they're

14   structurally and operationally the same as the nine

15   representative samples?

16       MR. WILCOX:  Your Honor, we're not so much looking to

17   understand their investigation, we're wanting to know the result

18   of the investigation because we don't know -- we don't know if

19   these other uncharted products are made exactly in the same

20   manner.  They admit it -- like, we all agree that these products

21   all come from different manufacturers and come from different

22   suppliers.

23       THE COURT:  What difference does it make if they were made

24   in the same manner as long as they end up the same product?

25   Nothing from -- So, I mean, I could have used two nine-year olds

1    to make my product and you -- two nine-year-old girls, and you

2    could have used one 25-year old man and a 60-year-old man to make

3    the product.  They would have not been made in the same fashion,

4    but the result is it ends up with the same parts, and if the

5    interrelationship between those parts makes that product function

6    the same, then they're infringing.

7         MR. WILCOX:  Your Honor, that's the piece that we -- that

8    there's no basis for.  They have no basis for saying that, look,

9    these --

10        THE COURT:  -- I don't find --

11        MR. WILCOX:  -- products are exactly the same.

12        THE COURT:  It's a method.  Is that the basis here?

13        MR. WILCOX:  Say it again, Your Honor.

14        THE COURT:  How something is done is a method.  That's not

15   the accusation in the complaint, is it?  Because they

16   continuously define them as counterfeit or knockoffs, so they're

17   saying the product itself, the way it's made and the parts it

18   uses and how those parts function interrelated to one another are

19   basically the same product for products we sell.  That's the

20   infringement.

21        MR. WILCOX:  That's what they're saying, Your Honor, and

22   for the uncharted products, there's no basis for knowing that

23   they actually are the same end-product, that they have the same

24   configuration of the nine charted products, and that's our issue.

25        THE COURT:  So you're assuming that they're telling you an

1    untruth.

2         MR. WILCOX:  We're not assuming that, but --

3         THE COURT:  Structurally and operationally the same is not

4    a legal conclusion.  That's a fact.  They can either prove that

5    fact at trial or they can't.  If they can't, they lose, you win.

6         MR. WILCOX:  Your Honor, in similar --

7         THE COURT:  That's what the discovery process is for.

8    Structurally and operationally the same is not a legal

9    conclusion.  That's something -- those terms are something that

10   go in front of the trier of fact.  They make the determination on

11   whether the accused products are structurally and operationally

12   the same as the product that you're -- of the product that you

13   have.  They're the accused infringing product.  They say they're

14   structurally and operationally the same.  They say, Okay, if you

15   want more -- they're structurally the same because they contain

16   components A, B, C, D, E, and F.  Component A acts like that.

17   Component B acts like that.  Component C acts like that.

18   Component D acts like that.  Component E acts like that.  When

19   those products operate like that in tandem, what happens is a

20   bullet gets pressed into a rectangular magnetic box which is

21   called a magazine.  There's your explanation.

22        MR. WILCOX:  Your Honor, they haven't provided that

23   explanation for the uncharted products.

24        THE COURT:  That's all you want, is that?

25        MR. WILCOX:  We would like to know that for the uncharted

1    products, that they do have what you're saying, that components

2    A, B, C, D -- that's the problem.  There's no -- they pointed out

3    components A, B, C, D are all there.  You know, they're all there

4    in the nine products.

5         THE COURT:  You want them to define structurally and

6    operationally more specifics?

7         MR. WILCOX:  Yes, Your Honor, more specifically what

8    factual support -- and we have an interrogatory on that key

9    point.

10        THE COURT:  {Indiscernible} is the support.

11        MR. WILCOX:  Correct, Your Honor.

12        THE COURT:  I mean, that's what a complaint is for.  The

13   complaint is the -- the facts in the complaint are assumed to be

14   true.  They either are or they're not.  That's what the discovery

15   process is for.  If, during discovery, you find out that they're

16   not structurally and operationally the same, then you go back to

17   them and say, are you willing to risk all your claims concerning

18   these particular accused products?  Because our discovery has

19   proven that they do not have components A, B, C, D and E, and the

20   ones that do have A, B, C, D and E, when they interact with one

21   another, do not perform the function that you said they perform.

22   Then they say, we'll withdraw those claims, or they can be

23   stubborn and say we won't.  And then you say, fine, but if you

24   have facts -- if you have acquired that information during

25   discovery, then they must admit to those as undisputed,

1   uncontested facts in a motion for summary judgment that is filed

2   by you.

3        MR. WILCOX:  Your Honor, the problem is we aren't in the

4   complaint stage, we're in discovery, and we're trying to elicit

5   those facts that you're talking about to be able to do exactly

6   what you're saying, and they're not giving them to us.  They

7   essentially just, you know, just picked things off of a Website.

8        THE COURT:  You have nine products.  Do you have the nine

9   representative products?

10       MR. WILCOX:  We have the charts that they provided to us,

11  Your Honor.

12       THE COURT:  You don't have any other products?  Because

13  this is how patent cases normally work.  You say it accuses -- At

14  no point -- you're always going to say, Well, how do we know what

15  they're saying is accurate?  You purchase the products, you have

16  an expert tear them apart and see whether or not their statements

17  are actually true.

