UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| MAGLULA, LTD., ) | |
| ) | |
| Plaintiff, ) | Civil Action |
| ) | No. 1:19-CV-01570-LO-IDD |
| v. ) | |
| ) | November 6, 2020 |
| AMAZON.COM, INC., ) | 11:53 a.m. |
| ) | |
| Et al., ) | |
| ) | |
| Defendants. ) | |

*TRANSCRIPT OF MOTION HEARING PROCEEDINGS*
*(Via Zoom Conference)*
*BEFORE THE HONORABLE IVAN D. DAVIS,*
*UNITED STATES DISTRICT COURT MAGISTRATE JUDGE*

APPEARANCES:

For the Plaintiff:          **Morgan E. Smith, Esq.**
                           Finnegan, Henderson, Farabow,
                           Garrett, & Dunner, LLP
                           Stanford Research Park
                           3300 Hillview Avenue, 2nd floor
                           Palo Alto, CA 94304-1203

                           **Jeffrey Allen Berkowitz, Esq.**
                           Finnegan, Henderson, Farabow,
                           Garrett, & Dunner, LLP
                           11955 Freedom Drive
                           Reston, VA 20190
                           (571) 203-2700
                           Jeffrey.berkowitz@finnegan.com

                           **Sonja Wolf, Sahlsten, Esq.**
                           Finnegan Henderson Farabow Garrett &
                           Dunner LLP (DC)
                           901 New York Avenue NW
                           Washington, DC 20001-4413
                           202-408-4000
                           Fax: 202-408-4400
                           Sonja.wolf@finnegan.com

APPEARANCES:   (Cont.)

For the Plaintiff:        **David Kenneth Mroz, Esq.**
                         Finnegan Henderson Farabow Garrett &
                         Dunner LLP (DC)
                         901 New York Ave NW
                         Washington, DC 20001-4413
                         202-408-4000
                         Fax: 202-408-4400
                         David.mroz@finnegan.com


For the Defendant:        **Justin Wilcox, Esq.**
                         Desmarais LLP
                         230 Park Avenue.
                         26th Floor
                         New York, NY 10169
                         212-351-4905
                         Jwilcox@desmaraisllp.com

                         **Priyanka R. Dev, Esq.**
                         Desmarais LLP
                         230 Park Avenue.
                         26th Floor
                         New York, NY 10169
                         212-808-2917
                         Pdev@desmaraisllp.com

Court Reporter:           **Scott L. Wallace, RDR, RMR, CRR**
                         Official Court Reporter
                         United States District Court
                         401 Courthouse Square
                         Alexandria, VA  2231-5798
                         202.277.3739
                         Scottwallace.edva@gmail.com

1          **MORNING SESSION, NOVEMBER 6, 2020**

2     (11:53 a.m.)

3          THE COURTROOM CLERK:  The Court calls Civil Action Number

4     19-cv-1570, Maglula, Ltd. versus Amazon.com, Inc.

5          May we have appearances of counsel starting with the

6     plaintiff, please.

7          MS. SMITH:  Good morning, Your Honor.  Morgan Smith on

8     behalf of Plaintiff Maglula.  Also with me from Finnegan are Jeff

9     Berkowitz, Dave Mroz, Sonja Sahlsten, and Jensen Matthew.

10          THE COURT:  Good morning.

11          MR. WILCOX:  Good morning, Your Honor.  This is Jesse

12     Wilcox from Desmarais, LLP on behalf of Defendant Amazon.  With

13     me this morning is my colleague Priyanka Dev, also from

14     Desmarais, LLP, and we also have a client representative from

15     Amazon, Mr. G. Pie {sp}, who is also on the line.

16          THE COURT:  Good morning.  This matter is before the

17     Court based on the plaintiff's motion to compel defendant's

18     {indiscernible}.

19          The Court's had an opportunity to review the motion and

20     memorandum in support, the opposition to the motion, the reply to

21     that opposition.

22          Is there anything that the plaintiff would like to add to

23     your motion at this time?

24          MS. SMITH:  Well, Your Honor, I did want to take the

25     opportunity, even though it is Amazon's burden to show that the

1  discovery that Maglula seeks in this case should not be provided,

2  to explain the relevance and the proportionality of the e-mail

3  discovery that Maglula seeks.

4       Maglula is a small, privately held company based out of

5  Israel, and it is a pioneer in the field of firearm magazine

6  loaders.  Now, its flagship product is something called the

7  Maglula magazine loader, and it's been very successful, widely

8  regarded as a premier product in the field.

9       Now, as is the case with many popular products with great

10 success, imposters tend to follow, and Maglula discovered that

11 Amazon was selling counterfeit Maglula products.  It notified

12 Amazon of this problem at least as early as 2016.  In the years

13 that followed there were extensive efforts to try and stop Amazon

14 from selling these products.  Hence, it would appear with this

15 case, after Maglula's complaints and notification were largely

16 ignored, we are here and Maglula has alleged claims of

17 counterfeiting and other IP infringement allegations against

18 Amazon for {indiscernible} and sale of these products.

19      And, given the various ways that Amazon was involved with

20 the sale of these products, Maglula has asserted a series of

21 direct contributory and vicarious liability.

22      Now, for purposes of this motion, which is for Amazon to

23 produce the documents that are responsive to Maglula's e-mail

24 search terms, not the search terms that Amazon chose, Maglula

25 feels that contributory liability are important, and those claims

1  involve whether or not Amazon knew or had reason to know that

2  what it called Amazon selling partners were engaged in infringing

3  activities.  This is the exact discovery that Maglula seeks via

4  e-mail.

5      Now, Amazon contends that the e-mail discovery should be

6  narrowed to Maglula's complaints about Maglula's products at

7  issue in this case.  And again, that is incorrect because of the

8  nature of Maglula's contributory infringement claims.

9      The discovery that Maglula seeks is broader than that

10  because it reads on whether or not Amazon knew or had reason to

11  know that Amazon selling partners were engaged in infringing

12  activity.  For example, Maglula's search terms are designed to

13  cover counterfeit, which is a count in the complaint, a process

14  known as ███████████████████████████████████████████████

15  ███████████████████████████████████████████████████████,

16  and those are designed to ferret out several sources of

17  information, like did Amazon receive any counterfeiting reports

18  about Amazon selling partners who also sell Maglula's products,

19  even if that complaint itself may have been about another

20  product.

