**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| MAGLULA, LTD., | |
| Plaintiff, | Civil Action No. 1:19-cv-01570-LO-IDD |
| v. | |
| AMAZON.COM, INC. and AMAZON.COM SERVICES, INC., | |
| Defendant. | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

STATEMENT OF UNDISPUTED FACTS ("SUF")..........................................1

ARGUMENT .........................................................................................................8

I.     THE COURT SHOULD GRANT SUMMARY JUDGMENT OF NO
TRADEMARK INFRINGEMENT. ...............................................................8

     A.    Legal Standard ...................................................................................9

     B.    Maglula Has Proffered No Evidence That Amazon Has Used
"StripLULA," "1911AI," Or "BenchLoader" In Commerce................................10

     C.    Maglula Failed To Show That It Possessed Protectable Common Law
Trademarks. .......................................................................................11

     D.    Maglula Has Failed To Set Forth Evidence To Establish The Required
Elements For Its Trademark Infringement Claims. .................................12

II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT OF NO
TRADEMARK COUNTERFEITING.............................................................15

     A.    Amazon Is Not Liable For Counterfeiting Of The Asserted Trademarks
Prior To Their Registration.............................................................15

     B.    Maglula Has Never Disclosed Its Theories As To Trademark
Counterfeiting Or Identified Which Of Its Marks Were Counterfeited................16

     C.    Maglula's Trademark Counterfeiting Claims Also Fail Because Maglula
Has Not Shown Actual Or A Likelihood Of Confusion. ........................18

III.   THE COURT SHOULD GRANT SUMMARY JUDGEMENT OF NO
COPYRIGHT INFRINGEMENT....................................................................18

     A.    Legal Standard ...................................................................................18

     B.    Maglula Has Failed To Show Infringement Of Any Of The Asserted
Copyrights.........................................................................................19

     C.    Separately, Summary Judgment Should Be Granted On Maglula's "Design
Element" Copyright Claims Because Those Registrations Cover Useful
Articles Not Protectable Under The Copyright Act.............................20

i

**TABLE OF CONTENTS (cont'd)**

**Pages**

IV.   THE COURT SHOULD GRANT SUMMARY JUDGMENT OF
NONINFRINGEMENT AS TO THE "UNINSPECTED" PRODUCTS. ..........................23

    A.   Maglula Lacks Evidence Regarding The Structure And Function Of The
Uninspected Products. ............................................................................................24

    B.   Legal Standard ......................................................................................................26

    C.   Maglula Has No Proof Of Infringement For The Uninspected Products. .............26

    D.   Maglula Cannot Prove Infringement Of The Uninspected Products
Through Representative Products. .........................................................................28

V.   AMAZON IS NOT VICARIOUSLY LIABLE FOR TRADEMARK
INFRINGEMENT OR COUNTERFEITING BASED ON SALES OF ACCUSED
PRODUCTS BY THIRD-PARTY SELLERS. ..................................................................29

CONCLUSION. ...............................................................................................................................30

**TABLE OF AUTHORITIES**

**Cases**                                                                                         **Page(s)**

*Armand's Subway, Inc. v. Doctor's Assocs., Inc.*,
    604 F.2d 849 (4th Cir. 1979) ................................................................................ 12

*Associated Gen. Contractors of Am. v. Stokes*,
    No. 1:11-cv-795 (GBL/TRJ), 2013 WL 1155512 (E.D. Va. Mar. 19, 2013) .................. 18

*Billco Int'l, Inc. v. Charles Prod., Inc.*,
    776 F. Supp. 2d 105 (D. Md. 2011) ................................................................... 19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .......................................................................... 16, 24, 26

*Ciphertrust, Inc. v. Trusecure Corp.*,
    No. 1:04-cv-1232, 2005 U.S. Dist. LEXIS 46322 (E.D. Va. Nov. 28, 2005) ................. 14

*Copeland v. Bieber*,
    789 F.3d 484 (4th Cir. 2015) ............................................................................ 18

*Diamonds Direct USA, Inc. v. BFJ Holdings, Inc.*,
    No. 3:12CV303-HEH, 2012 WL 5473795 (E.D. Va. Nov. 9, 2012) .............................. 12

*Essence Comm'ns, Inc. v. Singh Indust., Inc.*,
    703 F. Supp. 261 (S.D.N.Y. 1988) ..................................................................... 14

*Eugene Baratto & Textures, LLC v. Brushstrokes Fine Art*,
    701 F. Supp. 2d 1068 (W.D. Wis. Mar. 24, 2010) ................................................ 29

*Exigent Tech, Inc. v. Atrana Solutions, Inc.*,
    442 F.3d 1301 (Fed. Cir. 2006) ........................................................................ 26

*Fujitsu Ltd. v. Netgear, Inc.*,
    No. 07-CV-710-BBC, 2009 WL 3047616 (W.D. Wis. Sept. 18, 2009), *aff'd in
    part, rev'd in part on other grounds*, 620 F.3d 1321 (Fed. Cir. 2010) ............................ 28

*General Mills, Inc. v. Hunt-Wesson, Inc.*,
    103 F. 3d 978 (Fed. Cir. 1997) ......................................................................... 26

*George & Co. LLC v. Imagination Ent. Ltd.*,
    575 F.3d 383 (4th Cir. 2009) ............................................................................ 10

*George & Co., LLC v. Imagination Ent. Ltd.*,
    No. 1:07CV498 (LMB/TRJ), 2008 WL 2883771 (E.D. Va. July 25, 2008) .................... 14

*Hartford Cas. Ins. Co. v. MCJ Clothiers, Inc.*,
    54 F. App'x 384 (4th Cir. 2002) .................................................................. 15, 17

*Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*,
   790 F.3d 532 (4th Cir. 2015) ......................................................................... 20

*L & W, Inc. v. Shertech, Inc.*.
   471 F.3d 1311 (Fed. Cir. 2006)...................................................................... 26

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*,
   43 F.3d 922 (4th Cir. 1995) ........................................................................... 10

*Magnussen Furniture, Inc. v. Collezione Europa USA, Inc.*,
   116 F.3d 472 (4th Cir. 1997) ......................................................................... 23

*McDonald v. K-2 Indus., Inc.*,
   108 F. Supp. 3d 135 (W.D.N.Y. 2015).......................................................... 20

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
   571 U.S. 191 (2014)....................................................................................... 26

*Milos Misha Subotincic v. 1274274 Ontario Inc.*,
   No. SACV 10-01946 AG, 2013 WL 3964994 (C.D. Cal. Apr. 9, 2013)......... 28

*Mollohan v. Warner*,
   No. 2:13-CV-32251, 2017 WL 1217204 (S.D.W.Va. Mar. 31, 2017) ............ 21

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*,
   No. CV-14-085-LRS, 2015 WL 12911326 (E.D. Wash. Nov. 30, 2015)......... 16

*Pilot Corp. of Am. v. Fisher-Price, Inc.*,
   501 F. Supp. 2d 292 (D. Conn. 2007)............................................................ 10

*Pivot Point Int'l, Inc. v. Charlene Products, Inc.*,
   932 F. Supp. 220 (N.D. Ill. 1996) ................................................................. 21

*Pulse Elecs., Inc. v. U.D. Elec. Corp.*,
   No. 3:18-CV-00373-BEN-MSB, 2021 WL 981123 (S.D. Cal. Mar. 16, 2021)............... 28

*Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*,
   405 F. Supp. 2d 680 (E.D. Va. 2005), *aff'd*, 227 F. App'x 239 (4th Cir. 2007)............... 10

*Rosetta Stone Ltd. v. Google, Inc.*,
   676 F.3d 144 (4th Cir. 2012) ................................................................... 10, 29

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
   215 F.3d 1246 (Fed. Cir. 2000)..................................................................... 24

*Sedgewick Homes, LLC v. Stillwater Homes, Inc.*,
   No. 5:16-CV-00049-RLV-DCK, 2017 WL 3221488 (W.D.N.C. July 28, 2017) ............ 19

*Sponsion, Inc. v. Int'l Trade Comm'n,*
  629 F.3d 1331 (Fed. Cir. 2010)............................................................. 28

*Star Athletica, L.L.C. v. Varsity Brands, Inc.,*
  137 S. Ct. 1002 (2017) ...................................................................... 21

*Towler v. Sayles,*
  76 F.3d 579 (4th Cir. 1996) ............................................................... 19