18       MR. WILCOX:  That's what we're asking them to do for all

19  the products that they're accusing, Your Honor.  They should have

20  a good faith basis for this, and they should answer our

21  interrogatories and provide --

22       THE COURT:  How do you know they don't?

23       MR. WILCOX:  Say it again, Your Honor.

24       THE COURT:  How do you know they don't?  If they -- they

25  believe they have conducted sufficient enough investigation to

1    make that claim that in fact and in law we believe that these 300

2    products infringe on our products.  They made that statement in

3    the complaint.

4         MR. WILCOX:  They didn't make that in the complaint, Your

5    Honor, they made it in their infringement contention which are in

6    discovery, and those are supposed to be guiding discovery, so --

7         THE COURT:  In their complaint, they only name nine

8    products -- they only accuse nine products of infringement?

9         MR. WILCOX:  Your Honor, I can't remember the exact

10   number, but it's nine or less.  What's going on in contentions

11   now is this case has ballooned, you know, to be much greater than

12   what they put forward in their complaint.  I believe in their

13   complaint that they had maybe -- at least at that time or -- no

14   more than the nine products, but now they've identified all these

15   other products and haven't provided the basis for why --

16        THE COURT:  Where did you get the information that they

17   were including 291 others?

18        MR. WILCOX:  Your Honor, they -- when we started

19   exchanging contentions -- Well, they first provided initial

20   disclosures on September 16th, and then we were in a meet and

21   confer process with them.  They lasted -- the last supplement,

22   you know, we tried to work with them to get this information.

23   They served their last supplement the first week of October.  And

24   then we said, look, this doesn't meet the standard.  We met with

25   the --

1    THE COURT:  That doesn't answer my question at all.  My

2  question was, when is the first time you became aware that they

3  were supposed to be accusing 291-plus other products than was set

4  forth in the complaint?

5    MR. WILCOX:  Your Honor, when we first got their first

6  contention, it was in September.

7    THE COURT:  And you went to them and said what?

8    MR. WILCOX:  We went to them and said, look, we don't

9  think this is a case where you can just chart a couple of

10  products and say everything is the same because we all know that,

11  you know -- they're from different suppliers, and you need to

12  provide a basis for these other uncharted products, and so that's

13  the disagreement that we've been having.  We tried to come to

14  some kind of --

15    THE COURT:  How are you going to get information that we

16  think that our -- this is the case for representatives, and we

17  believe we've provided sufficient information.  So, then you met

18  and conferred in good faith in person or by telephone, and then

19  they asked you, well, since you believe that we have an

20  insufficient factual basis for making such a claim concerning the

21  other 291 products, what additional information do you believe we

22  should be providing in our supplement that would satisfy your

23  position concerning the factual basis?  And then you told them --

24  And then they either said, well, we'll supplement with that

25  information or we won't.  And they said, we won't, and that's why

1    we're here.  Or did they say, yes, we will?  Or did you provide

2    them the additional factual information that you thought was

3    necessary in order to believe their claimed product was enough?

4         MR. WILCOX:  Your Honor, we explained to them that they

5    needed to provide some additional --

6         THE COURT:  But wouldn't that be easy, if you just said,

7    this is the type of information you're looking for?  And then

8    they would either provide it or they won't.  That's not

9    difficult.  That's what a good faith meet and confer is all

10   about.  I understand that it's their ultimate obligation to

11   provide that information, but they're not going to purposely --

12   we have to assume that they're not purposely going to provide

13   that information in a supplemental claim chart or in the

14   supplemental answers to those interrogatories if they know it's

15   unclear.

16        MR. WILCOX:  Your Honor, when we met and conferred, we

17   told them this was our problem, and they ultimately came back

18   with the two sentences that are just conclusory that these are

19   structurally and operationally identical.

20        THE COURT:  But you needed to provide them information

21   saying this is the type of information we're looking for, A, B,

22   C, D, and E.  Say that specifically and see what they come back

23   with then.

24        MR. WILCOX:  Your Honor, we made --

25        THE COURT:  Sometimes lawyers just think differently when

1    it comes to what they believe is and is not sufficient.  That's

2    why our ten-story building stands at 401 Courthouse Square.

3          MR. WILCOX:  Well, Your Honor, under the caselaw that

4    we've cited and the other cases we've cited, you're coming back

5    with that very conclusive {indiscernible} --

6          THE COURT:  -- I think both of those cases are based on a

7    specific set of facts, which any good lawyer can distinguish from

8    any other case, in this case in particular.  That's why lawyers

9    get paid.

10         And let's first start with the fact that I probably can

11   assume -- I don't remember every case that was cited, but they're

12   not from the Eastern District of Virginia or the Fourth Circuit,

13   which means they're completely irrelevant from a precedential

14   value in this court.  You know, everyone wants to be in the

15   Eastern District of Texas and the Northern District of California

16   when they deal with patents.  There's a reason we don't have

17   local patent rules in the Eastern District of Virginia.  We don't

18   find that they actually move the process -- as well as those

19   attorneys for these cases, so then it just leaves open, let's

20   just dispute what those rules mean.

21         MR. WILCOX:  Your Honor --

22         THE COURT:  But you obviously cannot say that

23   representative charts are inappropriate in every set of

24   circumstances.  So, the only question is, is representative

25   claimed charts appropriate under this set of circumstances, and

1   that can only be made -- that determination can only be made on a

2   case-by-case, fact-by-fact determination.  So, you can cite other

3   cases because it's not the same as this one.