21      If Amazon knows that there's a counterfeiting problem with

22  respect to Maglula's products, and it also knows that a certain

23  selling partner is suspected of selling counterfeit products,

24  Amazon should be connecting those dots.  The e-mail discovery is

25  also targeted to figuring out exactly how Amazon responds to

1    counterfeiting complaints.  And, again, ███████████████

2    █████████████████████████, these are what the search

3    terms at issue in this motion are about.

4         It's also related to the serious and widespread

5    counterfeiting that is on Amazon's website which, again, is

6    relevant to determining whether or not Amazon knew or had reason

7    to know that its selling partners were engaging in infringing

8    activities.

9         As for proportionality, proportionality of discovery is

10   viewed through the lens of the needs of this case.  This case

11   involves many people at Amazon who have been involved in this

12   matter, either through communications with Maglula or its counsel

13   regarding counterfeiting and infringement complaints, or

14   individuals that we have identified through discovery who were

15   tasked with investigating and responding to Amazon -- or

16   Maglula's infringement complaint, largely via e-mail.  It is

17   apparent from the discovery that we have that Amazon employees

18   rely on e-mail as a means of investigating and responding to

19   these complaints.  That's why we're seeking -- we sought e-mail

20   discovery on this topic.

21        So, through that lens, analyzing the proportionality of

22   Maglula's requested e-mail search terms, it's clear that the

23   discovery is proper in this case.  The issue that --

24        THE COURT:  That's one key factor in that regard.

25   Proportionality is based on two key things really, the cost

1    benefit analysis, whether the cost benefit goes to money

2    involved, the cost benefit goes to the amount of information that

3    may be acquired to support the claims or defenses.  If the cost

4    is you search 5 million e-mails and the benefit is that you get 2

5    e-mails in response that would support one element of one claim,

6    that's disproportionate.  If you're asking for $250,000 and your

7    discovery request requires the opposing party to expend

8    $2.5 million to get you that information, that's

9    disproportionate.

10          MS. SMITH:  Certainly, and that is not the situation that

11   we have here.  There are at stake, essentially, millions of

12   dollars in statutory damages in this case, and the search terms

13   that are at issue in this motion, given the information that

14   Amazon provided in its opposition, are returning, I believe,

15   67,000 documents.  What's not clear to me from the information

16   that Amazon provided is whether or not those documents have been

17   reduplicated against the various custodians they were propounded

18   on.  One -- for example, two custodians on one e-mail, Amazon

19   would not be reviewing that e-mail twice.  Or, if those documents

20   have been reduplicated against the documents that Amazon has

21   already searched.  So, if a document hit on one or more of our

22   search terms but Amazon has already reviewed those documents --

23   it's not clear to me whether the 67,000 are unique documents

24   specifically for the search terms that are the subject of this

25   motion.  So what I --

```
 1          THE COURT:  Why not?

 2          MS. SMITH:  Because they have not said so.

 3          THE COURT:  Did you ask?

 4          MS. SMITH:  We did not have the numbers until the morning

 5  of the filing of this motion.

 6          THE COURT:  You mean this morning?

 7          MS. SMITH:  They gave us the accounts for these search

 8  terms last Friday.

 9          THE COURT:  And so, after you received them, I'm sure

10  you -- last Friday you had these same questions that you said

11  you're unclear about now.  So, what you did, once you received

12  the hit count, was to get on the telephone and ask these

13  particular questions of them and got particular answers, correct?

14  Because that's what -- Parties seem to confuse what the local

15  rule actually means when it comes to good faith meet and confer.

16          Simply because a motion has been filed doesn't mean the

17  parties stop conferring, because a good faith meet and confer

18  could result in the fact that an opposition and replies don't

19  need to be filed and the motion could be withdrawn.  That's

20  called judicially efficient.

21          MS. SMITH:  Certainly, Your Honor --

22          THE COURT:  And so the answer to my question is no, that

23  didn't occur?

24          MS. SMITH:  I did not ask that question.  Now, Amazon's

25  e-mail's response to me was also clear that they will not accept
```

1    any narrowing of the terms at issue in this motion if they are

2    not tied to Maglula's complaints about Maglula's products, and we

3    are --

4         THE COURT:  That's an unsupportable position legally.

5         MS. SMITH:  And that is Amazon's position.

6         THE COURT:  Did Amazon consider that factor in your

7    response?

8         MS. SMITH:  I'm sorry?

9         THE COURT:  Did Amazon consider that factor in your

10   response to your argument?  You may continue.

11        MS. SMITH:  I don't know if they did, Your Honor.

12        THE COURT:  No, I'm telling them now, while you're

13   speaking, to be considering what the Court just said in forming

14   their response to your argument.

15        MS. SMITH:  Understood.  Thank you, Your Honor.  Now, I do

16   want to go back to, again, the process of the analysis that you

17   were talking about and looking at the proportionality factors,

18   right?  We have millions of dollars at issue in this case.  The

19   issues at stake are of great importance to Maglula.  They involve

20   Amazon's proliferation of counterfeit Maglula products.  It

21   impacts Maglula's business, its brands, as well, and it also

22   impacts the consumer public at large, people who have tried to

23   order these products, what they thought were genuine products,

24   and have been receiving counterfeits.

25        THE COURT:  Well, we can shorten that argument.  Their

1   whole basis for determining "is not proportionate" is based on

2   their belief that the information you're requesting is not as

3   relevant as you believe it is to support your claims, period.

4   That's their argument.  Why do you believe they're wrong?

5        MS. SMITH:  Sure.  The information that we seek is

6   relevant because -- the relevant information in this case is not

7   limited to Maglula's complaints about Maglula's products.  Again,

8   the standard for a contributory liability analysis is going to

9   involve considering whether or not Amazon had reason to know that

10  its selling partners were engaged in infringing activity.

11  Responsive --

12       THE COURT:  {Indiscernible}.  Now we get to proof of

13  proportionality, because Maglula already has some information to

14  support that claim, because you informed them of that fact when

15  you found out that they were allegedly, and their partners were

16  allegedly continuing to make and/or sell counterfeit Maglula

17  products on the Amazon site, correct?  And then they continued,

18  including the department, after said notification from Maglula

19  continued to offer them for sale on Amazon.  So, you already have

20  some information to support that claim.  So, the real question

21  boils down to how much more information do you need to satisfy or

22  successfully support your claim in front of the trier of fact?