*U.S. S.E.C. v. Elfindepan, S.A.,*
  206 F.R.D. 574 (M.D.N.C. 2002) ....................................................... 11

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.,*
  196 F. App'x 166 (4th Cir. 2006) ....................................................... 21

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.,*
  618 F.3d 417 (4th Cir. 2010) ....................................................... 19, 21

*Y.Y.G.M. S.A. v. Redbubble, Inc.,*
  No. 2:19-cv-04618-RGK-JPR, 2020 WL 3984528 (C.D. Cal. July 10, 2020)................ 30

## **Statutes**

15 U.S.C. § 1114(1)(a)................................................................................. 10

15 U.S.C. § 1116(d)(1)(B)(i) ...................................................................... 16

15 U.S.C. § 1127.......................................................................................... 15

15 U.S.C. §1114(1) ....................................................................................... 8

15 U.S.C. §1125(a)(1)(A) .............................................................................. 9

17 U.S.C. § 101 ................................................................................... 20, 21

Virginia Code § 59.1-92.12 ........................................................................... 9

# INTRODUCTION

Since it filed this case against the Amazon Defendants, Maglula Ltd. ("Maglula") has pursued wide-ranging claims, including direct and indirect infringement claims for U.S. Patent Nos. 7,637,048 ("the '048 Patent") and 7,503,138 ("the '138 Patent") (collectively, "the Patents-in-Suit"), direct, contributory, and vicarious infringement (under federal, state, and common law) and counterfeiting of eight trademarks, and direct, contributory, and vicarious infringement of eighteen copyrights.[1]   Maglula's intellectual property relates to its magazine loader products that facilitate the loading of ammunition (also called rounds) into a firearm magazine.   Throughout discovery, rather than marshal proof for its various claims, it continually sought to expand the scope of the case, adding thousands of accused products.   It also conducted unnecessary discovery designed to burden Amazon, including multi-day inspections of Amazon's inventory processes— not accused of infringement—at five different Amazon fulfillment centers during the 2020 holiday season.   Having refused to focus discovery on proving its case rather than burdening Amazon, Maglula cannot now muster even a *prima facie* factual showing for the required elements of its many claims for each of the thousands of accused products.   Accordingly, the Court should grant summary judgment based on failure of proof as to Maglula's (1) trademark infringement and counterfeiting claims; (2) copyright infringement claims; (3) patent infringement claims as to products that it never inspected; and (4) claims for vicarious trademark infringement and counterfeiting based on third-party sales.

## STATEMENT OF UNDISPUTED FACTS ("SUF")

1.   Maglula owns eight registered trademarks with the following dates:

---

[1]  Maglula originally alleged copyright infringement based on 15 copyright registrations; in October 2020, with less than three months left until the close of fact discovery, Maglula added three additional copyright registrations. (*Compare* Compl. (Dkt. 1) ¶ 27 *with* Plaintiff's First Amended Complaint ("Am. Compl.") (Dkt. 70) ¶ 27.)

| Mark | Goods | App. No. Reg. No. | Reg. Date |
|---|---|---|---|
| LULA | Loader and/or unloader for firearm magazines | 78392639 3001252 | 9/27/2005 |
| 22UpLULA | Firearm magazine loaders and unloaders | 87256370 5269613 | 8/22/2017 |
| BenchLoader | Firearm magazine loaders | 87256971 5315117 | 10/24/2017 |
| BabyUpLULA | Firearm magazine loaders and unloaders | 87256375 5321129 | 10/30/2017 |
| 1911AI | Aligning insert for firearm magazine loader | 87466966 5355180 | 12/12/2017 |
| StripLULA | Firearm magazine loaders and unloaders | 87258099 5894011 | 10/29/2019 |
| Maglula | Firearm magazine loaders and unloaders | 87258071 5894010 | 10/29/2019 |
| UpLULA | Firearm magazine loaders and unloaders | 87258110 5894012 | 10/29/2019 |

(Plaintiff's First Amended Complaint ("Am. Compl.") (Dkt. 70) ¶ 25.)

2.     Maglula did not produce and does not rely on a consumer survey to demonstrate the existence or extent of customer confusion resulting from use of any of the allegedly infringing trademarks in the marketplace.

3.     Maglula did not produce and does not rely on a consumer survey to demonstrate whether any of Maglula's trademarks acquired secondary meaning.

4.     None of Maglula's experts opined that the alleged use of the allegedly infringing trademarks constituted trademark infringement or resulted in actual confusion or a likelihood of confusion on the part of customers.

5.     Maglula did not disclose expert testimony that analyzed any of the likelihood-of-confusion factors articulated by the Fourth Circuit.

6.     Maglula's responses to Amazon's contention interrogatories addressing trademark infringement and counterfeiting do not compare any of Maglula's trademarks to the allegedly

infringing trademark(s) used by each Accused Trademark Infringement Product or each Accused Trademark Counterfeiting Product.[2]  (Ex. 1 (Maglula Eighth Supp. Resp. to Amazon Interrogatory No. 5); Ex. 2 (Maglula Supp. Resp. to Amazon Interrogatory Nos. 27, 28) (all directed to trademark claims).)[3]

7.   Maglula's responses to Amazon's contention interrogatories addressing trademark infringement and counterfeiting do not analyze any of the likelihood-of-confusion factors articulated by the Fourth Circuit.  (Ex. 1 (Maglula Eighth Supp. Resp. to Amazon Interrogatory No. 5) Ex. 2 (Maglula Supp. Resp. to Amazon Interrogatory Nos. 27, 28) (all directed to trademark claims).)

8.   Maglula did not disclose expert testimony analyzing whether and to what extent the purported use of the asserted trademarks constituted trademark counterfeiting.

9.   Dr. Harrison did not analyze or opine on trademark infringement.  (Ex. 7 (Deposition of Joshua C. Harrison ("Harrison Dep. Tr.")) 166:13-167:6.)

10.   Maglula owns eight copyright registrations covering "original design elements of the UpLULA" loader.  (U.S. Copyright Registration Nos. VA0002083626, VA0002083624, VA0002083628, VA0002083358, VA0002083627, VA0002083357, VA0002083625, and VA0002083356, all registered July 24, 2017).   For example, one copyrighted work associated with Maglula's "design element" copyrights covers the "UpLULA lock:"

---

[2] For purposes of this brief, Amazon defines "Accused Trademark Infringement Products" as the products identified by Maglula's damages expert John G. Plumpe as "Infringing Trademark: Accused ASINs."  (*See* Ex. 19 (Plumpe Rpt.) at Tab 3a.)  Amazon defines "Accused Trademark Counterfeiting Products" as the products identified by Mr. Plumpe as "Counterfeit Trademark: Accused ASINs."  (*See id*. at Tab 3c.)

[3] All exhibits to Amazon's motion are attached to the Declaration of Priyanka R. Dev, which was filed concurrently with the motion.



(Am. Compl. (Dkt. 70) ¶ 27; *see also* Ex. 3 (MAGLULA00070001-7009 (VA0002083627 deposit material)).)

11.      Maglula owns three copyright registrations covering "product insert cards" associated with the UpLULA product. (U.S. Copyright Registration Nos. VA0002195872, registered March 3, 2020; VA0002193623, registered March 3, 2020; and VA0002193628, registered March 3, 2020 (Am. Compl. (Dkt. 70) ¶ 27).)   For example, one copyrighted work associated with Maglula's product insert card copyrights is entitled "Product insert card for UpLULA 2016/6 (green background):"



Ex. 4 (MAGLULA00001553-1554 (VA0002195872 deposit material).)

12.      Maglula owns seven copyright registrations covering "photographs depicted on the" UpLULA "product packaging insert card[s]." (U.S. Copyright Registration Nos. VA0002084097, registered July 31, 2017; VA0002084096, registered July 31, 2017; VA0002084095, registered July 31, 2017; VA0002083361, registered July 31, 2017; VA0002084093, registered July 31, 2017; VA0002083359, registered July 31, 2017; and

VA0002146376, registered April 11, 2019 (Am. Compl. (Dkt. 70) ¶ 27.))  One copyrighted work associated with the photographs is entitled "Photograph of UpLULA (with loaded magazine and hand grasp with instructions):"



(Ex. 5 (MAGLULA00001543-1545 (VA0002146376 deposit material); Ex. 6 (MAGLULA00001613-1616 (VA0002146376 registration).)