4        MR. WILCOX:  Yes, Your Honor.  It is a case-by-case,

5   fact-by-fact determination, and I think we've come forward and

6   shown why it isn't that type of case, because these products all

7   don't come from the same manufacturer and --

8        THE COURT:  But saying structurally and operationally

9   means something.  To me, those are facts that mean these 291

10  offerings, they're basically the same as those.  So, if you know

11  how those nine work, then you know how -- then you know what

12  those nine are made up of, and you know, based on the way they're

13  made, what they're made up of, that they operate and function in

14  a particular way, then you know how the other -- what the other

15  291 are made up of and how they function when those components

16  react together.  How does that not provide you sufficient notice

17  when all you have to do is go get one of the products and tear it

18  apart?

19       MR. WILCOX:  Your Honor, beyond the notice of the

20  contention, we have the interrogatories, and the interrogatories

21  asked Maglula to come forward as the party that bears the burden

22  of proof on infringement and set forth its proof of why, you

23  know, it thinks these products infringe.  And so there they must

24  do more than just, you know, state a conclusion that these things

25  are structurally and operationally the same.  They need to come

1    forward with facts and provide those facts.

2         THE COURT:  What facts?

3         MR. WILCOX:  The fact of how they have come to the

4    conclusion that these products are structurally and --

5         THE COURT:  You're asking for their investigation, how

6    they can concluded what they concluded.  That's actually an

7    investigation.  That's not a fact.

8         MR. WILCOX:  Your Honor, these are contention

9    interrogatories, and we're entitled to understand what their

10   contentions are and what proof they're going to come forward with

11   at trial.

12        THE COURT:  What's deficient in their contentions -- in

13   those interrogatories, except for how you conclude -- because

14   what they concluded is a fact.  You may not believe that fact,

15   but that's the discovery process.  You go through discovery to

16   disprove the facts that they set forth.  But what they set forth

17   is a fact until you disprove it.  How they came to those facts is

18   their investigation.  Is that what you want?

19        MR. WILCOX:  Your Honor --

20        THE COURT:  If you want that, then say so.  Don't hide it

21   in the cloak of saying these are facts.  That's not a fact.  How

22   you came to that conclusion is not a fact.

23        MR. WILCOX:  Your Honor, just stating a conclusory

24   statement that these products, all 300, work structurally and

25   operationally the same isn't a fact, it's just a contention.

1    What are the facts that support that?  What are the, you know,

2    the items that they've observed in those other 300 products that

3    lend -- you know, support that conclusion?  That's what we're

4    seeking.

5         THE COURT:  Didn't they give you that for the nine?

6         MR. WILCOX:  They gave it to us for the nine; they

7    haven't --

8         THE COURT:  You just want them to repeat that 291 more

9    times?

10        MR. WILCOX:  Your Honor, we're not trying to do a makework

11   exercise here, but if someone were to say I looked at nine

12   products, those products --

13        THE COURT:  I'm trying to help you out here.  This is your

14   motion.  You want something from them.  I'm asking you what you

15   want from them, and you're not providing me an explanation that I

16   even understand, what you want from them.

17        MR. WILCOX:  Your Honor, what we're asking -- and this is

18   what -- the relief the court granted in the Alacritech case that

19   I identified.  We're asking for them to either provide a claim

20   chart for all of these other infringed products, or -- we're not

21   trying to make makework -- or if they can explain and support,

22   you know, with specificity and supporting documents that these

23   uncharted products work the same as the charted products, that's

24   what we're looking for.

25        We're looking for factual information, citations to

1    documents or pictures of why these products are supposedly the

2    same -- these uncharted products are supposedly the same as these

3    uncharted [sic] products, and that's the --

4         THE COURT:  And you want them to repeat the facts that

5    they put in the representative nine for the 291 other products.

6         MR. WILCOX:  Your Honor, we want -- we want --

7         THE COURT:  That's what you want, because they don't have

8    to give you all the documents that support -- that's trial.  This

9    is discovery.

10        MR. WILCOX:  Your Honor, in discovery we're entitled to

11   understand what the basis --

12        THE COURT:  I understand this.

13        MR. WILCOX:  And so, well, if they're going to come

14   forward at trial with, you know, all these different documents

15   stating these uncharted products suddenly --

16        THE COURT:  -- they can't --

17        MR. WILCOX:  -- work in a particular way --

18        THE COURT:  The simple procedures do not authorize them to

19   utilize any documents to support a motion or at trial that they

20   did not provide you during the discovery process.

21        MR. WILCOX:  That's absolutely correct, Your Honor, but

22   what we're seeking here -- we're in discovery.  We're seeking the

23   basis and the foundation for their case against --

24        THE COURT:  {Indiscernible} the basis.  Just -- stop --

25   see, those are conclusions.  Those are legal terms.  Just say

1   what you want.

2          MR. WILCOX:  We want to know how the other uncharted

3   products are supposedly the same as the charted products.

4          THE COURT:  So, you want them to repeat the information

5   they said in the nine representative 291 other times.