23  Simply because you believe, well, the more the merrier, that's

24  not how we deal with proportionality.  If you can have 20

25  documents and 20 documents will more than be enough to satisfy

1     your obligation to represent your client and be successful at

2     trial, then 20 or 30 documents is appropriate.  It doesn't mean,

3     simply because there may be a million, that you have a right to

4     seek in discovery all million.

5          MS. SMITH:  And we're --

6          THE COURT:  That's proportionality.

7          MS. SMITH:  Sure, and we're not seeking a million

8     documents, Your Honor.  Again, the number that I believe is at

9     issue here is 67,000 e-mails, and for a company of Amazon's size

10    and resources, I do not think that is an overly burdensome task.

11         THE COURT:  Answer this for me.  Why do counsel a lot like

12    to talk about the number of documents produced?  Like that's

13    really all that important.  I mean, let's start with just the

14    fact that it's not even clear, because 67,000 documents could be

15    67,000 pages or it could be 5 million pages, depending on the

16    size of each document.  67,000 documents, the smoking gun could

17    be in three documents, which means 64,997 of the documents aren't

18    even relevant.

19         MS. SMITH:  It could be, Your Honor.  I think that,

20    however, though, if you look at the e-mails that Amazon actually

21    selected and filed in connection with its opposition to this

22    motion, the ones that it claims are not -- have nothing to do

23    with this case, those e-mails actually show exactly what Amazon

24    was seeking -- excuse me, what Maglula is seeking.  They're

25    examples of how Amazon responds to counterfeiting reports,

1    examples of various escalation efforts that may or may not happen

2    for complaints, and a key part of Amazon's argument in this case

3    has been and will continue to be that they have policies in

4    place, they are safeguarding against this type of stuff, and

5    therefore what they do is reasonable.

6         Now --

7         THE COURT:  The information that they provided you has

8    shown you that?

9         MS. SMITH:  To date, it does not.  It shows how Amazon has

10   responded to Maglula's complaints.  Maglula cannot determine

11   reasonableness in a vacuum, right?

12        THE COURT:  So what are you seeking, how Amazon has

13   reacted to every single complaint about counterfeiting made

14   forever since the company was born?

15        MS. SMITH:  No, that's not what the search term states.

16   The search terms were targeted to individuals -- the individuals

17   that we know who were staffed on Maglula's complaints, so we have

18   narrowly selected custodians who we know what their job

19   responsibilities are and who also were handling Maglula's

20   matters.  We have sought discovery from these individuals on how

21   those individuals have responded to other complaints.

22        THE COURT:  So, what are you looking for that they haven't

23   given you?

24        MS. SMITH:  Documents like what they attached -- I believe

25   it's Exhibit 9 -- to their opposition.  We show how the Amazon

1    employees who were responding to Maglula's complaints, how they

2    reacted to --

3         THE COURT:  -- {indiscernible} you're asking for more

4    documents than what they have given you exist.

5         MS. SMITH:  Because I -- they've represented that there

6    are 67,000 documents responsive to the narrow search terms that

7    Maglula proposed that they are not reviewing.

8         THE COURT:  The explanation on why they haven't given you

9    those documents?

10        MS. SMITH:  Their explanation is that because Maglula's

11   narrow search terms are not narrowed in the way that Amazon has

12   proposed to Maglula's complaints about Maglula's products, that

13   the search terms are overbroad.

14        THE COURT:  And I'll let them answer this question,

15   because if they thought the search terms provided by Maglula

16   would elicit irrelevant information, then why did Amazon conduct

17   a search of those terms in the first place?  It seems like the

18   most difficult part of the task has been done.  If you like the

19   search terms, you've gotten the hits, you know what the documents

20   are, now all you have to do is to provide them.  I'm confused as

21   to why we're here.  I mean, the bulk of the work has been done,

22   to make a point.

23        MS. DEV:  Your Honor, may I respond to that?

24        THE COURT:  Of course you may.

25        MS. DEV:  All right.  This is Priyanka Dev on behalf of

1    defendants.  Your Honor, the problem with these terms and the

2    reason we agreed to other similar terms is that we believe -- the

3    amount that is left in this case, although we have run the search

4    terms and come up with the hit count and provided those hit

5    counts on a per term basis, the reason it's problematic still is

6    that Amazon has to review each of those hits, has to call on

7    privilege to determine if there's privileged information,

8    determine if there's third-party confidential information for the

9    different products, different plans, different {indiscernible},

10   different intellectual properties, and then process these --

11        THE COURT:  -- everybody -- every attorney representing a

12   client has the exact same obligation before producing a single

13   document in a single case.  Those are the rules.

14        MS. DEV:  Yes, Your Honor, and --

15        THE COURT:  Why shouldn't you have to go through that in

16   this case, if everybody else has to go through it in their cases?

17        MS. DEV:  Absolutely, Your Honor, we should go through

18   that.  On these particular hits, which are now -- the hit counts

19   that we're talking about, over half of what we've already

20   reviewed, produced, and provided to Maglula, now we're talking

21   about over half of that, doing that again on these terms.  But

22   for these particular terms, they are producing excessive hit

23   counts that are unmanageable and present an undue burden.

24        THE COURT:  I'm confused on what you just said.  What have

25   you produced -- are you saying that what you've already produced

1   is part of what you acquired doing the search of the 16 -- that

2   you got the 67,000 hits on?

3        MS. DEV:  No, Your Honor.  Let me step back and give you a

4   little bit of context.  To date Amazon has reviewed over 104,000

5   e-mails and attachments that were based on 131 search terms that

6   Maglula requested.

7        We negotiated the terms, we compromised on those terms,

8   and we provided those.  What Maglula is asking for now, on 10

9   search terms, they're asking us for a quantity of 68,000 hit

10  counts, and they're asking us to review and then {indiscernible},

11  and the problem with these particular search terms is that

12  they're bringing in excessive hits on a {indiscernible} basis.

13  So this is where they {indiscernible} draw the line.

14       THE COURT:  How do you deem something excessive if you

15  haven't looked at it?  If all 67,000 of those hits are the

16  smoking gun that supports their claim, how are they excessive?