13.    Maglula's responses to Amazon's contention interrogatories do not compare or provide a comparison between any of Maglula's registered copyrights and the Accused Copyright Products.[4]

14.    Maglula's technical expert, Dr. Harrison, did not analyze or opine on copyright infringement.  (Ex. 7 (Harrison Dep. Tr.) 167:7-10).)

15.    None of Maglula's experts opined that the Accused Copyright Products infringe the asserted copyrights.

16.    There is no evidence in the record of direct copying.  For example, there is no witness account that Amazon copied the copyrighted work.

17.    Maglula marks its UpLULA magazine gun loader products with the Patents-in-Suit. (Am. Compl. (Dkt. 70) ¶ 35.)

---

[4] For purposes of this brief, Amazon defines "Accused Copyright Products" as the products identified by Maglula's damages expert John G. Plumpe as "Infringing Copyright:  Accused ASINs."  (*See* Ex. 19 (Plumpe Rpt.) at Tab 3e.)

18.     Amazon does not manufacture or design the Accused Patent Products.[5]  (Ex. 8 (Amazon Resp. to Interrogatory Nos. 2, 4) at pp. 12, 42-43.)

19.     Amazon does not possess or have custody of technical standards or specifications or design documents describing the features of the accused products.  (Ex. 8 (Amazon Resp. to Interrogatory No. 2) at 12.)

20.     The accused products are sourced from third-party manufacturers, sellers, and vendors.  (Ex. 8 (Amazon Resp. to Interrogatory Nos. 2, 4) at pp. 12, 42-43; Ex. 9 (Deposition of Maglula CEO and corporate witness Guy Tal ("Tal Dep. Tr.") 106:13-18).)

21.     There is no industry standard for the accused products that mandates a particular structure or function for magazine loaders.  (Ex. 7 (Harrison Dep. Tr.) 70:4-13, 131:6-20, 132:7-15, 132:16-133:3.)

22.     During the course of discovery, Maglula did not subpoena documents or testimony from any of the third-party manufacturers, sellers, or vendors from whom the accused products are sourced.

23.     Amazon does not typically inspect, test, or certify products sold through Amazon Retail.  (Ex. 8 (Defendants' Supplemental Responses to Plaintiff's Interrogatory Nos. 2, 10 ("Amazon Supp. Resp.")) at pp. 12-13, 68-69.)

24.     Amazon Retail acquires the Accused Patent Products from third-party vendors. (Ex. 8 (Amazon Supp. Resp. to Interrogatory Nos. 2, 7) at pp. 42-43, 60.)

---

[5] For purposes of this brief, Amazon defines "Accused Patent Products(s)" as the products identified within Supplemental Exhibit 7, by Amazon Standard Identification Number (ASIN) and Fulfillment Network Stock Keeping Unit (FNSKU), to the expert report of Maglula's technical expert, Dr. Joshua C. Harrison.  (Ex. 16 (Supplemental Expert Report of Dr. Joshua C. Harrison ("Harrison Supp. Rpt.")), Supp. Ex. 7).)  Dr. Harrison's Supplemental Exhibit 7 subsumes the list of products identified within Exhibit 7 to his original report.  (Ex. 15 (Expert Report of Dr. Joshua C. Harrison ("Harrison Rpt.")), Ex. 7).)

25.     Vendors that sell products to Amazon for subsequent sales on www.amazon.com must accept a set of terms and conditions that include a prohibition on the sale of counterfeit or infringing products. (Ex. 10 (AMZN00000375) ("Vendor Terms & Conditions"); Ex. 11 (Kahn Dep. Tr.) 113:-114:7; 116:6-117:17.)

26.     An "ASIN" is an Amazon Standard Identification Number.  (Ex. 12 (Deposition Transcript of Graham Thatcher) 17:23-25. 18:7-10; Am. Compl. (Dkt. 70) ¶ 7(f).)

27.     An "FNSKU" is a Fulfillment Network Stock Keeping Unit.  (Ex. 13 (Deposition Transcript of Arthur Mendes) 114:11-116:24.)

28.     The FNSKU provides information about the source of a product, such as the third-party seller.  (Ex. 14 (Deposition Transcript of Nicholas Robison) 134:3-136:12.)

29.     Maglula's technical expert, Dr. Joshua Harrison, physically inspected 58 unique products (by ASIN and FNSKU) and 165 products in total. (Ex. 15 (Expert Report of Dr. Joshua C. Harrison ("Harrison Rpt.")) ¶ 96, Ex. 7; Ex. 16 (Supplemental Expert Report of Dr. Joshua C. Harrison ("Harrison Supp. Rpt.")) ¶ 10, Supp. Ex. 7.)

30.     Dr. Harrison did not physically inspect a product from each of the 1,112 unique products (by ASIN and FNSKU) identified in Exhibit 7 to his report.  (Ex. 7 (Harrison Dep. Tr.) 54:6-55:16; *see also id*. 41:12-16, 48:11-49:9, 54:6-22, 55:1-10, 61:21-62:11.)

31.     The parties' experts agree that one cannot determine whether a product has certain functionality required by at least some of the asserted claims by simply observing the Accused Patent Products in their packaging as sold.  (Ex. 17 (Rebuttal Expert Report of David Lauck ("Lauck Op. Rpt.") ¶¶ 80-91; Ex. 7 (Harrison Dep. Tr.) 228:19-238:18.)

32.     Third-party sellers sell products through the Amazon website directly to customers through two programs:  Fulfillment by Amazon (FBA) and Merchant Fulfilled Network (MFN).

(Am. Compl. (Dkt. 70) ¶ 65; Ex. 8 (Amazon Supp. Resp. to Interrogatory Nos. 7) at 61-63.)

33.    Aside from registering to be a seller through Amazon's Seller Central and agreeing to the terms and conditions of being a seller on Amazon, third-party sellers are independent of Amazon.  (Ex. 8 (Amazon Supp. Resp. to Interrogatory No. 2) at 13.)

34.    Amazon does not control third-party sales to end purchasers.  (Ex. 8 (Amazon Supp. Resp. to Interrogatory No. 2) at 13.)

35.    The Amazon Services Business Solutions Agreement ("BSA"), which governs, in part, the relationship between Amazon and third-party sellers, explicitly states that Amazon and third-party sellers do not enter a legal partnership, joint venture, or agency:

> **Relationship of Parties.**  Subject to the Transaction Processing Service Terms (if the Elected Country for a Service is the United States), ***you and we are independent contractors***, and ***nothing in this Agreement will create any partnership, joint venture, agency, franchise, sales representative, or employment relationship between us***. . . . As between you and us, you will be solely responsible for all obligations associated with the use of any third party service or feature that you permit us to use on your behalf, including compliance with any applicable terms of use. You will not make any statement, whether on your site or otherwise, that would contradict anything in this section.

(Ex. 18 (AMZN00002478-2521) (Amazon Services Business Solutions Agreement) at AMZN00002485.)

## **ARGUMENT**

## I.    **THE COURT SHOULD GRANT SUMMARY JUDGMENT OF NO TRADEMARK INFRINGEMENT.**

Maglula alleges that Amazon is liable for trademark infringement and unfair competition under federal, state, and common law arising from Amazon's unauthorized use of Maglula's eight trademarks in connection with unspecified "counterfeits of Maglula's innovative loaders and unloaders."[6]  (Am. Compl. (Dkt. 70) ¶ 1.)  As discovery proceeded in the case, Maglula expanded

---

[6] Specifically, Maglula alleges causes of action of (1) Federal Trademark Infringement and Counterfeiting Under Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1); (2) Federal Trademark Infringement, False Designation of Origin, Passing Off, and Unfair Competition Under

the number of products accused of trademark infringement, identifying over three thousand (3,072) different products for which it seeks economic damages for trademark infringement.  (Ex. 19 (Expert Report of John Plumpe ("Plumpe Rpt."), Tabs 3a-3b.)  Though Maglula asserts multiple different causes of action based on eight different marks with varying registration dates, it never once set forth its actual legal theory—whether one or a combination of federal, state, or common law causes of action—or the facts that establish each element of each such cause of action for any of those eight marks.   Accordingly, for certain marks—"StripLULA," "1911AI," and "BenchLoader"—Maglula has no proof that any of the accused sales involved the use or were in any way associated with use of those marks.   And for its common law claims, Maglula has presented no evidence that it owned common law trademark rights in certain asserted marks before federal registration in 2017 and 2019.  Nor has Maglula ever set forth a showing of actual confusion or a likelihood of confusion caused by the allegedly infringing marks.  Therefore, the Court should grant summary judgment on Maglula's trademark infringement claims in their entirety, or at least with respect to (1) the "StripLULA," "1911A1," and "BenchLoader" marks; and (2) Maglula's common law trademark infringement claims.