6          MR. WILCOX:  Well, if it requires that for each particular

7   product, then that's what we would need to do, because, you know,

8   in our interrogatory, even if the Court has kind of a dim view of

9   contentions, our interrogatories say, what's your basis for

10   infringement for each one of these uncharted products?  And so

11   we're entitled to the facts that they're going to elicit and

12   they're going to rely on later at trial.  That's part of the

13   discovery process.  We're entitled to that information so we,

14   ourselves, can form defenses.

15          I mean, essentially right now they're saying, look, here

16   are all these other uncharted products, Amazon, you go out and

17   figure out why we say they infringe or how they exactly infringe,

18   and they're putting that onus on us, but the onus is on them to

19   first come forward with their exact theory for those products and

20   their support for that, and then we can start investigating our

21   defenses in terms of looking at the documents that they're citing

22   to or looking at the pictures they're citing to for these other

23   uncharted products, because these uncharted products, they don't

24   all come from the same seller, they don't all come from the same

25   manufacturer, so there's no way sections in other cases one can

1    say, well, look, this one product, this is a microchip and it

2    practices the DDR3 specification.  It has to do all these things

3    or it can't be DDR3.  So, I'm going to say that every chip

4    that DDR3 --

5        THE COURT:  Okay.  Yes.  Let's go to the plaintiff.  Where

6    did you come up with the nine representative classes for the

7    claim chart?

8        MS. SAHLSTEN:  Your Honor, the way we identified the nine

9    representative classes is by looking for particular telltale

10   signs or other idiosyncrasies between the various counterfeits

11   and copies that we've identified to date.  Some of them are very

12   particular and very easy to spot once you know about them.  For

13   example, one class of products has maglula,com instead of .com.

14       COURT:  Could you hold on for a second?  Could you hold on

15   for a second, please?

16       (Brief pause in proceedings.)

17       THE COURT:  Sorry about that interruption.

18       MS. SAHLSTEN:  No problem, Your Honor.  So, your question

19   was about how did we identify the nine different products to

20   include in a representative chart, and we did that by looking at

21   unique telltale signs that they were counterfeits or copies.

22       THE COURT:  And --

23       MS. SAHLSTEN:  And, like I said, these are really specific

24   telltale signs.  For example, maglula,com instead of .com, or in

25   another class, the lock on the side of the loader is lacking two

1    raised ridges which the genuine products have.

2         So, to be clear, we selected the nine products and did

3    representative charts, one for each of the nine, not because

4    there are any differences that matter, but because there are

5    differences that don't matter for purposes of infringement.

6         THE COURT:  That's a slippery slope.  Every party can come

7    into a -- you would be amazed at how opposing parties differ from

8    what matters and what doesn't matter, what's relevant and what's

9    not relevant.  So that's when you get into trouble.  They have

10   the right to determine whether the differences matter or don't to

11   their defense.

12        MS. SAHLSTEN:  Right, and the way they will do that is by

13   looking at the language of the claim.  For example, none of the

14   claims are directed to the type font that's on the loader itself.

15   None of them are directed to the orientation of the lock button.

16   So, what I mean when I say there's no differences that matter, I

17   mean matter for purposes of the claim, and that's really what the

18   infringement analysis is going to be focused on.

19        And, as the parties have discussed in all the back and

20   forth meet and confers, so far Amazon has not identified any

21   differences that matter for purposes of infringement.  So, while

22   Maglula thinks that doing one chart would have been sufficient,

23   we went above and beyond what was required.  We did nine because

24   there are these little differences, and we wanted to make sure

25   that Amazon had notice of our infringement theories and how they

1   did not change over these nine different products --

2        THE COURT:  -- {Indiscernible} in 291 other products and

3   said they're the same as one of these nine, and that's why we

4   believe they infringe?

5        MS. SAHLSTEN:  Right.  So --

6        THE COURT:  They have the same structure and the same

7   operation of one of the -- at least one of these nine in the

8   representative claim -- in the representative class?

9        MS. SAHLSTEN:  That's exactly right.

10       THE COURT:  You've tested or looked at or tore apart 291

11  products?

12       MS. SAHLSTEN:  We have not torn apart or tested 291

13  products, but that's not required.  We have a basis to assert

14  that these are counterfeit, that these infringe.

15       THE COURT:  I mean, what did you do to even know that

16  these 291 products have the same components?

17       MS. SAHLSTEN:  So, Amazon sells all of these products

18  under the -- under the same or similar ASIN, which is an

19  Amazon-specific identification number on their system.  For some

20  of these products, we have been able to track them down and

21  physically inspect them and test them in a couple different ways.

22  Some, our client Maglula has bought and sent to us for

23  inspection.  Some we've bought and inspected, and some we have

24  received from Amazon's customers who thought they were buying a

25  genuine Maglula only to receive a counterfeit, upset about the

1    quality or that it breaks, and then reached out to Maglula to

2    alert us to that defective product.  And that's, you know, part

3    of the way we discovered the counterfeiting problem in this case

4    in the first place.  For the rest, those products are sold and

5    have been offered for sale on Amazon platforms under the very

6    same ASINs and product listings as the other counterfeit

7    products, and that's our basis for asserting that the rest are

8    the same.

9         THE COURT:  What does that mean?  Because they use the

10   same number, that means every product that has that number had

11   the same components, and those components functioned interrelated

12   that the end result is the same?  That's what you're saying,

13   without having inspected those products?