17       MS. DEV:  Your Honor, we have had -- we had to look at

18  them, right, because part of our obligation is to explain to

19  Maglula, Hey, these six counts are non-responsive.

20       THE COURT:  That's the part I wanted to make clear,

21  because part of your argument was we have to go through this

22  process and determine what's attorney-client privilege and what's

23  this and {indiscernible}, but now you're representing to the

24  Court that you've already looked at those documents.

25       MS. DEV:  No, Your Honor.  Let me clarify.  We have not

1  looked at all 67,000 of those.

2          THE COURT:  How many of them have you looked at?

3          MS. DEV:  We looked at, I would say, in order to provide

4  Maglula and the Court examples of non-responsive hits, I would

5  say we looked at about 25 offenses.

6          THE COURT:  25 out of 67,000?

7          MS. DEV:  Something on that order to come up with examples

8  of why these are bringing in nonresponsive hits.

9          THE COURT:  Well, how -- how did you only look at 25 hits

10 if you were looking at hits that were the result of 131 search

11 terms?  That would suggest that you would be looking at least 131

12 hits.

13         MS. DEV:  Sure.  I think there's a little bit of

14 confusion.  The 131 search terms that produced 104,000 documents,

15 we have looked at every single one of those documents.  We have

16 reviewed them for privilege.  We have reviewed them --

17 {indiscernible}, and that is one thing.  What is at issue here

18 that Maglula's asking for and insisting upon is an additional

19 68,000 hits over ten search terms.  That is the bucket that

20 Amazon has not -- that 68,000 hits, Amazon has not gone through

21 page-by-page and reviewed because it's our position here, as has

22 been presented, it's an undue burden to ask us to do that.

23         THE COURT:  Why?

24         MS. DEV:  On top of --

25         THE COURT:  Why?  If you looked at 131 search terms and

1    you found information, 104,000, whatever you said, and you

2    produced that information to them, then obviously someone at

3    Amazon made a determination that either we believe 104,000 based

4    on 131 hits was relevant, or we deem it not too burdensome to

5    give it to them, because you did.  So now we're talking about

6    talking about 67,000 when before you gave them 104,000, which 67

7    is less.  So how is that more burdensome?

8        MS. DEV:  67 -- Yeah, one point of clarification, Your

9    Honor.  We reviewed 104,000 documents.

10        Now, that doesn't mean that all of those documents are

11    relevant that were provided to Maglula.

12        THE COURT:  But if you can review 104,000 and that's not

13    all that burdensome or too burdensome, because you didn't make

14    that argument when you reviewed those 104,000, how is reviewing

15    67,000 more burdensome than reviewing 104,000?

16        MS. DEV:  Your Honor, it's unduly burdensome because of,

17    one, where we are in the case.  We know that discovery at this

18    point in time should be over.  A substantial {indiscernible} --

19        THE COURT:  Well, why were we so slow then?  Were the

20    parties just not producing as quickly as they said or pursuant to

21    the timeline that they, themselves, agreed to in the joint

22    discovery plan?

23        MS. DEV:  No, Your Honor.  The problem is these terms that

24    Maglula is asking for don't even comply with the discovery plan.

25    The joint discovery plan specifies that e-mail discovery requests

1   have to be specific and address specific issues.  So, the reason

2   we haven't delved into --

3        THE COURT:  Well, they say they are, and your argument is

4   they are not.  What we're here for is to determine who's right.

5        MS. DEV:  Yeah, and, Your Honor, in response to that

6   question, I want to pick up on a point that you made with

7   opposing counsel.  You said it would be untenable legal position

8   for Amazon to argue that it has to be limited to Maglula's

9   claims, but that's not Amazon's position.  Amazon's position is

10  that is one way of narrowing these terms, to provide responsive,

11  relevant hits to Maglula that would not result in an undue burden

12  to Amazon that would be proportionate to the needs of the case,

13  and that is -- that is evidenced by the fact that for other

14  custodians, the part of the 131,000 we've already run, the hit

15  counts weren't that bad, weren't presenting an undue burden and

16  we were able to --

17       THE COURT:  Have you looked at the 67,000 hits to

18  determine which one of those are about Maglula and which ones are

19  about other parties or third parties?

20       MS. DEV:  Your Honor, we have not reviewed every single

21  one of those because that's --

22       THE COURT:  Then how do you know if you're narrowing

23  anything correctly?  Because if you look at the 67,000 and

24  64,000, viewing exactly what you believe is relevant, which is

25  the counterfeiting of Maglula's products, then you give them the

1  64,000 and say the other 3,000 is not proportional because you

2  already have 64,000 concerning Maglula that you know the case is

3  about.  But you cannot say that because you haven't even looked

4  at them.

5       MS. DEV:  Well, Your Honor, actually we can say that,

6  because of the 104,000 documents that we did review where we

7  allowed some of these terms to go through, in the spirit of

8  compromise with Maglula, we said, all right, those are still

9  bringing in hits, but we can deal with those other hits.  We

10  reviewed those documents.  We can talk about review of those

11  documents, but if they're not relevant to this case -- the

12  term report, for instance --

13       THE COURT:  In civil litigations, who makes relevance

14  determinations except the Court?

15       MS. DEV:  Yes, Your Honor.  It's --

16       THE COURT:  Relevance determinations are not unilaterally

17  made by clients, unilaterally made by counsel, or bilaterally

18  made between counsel.  Relevance is determined by the Federal

19  Rules of Civil Procedure, the local rules of this Court, and this

20  Court.

21       MS. DEV:  Yes, Your Honor.

22       THE COURT:  So, if you look at the 104,000 and make a

23  determination on which search terms were used that came up with

24  the most irrelevant hits and then looked at the 67,000 and said,

25  okay, we don't look at those ones we looked at in the 131 and

1   came up with 80 percent as irrelevant, we won't look at them, but

2   we'll look at the other search terms that we used to come up with

3   the 104,000, it came up with relevant hits and we'll do that same

4   process with the 67,000.

5       MS. DEV:  And, Your Honor, that is part of the process.

6   We have taken the terms that we've already agreed on.  These

7   terms that are in the center of the group {indiscernible}, the 10

8   terms, are the problematic terms, and for these particular

9   custodians, they're even more problematic than the custodians

10  that made the --

11      THE COURT:  -- and you believe those terms came up with

12  what you believe or deemed relevant information that you provided

13  in the 104,000?