### A.      Legal Standard

To prevail on a trademark infringement claim under the Lanham Act, "a plaintiff must prove: (1) that it owns a valid mark; (2) that the defendant used the mark 'in commerce' and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers."  *Rosetta Stone Ltd. v.*

---

Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A); (3) Trademark Infringement Under The Virginia Trademark and Service Mark Act, Virginia Code § 59.1-92.12; and (4) Common-Law Trademark Infringement and Unfair Competition.  (Am. Compl. (Dkt.70) pp. 57-60, 70-71.)

*Google, Inc.*, 676 F.3d 144, 154 (4th Cir. 2012) (citing 15 U.S.C. § 1114(1)(a)).  To determine if there is a likelihood of confusion between two marks, the Fourth Circuit has articulated nine factors.  *George & Co. LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009) (listing nine factors).  And, the confusion relevant to the inquiry is whether the ***allegedly infringing mark***—not some other attribute of a product, such as shape or trade dress——caused or would be likely to cause confusion.  *See Pilot Corp. of Am. v. Fisher-Price, Inc.*, 501 F. Supp. 2d 292, 305 (D. Conn. 2007) (granting summary judgment of no trademark infringement and finding "[t]he principal problem with the evidence is that, generally, it does not address the central issue— namely, actual confusion with respect to the marks themselves.").  "[I]f, based on the undisputed facts in the summary judgment record, no reasonable jury could find a likelihood of confusion, summary judgment is appropriate." *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 405 F. Supp. 2d 680, 690 (E.D. Va. 2005), *aff'd*, 227 F. App'x 239 (4th Cir. 2007).

"The test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law . . . ."  *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995).

**B.     Maglula Has Proffered No Evidence That Amazon Has Used "StripLULA," "1911AI," Or "BenchLoader" In Commerce.**

Maglula cannot make a *prima facie* factual showing that Amazon infringed the "StripLULA," "1911AI," and "BenchLoader" marks because it has never identified the factual or legal bases for alleging infringement of those marks, or any others.  Seeking to discover the theories and facts underlying Maglula's trademark infringement claims, Amazon served on Maglula several interrogatories directed to trademark infringement, including:  Interrogatory No. 5, which seeks the complete factual and legal bases for Maglula's trademark counterfeiting claims; Interrogatory No. 27, which seeks "the complete factual and legal bases for [Maglula's] contention

that Amazon infringes the Asserted Trademarks;" and Interrogatory No. 28, which seeks "the specific alleged acts by Amazon" that are the basis for Maglula's claims of trademark infringement.  (Ex. 1 (Maglula Resp. to Interrogatory No. 5); Ex. 2 (Maglula Supp. Resp. to Interrogatory Nos. 27, 28).)   In its responses to those interrogatories—which Maglula supplemented three times—Maglula provided conclusory statements that parrot legal standards for trademark infringement and a Rule 33(d) list of hundreds of documents, without any explanation how those documents are relevant to or supposedly establish the required elements of its various trademark infringement claims.  (*See e.g.*, *id.* at 15-33.)  A Rule 33(d) document laundry list devoid of analysis or explanation, such as Maglula's, fails to satisfy a litigant's obligation to make a *prima facie* factual showing on the required elements of its claims to avoid summary judgment.  *See U.S. S.E.C. v. Elfindepan, S.A.*, 206 F.R.D. 574, 577 n.5 (M.D.N.C. 2002) ("Rule 33(d) may not be used as a substitute for answering [contention] interrogatories.")

In particular, Maglula has never identified any evidence that Amazon used the "StripLULA," "1911A1," or "Benchloader" marks.  For example, Maglula has not identified any proof of sales of accused products that include the "StripLULA,"  "1911AI," or "BenchLoader" marks.  Accordingly, the Court should grant summary judgment of no trademark infringement of the "StripLULA," "1911AI," and "BenchLoader" marks.

### C.   Maglula Failed To Show That It Possessed Protectable Common Law Trademarks.

Maglula's common law trademark infringement claims also fail because Maglula has not proffered any evidence that it possessed common law trademarks entitled to protection before it obtained federal trademark protection for those marks in 2017 and 2019.  Under common law, "the right to protection [is] limited to areas where [the mark] had been used and the claimant of the mark had carried on business."  *Armand's Subway, Inc. v. Doctor's Assocs., Inc.*, 604 F.2d 849,

849 (4th Cir. 1979) (citation removed).  "Well-established precedent limits the geographic scope of [common law] trademark protection to the locality [1] where the mark is used and [2] to the area of probable expansion."  *Diamonds Direct USA, Inc. v. BFJ Holdings, Inc.*, No. 3:12CV303-HEH, 2012 WL 5473795, *4 (E.D. Va. Nov. 9, 2012) (citation omitted).

Maglula has made no showing of the required elements for common law trademark protection.  Although Maglula seeks trademark infringement damages from January 2013 through the present, it did not obtain federal registration of seven of its eight asserted marks until 2017 or later.  (*See* SUF No. 1.)  In its Amended Complaint, Maglula alleged, without evidence, that its products, in association with Maglula's trademarks, are promoted, offered, and sold nationwide in the United States through national, regional, independent, and specialty dealers, and that it has common law trademarks in "Maglula" and "UpLULA" that are "well-known" and "industry-known."  (Am. Compl. (Dkt. 70) ¶¶ 4, 76.)  But Maglula failed to allege any supporting facts in its pleadings or to provide any support for those allegations in its response to Amazon's trademark infringement contention interrogatory.   (SUF Nos. 6-7; Ex. 2 (Maglula Supp. Resp. to Interrogatory No. 27) at 15-17.)  For example, Maglula does not address ***when*** (a) it began to use each mark in any particular geographic location, or (b) each mark supposedly became well-known.  (*Id.*)  It also has proffered no evidence regarding ***where*** each mark was used or the location of its customers before each mark was registered.  (*Id.*)  Nor has Maglula identified any evidence regarding the factors for the "natural zone of expansion."  *Diamonds Direct*, 2012 WL 5473795 at *6.  Because Maglula offers no evidence to support that the asserted marks were protectable under common law, summary judgment of no common law trademark infringement should be granted.

### D.    Maglula Has Failed To Set Forth Evidence To Establish The Required Elements For Its Trademark Infringement Claims.

Regarding all its trademark infringement claims under both common law, state law, and

the Lanham Act, Maglula failed to make a *prima facie* factual showing for the thousands of accused products it has swept into this case.  Even though Amazon's contention interrogatories sought the complete factual and legal bases for Maglula's trademark infringement claims, Maglula has never disclosed either.  Here again, Maglula's reliance on Rule 33(d)—specifically its laundry list of documents, without any explanation of why those documents are relevant or how they set out the factual or legal bases responsive to the interrogatory—does not satisfy its burden to make a *prima facie* factual showing on the required elements.  *See Elfindepan*, 206 F.R.D. at 577.  Throughout discovery, Maglula never identified the following for any accused product:  (1) which of Maglula's eight asserted marks is supposedly infringed; (2) the supposedly infringing mark or marks; and (3) whether federal, state, or common law causes of action apply and the relevant time period of those causes of action.  (Ex. 2 (Maglula Resp. to Interrogatory Nos. 27 and 28) at 15-33.)