14        MS. SAHLSTEN:  Correct, and we would --

15        THE COURT:  How?  How do you say -- do they put on their

16   Website that in their merchandise -- the listing of their

17   merchandise and their manuals that every product that we list

18   and/or sell that has a specific ASIN will have the same

19   components, and when those components interact with one another,

20   they will have the exact same resulting function as their

21   particular products?  And then you went and purchased that

22   product, figured out what components it did have, how it

23   functioned, and came to the conclusion, well, then, that these

24   other 40, since they said they would do that, we're saying that

25   they do that?  So, essentially, you've got structurally and

1  operationally the same from the ASIN numbers?

2       MS. SAHLSTEN:  Exactly.  The ASIN number is used to

3  identify products that are the same.  So that's, you know, how

4  we've been able to --

5       THE COURT:  How do you know that?  Where does it say that?

6       MS. SAHLSTEN:  So, Amazon uses the ASIN numbers in its own

7  system as part of -- What Amazon is known for is getting you your

8  products quickly.  So, I can go onto Amazon and find the product

9  I'm looking for, and in Amazon's back-end system those products

10 are all grouped by this ASIN.  And here I am in Washington, D.C.,

11 they're back-end system is going to determine which of those

12 products is closest to me to get it to me quickest.  But if my

13 family is down in Florida, they might determine that it's closer

14 if they ship it from a factory -- or a warehouse that's closer in

15 Florida.  And the way that linking is done, how does Amazon know

16 which product to fulfill for an order, that's all linked by the

17 ASIN system.  So it's Amazon who says that the product sold under

18 the same ASIN offer the same.

19      THE COURT:  Well, did you put that as additional factual

20 information in responding to Interrogatories 1 through 3 and in a

21 supplement to the claim chart concerning the other 291 products?

22 Because they're looking for factual support for why you can make

23 structurally and operationally the same.  If you tell them in the

24 chart and in supplemental responses to Interrogatories Number 1

25 through 3 that we think they're structurally and operationally

1    the same because you said it, we got that statement from you, and

2    we assume you're telling the truth when you make that statement,

3    is that what's --

4        MS. SAHLSTEN:  Yes, yes.  So, let's talk about the --

5    what's asserted and what the factual basis is.  We have said

6    that, regardless of the classification, they're structurally and

7    functionally the same, they dismiss that as attorney argument,

8    but, as you know, Your Honor, that's facts.

9        THE COURT:  Okay.  I'm trying to determine how you

10   determine that fact when you specifically said you weren't

11   capable of tracking down some of those products.  Some of them

12   you tracked down and you pulled apart and you looked at and had

13   an expert probably say, Yeah, that closes that, that goes to the

14   right, that clicks here, that wheel turns, that happens when the

15   arm falls and a bullet loads or a cartridge loads into a

16   magazine.  That's a factual scenario.  And you can do that with

17   products that you have in your possession that you can tear apart

18   and look at, but ones you couldn't find, how do you make the

19   determination that they operate in the same fashion?

20       MS. SAHLSTEN:  Again, that goes back to Amazon's own

21   organization and representations that these products are the same

22   by the nature of listing them under the same ASIN.

23       THE COURT:  What's the definition of the words -- they

24   provided definition of the words "the same"?  The same just means

25   magazine loaders, or does it mean magazine loaders with

1    components A through E, which, when they function interrelated,

2    does this?

3         MS. SAHLSTEN:  It's closer to the latter.  The ASIN is --

4    There's not a general ASIN for magazine loaders.  The ASIN is for

5    the specific magazine loader listed on the product page.

6         THE COURT:  That's what you told them in the good faith

7    meet and confer, and they said that's still an unacceptable

8    explanation.

9         MS. SAHLSTEN:  Yes, and we have asked for discovery on

10   every single ASIN, every single order I.D. that we've known so

11   far -- that we've been able to identify so far, and those that

12   are related, and so far they have not provided us that discovery.

13   For example, all of their product listing pages have photos.

14        THE COURT:  What they provided to you.  What's their

15   explanation on why they didn't provide it?  Because you said you

16   filed a motion or filed a motion.

17        MS. SAHLSTEN:  Yes.  So, their explanation has varied.  My

18   best understanding of their current explanation is that their

19   product listing pages are dynamic pages, and they do not create a

20   static archive of that product listing page.  So, when we say

21   give us information on, you know, ASINs 1 through 30 and give us

22   pictures of those products and tell us the sellers, they don't

23   have a record of that product listing page as it existed at the

24   time that they offered it for sale, but they do have a system

25   behind that listing page of widgets that so far they have not --

1    or at least they have not produced.  I don't know if they've

2    searched, but they have not produced information from behind that

3    database, and that's what we need to be able to do any further

4    supplementation.

5         THE COURT:  Are there any additional facts you currently

6    have in your possession which you don't need to acquire from them

7    during discovery that you can provide them in a supplementation

8    that would more support your argument or your statement that

9    these other products are structurally and operationally

10   identical?