14      MS. DEV:  Yes, Your Honor.  I can't say that -- 104,000 --

15      THE COURT:  -- {Indiscernible} -- that was a rhetorical

16  question.

17      MS. DEV:  Okay.

18      THE COURT:  Because, obviously, out of 10 terms --

19      MS. DEV:  -- absolutely --

20      THE COURT:  -- some of the documents you provided in the

21  104,000 were based on those 10 terms.

22      MS. DEV:  Right, and it's certainly not our position --

23      THE COURT:  -- and if all 10 terms would only produce

24  irrelevant information because those same search terms produced

25  at least some relevant information is what you produced in the

1    104,000.

2         MS. DEV:  Yes, Your Honor.  It's certainly not our

3    position that these terms will not generate a single relevant

4    piece of information.  They --

5         THE COURT:  -- if those terms could come up with more

6    pertinent information.  That's what the parties should have been

7    discussing in the good faith meet and confer.  We think that

8    those 10 search terms come up with 80 percent irrelevant

9    information.  If they're irrelevant, you can dispute that, we can

10   have a discussion about that, compromise on what both parties

11   believe is relevant.  So we both compromise on what we both

12   believe is relevant, that narrows it down to 7 of the 10 terms,

13   and we'll take those 7 terms and see how many hits they get, and

14   then we'll have further discussion after that.  That's how the

15   process works.

16        MS. DEV:  Yes, Your Honor, and that's the problem here.

17   Maglula went ahead and filed a motion, and after -- before then,

18   we had reached out and said, okay, let's -- give us some

19   proposals for narrowing these terms that brings down our hit

20   count.  We've explained why they're bringing in excessive hit

21   counts.

22        THE COURT:  They didn't want to do that.

23        MS. DEV:  They didn't respond to that e-mail, Your Honor.

24        THE COURT:  Okay.  Well, that, sadly to say, there may be

25   a reason for that.  That's why the local rules say that good

1   faith meet and confers should be held either in person or by

2   telephone, because the Court's experience suggests that

3   communicating via the written form, whether it be in letters or

4   e-mails, doesn't resolve disputes.

5        MS. DEV:  Yes, Your Honor.  The last time the parties

6   met --

7        THE COURT:  -- so if they didn't return your e-mail, you

8   picked up the telephone and called them, right?  And said, we

9   sent you an e-mail saying we'd like to participate in a process

10  that will narrow the terms that will more succinctly acquire the

11  information that is relevant to your claims and defenses and we

12  will provide that, and they said, wonderful, let's do that.

13       MS. DEV:  No, Your Honor, we did not call them and they

14  did not call us.  They ignored our e-mail entirely.

15       THE COURT:  That's a good faith meet and confer.

16       MS. DEV:  Yes, Your Honor.  In this case, we don't believe

17  that good faith -- the last time the parties talked over the

18  phone about this issue was October 16th.  That was a while ago

19  during the discovery period in this case.  We don't think that

20  there was a --

21       THE COURT:  Why did you think that 10 search terms are

22  either irrelevant or would lead to information that's

23  disproportionate to the claims or defenses?

24       MS. DEV:  Your Honor, the only argument that we've heard

25  from Maglula about the relevance of these particular terms is

1    that they claim that these terms are going to elicit information

2    about willful and wrongful, {indiscernible} willful blindness,

3    which is an element of contributory liability.

4        As Your Honor pointed out in {indiscernible} *versus Smith*,

5    that is one particular element of one particular claim when

6    Maglula has alleged eight different claims all of which have

7    various subparts.  That proportionality burden puts the -- puts

8    the proportionality standard on its head.  But, more importantly,

9    the contributory reliability analysis requires the Court or the

10   jury to ask whether the alleged offender, which is Amazon, knew

11   or should have known about the particularized infringement in

12   this case.

13       So, Maglula's argument that documents about products --

14   other products and end responses to other complaints about prior

15   liability, compliance, counterfeiting, their point that those are

16   relevant doesn't link up with the actual standard {indiscernible}

17   for liability.

18       THE COURT:  That's not true.  Relevance is a determination

19   for the trier of fact.  Simply because you deem it not necessary

20   or not relevant or they deem it relevant is -- excuse the pun --

21   irrelevant, because neither you nor her would be on the jury, if

22   it's a jury trial; you won't be the judge presiding over the

23   matter if it's a bench trial.  So you really can't say that the

24   information that you have shows that Amazon had particularized

25   knowledge based on -- let's say there are a hundred people

1    complaining about that method of counterfeit or contributing to

2    counterfeiting, and they had complaints from 99 other companies

3    and they did little or anything to combat it, couldn't suggest to

4    a trier of fact that, if they had knowledge of 99 other companies

5    complaining of counterfeit or contributing to counterfeiting on

6    Amazon's sites, then it may be more likely than not that they had

7    information that Amazon knew or should have known of, it was

8    contributing to counterfeiting of Maglula's products.

9        MS. DEV:  Your Honor, the standard in this case -- and

10   this is in the *eBay* case, it makes it clear, while I agree with

11   you that it is up to the trier of fact to determine the

12   relevance, the standard for contributory liability is liability,

13   is specific to the products at issue, the intellectual property,

14   and the alleged infringing --

15       THE COURT:  -- to the product at issue, but you can

16   utilize indirect circumstantial evidence to get that

17   particularity.  Why do you think in, say, discrimination cases,

18   for example, they're allowed by law to use a pattern of

19   discrimination to support that that company discriminated against

20   this particular person.  Circumstantial, indirect evidence can be

21   used to satisfy the elements of the claims in a particularized

22   manner.

23       MS. DEV:  Yes, Your Honor --

24       THE COURT:  And what you're trying to try to argue is that

25   only direct evidence can be used to do that.

1        MS. DEV:  No, Your Honor, not exactly.  There's two points

2   I want to make in response to that, which I think is a valid

3   point.  First, the -- in this particular case, as Maglula's

4   complaint demonstrates, Amazon and Maglula worked for three years

5   together collectively about the problems and the complaints that

6   Maglula had.  Unlike some of the cases that Maglula is relying on

7   where knowledge of other infringing acts might be relevant or

8   admissible where, for example, the *{indiscernible}* case that Your

9   Honor may be familiar with, there's no issue here.  There's no

10  triable issue here of whether or not Amazon failed to act, that

11  Maglula may have a problem with whether Amazon's responses to the

12  actions were reasonable, but that -- there's no triable issue

13  here of whether Amazon failed to act per the defendant's

14  {indiscernible}, and that it was willfully blind to Maglula's

15  complaints.