Nor has Maglula proffered any evidence to show whether there exists a likelihood of confusion between any of Maglula's marks and the alleged infringing marks.  (SUF Nos. 2-7.)  Maglula has not set forth any facts or analysis to show how Amazon used a mark likely to be confused with any of Maglula's trademarks in connection with each product associated with each product identification number ("ASIN").[7]  (*Id.*)  This dearth of evidence is especially troubling, given that some of the accused products bear titles strikingly dissimilar from Maglula's asserted trademarks, like "UpLOOD," "Magload," and "Castellan."  (Am. Compl. (Dkt. 70) ¶ 6.)  Maglula also offers absolutely no evidence of any actual confusion ***between marks***, nor does it address any of the Fourth Circuit's other eight factors for determining whether a likelihood of confusion exists

---

[7] An ASIN is an Amazon Standard Identification Number, one of the various ways that Amazon identifies products.  (SUF Nos. 26.)  Throughout this case, Maglula has been identifying accused products by ASIN and, in some instances, other product identifiers.

between Maglula's marks and the allegedly infringing marks.[8]  (*Id.*)  Indeed, Maglula did not even perform a survey to assess whether there exists any actual or likely consumer confusion due to Amazon's purported use of the allegedly infringing marks.   *See* SUF Nos. 2-3; *see also Ciphertrust, Inc. v. Trusecure Corp.*, No. 1:04-cv-1232, 2005 U.S. Dist. LEXIS 46322, *46 (E.D. Va. Nov. 28, 2005) ("[F]ailure to offer a survey showing the existence of confusion is evidence that the likelihood of confusion cannot be shown.") (*citing Essence Comm'ns, Inc. v. Singh Indust., Inc.*, 703 F. Supp. 261, 269 (S.D.N.Y. 1988)); *George & Co., LLC v. Imagination Ent. Ltd.*, No. 1:07CV498(LMB/TRJ), 2008 WL 2883771, *3 (E.D. Va. July 25, 2008) ("Given that [plaintiff] bears the ultimate burden of proving a likelihood of confusion by a preponderance of the evidence, the lack of survey evidence . . . severely hampers [plaintiff's] ability to meet that burden.").  This failure to show any actual or likely consumer confusion caused by the allegedly infringing marks is fatal to all Maglula's trademark infringement claims.  *See Pilot*, 501 F. Supp. 2d 292 at 305.

Maglula accuses ***thousands*** of disparate products from various third-party vendors and manufacturers, yet has made no showing on a product-by-product basis what mark is at issue or how the alleged trademark infringement occurred; Maglula should not be permitted to present to the jury a sweeping assertion of infringement, without having met its burden to show how and why each product infringes its trademarks.  Because Maglula failed to make a *prima facie* factual showing for each element of its trademark infringement causes of action, the Court should enter summary judgment of no trademark infringement.  *See Hartford Cas. Ins. Co. v. MCJ Clothiers,*

---

[8]Although Maglula identified two consumers who bought a supposedly non-genuine Maglula product on the Amazon website in 2018, no evidence exists that those consumers purchased that device due to confusion regarding any mark.  Indeed, when deposed, one consumer could not recall the name of the product that he purchased.  (Ex. 20 (Deposition Transcript of Kenneth Kelly) 26:24-27:4 ("Q: And do you recall the name of the Maglula product that you purchased?  A: I don't recall the exact name.  It is designed to load magazines for pistols between 9 millimeter and 45 ACP.").

*Inc.*, 54 F. App'x 384, 388-89 (4th Cir. 2002) (affirming summary judgment and exclusion of late-proffered evidence that was not disclosed in non-moving party's interrogatory responses).

## II.   THE COURT SHOULD GRANT SUMMARY JUDGMENT OF NO TRADEMARK COUNTERFEITING.

Maglula's sweeping theory—that Amazon committed trademark counterfeiting from January 2013 to the present—fails as a matter of law because one cannot be liable for counterfeiting under the Lanham Act before a mark is actually registered.  Here, no dispute exists that Maglula did not obtain registration of seven of the eight asserted marks until 2017 or later. (SUF No. 1.)   Additionally, like its trademark infringement claims, Maglula's interrogatory responses and expert discovery underscore that it cannot set forth a *prima facie* factual showing for each of the required elements of trademark counterfeiting; for example, Maglula has never identified which of the eight different marks were counterfeited or which of the thousands of products that Maglula accuses as part of its counterfeiting claims ("Accused Trademark Counterfeiting Products") counterfeited which marks.   Accordingly, the Court should grant summary judgment of no trademark counterfeiting as to (1) at least all accused sales that include an allegedly counterfeit mark prior to that mark's registration; or (2) all of Maglula's trademark counterfeiting claims.

### A.   Amazon Is Not Liable For Counterfeiting Of The Asserted Trademarks Prior To Their Registration.

The Court should grant summary judgment of no trademark counterfeiting as the Accused Trademark Counterfeiting Products that purportedly used certain trademarks before Maglula ever registered those trademarks in 2017 and 2019.[9]  The Lanham Act provides that a cause of action

---

[9] Seven of the eight asserted marks were registered in 2017 and 2019.  (SUF No. 1.)  The one remaining mark—"LULA"—was registered in 2005, but Maglula has never identified which, if any, of the accused sales are associated with that mark.

for trademark counterfeiting cannot accrue until after a trademark is registered. *See* 15 U.S.C. § 1127 (defining "counterfeit" as a "spurious mark which is identical with, or substantially indistinguishable from, *a registered mark*") (emphasis added); 15 U.S.C. § 1116(d)(1)(B)(i) (defining "counterfeit mark" in relevant part as "a counterfeit of a mark that is *registered on the principal register in the United States Patent and Trademark Office for such goods or services sold . . . .*") (emphasis added). In spite of the clear language of the statute, Maglula contends that Amazon is liable for trademark counterfeiting prior to the date its marks were registered. By doing so, Maglula invites error. Indeed, Maglula's damages expert lumped all accused products together—regardless of the supposedly counterfeit mark—opining that trademark counterfeiting damages for all products began on January 1, 2013. (Ex. 19 (Plumpe Rpt.), pp. 20-24; *id.* at ¶¶ 36, 40.) But no dispute exists that seven of eight asserted marks were not registered until 2017 or later. (SUF No. 1.) Therefore, the Court should grant summary judgment of no trademark counterfeiting for all Accused Trademark Counterfeiting Products that used an asserted mark prior to the registration date of that mark.[10] *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, No. CV-14-085-LRS, 2015 WL 12911326, *3 (E.D. Wash. Nov. 30, 2015) (ruling that plaintiffs cannot as a matter of law sustain a counterfeiting claim prior to when a trademark registration issued).

### B.   Maglula Has Never Disclosed Its Theories As To Trademark Counterfeiting Or Identified Which Of Its Marks Were Counterfeited.

Because Maglula failed to make a *prima facie* showing of trademark counterfeiting in discovery, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

---

[10] Because Maglula has not identified which accused sales it contends used which allegedly counterfeit mark, Amazon cannot identify the specific accused product sales covered by this argument; granting summary judgment on all marks before 2017 would therefore be appropriate.

summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file.") (quotation removed).  To discover the factual and legal bases for Maglula's counterfeiting claims, Amazon served its Interrogatory No. 5, which sought Maglula's trademark counterfeiting contentions.  (*See* SUF No. 6-7.)  In its response, Maglula merely parrots a select few of the legal elements of trademark counterfeiting, repeats its allegations from the Complaint, and sets out a list of hundreds of documents (presumably invoking Rule 33(d)), without explaining how those documents support Maglula's claims or which legal elements they supposedly support.[11]  (Ex. 1 (Maglula Resp. to Interrogatory No. 5) at 48-53.) Maglula never individually analyzes each of the asserted marks, addressing them collectively as "Maglula Trademarks."  (*Id.*)  In fact, Maglula does not identify for each Accused Trademark Counterfeiting Product which of the eight asserted marks—LULA, 22UpLULA, BenchLoader, BabyUpLULA, 1911AI, StripLULA, Maglula, and UpLULA—Amazon purportedly counterfeited.  (*See id.*; Ex. 19 (Plumpe Rpt), Tab 3c.)  Indeed, Maglula's response—which it supplemented three times—does not set forth a factual showing for each element of trademark counterfeiting for each Accused Trademark Counterfeiting Product.  (*See* Ex. 1 (Maglula Resp. to Interrogatory No. 5) at 48-53.)

Nor did Maglula fix those deficiencies during expert discovery.  Maglula never provided any expert opinions or analysis to support its trademark counterfeiting claims, such as opinions or analysis on whether an article bears a counterfeit mark from the perspective of an average consumer.  (SUF Nos. 2-9; Ex. 15 (Harrison Rpt.) at p. 35, n.2.)  On this record, no credible dispute exists that Maglula's trademark counterfeiting claims fail as a matter of law.  *See Hartford*, 54 F.

---

[11] As mentioned above, Maglula's Rule 33(d) document list that is devoid of analysis or explanation fails to satisfy its obligation to make a *prima facie* factual showing on the required elements of its claims to avoid summary judgment.  *See Elfindepan*, 206 F.R.D. at 577.

App'x 384 at 388-89 (affirming summary judgment and exclusion of late-proffered evidence that was not disclosed in non-moving party's interrogatory responses).