11        MS. SAHLSTEN:  I can think of at least one thing, which is

12   that we have offered to allow them to come inspect the products

13   themselves.  We have representative samples from each of the nine

14   classes, and they can come and inspect those.  To the extent

15   they're arguing that these are somehow not operationally

16   identical, you know, we've offered to allow them to come down and

17   inspect and test them themselves.  We've already produced photos

18   of the products showing that they are structurally --

19        THE COURT:  The ones that correlate the 291 to the 9,

20   because they don't have representative -- you don't have all 291

21   products, so the offer to inspect 180 products still doesn't deal

22   with the 111 that you don't possess, which they don't have an

23   opportunity to inspect.  Somehow they're uncomfortable with your

24   statement of structurally and operationally the same, based on

25   the information you provided to them right now, especially now

1    that you said that you haven't had an opportunity to -- that's

2    why I asked you, are there any further facts that you have

3    currently in your possession that you have utilized to conclude

4    that these other products, especially the ones you have not had

5    an opportunity to inspect, have the same component and function

6    the same as the representative nine?

7         MS. SAHLSTEN:  We have provided --

8         THE COURT:  Then that's your explanation.  These are all

9    the facts we have to support the statement of structurally and

10   operationally the same.  We can provide you additional facts when

11   you supplement your discovery.  And if that's a problem, then

12   we'll deal with that problem, but you can only provide them the

13   facts you have.  They, for some reason, don't believe you're

14   doing that.  That's why I asked, are there any more facts that

15   you can provide to supplement?  If there are not, then you tell

16   them that.

17        MS. SAHLSTEN:  There's nothing else that we can provide at

18   this point.  And, Your Honor, you're spot on.  We're waiting for

19   discovery to make --

20        THE COURT:  Besides the fact that you say that they're

21   structurally and operationally the same because you categorized

22   them under a specific ASIN number and your own statements that

23   say if they're categorized under that number, this is what that

24   means.

25        MS. SAHLSTEN:  Exactly.

```
 1          THE COURT:  And have you provided them that information --
 2          MS. SAHLSTEN:  -- yes --
 3          THE COURT:  -- concerning the other 291?
 4          MS. SAHLSTEN:  We -- yes -- the -- our reason for
 5     asserting that the other 291 are the same is because Amazon
 6     considers all products listed under the same ASIN as the same.
 7          THE COURT:  Then provide them that fact and show them
 8     exactly where they say that.  Whether you need to make a snapshot
 9     of a Website, you need to acquire one of their manuals, find
10     exactly where they say anything that we list under this ASIN
11     number means this, and you supplement your interrogatories and/or
12     claim chart, and that additional information, this information
13     that we found in our investigation plus your statement as set
14     forth in Exhibit 1 gives us what we believe is a sufficient
15     factual basis to accuse those other 200-and-something products
16     other than {indiscernible}.  If they don't think that's
17     sufficient enough for a claim charge, then you're right, you
18     don't have to prove -- all you have to do is put on notice, and a
19     part of your notice is based on their own representations of how
20     ASIN is assigned, than to win an argument saying that's not
21     enough when you yourself said that makes them structurally and
22     operationally the same.
23          MS. SAHLSTEN:  Yes, Your Honor, and we would be willing to
24     provide a supplement along those lines to add something specific
25     about linking up that ASIN relationship based on Amazon's own
```

1   representations.

2        THE COURT:  All right.  Counsel, anything else?

3        MS. SAHLSTEN:  Your Honor, the only thing I would bring up

4   is about the order.  You'll see that Amazon submitted a revised

5   proposed order with their reply brief, and I just wanted to alert

6   you to the second item on that order about their request to limit

7   the accused products in this case.  You know, that is a big shift

8   from --

9        THE COURT:  We aren't going to get to that right now

10  anyway because that's a motion for a protective order.  That's a

11  separate request.  You can't ask for a protective order in

12  opposition to something during a motion that you have.  You can't

13  do that.  That has to be another motion.  This as motion to

14  compel, not a motion for a protective order.

15       MS. SAHLSTEN:  Thank you, Your Honor.

16       MR. WILCOX:  Your Honor, may I just add something in

17  rebuttal?

18       THE COURT:  Of course.

19       MR. WILCOX:  So, the problem here, Your Honor, is that

20  they've identified 308 and they've only charted 9.  So, if their

21  contention is that anything with the same ASIN would work the

22  same way as what they charted, that would be one thing, but it's

23  not.  Their position is that all these other uncharted ASINs that

24  are different ASIN numbers, supposedly are the same as the ASINs

25  they charted, but they haven't even provided a correlation for

1    all this.  For all those uncharted ASINs, they have not

2    identified which ones supposedly fall under which bucket.  So

3    there are two problems here.  They haven't charted each ASIN; and

4    number two, even if they had charted each ASIN, if they were

5    saying somehow the other ASINs correlated to the ones they've

6    charted, they haven't provided that.  So, we don't have notice of

7    what exactly is their infringement theory for these other 290

8    ASINs that they haven't charted.

9        THE COURT:  Ms. Sahlsten, that's a whole 'nother ball of

10   wax.  If your additional fact is you're saying these other 291

11   products are structurally and operationally the same because they

12   use the same ASIN, that's one thing, and because Amazon has said

13   everything that uses this ASIN is structurally and operationally

14   the same, so we're using your own words against you.  He just

15   represented that's not what you said, they're not those products,

16   that they're not nine different ASINs, and every other of the 291

17   products have one of those nine ASINs.  He's saying you're using

18   300 different products with 300 different ASINs.