16        What Amazon -- what Maglula had an issue with was the

17  reasonableness of that, which is a different situation.  In the

18  *{indiscernible}* case, the defendant, the alleged infringer, had

19  centrally rejected the idea that it failed to act.  There was --

20  it's -- there was evidence that it failed to act, that it did

21  nothing.  Here that's not the case.  And more probative than

22  that, Your Honor, to the proportionality concern here, even if

23  there's one particular -- even if Your Honor believes that, you

24  know, this is relevant to whether they knew or should have known

25  and this is, you know, circumstantial evidence in the

1 {indiscernible}, then we turn to the proportionality concerns.

2 Even if it's relevant, there's other evidence, other documents

3 that Amazon produced about this.  Amazon has produced many

4 documents about its anticounterfeiting measures.  Maglula can

5 take issue with that and show the jury why those measures are --

6   THE COURT:  That information is to your advantage, the

7 defendant; not that they are to the plaintiff.

8   MS. DEV:  Well, it's relevant to the inquiry of whether

9 Amazon was willfully blind.

10   THE COURT:  It's relevant to your defense of that element,

11 not to their proving that element that you were knowledgeable and

12 willfully blind.  The fact that you had put in place all these

13 counter, anticounterfeiting policies doesn't help them prove

14 their case, it helps you defend yours.

15   MS. DEV:  Yes, Your Honor, but let's talk about -- even

16 further, even if you believe that, Your Honor, which I do think

17 is a valid point, even if you believe that, as we saw in

18 Exhibit 9 to our opposition, these were particularized e-mails

19 about very particular products, sometimes having nothing to do

20 with counterfeiting; qualified product issues; product compliance

21 issues; whether a listing has the incorrect titles; whether the

22 reported condition of a sweater was the right reported condition;

23 whether an item was marked as used when it was actually new or

24 vice versa.

25   THE COURT:  And so, after reviewing that information, you

1    got on the phone with opposing counsel and said, this is why we

2    believe it's disproportionate and unduly burdensome, because here

3    some of the information that that search is missing, something

4    about using, something about the color or whatever of this

5    sweater, and y'all had a conversation about that, and they said,

6    yeah, we kind of agree with that, that type of stuff really

7    doesn't go to that element of the claim, so we don't want any of

8    that kind of information.  So that conversation occurred, right?

9         MS. DEV:  Your Honor, we definitely explained to Maglula

10   repeatedly that it's bringing in non --

11        THE COURT:  A good faith meet and confer would be more

12   specific and particularized because you would provide them

13   additional information upon which they can form a legitimate

14   conclusion that you're right, and that you're just not

15   representing the best interest of your client, that you're

16   providing information that they also would use or think is

17   relevant to them helping them to prove their claims.  But I'm

18   glad you got back to proportionality, because it's kind of hat in

19   hand with unduly burdensome.

20        So -- but I haven't gotten the definition -- the law is

21   clear on that fact.  Unduly burdensome has to be specific.

22   Affidavit this and that.  So, how much money did it cost to go

23   through that process with the 67,000 hits?  How much time and

24   effort?  How many personnel did you place on it?  How many hours

25   did those personnel spend doing that rather than doing other work

1   for Amazon which Amazon could make a profit?  That's the type of

2   information that you're required to provide the Court for the

3   Court to make a determination on that -- whether their request of

4   unduly burdensome or not is therefore proportionate or

5   disproportionate to the needs of the Court.

6        MS. DEV:  Yes, Your Honor.  Having addressed that in

7   Exhibit 5 our opposition, we included a table that not only shows

8   the hit counts but also the gigabytes of data that we got, and,

9   maybe even more importantly to your point, Your Honor, the number

10  of hours on a per custodian or per employee, these are the terms

11  that Maglula has signified, how many hours it would take Amazon

12  to review those hits, and that's a per-person basis.

13       And so the total there, if you look at Exhibit 5, and I'm

14  happy to just tell you the total there is 1724 hours, that is a

15  large amount of hours.  Again, that's on a per-person basis, but

16  we divide that over a review team of, let's say, 30 reviewers.

17  It takes, you know, a couple of weeks to get through it,

18  perhaps -- I haven't done the math exactly, but I think it's

19  going to take a matter of a week or so, but that's a lot of

20  reviewers.  That's a lot of manpower that --

21       THE COURT:  It's a great amount of work in a -- how long

22  was the discovery process in this case?

23       MS. DEV:  Your Honor, fact discovery ends on the 30th of

24  November, and I believe it started in late August.

25       THE COURT:  When did it start?

1        MS. DEV:  I believe it started in late August --

2    {Indiscernible}.

3        THE COURT:  {Indiscernible} of fact discovery?  One week

4    of review is unduly burdensome in a two-and-a-half month fact

5    discovery process, is what you're saying?

6        MS. DEV:  Your Honor, it -- I want to be clear.  There are

7    early reviewers that would have to be tasked with these -- the

8    number of reviewers that Amazon would have to task with this is a

9    large amount.

10        THE COURT:  That's 1700 hours.  That's 1700 hours per

11    reviewer?

12        MS. DEV:  No, it's 1700 hours to get through all of this

13    data on a per person basis, so 1700 hours that --

14        THE COURT:  -- so a week and a half.  A week and a half of

15    their time and effort reviewing and a two-and-a-half month fact

16    discovery process is what you deem unduly burdensome.

17        MS. DEV:  Being unduly burdensome and not proportional,

18    given the discovery that we've provided, Your Honor.

19        THE COURT:  Well, so you -- y'all couldn't come up with a

20    compromise to say, okay, we'll give you that type of information

21    concerning not only Maglula, since that's particularized to the

22    clients in this claims in this case, but to other third party

23    parties or complainants and say, okay, well, we got ours plus we

24    got some support hours, we're done?