### C.  Maglula's Trademark Counterfeiting Claims Also Fail Because Maglula Has Not Shown Actual Or A Likelihood Of Confusion.

As explained above regarding trademark infringement, Maglula has not made a *prima facie* showing of actual confusion or likelihood of confusion with respect to any of the asserted trademarks.  To establish trademark counterfeiting, a litigant must show in part that the "the use of the counterfeit mark was likely to confuse consumers."  *Associated Gen. Contractors of Am. v. Stokes*, No. 1:11-cv-795 (GBL/TRJ), 2013 WL 1155512, *3 (E.D. Va. Mar. 19, 2013).  Because Maglula has not made any showing that the allegedly counterfeit marks—marks it also accuses of trademark infringement—were likely to confuse consumers, the Court should also grant summary judgment as to Maglula's trademark counterfeiting claims.

## III.  THE COURT SHOULD GRANT SUMMARY JUDGEMENT OF NO COPYRIGHT INFRINGEMENT.

Maglula asserts copyright infringement against 3,085 products ("Accused Copyright Products") based on 18 different copyrights that cover the "product insert cards" purportedly sold with Maglula's UpLULA loaders, photographs on those cards, and "design elements" of the UpLULA loader.  (SUF Nos. 10-12.)  However, not once during fact or expert discovery has Maglula proffered its legal or factual bases for its copyright infringement allegations.  Because Maglula now lacks facts to make even a *prima facie* showing of copyright infringement, the Court should grant non-infringement as to Maglula's copyright infringement claims.

### A.  Legal Standard

To prove copyright infringement, a plaintiff bears the burden to prove that it possesses a valid copyright and that the defendant copied original and protectable elements of the copyrighted work. *Copeland v. Bieber*, 789 F.3d 484, 488 (4th Cir. 2015).  Copying may be shown in two

ways.  One way is through direct evidence of copying, which requires an admission or witness account of copying of the copyrighted work.  *See Sedgewick Homes, LLC v. Stillwater Homes, Inc.*, No. 5:16-CV-00049-RLV-DCK, 2017 WL 3221488, *7 (W.D.N.C. July 28, 2017).  Lacking direct evidence of copying, a plaintiff must establish copying by indirect evidence showing that the defendant: (1) had access to the copyrighted work; and (2) that the accused work is "substantially similar."  *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 435 (4th Cir. 2010) ("*Universal Furniture I*").  To show that the accused work and the copyright are "substantially similar," a plaintiff must show that the works are both extrinsically similar and intrinsically similar.  *Id.*  (citation removed).

For the extrinsic inquiry, "a plaintiff must show—***typically with the aid of expert testimony***—that the works in question are extrinsically similar because they contain substantially similar ideas that are subject to copyright protection." *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996); *Universal Furniture I*, 618 F. 3d at 435 (stating the extrinsic inquiry "is an objective one in which expert testimony may be relevant").  Intrinsic similarity assesses the "total concept and feel" of the work from the perspective of an ordinary observer in the market to which the work is directed. *See Towler*, 76 F.3d at 584; *Billco Int'l, Inc. v. Charles Prod., Inc.*, 776 F. Supp. 2d 105, 116 (D. Md. 2011) (citation removed).

### B.    Maglula Has Failed To Show Infringement Of Any Of The Asserted Copyrights.

Maglula has never disclosed the factual or legal theories for its copyright infringement claims on the Accused Copyright Products.  Amazon served an interrogatory requesting that Maglula identify, with particularity, its theory of copyright infringement, including which accused products infringed which asserted copyrights and what acts by Amazon constituted copying.  (Ex. 1 (Maglula Resp. to Interrogatory No. 4) at 40-47.)  In response, Maglula identified its eighteen

19

copyrights, parroted the allegations in its complaint, and provided a Rule 33(d) identification of hundreds of "exemplary documents showing copies" of the purportedly infringing product packaging insert cards,  photographs of products, and design elements relating to the UpLULA loader.  (*Id*.)  Critically, Maglula failed to:  (1) provide any analysis of or comparison between the copyrighted works and the Accused Copyright Products; (2) proffer any evidence of either direct or indirect coping, including any analysis regarding the similarities between Maglula's copyrights and the Accused Copyright Products; (3) identify what aspects of its design elements are protectable; and (4) explain which aspects of the Accused Copyright Products infringe which purportedly protectable copyrighted design elements.  Expert discovery provided no further insight, as Maglula did not disclose any expert opinions on copyright infringement issues.  (SUF No. 15.)  Accordingly, the Court should grant summary judgment of no copyright infringement based on Maglula's failure of proof on the Accused Copyright Products.  *See McDonald v. K-2 Indus., Inc.*, 108 F. Supp. 3d 135, 142 (W.D.N.Y. 2015) (granting summary judgment where plaintiff failed to prove which products allegedly infringed which rights); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540-42 (4th Cir. 2015) (granting summary judgment where plaintiff failed to provide a comparison between the copyrighted work and the allegedly infringing material).

### C. Separately, Summary Judgment Should Be Granted On Maglula's "Design Element" Copyright Claims Because Those Registrations Cover Useful Articles Not Protectable Under The Copyright Act.

Maglula's eight "design element" copyrights are invalid because the underlying materials are useful articles ineligible for copyright protection.[12]  *See Universal Furniture Int'l, Inc. v.*

---

[12] Maglula's design element copyrights are U.S. Copyright Registration Nos. VA0002083626, VA0002083624,   VA0002083628,   VA0002083358,   VA0002083627,   VA0002083357, VA0002083625, and VA0002083356, all registered July 24, 2017.  (SUF No. 8.)

*Collezione Europa USA, Inc.*, 196 F. App'x 166, 170-172 (4th Cir. 2006) ("*Universal Furniture II*").  A "useful article" is an article having an "intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101; *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1007 (2017) ("Congress has provided copyright protection for original works of art, but not for industrial designs.").  Although there is a rebuttable presumption of validity for registered copyrighted works for five years after registration (17 U.S.C. § 101), that presumption is "fairly easy to rebut" and "may be rebutted where other evidence in the record casts doubt on the question such as evidence that the work . . . was a non-copyrightable utilitarian article." *Universal Furniture I*, 618 F.3d at 430 (citation removed); *Mollohan v. Warner*, No. 2:13-CV-32251, 2017 WL 1217204, *12 (S.D.W.Va. Mar. 31, 2017) (noting that rebutting the presumption of validity is "not a particularly difficult task" and finding copyright invalid for lack of original authorship).  Whether something is copyrightable is predominantly a question of law.  *Pivot Point Int'l, Inc. v. Charlene Products, Inc.*, 932 F. Supp. 220, 225 (N.D. Ill. 1996).

Maglula's design elements are not copyrightable because they comprise "useful articles," not copyrightable sculptural elements.  To obtain copyrights on those design elements, Maglula claimed protection over "sculptural" works.  *See, e.g.*, Ex. 21 (MAGLULA00001585-1588 (VA2083626 Registration) at MAGLULA00001585 (indicating "sculpture" as material included in claim)).  But those supposed "sculptural" works are structural components of Maglula's patented UpLULA magazine loader.  (SUF No. 17.)  Indeed, a side-by-side comparison of the underlying copyright deposit materials and the patented features for which Maglula sought ***utility*** patent protection (*id*.) demonstrates that the underlying "copyrighted" material associated with the UpLULA loader overlap entirely with the purported features of utility:

| Copyrighted Material – Claimed "Sculptural Work" | Patented Feature - Claimed Feature of Utility |
|---|---|
|  Ex. 22 (MAGLULA00001512-1513 (VA0002083626 deposit material) at MAGLULA00001513 ("UpLULA back view") |  '048 Pat. Fig. 2B, 5:47-48 ("FIG. 2B is a perspective view of the loader shown in a 'close' position) |
|  Ex. 23 (MAGLULA00001514-1515 (VA0002083624 deposit material) at MAGLULA00001515 ("UpLULA top view") |  '048 Pat. Fig. 4C, 5:55 ("FIG. 4C is a top view of the loader shown 'close'. [*sic*]"). |
|  Am. Compl. (Dkt. 70) p. 17 (showing VA0002083358 deposit material) ("UpLULA Arch") |  '048 Pat. Fig. 3B, 6:49 (describing item 38 in multiple figures as "bridge") (annotated) |

*Compare* Ex. 24 (MAGLULA00001539-1542 (VA0002083356 deposit material) ("UpLULA

22

beak with reverse bevel")), *with* '048 Pat. Fig. 3B item 32 *and* '048 Pat. 6:48 (describing item 32 as "body").  To allow Maglula to claim copyright protection over the very same features for which it sought and obtained ***utility*** patent protection is antithetical to the purpose of the Copyright Act.