19       MS. SAHLSTEN:  So, there are more than nine ASINs, and

20   that's because Amazon apparently allows some of its sellers to

21   create new ASINs, and sometimes the very same products --

22       THE COURT:  Your argument was based on representations

23   made by Amazon concerning their own ASINs?  So, all three -- do

24   you have in your possession ASINs that cover all 300 products?

25       MS. SAHLSTEN:  We have ASINs, I believe, for just over

1    200, and then for the remaining approximately 100, we either have

2    order I.D. numbers or SKUs or seller I.D. numbers, which we have

3    provided to Amazon and in turn asked them to give us the ASIN

4    number.

5         THE COURT:  Well, I don't know specifically what the ASIN

6    numbers mean, but, generally speaking, in my experience I know

7    what an SKU is.  That's an exact product, like fingerprints.  One

8    SKU goes to one particular couch.

9         MS. SAHLSTEN:  So, the ASIN is not quite as specific as a

10   SKU because multiple products can have the same ASIN.  Multiple

11   individual products can have the same ASIN.

12        THE COURT:  So how many products would you say, of the

13   291, fit under the nine representative ASINs that you charted in

14   your claim chart?

15        MS. SAHLSTEN:  So one clarification based on your question

16   is that there are not just nine ASINs, and that's because the

17   exact same class of products has, in fact, been sold under

18   multiple ASINs.  So you may have a situation -- there's one that

19   comes to mind, is our Class A product.  That product has been

20   sold under multiple Amazon ASINs, and we've explained that in our

21   contentions and in discovery responses.

22        THE COURT:  But the ASINs -- how many ASINs have you used

23   that encompass the nine representative products?  I mean, how

24   many ASINs apply to those nine products?

25        MS. SAHLSTEN:  The roughly 200 ASINs that we have been

1   able to identify to date correlate to the nine categories.

2        THE COURT:  Okay.  Well, then, you make that statement.

3   You give him the exhibit that shows your own words say that if

4   they fall under these ASINs, they are operationally and

5   functionally the same, and then you provide the information for

6   the other hundred that don't fall under those representative nine

7   with the 200 ASINs {indiscernible} and say why those -- I mean,

8   you know, what is it about the SKU that says, if it has this SKU,

9   that functions the same?

10       Now, do the ASINs have SKUs with them as well, some of

11  those products?

12       MS. SAHLSTEN:  Sometimes.  We do have multiples of those

13  categories with information.  Sometimes we have an ASIN, an order

14  number, the seller I.D. number, and SKU.  Sometimes we --

15       THE COURT:  And all of those numbers are listed in the

16  current representative claim chart?

17       MS. SAHLSTEN:  They are all listed in our original

18  contentions and refer to the same chart.

19       THE COURT:  Okay.  And then -- so those other hundred fall

20  under one of those numbers that you state in relation to one of

21  those nine products in the class?

22       MS. SAHLSTEN:  That's right.

23       THE COURT:  So it would be the ASIN, the SKU, the order

24  number, two of the three, three of the three --

25       MS. SAHLSTEN:  Yes.  And to the extent Amazon is

1   requesting that we plot each of these 300 products into one of

2   the nine classes, we are willing to do that.  We just need

3   discovery from Amazon to be able to go through that exercise.  We

4   have asked them for the pictures of those products or the

5   products themselves, and once we get them we can go ahead and

6   plot those into the nine categories, but we can't do that right

7   now.

8          THE COURT:  You can supplement with the information that's

9   in your possession with a better explanation, is what appears to

10  be the statement.  If that explanation isn't good enough, then

11  your fallback position is, well, that's the only explanation we

12  can give you based on the information currently in our

13  possession.  If you want a better explanation, give us some more

14  of the discovery that we've requested.

15         MS. SAHLSTEN:  That's right, Your Honor.

16         THE COURT:  And if they -- if that's supported by statute

17  or other legal authority, then the Federal Rules of Civil

18  Procedure and the local rules of this Court provide a procedure

19  by which they can address that concern.

20         Anything further, Mr. Wilcox?

21         MR. WILCOX:  Yes, Your Honor.  I just want to circle back

22  and point out that what counsel has said and admitted here is

23  that of at least 200 different ASINs, they only charted nine, and

24  they haven't correlated, like the balance of uncharted, all to at

25  least the ones they charted.  So, I mean -- so what we're left

1    with here is, what's the basis for saying these other 200 ASINs

2    actually infringe if they can't even right now line up, you know,

3    those ASINs to --

4          THE COURT:  She's saying that she has information in her

5    possession, which is a representation made by Amazon itself in

6    some form or fashion, that says if these products can be

7    listed -- a product is listed under a specific ASIN, then our

8    proof is that it has pretty much this type of structure and this

9    type of function.  Those are the words Amazon used.  That's her

10   support, your own words.

11         MR. WILCOX:  Your Honor, she's saying that for just a

12   particular ASIN, and I'm not willing to accept that --

13         THE COURT:  -- Well, why don't you ask her.  So, of the

14   200, the other 200, fall within one of those categories of ASINs,

15   because there's more -- she said each product doesn't have just

16   one ASIN.  There are some of the nine products that could have

17   had more than one ASIN, but for 200 products -- like, nine

18   products can encompass 25 ASINs, that those 200 products fall

19   under one of those 25 ASINs, and your words say, if they fall

20   under one of those 25 ASINs, they're structurally and

21   operationally the same as those products within that ASIN.