25        MS. DEV:  Your Honor, we didn't come up with that

1    compromise because Maglula -- Maglula is seeking a sweeping -- a

2    sweeping discovery of all products in all --

3         THE COURT:  They can't get sweeping discovery.  I make

4    that clear every Friday.  I mean, we've been here more than one

5    Friday.  Maybe I didn't make it clear.  I mean, you know, this

6    Court's definition of good faith meet and confers which goes to

7    help narrow proportionality and benefits and costs in a case, is

8    that good faith meet and confers during a settlement conference

9    is about compromise.  Nobody leaves a good faith meet and confer

10   completely happy, just like settlements.  No one should walk into

11   a good faith meet and confer with the attitude or philosophy,

12   it's my way or the highway; take it or leave it; this is what I'm

13   offering, you give it to me or I'm walking.  That's not a good

14   faith meet and confer.

15        So, when you say they refused to narrow the -- that's an

16   issue.  That's a basis for this Court to deny your motion

17   outright for failure to follow the local rules in meeting and

18   conferring in good faith because --

19        MS. DEV:  -- Your Honor --

20        THE COURT:  -- because the law provides for that

21   alternative as well.

22        MS. SMITH:  Your Honor, if I may address that point.  We

23   spoke with Amazon counsel in the course of several weeks

24   regarding the search terms.  We talked to them on the phone on

25   October 16th.  They gave us the hit count for our original search

1   terms.  I immediately advised them of certain terms that I knew

2   given the low hit counts that they had returned, numbers such as

3   2 and 19, et cetera, that we would not be narrowing those terms

4   because we didn't believe that hit counts of that nature to be

5   unduly burdensome.

6       We then exchanged substantial e-mails regarding the back

7   and forth of these terms, which I do believe is appropriate in

8   this case given the complexities of the search terms that we

9   proposed.  Maglula has narrowed, has utilized {indiscernible}

10  structures.  We communicated those narrowing proposals to Amazon.

11  And then last week we get an e-mail from Amazon that says these

12  are the search terms we're running.

13      THE COURT:  All I keep hearing is e-mails.

14      MS. SMITH:  We were on the phone, and then moved to e-mail

15  given, again, the {indiscernible} in the briefing, right, all of

16  the terms involved -- from the connectors within certain of

17  these, these terms and this, and my belief is that it was more

18  effective to put that in writing so that everybody could see what

19  search terms we were proposing that Amazon run, and Amazon had

20  counter proposals, including those in writing to us.

21      THE COURT:  Then when you got on the phone with them and

22  said, we believe these are not disproportionate or unduly

23  burdensome because those two terms got 2 hits and 19 hits based

24  on your previous production, so that's what we based our

25  determination that using those 2 terms, at the very least, would

1    not be unduly burdensome or disproportionate.  That's what you

2    said to them on the telephone.  And they said, Gee, 2 and 19?  We

3    can understand that, we agree.

4         MS. SMITH:  Right.  And every step of the way, you can see

5    through the way the e-mail correspondence have played out, we

6    have proposed terms; Amazon did come back and accept the

7    revisions for some of those.  Every step of the way we have been

8    narrowing these issues, and both sides have been -- as you said,

9    nobody has left happy.

10        THE COURT:  But they're not narrowed enough, it appears.

11        MS. SMITH:  No, because last week we got an e-mail from

12   Amazon saying these are the search terms we are running, and we

13   are at a fundamental impasse on whether or not the search terms

14   need to be limited to Maglula's complaints about Maglula's

15   products.  Amazon's position on that has not changed.  The first

16   time --

17        THE COURT:  -- the Court has.  You will give them

18   information concerning at least a couple of other third-party or

19   people who sell or whatever on Amazon.  It needs to be four

20   others besides Maglula products, various.  Go back to the 67,000

21   hits.  That's a compromise.  If there are 60 others they're

22   complaining about and you only have to give them information

23   concerning 3 or 4, that's a compromise.

24        MS. SMITH:  I just want to clarify something.  Someone

25   else complaining about Maglula's products?

```
 1        THE COURT:  The information they said that they provided
 2   Maglula -- you have made the argument that this is why it helps,
 3   it assists us in proving the element of contributory negligence,
 4   the fact that you knew or they had knowledge of complaints about
 5   counterfeiting, efforts they took to resolve those complaints,
 6   therefore, if they knew and did nothing, no effort to resolve, or
 7   they did -- you deem were insufficient, after they did and they
 8   provided you all of that information concerning Maglula, then by
 9   that same type of information concerning three or so other people
10   who have complained about counterfeiting of their products, not
11   Maglula's {indiscernible} or whatever you want to call it.
12        Because without it, we just -- maybe it just wasn't
13   Maglula.  Maybe Maglula just said this.  But if there's
14   information to suggest that other people were complaining about
15   the same thing about their products that Maglula is now
16   complaining about here about theirs, provide generally, logically
17   speaking, makes it more likely than not, maybe, that a trier of
18   fact could conclude that this was going on with Maglula as well.
19   That's like you bringing other information to support your own
20   client's words rather than just your client's testimony.  It's
21   always good to have something else to support it.
22        MS. DEV:  Your Honor, may I just respond to that with just
23   one point with the Court's indulgence?
24        THE COURT:  You may.
25        MS. DEV:  Your Honor, in their reply -- the compromise is
```

1    an interesting one to me, because in their reply, and I hate to

2    read parts of the brief, but they say that Maglula should be able

3    to test Amazon's reasonableness argument against Amazon's

4    {indiscernible} policies and how Amazon responds to such other

5    complaints.  In a footnote, footnote 3 of page 5 of their brief,

6    they state "Amazon has already produced some such documents,

7    including e-mails."  So, I wanted to get clear.  I'm happy to

8    have the Court compromise, and we're amenable to that, but I want

9    to make it clear what Amazon has done with those documents and --

10       THE COURT:  What have they provided concerning that and

11   why do you deem it insufficient?  Or are you looking for all

12   again?  Because you're not getting all.

13       MS. DEV:  Right, and I would like to take a step back and

14   talk about the fact that Maglula propounded search terms in a way

15   that the parties agreed to in this case, which was 10 search

16   terms per custodian identified, so --

17       THE COURT:  What information are they referencing in that

18   complaint in that footnote that they have provided you, and why

19   do you deem it insufficient?