Even those purported "design elements" that are not pictured in Maglula's patents are "useful articles."  Those cover the "UpLULA® lock" on the loader (VA0002083627), a bullet engraving that is designed to show a user the direction of the bullet (VA0002083628), and "UpLULA® ridged waterfall grip[s]" used to handle the loader (VA0002083357, VA0002083625).  (SUF No. 10.)  Copyright law was not intended to protect those functional elements, which are features of utilitarian—not artistic—value.  *Magnussen Furniture, Inc. v. Collezione Europa USA, Inc.*, 116 F.3d 472 (Table) (4th Cir. 1997) (in affirming denial of a preliminary injunction, determining that iron tables were likely to be "useful articles" not protectable by copyrights).  Because Maglula's design element copyrights cover useful features of Maglula's patented magazine loaders, those copyrights are invalid and cannot be infringed.  Thus, the Court should grant summary judgment of no infringement for the invalid design element copyrights.

## IV.    THE COURT SHOULD GRANT SUMMARY JUDGMENT OF NONINFRINGEMENT AS TO THE "UNINSPECTED" PRODUCTS.

Maglula lacks any proof for the vast majority of products that it has accused of patent infringement in this case.  Maglula alleges that Amazon infringes two patents—the '048 Patent and the '138 Patent—through the sale of supposed  knock-offs of its UpLULA magazine loaders ("the Accused Patent Products") on the www.amazon.com website ("Amazon website").  Although Maglula identified only eight potentially relevant products in its original complaint and

exhibits,[13] it continued to add accused products throughout discovery, expanding the case to 1,112 different Accused Patent Products.[14]  (Ex. 16 (Harrison Supp. Rpt.), Supp. Ex. 7 at pp. 6-34; Ex. 16 (Harrison Supp. Rpt.), Supp. Ex. 8.)  Yet, Maglula cannot and has not set forth any evidence of infringement for 1,065 of those products.[15]  Maglula did not physically inspect any of those products (the "Uninspected Products").  And, because Amazon does not design or manufacture any of the Accused Patent Products and Maglula failed to take any third-party discovery from the suppliers of those products, Maglula has no proof to support its infringement theory for those products.  (SUF Nos. 18-22.)  Given Maglula's failure of proof, the Court should grant summary judgment of non-infringement on the Uninspected Products.  *See Celotex*, 477 U.S. at 322-323; *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1250 (Fed. Cir. 2000) (affirming summary judgment when a party "fails to make a showing sufficient to establish the evidence of an element essential to that party's case").

A. **Maglula Lacks Evidence Regarding The Structure And Function Of The Uninspected Products.**

Maglula has accused 1,112 different Accused Patent Products.  Each of those different products is identified by a unique identification number that Amazon assigns.  That unique identification number is called an ASIN/FNSKU.  (SUF Nos. 26-28.)  For example, each product

---

[13] Maglula identified one Amazon Standard Identification Number (ASIN) in its actual complaint, and the letters attached to that complaint explicitly mentioned seven other ASINs.

[14] The sum of 1,112 Accused Patent Products is the total number of unique ASIN/FNSKU combinations across Supplemental Exhibits 7 and 8 to Dr. Harrison's Supplemental Infringement Report.  (Ex. 16)  That number is different than the total number of Accused Trademark Infringement Products and Accused Copyright Products, both of which are derived from Dr. Plumpe's report.

[15] The total number of Uninspected Products is the delta between (1) the total number of unique ASIN/FNSKU combinations identified across Exhibits 7 and 8 to Dr. Harrison's supplemental report (1,112 unique ASIN/FNSKU products); and (2) the total number of unique ASIN/FNSKU combinations that Dr. Harrison inspected (47 unique ASIN/FNSKU products).  (*See* Ex. 16 (Harrison Supp. Rept.) at Supp. Ex. 8.)

sold on Amazon's website has an ASIN; in addition, Amazon uses the FNSKU designation to track the third-party seller from which the product originates.[16]  (*Id*.)  The ASIN and FNSKU are inventory tracking numbers; they represent nothing about the structure and function of a product or the similarity or differences between various products bearing different ASIN/FNSKUs.  (*Id*.)  During discovery, Maglula's technical expert, Dr. Harrison, physically inspected 165 magazine loader products accused of infringement, which comprise only 47 unique products, or ASIN/FNSKU combinations.  (SUF No. 29; *see supra* n.16.)  In other words, Dr. Harrison did not physically inspect a product for each of the other 1,065 unique ASIN/FNSKU combinations—the Uninspected Products.  (SUF Nos. 29-30.)

Maglula also failed to take any discovery—from Amazon or any third party—on the design, manufacture, structure, or function of the Uninspected Products.  (SUF No. 22.)  Although Amazon and certain third parties have offered for sale and sold the Accused Patent Products on the Amazon website, Amazon has never designed or manufactured the Accused Patent Products.  (SUF No. 18, 20.)  Nor has it performed any functional testing of the Accused Patent Products.  (SUF No. 23.)  As a result, Amazon lacks any information, including documents, regarding the technical specification, design, manufacturing tolerances, internal structure or measurements, and functional capabilities of the Accused Patent Products.  (SUF Nos. 19-24.)

Faced with Amazon's lack of any information probative of patent infringement, Maglula did virtually nothing.  Although Amazon provided to Maglula the names of the suppliers of the Accused Patent Products during discovery, Maglula did not attempt to obtain discovery from those

---

[16] For example, if Amazon sells widgets assigned the ASIN 1234 that are supplied by three different companies (A, B, and C), Amazon would assign a unique FNSKU to the products from each company.  Thus, the widgets from supplier A would have the ASIN/FNSKU, 1234/A; widgets from B would have the ASIN/FNSKU, 1234/B; and widgets from supplier C would have the ASIN/FNSKU, 1234/C.  These are purely exemplary ASIN/FNSKUs.

third parties.  (SUF No. 22.)  Maglula thus lacks any facts or information relevant to the issue of patent infringement for the Uninspected Products, and summary judgment of no patent infringement should be granted as to those products.

### B.    Legal Standard

A patent owner bears the burden to prove patent infringement.  *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 198-99 (2014) ("It is well established that the burden of proving infringement generally rests upon the patentee.").  To prove infringement of an asserted claim, the patent owner must prove that each accused product meets each and every limitation of that claim.  *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F. 3d 978, 981 (Fed. Cir. 1997).  To the extent that a patent owner accuses different products of infringement, it must prove that each accused product infringes.  *L & W, Inc. v. Shertech, Inc.*. 471 F.3d 1311, 1318 (Fed. Cir. 2006) ("When a patentee with the burden of proof seeks summary judgment of infringement, it must make a prima facie [*sic*] showing of infringement as to each accused device ….."); *Exigent Tech, Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1308-09 (Fed. Cir. 2006) ("In light of *Celotex*, we conclude that nothing more is required than the filing of a summary judgment motion stating that the patentee had no evidence of infringement ….").

### C.    Maglula Has No Proof Of Infringement For The Uninspected Products.

Maglula has no proof that each Uninspected Product meets each limitation of the asserted claims of the Patents-in-Suit.  The asserted claims describe various implementations of a magazine loader that include specific structural and functional limitations relative to a firearm magazine, each requiring the capability to push down a round or rounds already in the magazine to create sufficient space for a new round to be inserted.  For example, claim 1 of the '048 patent recites:

The invention claimed is:

**1**. An accessory for facilitating the loading of rounds into a firearm magazine having an open top side with lips and which holds one or more columns of rounds therein and urges said rounds to and feeds said rounds from said open top side of said magazine, comprising:

\*\*\*

(b) when said press is moved from said first to said second position, said plunger will move to over said open top side of said magazine so that when said hollow body is pushed down on said magazine said free end of said plunger will push down any round or rounds in said magazine so to create a vacant space at said open top side of said magazine below said lips of said magazine and above said plunger,

\*\*\*

('048 Pat. Claim 1.)  Both parties' experts agree that one cannot determine whether a product has that required capability by simply observing the Accused Patent Products in their packaging as sold.  (SUF No. 31.)