22   That's what I heard.

23         MR. WILCOX:  Your Honor, that's counsel's position, but

24   they haven't -- she hasn't done that.  She hasn't done that once.

25         THE COURT:  And I ordered her to do that.

1      MR. WILCOX:  Well, Your Honor -- and Your Honor, our basis

2  is that, you know, these ASINs are all separate products, and so

3  they should come forth with --

4      THE COURT:  She is going to supplement to show your own

5  words that supposedly say they're really not.  If you want to

6  dispute that fact, you have an absolute right to do so, but that

7  has nothing -- you want a supplementation; I've ordered her to

8  give you additional supplementation.  If you think that

9  supplementation is false, well --

10     MR. WILCOX:  Your Honor, I just --

11     THE COURT:  It's a tough road to hoe to prove that,

12 because she's making representations as an officer of this Court,

13 and this Court accepts every counsel's representations, unless

14 opposing counsel has information in their possession that would

15 suggest that that representation is untrue, and let's tread very

16 lightly on statements that suggest that.

17     MR. WILCOX:  Absolutely, Your Honor.  I just want to make

18 clear that the supplementation will be that all accused products

19 will provide -- that counsel will provide some type of

20 correlation to the items that are already charted, and then some

21 factual basis for why there's a correlation there.

22     THE COURT:  I don't know what you mean by correlation to

23 the -- I and Ms. Sahlsten have had a statement about the

24 information in her possession and that she will supplement the

25 interrogatory responses to Interrogatories 1 through 3 and the

1    claim chart to include that additional information that's

2    currently in their possession.  That's all they can do.  They

3    can't supplement a claim chart and interrogatories with

4    information that they don't possess.

5         MR. WILCOX:  Your Honor, but they do have to have a basis

6    for having identified these 300 products and --

7         THE COURT:  They will provide you with additional

8    supplementation based on the information that they have in their

9    possession.  If you think that is insufficient, the Federal Rules

10   of Civil Procedure and the local rules of this court have a

11   process by which to address your concerns.  If you believe that

12   they have failed to state a claim based on their claim chart

13   because they lack sufficient facts, there's a rule for that.

14        MR. WILCOX:  Yes, Your Honor.

15        THE COURT:  But I can't order them to give you something

16   they don't have.

17        MR. WILCOX:  Understood, Your Honor.  Thank you very much.

18        THE COURT:  I would be surprised if the answer to this

19   question would be no.  Does anybody need clarification about what

20   I just said?

21        MR. WILCOX:  No, Your Honor.

22        MS. SAHLSTEN:  No, Your Honor.  Thank you.

23        THE COURT:  I'm pleasantly surprised on a Friday

24   afternoon.  Any and all supplementations will be -- when is

25   discovery cutoff?

1        MR. WILCOX:  November 30th, Your Honor, for fact

2   discovery.

3        THE COURT:  Okay.  Fact discovery.  Any and all

4   supplementation will be due no later than -- have you filed that

5   other motion?

6        MS. SAHLSTEN:  Yes, Your Honor, we have filed the other

7   motion.

8        THE COURT:  Have you noticed it?

9        MS. SAHLSTEN:  Yes, it's been noticed for next Friday,

10   10 a.m.

11        THE COURT:  Any and all supplementations concerning this

12   motion the Court has ordered will be due no later than noon next

13   Thursday, the 29th.

14        MS. SAHLSTEN:  Thank you, Your Honor.

15        THE COURT:  And the parties really need to have come to an

16   impasse concerning the other motion.  Before I get off, I'll

17   just -- which I say often in court now, we're just via Zoom --

18   good faith meet and confers, in this Court's opinion, like a

19   settlement conference, it's about compromise.  It's not my way or

20   the highway, take it or leave it.  You don't come into a good

21   faith meet and confer with a position and leave that meet and

22   confer simply because the other party hasn't given us everything

23   that we've asked for, because getting everything that you've

24   asked for is not compromising.

25        And the majority, in this Court's opinion, of those meet

1   and confers should be, because the Rule says, in person or by

2   telephone.  There's a reason for that rule.  The experience of

3   the Court has shown that when people just send letters back and

4   forth, and e-mails back and forth, disputes don't get resolved.

5          MS. SAHLSTEN:  Understood Your Honor, thank you.

6          MR. WILCOX:  Understood, Your Honor.

7          THE COURT:  Anything further?

8          MR. WILCOX:  No thank you, Your Honor.

9          MS. SAHLSTEN:  No, Your Honor.

10         THE COURT:  All right.  Be safe out there.

11         MR. WILCOX:  Thank you, Your Honor.  Have a nice weekend

12  Your Honor.

13         THE COURT:  You, too.

14         (Proceedings adjourned at 11:40 a.m.)

15                   **C E R T I F I C A T E**

16

17                I, Scott L. Wallace, RDR-CRR, certify that
        the foregoing is a correct transcript from the FTR
18      recording of proceedings in the above-entitled matter.

19

20       /s/ Scott L. Wallace              10/26/20
        ------------------------      ----------------
21       **Scott L. Wallace, RDR, CRR              Date**
          **Official Court Reporter**

22

23

24

25