20       MS. DEV:  They have given us, I would say, some examples

21   from certain custodians, not the custodians that we propounded

22   and not necessarily -- and again, these are people who were

23   tasked with reviewing --

24       THE COURT:  -- If the factual underpinnings of what

25   occurred, what they did in response to complaints about

1    counterfeiting are the same, what difference does it make what

2    file, what custodian's file that came out of?  You're not really

3    using -- if it's one of their own people, you have the argument,

4    whether that person works in cubicle A or cubicle C, the argument

5    is the same.  They knew about it, therefore the company knew

6    about it, therefore they were willfully blind in ignoring what we

7    told them, the same way they were willfully blind in ignoring

8    these other four, three or four companies about the

9    {indiscernible} counterfeited products on their side.

10          MS. SMITH:  My concern is that this allows for an element

11   of cherry-picking.  They have produced e-mails from certain

12   custodians relating to complaints of counterfeiting; they have

13   not for others.

14          THE COURT:  So they will provide those three or four that

15   I am talking about from three or four custodians that they have

16   not provided yet.

17          MS. SMITH:  There are, I believe, seven or eight

18   custodians at issue in this motion.

19          THE COURT:  And so you're looking for all seven or eight

20   after I just said you're not getting all?

21          MS. SMITH:  They're going to label it that Maglula

22   propounded its search terms, that that is what we requested, and

23   the --

24          THE COURT:  For the same information provided, then, in

25   regards to what you've already provided.  You will provide that

1    same information concerning four other custodians.

2         MS. SMITH:  And who gets to pick those custodians?

3         THE COURT:  What better way do you have to pick them?

4    Pick -- this is becoming way more -- this is really putting the

5    Court in the minutia of it?  Put seven names on a list, put them

6    on a piece of paper, put them in a hat and draw them.  Really?

7    This is what the Court has gotten down to?  We are that

8    mistrusting of opposing counsel that we can't believe -- someone

9    with a legitimate process of picking four out of seven or eight

10   names?

11        MS. SMITH:  I think we can make that work, Your Honor.

12        THE COURT:  You will make it work.

13        MS. SMITH:  Understood.

14        MS. DEV:  Your Honor, could I just clarify your order to

15   make sure I understand it?

16        THE COURT:  Yes.

17        MS. DEV:  Okay.  There's a lot of moving parts with

18   custodians and terms.  So, the terms that are at issue for the

19   motion cover a number of different custodians.  We've already

20   provided three on the -- you know, three on 15 different

21   custodians for 131 terms.  Are you asking the parties to focus

22   their searching on three or four of these remaining terms and

23   come to agreement on that?  I want to understand your order on

24   that, because it's not on a per-custodian -- the point is, if

25   we've only provided those types of e-mails for some custodians

 1    and we're refusing to provide them on others --

 2          THE COURT:  -- well, why didn't you --

 3          MS. DEV:  -- so that --

 4          THE COURT:  -- mention that issue here, there are seven or

 5    custodians?

 6          MS. DEV:  There are three -- yes, there are eight

 7    custodians at issue, and your order is that we confer about some

 8    of those custodians, three to four business custodians.

 9          THE COURT:  Whatever information you provided and she

10    said, they've already provided that information for some,

11    whatever search you did to be able to provide that information

12    concerning some, you will do the same thing concerning four

13    others.

14          MS. DEV:  Okay.  I think I understand the Court's order.

15          THE COURT:  When -- when did we say fact discovery would

16    close?

17          MS. SMITH:  November 30th, Your Honor.

18          THE COURT:  All right.  Well, before I --

19          MS. SMITH:  November 30th.  I don't know if we put out --

20          THE COURT:  Well, are there other issues in dispute?

21          MS. DEV:  Nothing from the defendants, Your Honor.

22          MS. SMITH:  I'm checking really quickly.  Nothing further

23    from plaintiff.

24          THE COURT:  All right.  The defendants, how long do you

25    think you need to go through that process and provide that

1    information?

2         MS. DEV:  Your Honor, assuming that the parties can

3    somewhat confer and we're on the same page on what we're

4    providing, I think by the 16th of November would be a reasonable

5    timeframe, which is a week from now.

6         THE COURT:  Do you have any problems with that?

7         MS. SMITH:  My concern is that we are -- we have only a

8    few weeks left in fact discovery, and if we're just getting

9    documents with two weeks left --

10        THE COURT:  -- well, I'd think you'd want to --

11        MS. SMITH:  -- prior the taking depositions --

12        THE COURT:  -- get this done as quickly as possible so the

13   Court doesn't have to hear a motion concerning extensions because

14   of the fact of the holiday.

15        MS. SMITH:  Right.

16        THE COURT:  So, it appears to the Court that sooner will

17   be better than later.  Sooner would not involve your Thanksgiving

18   plans and sooner would be faster, given your time before the

19   discovery cutoff.

20        MS. SMITH:  Yes.  I would propose what we did in our

21   initial order, so within five business days, which would be the

22   11th.

23        THE COURT:  What initial order?

24        MS. SMITH:  The initial proposed order that we provided

25   with this motion, which suggested five days.

1       THE COURT:  Is that calendar days?

2       MS. SMITH:  Yes.

3       THE COURT:  So, you want them to work over the weekend,

4    too?  Are you working over the weekend?

5       MS. SMITH:  I am, Your Honor.

6       MS. DEV:  Your Honor, we've requested -- just -- in the

7    spirit of compromise, Your Honor, we request until next Friday,

8    which gives us a week to take the hit counts that we're talking

9    about here, make sure we are on the same page.  I want to make

10   sure we're on the same page as plaintiff.  {Indiscernible} and

11   produce them by the five days.

12      THE COURT:  Okay.

13      MS. DEV:  Thank you, Your Honor.

14      THE COURT:  Anything further?

15      MS. SMITH:  Nothing from plaintiff.

16      MS. DEV:  Nothing from defendants.  Thank you, Your Honor.

17      THE COURT:  Thank you.

18      (Proceedings adjourned at 12:52 p.m.)

19

20

21

22

23

24

25                    **C E R T I F I C A T E**

1

2          I, Scott L. Wallace, RDR-CRR, certify that
the foregoing transcript of proceedings was prepared from
3   an FTR Gold audio recording of proceedings in the
above-entitled matter and was produced to the best of my
4   ability.  Indiscernible indications in the transcript
indicate that the audio captured was not clear enough for
5   this reporter to attest to its accuracy.

6

/s/ Scott L. Wallace                1/13/21
7   ---------------------------        ----------------
**Scott L. Wallace, RDR, CRR            Date**
8       **Official Court Reporter**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25