Maglula lacks any evidence that each Uninspected Product meets each limitation of the asserted claims.  As explained above, because it took no discovery on the Uninspected Products,[17] Maglula cannot point to any technical documentation, such as design specifications, schematics, or testing documents, or fact witness testimony on the structure or function of those products.  (SUF Nos. 19, 22.)  Nor did Dr. Harrison physically test any of the Uninspected Products to determine if they met the asserted claims.[18]  (SUF Nos. 29-30.)  Given that failure of proof, the Court should grant summary judgment of non-infringement regarding the Uninspected Products.

---

[17] Despite serving 27 different third-party subpoenas in this case, Maglula did not issue any subpoenas to the suppliers or third-party sellers of any Accused Patent Products.  (SUF No. 21.)

[18] Dr. Harrison even admitted that he did not analyze at least one product for each ASIN that Maglula has accused and that he did not inspect or analyze one product from each ASIN listed in Exhibit 7 to his report—in other words he admitted that he did not analyze each Uninspected Product.  (SUF No. 30.)

27

**D.  Maglula Cannot Prove Infringement Of The Uninspected Products Through Representative Products.**

Maglula cannot rely on a "representative product" theory to backfill its failure of proof—namely, it cannot rely on its infringement theory for the 47 products that its expert inspected as proof of infringement for the 1,065 Uninspected Products.  To prove infringement of a class of products through one or more products deemed to be representative of the class ("representative products"), Maglula bears the burden to prove that the class of products infringes in the same way as the representative product, i.e., that they are structurally or functionally the same for the purposes of patent infringement.  *See Pulse Elecs., Inc. v. U.D. Elec. Corp.*, No. 3:18-CV-00373-BEN-MSB, 2021 WL 981123, *40 (S.D. Cal. Mar. 16, 2021); *Fujitsu Ltd. v. Netgear, Inc.*, No. 07-CV-710-BBC, 2009 WL 3047616, at *4 (W.D. Wis. Sept. 18, 2009), *aff'd in part, rev'd in part on other grounds*, 620 F.3d 1321 (Fed. Cir. 2010).  Maglula cannot present any evidence, much less the substantial evidence required, to show a nexus between any of the 47 inspected products and the Uninspected Products.  *See, e.g.*, *Milos Misha Subotincic v. 1274274 Ontario Inc.*, No. SACV 10-01946 AG, 2013 WL 3964994, *7 (C.D. Cal. Apr. 9, 2013) ("Though using a representative product can be proper, substantial evidence needs to sufficiently tie infringement to the accused products.") (*citing Sponsion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1350–51 (Fed. Cir. 2010)).

There is no evidence in the record from which a jury could conclude that the Uninspected Products are the same or similar to the inspected products in any way, including with respect to the accused features.  Maglula cannot set forth any evidence that any of the Accused Patent Products are made by the same manufacturer or in the same way.  (SUF Nos. 18-24.)  Indeed, Dr. Harrison conceded that although the Accused Patent Products originate from various suppliers and third-party sellers, he did not analyze at least one accused product from each supplier or third-

party seller.  (SUF Nos. 20, 29-30.)  Dr. Harrison also admitted that he is unaware of any industry standard that mandates a particular structure or function for magazine loaders.  (SUF No. 21.)  Because Maglula cannot show any structural or functional relationship relevant to the asserted claims between the inspected products and the Uninspected Products, the Court should grant summary judgment of non-infringement on the Uninspected Products.  *See Eugene Baratto & Textures, LLC v. Brushstrokes Fine Art*, 701 F. Supp. 2d 1068, 1081 (W.D. Wis. Mar. 24, 2010) (rejecting representative product grouping where "grouping choices" were not supported "with evidence that every product made by [defendant] actually function[ed] in the same manner").[19]

## V.     AMAZON IS NOT VICARIOUSLY LIABLE FOR TRADEMARK INFRINGEMENT OR COUNTERFEITING BASED ON SALES OF ACCUSED PRODUCTS BY THIRD-PARTY SELLERS.

Maglula alleges that ***Amazon*** vicariously infringes and counterfeits the asserted trademarks when ***third parties*** sell accused products through the Amazon website; however, the legal relationship between Amazon and third-party sellers precludes such liability.[20]  The Amazon website, in addition to allowing Amazon to sell directly to customers (through Amazon Retail), provides an online marketplace for third parties to sell products directly to customers through one of two programs:  Fulfillment by Amazon (FBA) or the Merchant Fulfilled Network (MFN).  (SUF No. 32.)  Maglula's vicarious trademark infringement and counterfeiting claims are directed to those third-party sales.  To establish vicarious liability for its trademark claims, Maglula must prove that either Amazon and third-party sellers "have an apparent or actual partnership, have authority to bind one another in transactions with third parties[,] or exercise joint ownership or

---

[19] Attached as Ex. 25 is a list of the ASINs and FNSKUs for the Uninspected Products.

[20] While Maglula alleges vicarious liability based on sales by third-party sellers in connection with its trademark infringement, trademark counterfeiting, copyright infringement, state law, and common law claims (Am. Compl. (Dkt. 70) ¶¶ 96, 101, 106, 119, 153), Amazon's motion concerns only Maglula's vicarious trademark infringement and counterfeiting claims.

control over the infringing product." *Rosetta Stone*, 676 F.3d at 165 (affirming dismissal of vicarious liability claims for trademark infringement and counterfeiting) (citation omitted).

However, Maglula has presented no evidence demonstrating that third-party FBA or MFN sellers and Amazon form a legal partnership or agency relationship, or that Amazon exercises sufficient control over or the right and ability to control third-party sellers' conduct. (SUF Nos. 33-35.) Indeed, the undisputed evidence shows that Amazon does not exert control over third-party sellers or those third-parties' sales (*id*.), and the BSA—the primary agreement between Amazon and third-party sellers—makes clear there is no agency or legal partnership. (SUF No. 35.) Accordingly, Maglula's vicarious trademark infringement and counterfeiting claims fail as a matter of law, and summary judgment as to those claims should be granted. *See, e.g.*, *Y.Y.G.M. S.A. v. Redbubble*, *Inc.*, No. 2:19-cv-04618-RGK-JPR, 2020 WL 3984528, *7-10 (C.D. Cal. July 10, 2020) (granting summary judgment of no vicarious liability on trademark claims, reasoning in part that "off-handed references to customers or third-parties as 'partners' are insufficient to demonstrate the partnership required for the imposition of vicarious liability" and "[c]ourts have strictly applied the test for vicarious trademark liability based on agency principles") (citation omitted).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant summary judgment of Maglula's claims that lack proof and enter Amazon's proposed order that details the specific relief sought by this Motion.

Dated:  March 26, 2021

By:   */s/ Justin P.D. Wilcox*
    Justin P.D. Wilcox (#66067)
    John M. Desmarais (*pro hac vice*)
    Leslie M. Spencer (*pro hac vice*)
    Priyanka R. Dev (*pro hac vice*)
    John Dao (*pro hac vice*)
    Eli Balsam (*pro hac vice*)
    DESMARAIS LLP
    230 Park Avenue
    New York, NY 10169
    Telephone: 212-351-3400
    Facsimile: 212-351-3401
    Email: jwilcox@desmaraisllp.com
    jdesmarais@desmaraisllp.com
    lspencer@desmaraisllp.com
    pdev@desmaraisllp.com
    jdao@desmaraisllp.com
    ebalsam@desmaraisllp.com

    *Attorneys for Defendants Amazon.com, Inc. and
    Amazon.com Services LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on  March 26, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

Dated: March 26, 2021         By:     <u>*/s/ Justin P.D. Wilcox*</u>
                                          Justin P.D. Wilcox (#66067)
                                          John M. Desmarais (*pro hac vice*)
                                          Leslie M. Spencer (*pro hac vice*)
                                          Priyanka R. Dev (*pro hac vice*)
                                          John Dao (*pro hac vice*)
                                          Eli Balsam (*pro hac vice*)
                                          DESMARAIS LLP
                                          230 Park Avenue
                                          New York, NY 10169
                                          Telephone: 212-351-3400
                                          Facsimile: 212-351-3401
                                          Email: jwilcox@desmaraisllp.com
                                          jdesmarais@desmaraisllp.com
                                          lspencer@desmaraisllp.com
                                          pdev@desmaraisllp.com
                                          jdao@desmaraisllp.com
                                          ebalsam@desmaraisllp.com

                                          *Attorneys for Defendants Amazon.com, Inc. and*
                                          *Amazon.com Services LLC*