**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| MAGLULA, LTD.,<br><br>     Plaintiff,<br><br>    v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES, INC.,<br><br><br>     Defendants. | Civil Action No. 1:19-cv-01570-LO-IDD |

**PLAINTIFF MAGLULA, LTD.'S OPPOSITION TO AMAZON'S MOTION FOR
SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

I.    RESPONSE TO AMAZON'S STATEMENT OF UNDISPUTED FACTS...................... 1

II.   LEGAL STANDARD..................................................................................... 4

III.  ARGUMENT ............................................................................................ 4

    A.   The Court Should Deny Summary Judgment of Patent Noninfringement
         for What Amazon Calls the "Uninspected" Accused Products ............................ 4

         1.   Maglula Met Its Burden to Show Infringement of "Uninspected"
              Accused Products Through Representativeness ........................................ 5

         2.   Additional Facts Support Representativeness and Preclude
              Summary Judgment for "Uninspected" Products ..................................... 10

    B.   Genuine Disputes of Material Fact Exist With Respect to Maglula's
         Trademark Infringement Claims................................................................ 14

         1.   Amazon Used Maglula's Trademarks in Commerce............................... 15

         2.   Maglula Produced Ample Evidence of Its Common Law Rights............. 15

         3.   Maglula Has Presented Evidence of Trademark Infringement................. 17

    C.   Genuine Disputes of Material Fact Exist With Respect to Maglula's
         Counterfeiting Claims.............................................................................. 22

    D.   Genuine Disputes of Material Fact Exist With Respect to Whether
         Amazon Is Vicariously Liable for Trademark Infringement or
         Counterfeiting ......................................................................................... 23

    E.   Genuine Disputes of Material Fact Exist with Respect to Maglula's
         Copyright Allegations.............................................................................. 25

         1.   Maglula's Copyright Registrations Are Valid ........................................ 26

         2.   The Evidence Supports a Jury Finding of Copyright Infringement.......... 29

IV.   CONCLUSION........................................................................................... 30

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*ACT II Jewelry, LLC v. Zhu,*
  No. 2:09cv407, 2010 WL 11450782 (E.D. Va. Mar. 31, 2010) ...............................................18

*Adickes v. S. H. Kress & Co.,*
  398 U.S. 144 (1970) ........................................................................................................................4

*AMP Inc. v. Foy,*
  540 F.2d 1181 (4th Cir. 1976) .....................................................................................................18

*Anheuser-Busch, Inc. v. L. & L. Wings, Inc.,*
  962 F.2d 316 (4th Cir. 1992) .......................................................................................................18

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.,*
  692 F. Supp. 2d 487 (M.D. Pa. 2010) ...........................................................................................7

*Barry v. Medtronic, Inc.,*
  No. 1:14-cv-104, 2016 WL 7665773 (E.D. Tex. July 19, 2016) .................................................12

*Butler v. Kroger Ltd. P'ship I,*
  No. 2:19cv673, 2020 WL 7483447 (E.D. Va. Nov. 30, 2020), *report and*
  *recommendation adopted*, No. 2:19-CV-673, 2020 WL 7482186 (E.D. Va.
  Dec. 18, 2020) ..............................................................................................................................14

*Carol Barnhart Inc. v. Econ. Cover Corp.,*
  773 F.2d 411 (2d Cir. 1985) ..................................................................................................27, 28

*Eghnayem v. Bos. Scientific Corp.,*
  57 F. Supp. 3d 658 (S.D. W.Va. 2014) ........................................................................................23

*Fonar Corp. v. Domenick,*
  105 F.3d 99 (2d Cir. 1997) ..........................................................................................................27

*Forest Labs. v. Abbott Labs.,*
  239 F.3d 1305 (Fed. Cir. 2001) .....................................................................................................5

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.,*
  286 F. Supp. 2d 284 (S.D.N.Y. 2003) ..........................................................................................18

*Hard Rock I Licensing Corp. v. Concession Servs., Inc.,*
  955 F.2d 1143 (7th Cir. 1992) .....................................................................................................24

*Infineon Techs. AG v. Volterra Semiconductor,*
  No. C-11-06239 MMC (DMR), 2013 WL 5366131 (N.D. Cal. July 31, 2013) ..........................9

*Kenexa Brassring, Inc. v. Taleo Corp.*,
  751 F. Supp. 2d 735 (D. Del. 2010)............................................................8, 9

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*,
  449 F.3d 1209 (Fed. Cir. 2006)......................................................................5

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*,
  43 F.3d 922 (4th Cir. 1995) ..........................................................................20

*Longitude Licensing Ltd. v. Apple Inc.*,
  No. 14-cv-04275-EDL, 2015 WL 12778777 (N.D. Cal. Oct. 29, 2015) ..................8

*M. Kramer Mfg. Co. v. Andrews*,
  783 F.2d 421 (4th Cir. 1986) ...................................................................27, 30

*Martek Biosciences Corp. v. Nutrinova, Inc.*,
  579 F.3d 1363 (Fed. Cir. 2009)......................................................................5

*Mazer v. Stein*,
  347 U.S. 201 (1954)......................................................................................28

*Microsoft Corp. v. CMOS Techs., Inc.*,
  872 F. Supp. 1329 (D.N.J. 1994) ..................................................................20

*Microsoft Corp. v. Grey Comput.*,
  910 F. Supp. 1077 (D. Md. 1995) ..................................................................17

*Network Prot. Scis., LLC v. Fortinet, Inc.*,
  No. C 12-01106 WHA, 2013 WL 5402089 (N.D. Cal. Sept. 26, 2013)..................7

*Oberdorf v. Amazon.com Inc.*,
  930 F.3d 136 (3d Cir.), *reh'g en banc granted, opinion vacated pending
  certification to Pa. Supreme Court*, 936 F.3d 182 (3d Cir. 2019) ..........................23

*Osem Food Indus. Ltd. v. Sherwood Foods, Inc.*,
  917 F.2d 161 (4th Cir. 1990) ........................................................................18

*Pandrol USA, LP v. Airboss Ry. Prod., Inc.*,
  320 F.3d 1354 (Fed. Cir. 2003)......................................................................14

*Phillip Morris USA Inc. v. Marlboro Express*,
  No. CV-03-1161 (CPS), 2005 U.S. Dist. LEXIS 40359 (E.D.N.Y. Aug. 26,
  2005) ..........................................................................................................22

*Polo Fashions, Inc. v. Craftex, Inc.*,
  816 F.2d 145 (4th Cir. 1987) ........................................................................18

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
No. 14-CV-2061-H (BGS), 2016 WL 7326609 (S.D. Cal. Jan. 12, 2016),
*aff'd*, 875 F.3d 1369 (Fed. Cir. 2017) .......................................................................7

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
923 F. Supp. 1231 (N.D. Cal. 1995) ........................................................................26

*Robinson v. New Line Cinema Corp.*,
No. 99-2167, 2000 WL 380124 (4th Cir. 2000) ......................................................30

*Rosetta Stone Ltd. v. Google, Inc.*,
676 F.3d 144 (4th Cir. 2012) ...................................................................................23

*Shakespeare Co. v. Silstar Corp. of Am., Inc.*,
110 F.3d 234 (4th Cir. 1997) ...................................................................................18

*Shell Co. v. Los Frailes Serv. Station, Inc.*
596 F.Supp.2d 193 (D.P.R. 2008), *aff'd sub nom. Shell Co. (Puerto Rico) v.
Los Frailes Serv. Station, Inc.* 605 F.3d 10 (1st Cir. 2010) ...................................17

*Silver Ring Splint Co. v. Digisplint, Inc.*,
543 F. Supp. 2d 509 (W.D. Va. 2008) ......................................................................27

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
426 F. Supp. 3d 217 (E.D. Va. 2019) .......................................................................27

*Spansion, Inc. v. Int'l Trade Comm'n*,
629 F.3d 1331 (Fed. Cir. 2010) ..............................................................................6, 7

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
137 S. Ct. 1002 (Mar. 22, 2017) ................................................................26, 28, 29

*State Farm Fire & Cas. Co. v. Amazon.com, Inc.*,
390 F. Supp. 3d 964 (W.D. Wis. 2019) ....................................................................23

*Swagway, LLC v. Int'l Trade Comm'n*,
934 F.3d 1332 (Fed. Cir. 2019) ...............................................................................20

*Swatch AG v. Beehive Wholesale, LLC*,
739 F.3d 150 (4th Cir. 2014) ...................................................................................17

*Symantec Corp. v. Logical Plus, Inc.*,
No. C 06-7963 SI, 2009 WL 3416178 (N.D. Cal. Oct. 20, 2009) ...........................30

*TiVo, Inc. v. EchoStar Commc'ns Corp.*,
516 F.3d 1290 (Fed. Cir. 2008) ...........................................................................5, 7, 8

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
618 F.3d 417 (4th Cir. 2010) .........................................................................27

*Va. Tech Found. Inc. v. Family Grp. Ltd. V*,
666 F. Supp. 856 (W.D. Va. 1987) ................................................................23

*Variety Stores, Inc. v. Wal-Mart Stores, Inc.*,
888 F. 3d 651 (4th Cir. 2018) ...............................................................18, 22

*Vivid Techs. Inc. v. Am. Sci. & Eng'g, Inc.*,
200 F.3d 795 (Fed. Cir. 1999)..........................................................................4

*Wynn's Extended Care, Inc. v. Bradley*,
619 F. App'x 216 (4th Cir. 2015) ..................................................................24

**State Cases**

*Bolger v. Amazon.com, LLC*,
53 Cal. App. 5th 431, *review denied* (Nov. 18, 2020) ..............................23

*Murphy v. Holiday Inns, Inc.*,
219 S.E.2d 874 (1975) ...................................................................................24

**Federal Statutes**

15 U.S.C. § 1052 ...................................................................................................19

15 U.S.C. § 1057(c) ........................................................................................15, 16

15 U.S.C. § 1114(1)(a).........................................................................................17

15 U.S.C. § 1115(a) ..............................................................................................19

15 U.S.C. § 1127..............................................................................................15, 22

17 U.S.C. § 101 .....................................................................................................26

17 U.S.C. § 410(c) ................................................................................................26

**Rules**

Fed. R. Civ. P. 56(a) ...............................................................................................4

Fed. R. Evid. 704 ..................................................................................................23

**Other Authorities**

Anne Gilson Lalonde & Jerome Gilson, 1 *Gilson on Trademarks* § 3.02 (2020) ........................16

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (5th ed.)
(2021)...............................................................................................................................15, 19

Melville B. Nimmer & David Nimmer, 3 *Nimmer on Copyright* § 12.11 [A] (Matthew Bender,
Rev. Ed. 2021) .................................................................................................................26

**TABLE OF EXHIBITS**

| Exhibit[1] | Description |
|---|---|
| Ex. A | Excerpts of Initial Expert Report of Dr. Joshua Harrison Regarding U.S. Patent Nos. 7,503,138 and 7,637,048 served on December 16, 2020 |
| Ex. B | Excerpts of Amazon Supplemental Responses to Interrogatory Nos. 1–5, 7, 8, 10–14, 17, 25 served on December 9, 2020 |
| Ex. C | Excerpts of Rebuttal Expert Report of David M. Lauck Regarding Copyrights and U.S. Patent Nos. 7,503,138 and 7,637,048 served on January 6, 2021 |
| Ex. D | Supplemental Exhibit 8 to Supplemental Expert Report of Dr. Joshua Harrison Regarding U.S. Patent Nos. 7,503,138 and 7,637,048 served on January 6, 2021 |
| Ex. E | Exhibit C to Rebuttal Expert Report of David M. Lauck Regarding Copyrights and U.S. Patent Nos. 7,503,138 and 7,637,048 served on January 6, 2021 |
| Ex. F | Compilation of Third-Party Subpoenas Served by Maglula |
| Ex. G | Excerpts of Maglula's Seventh Supplemental Objections and Responses to Amazon's Interrogatory Nos. 1–22 served on December 9, 2020 |
| Ex. H | Compilation of Information Regarding Alleged "Uninspected" Accused Products on Exhibit 25 to Amazon's Motion for Summary Judgment (D.I. 425-4) |
| Ex. I | Amazon.com Webpage, *What are UPCs, EANs, ISBNs. and ASINs?* (MAGLULA00011325–26) |
| Ex. J | Excerpts of Deposition Transcript of Graham Thatcher taken on November 18, 2020 |
| Ex. K | Excerpts of Deposition Transcript of Sanober Mukadam taken on November 17, 2020 |
| Ex. L | Excerpts of Deposition Transcript of Preston Holland taken on November 20, 2020 |
| Ex. M | Amazon.com Webpage, *ASIN creation policy* (MAGLULA00010787–93) |
| Ex. N | Excerpts of Deposition Transcript of Carly McKnight taken on December 2, 2020 |
| Ex. O | Excerpts of Deposition Transcript of Kaleigh Miller taken on November 20, 2020 |
| Ex. P | Amazon.com Webpage, *Using FBA virtual tracking* (MAGLULA00113241–45) |
| Ex. Q | Excerpts of Transcript of Hearing before U.S. House of Representatives, Committee on Energy and Commerce, Subcommittee on Consumer Protection and Commerce, *Buyer Beware: Fake and Unsafe Products on Online Marketplaces* on March 4, 2020 (MAGLULA00005769–907) |

---

[1] Exhibit citations are to Exhibits to the Declaration of Zachary D. Olah in Support of Maglula's Opposition to Amazon's Motion for Summary Judgment. A declaration from Guy Tal is filed concurrently with this brief.

| Exhibit[1] | Description |
|---|---|
| Ex. R | Amazon.com Webpage, *Intellectual property for Rights Owner* (AMZN00000608–15) |
| Ex. S | Excerpts of Deposition Transcript of Dr. Joshua Harrison taken on January 14, 2021 |
| Ex. T | Photograph of modified Maglula UpLULA® loader (MAGLULA00100748) |
| Ex. U | Photograph of modified Maglula UpLULA® loader (MAGLULA00100752) |
| Ex. V | Excerpts of Deposition Transcript of Guy Tal taken on November 23, 2020 |
| Ex. W | Email from Sanober Mukadam to Gauthier Capelle (AMZN00027256–61) |
| Ex. X | Excerpts of Maglula's Second Supplemental Objections and Responses to Amazon's Interrogatory Nos. 23–30 served on December 9, 2020 |
| Ex. Y | Exhibit 13 to Initial Expert Report of Dr. Joshua Harrison Regarding U.S. Patent Nos. 7,503,138 and 7,637,048 served on December 16, 2020 |
| Ex. Z | Amazon Product Detail Page Spreadsheet (AMZN00044314) |
| Ex. AA | Excerpts of Deposition Transcript of Arthur Mendes taken on November 24, 2020 |
| Ex. BB | Excerpts of Deposition Transcript of Caroline Ruder taken on December 11, 2020 |
| Ex. CC | Amazon.com Webpage, *Using the manufacturer barcode to track inventory* (AMZN00002077–82) |
| Ex. DD | Amazon Document, *Components of Retail Counterfeit + General Gaps* (AMZN00004612–14) |
| Ex. EE | Amazon.com Webpage, *Getting started with fulfillment by Amazon (FBA)* (AMZN00043249–53) |
| Ex. FF | Amazon.com Webpage, *Selling on Amazon Fee Schedule* (AMZN00043275–84) |
| Ex. GG | Excerpts of U.S. House of Representatives Subcommittee on Antitrust, Commercial and Administrative Law of the Committee on the Judiciary, Majority Staff Report and Recommendations, *Investigation of Competition in Digital Markets* (MAGLULA00010827–11275) |
| Ex. HH | Amazon.com Webpage, *How Amazon transfers payments* (MAGLULA00011276–78) |
| Ex. II | Amazon.com Webpage, *About products and listings* (AMZN00043234–37) |
| Ex. JJ | Amazon.com Webpage, *Amazon product authenticity and quality* (AMZN00001500–03) |
| Ex. KK | Supplemental Exhibit 9 to Supplemental Expert Report of Dr. Joshua Harrison Regarding U.S. Patent Nos. 7,503,138 and 7,637,048 served on January 6, 2021 |
| Ex. LL | Counterfeit Product Insert Cards (showing uses of Maglula's StripLULA®, 1911AI®, or BenchLoader® marks) |
| Ex. MM | Excerpts of Amazon Maglula Brand Offer Spreadsheet (AMZN00007701) |
| Ex. NN | Email from Bloodhound Arms to Guy Tal with attachments (MAGLULA00104136–47) |

| Exhibit[1] | Description |
|---|---|
| Ex. OO | Magload Product Insert Card |
| Ex. PP | Photograph of Maglula CEO, Mr. Tal, at Maglula booth at SHOT Show in 2014) (MAGLULA00076030) |
| Ex. QQ | Excerpts of Amazon's Responses to Maglula's Second Set of RFAs (Nos. 263–1176) |
| Ex. RR | Exhibit 5 to Deposition of Sanober Mukadam taken on November 17, 2020 |
| Ex. SS | Excerpts of Deposition Transcript of Dr. Joel Steckel taken on November 24, 2020 |
| Ex. TT | UpLood Product Insert Card |
| Ex. UU | Counterfeit Product Insert Cards (showing uses of Maglula's LULA® mark) |
| Ex. VV | Amazon.com Webpage, *Product detail pages and offers* (AMZN00044026–32) |
| Ex. WW | Amazon.com Webpage, *Get to Know the Product Detail Page* (MAGLULA00010631–36) |
| Ex. XX | Amazon Services Business Solutions Agreement (AMZN00002478–521) |
| Ex. YY | Amazon.com Webpage, *Intellectual Property Policy for Sellers* (AMZN00043259–62) |
| Ex. ZZ | Amazon.com Webpage, *FBA customer returns policy* (AMZN00001447–51) |
| Ex. AAA | Excerpts of Deposition Transcript of Kenneth Kelly on December 4, 2020 |
| Ex. BBB | Exhibit 13 to Deposition of Kenneth Kelly on December 4, 2020 |
| Ex. CCC | Exhibit 14 to Deposition of Kenneth Kelly on December 4, 2020 |
| Ex. DDD | Exhibit 15 to Deposition of Kenneth Kelly on December 4, 2020 |
| Ex. EEE | Exhibit 19 to Deposition of Kenneth Kelly on December 4, 2020 |
| Ex. FFF | Amazon.com Webpage, *How the Featured Offer works* (AMZN00043256–58) |
| Ex. GGG | Memorandum from Jonathan J. Engler and Thomas Burns to Sanober Mukadam and Graham Thatcher (AMZN00003600–611) |
| Ex. HHH | Amazon.com Webpage, *Listing blocked due to potential pricing error* (AMZN00001452–54) |
| Ex. III | Excerpts of Amazon's Customer Review Spreadsheet (AMZN00044297) |
| Ex. JJJ | Compilation of Indemnification Letters from Amazon to Chinese Entities (AMZN00000022–23, AMZN00000114–15, AMZN00000396–97, AMZN00000571–74) |
| Ex. KKK | Amazon Product Detail Page for Magload product (MAGLULA00008090–98) |
| Ex. LLL | Excerpts of Amazon's Customer Service Correspondence Spreadsheet (AMZN00027982) |
| Ex. MMM | Excerpts of Amazon's Customer Service Correspondence Spreadsheet (AMZN00028023) |

| Exhibit[1] | Description |
|---|---|
| Ex. NNN | Compilation of Trademark Registrations Certificates (MAGLULA00000685 (LULA®), MAGLULA00000467–68 (22UpLULA®), MAGLULA00000640–61 (BenchLoader®), MAGLULA00000527–28 (BabyUpLULA®), MAGLULA00000410–11 (1911AI®), MAGLULA00000786–87 (StripLULA®), MAGLULA00000736 (Maglula®), MAGLULA00000840–41 (UpLULA®) |
| Ex. OOO | Compilation of Amazon Order Confirmation Pages (MAGLULA0000628 and MAGLULA00024279) |
| Ex. PPP | Compilation of Maglula Invoices |
| Ex. QQQ | Email from Guy Tal to John Mullett (MAGLULA00075971–75) |
| Ex. RRR | Distribution Agreement with Bushnell (MAGLULA00075976–81) |
| Ex. SSS | Business Agreement with Bushnell (MAGLULA00040933–38) |
| Ex. TTT | Reserved |
| Ex. UUU | Business Agreement with Cabela's (MAGLULA00041099) |
| Ex. VVV | Excerpts of Cabela's Vendor Manual (MAGLULA00041162–63; MAGLULA00041347–48) |
| Ex. WWW | Reserved |
| Ex. XXX | Business Agreement with Bushnell (MAGLULA00040969–79) |
| Ex. YYY | Reserved |
| Ex. ZZZ | Reserved |
| Ex. AAAA | Business Agreement with Bushnell (MAGLULA00075983–89) |
| Ex. BBBB | Reserved |
| Ex. CCCC | Reserved |
| Ex. DDDD | Small Arms Review Magazine (MAGLULA00016106–112) |
| Ex. EEEE | Excerpts of Amazon's Responses to Plaintiff Maglula, Ltd.'s First Set of Requests for Admission (Nos. 1-262) |
| Ex. FFFF | Maglula.com Webpage, *Dealers & Distributors* (MAGLULA00118336–45) |
| Ex. GGGG | Reserved |
| Ex. HHHH | Maglula Product Catalogs (MAGLULA00034587–88) |
| Ex. IIII | Amazon Product Detail Page Photographs (AMZN00010953) |
| Ex. JJJJ | Amazon.com Webpage, *Changes to the Amazon Services Business Solutions Agreement* (AMZN00001171–72) |
| Ex. KKKK | April 2020 Issue of Shooting Industry Magazine (MAGLULA0004100–55) |

| Exhibit[1] | Description |
|---|---|
| Ex. LLLL | Compilation of Maglula Advertisements Run in the Shooting Industry Magazine from 2016–2018 (MAGLULA00065605–08; MAGLULA00093478–81; MAGLULA00063577–80; MAGLULA00093879–82; MAGLULA00058461–62; MAGLULA00058464–65) |
| Ex. MMMM | Maglula U.S. Sales Spreadsheet for 22UpLULA® products (MAGLULA00112751) |
| Ex. NNNN | Maglula U.S. Sales Spreadsheet for BabyUpLULA® products (MAGLULA00112752) |
| Ex. OOOO | Maglula U.S. Sales Spreadsheet for certain LULA® products (MAGLULA00112753) |
| Ex. PPPP | Maglula U.S. Sales Spreadsheet for UpLULA® products (MAGLULA00112750) |
| Ex. QQQQ | Compilation of UpLULA Product Packaging Insert Cards (MAGLULA00001551–55) |
| Ex. RRRR | "About Us" Portion of Maglula's Website From September 2020 (MAGLULA00010594–96) |
| Ex. SSSS | Excerpt of the May 2021 Issue of *American Rifleman* with Maglula Advertisement on Page 8 |
| Ex. TTTT | Compilation of Smith & Wesson Invoices and Purchase Orders for Maglula Products from 2013-2020 |
| Ex. UUUU | Exhibit 19 to Deposition of Sanober Mukadam taken on November 17, 2020 |
| Ex. VVVV | Exhibit 20 to Deposition of Sanober Mukadam taken on November 17, 2020 |
| Ex. WWWW | Exhibit 21 to Deposition of Sanober Mukadam taken on November 17, 2020 |
| Ex. XXXX | Excerpts of Rebuttal Expert Report of Joel Steckel, PhD served on January 6, 2021 |
| Ex. YYYY | Email from Chris Leechao to Graham Thatcher (AMZN00025773–77) |
| Ex. ZZZZ | Exhibit 5 to Deposition of Preston Holland taken on November 20, 2020 |

## I.   RESPONSE TO AMAZON'S STATEMENT OF UNDISPUTED FACTS

Maglula does not dispute facts 2–5, 8–9, 11, 14–15, 17–18, 20–21, 24, and 26–27.

1.   Disputed to the extent Maglula's BabyUpLULA mark was registered on 10/31/17.

6.   Disputed. Maglula showed "Amazon's infringing uses of the . . . Maglula Trademarks," comparing the marks on genuine Maglula products and insert cards with the marks on infringing products and insert cards. Ex. X (Maglula's Rog. Responses) at 19–30. Maglula incorporated its First Amended Complaint with a similar comparison. D.I. 70 ¶ 6. Maglula incorporated documents identifying each ASIN associated with Amazon's infringing uses. Ex. X (Maglula's Rog. Responses) at 30.

7.   Disputed. Maglula addressed several likelihood-of-confusion factors, including the similarity of the goods (they are identical) and the similarity of the marks (they are identical or nearly identical). Maglula responded that Amazon has used the Maglula Trademarks in connection with "the sale, offering for sale, distribution, or advertising of firearm magazine loaders and unloaders" and because Amazon used marks identical to the Maglula Trademarks in connection with the same goods for which the Maglula Trademarks are registered, Amazon's use is likely to cause confusion and constitutes counterfeiting. Ex. G at 49–50. Maglula also responded that because Amazon used marks confusingly similar to Maglula's Trademarks[2] (e.g., "UpLOOD" and "Magload") in connection with firearm magazine loaders, confusion is likely. Ex. X at 16–17.

10.   Disputed. Excludes Supplementary Registrations.

12.   Disputed. The effective registration date for No. VA0002146376 is 7/31/17. It also excludes Supplementary Registrations.

13.   Disputed. Maglula compared Maglula's copyrights with the counterfeit and

---

[2] "Maglula's Trademarks" refers collectively to Maglula's LULA, 22UpLULA, BenchLoader, BabyUpLULA, 1911AI, StripLULA, Maglula, and UpLULA marks.

infringing products and insert cards, including a side-by-side comparison of the copyrighted design features, insert cards, and photographs with the design features, insert cards, and photographs of the accused products. Ex. X (Maglula's Rog. Responses) at 19–30. Maglula incorporated its First Amended Complaint, which had a similar comparison. D.I. 70 ¶¶ 6, 27–28, 45.

16.     Disputed. Amazon included evidence of direct copying in its production, and Amazon employees admitted to a counterfeit problem. *E.g.*, Ex. W at AMZN00027256–60.

19.     Disputed. The thousands of accused products in Amazon's inventory have insert cards, which are specifications that describe the product features. Ex. Y (Harrison Ex. 13). Amazon also has records of product dimensions and weights. Ex. Z.

22.     Disputed. Maglula subpoenaed documents from vendors from whom Amazon purportedly sourced accused products. Ex. F (Compilation of Third-Party Subpoenas).

23.     Disputed. ███████████████████████████████████████

███████████████████████████████████████████. Ex. AA (Mendes Dep. Tr) at 162:2–163:1, 38:12–17. To the extent products sold through Amazon Retail are returned to Amazon fulfillment centers, Amazon inspects them, although not for authenticity. *Id.* at 38:12–17; *see also* Ex. B (Amazon's Rog. Responses) at 60–61; Ex. G (Maglula's Rog. Responses) at 6–7.

25.     Disputed to the extent Amazon sells counterfeits. *E.g.*, Ex. W; Ex. G at 5-30.

28.     Disputed.[3] When an FNSKU is the same as the ASIN (*e.g.*, ASIN: B00HBHNHE/ FNSKU: B00HBHNHE), the FNSKU does not provide information about the source of a product.

███████████████████████████████████████████

███████████████████████████. Ex. AA (Mendes Dep. Tr) at 118:14–21, 125:10–13.

---

[3] Maglula understands "third-party seller" to be an Amazon Selling Partner, someone with an individual or professional selling plan to sell products on Amazon. Ex. JJJJ; Ex. XX; Ex. FF.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████. *Id.* at 122:22–123:6,

124:5–125:8, 127:15–129:7; Ex. B (Amazon's Rog. Responses) at 62; *see also* Ex. BB (Ruder

Dep. Tr.) at 22:12–24:2; Ex. CC at AMZN00002077; Ex. P at MAGLULA00113241. Moreover,

████████████████████████████████. Ex. DD at AMZN00004612.

29.     Disputed. Dr. Harrison inspected over 165 products in Maglula's counsel's

possession. *See* Ex. D (Harrison Supp. Ex. 8), Ex. KK (Harrison Supp. Ex. 9). Dr. Harrison also

inspected over 2,000 products in Amazon fulfillment centers. Ex. Y (Harrison Ex. 13). In total,

Dr. Harrison has inspected over 2,165 products corresponding to 109 ASIN/FNSKUs. Ex. H-7.

30.     Disputed. Dr. Harrison has inspected many products identified in Exhibit 7 to his

report. By ASIN, he has inspected products corresponding to 42 ASINs in Exhibit 7. By

ASIN/FNSKU, he has inspected 109 ASIN/FNSKUs in Exhibit 7. Ex. H-7.

31.     Disputed. Dr. Harrison said a person with *no experience* may not be able to tell if a

product performs certain functionality based on a picture or by observing the product in packaging.

But he explained that *he could* make such a determination based on photographs alone because of

his experience inspecting thousands of products. Ex. S (Harrison Dep. Tr.), at 228:19–238:18.

32.     Disputed. Amazon controls sales through Fulfillment by Amazon (FBA) and

Merchant Fulfilled Network (MFN). Selling Partners must enter into a contractual relationship

with Amazon before being allowed to participate in "Selling on Amazon." Ex. XX (Amazon BSA).

Amazon "pick[]s, pack[s], ship[s], and provide[s] customer service" for products sold through

FBA. Ex. EE at AMZN00043249. Amazon collects fees from its Selling Partners. Ex. FF at

AMZN00043275–81. Amazon's algorithm chooses which seller to display as the featured offer in

the "Buy Box," including Amazon Retail. Ex. GG (U.S. House Antitrust Subcommittee Report) at MAGLULA00011108, MAGLULA00011075–76. Amazon controls payments from its customers. Ex. HH at MAGLULA00011276. When more than one Selling Partner lists the same product, Amazon aggregates offers and determines which Selling Partner's product to display. Ex. II at AMZN00043234. Amazon withholds payments and blocks certain Selling Partners. Ex. JJ at AMZN00001501; Ex. N (McKnight Dep. Tr.) at 88:22–90:5, 293:15–294:3. Amazon implements gates and suppresses ASINs, which control Selling Partners' ability to sell products on an ASIN. Ex. J (Thatcher Dep. Tr.) at 122:23–123:6, 161:24–162:3.

33.    Disputed. Selling Partners are not independent of Amazon. *See* Mag. Disp. Fact 32.

34.    Disputed. Amazon controls Selling Partners' sales. *See* Mag. Disp. Fact 32.

35.    Disputed to the extent that Amazon's Services Business Solutions Agreement has the legal consequence of creating a legal partnership or agency relationship. *See* Section III.D.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires "the movant show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears this burden even "[w]hen the moving party does not have the burden of proof on the issue." *Vivid Techs. Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 806–07 (Fed. Cir. 1999). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

## III.    ARGUMENT

### A.    The Court Should Deny Summary Judgment of Patent Noninfringement for What Amazon Calls the "Uninspected" Accused Products

Amazon identifies 1,064 ASIN/FNSKU combinations in Ex. 25 to its motion and calls all

products sold under these combinations "Uninspected Products." D.I. 425-4.[4] Material fact disputes, however, preclude summary judgment for these products. First, Maglula's expert opined that the accused products he inspected and found infringing *are representative* of all accused products (including the uninspected products), which alone creates disputed issues of fact on infringement for all uninspected accused products. Second, *Amazon's own information* shows products having the same ASIN are the same, which creates yet another fact dispute—i.e., a reasonable jury could conclude that an uninspected product infringes because it is the same (because it has the same ASIN) as one of the inspected products that infringes. Third, Amazon's Ex. 25 is inaccurate—Maglula actually inspected 65 ASIN/FNSKUs of the 1,064 ASIN/FNSKUs Amazon contends went uninspected. Fourth, for the 429 ASIN/FNSKUs in Ex. 25 that do not share an ASIN with an ASIN for an inspected product, there are disputed facts regarding whether those products infringe because there is other information from which a reasonable jury could conclude that those products are the same as inspected products and infringe in the same way.

### 1.   Maglula Met Its Burden to Show Infringement of "Uninspected" Accused Products Through Representativeness

"A patentee may prove infringement by 'any method of analysis that is probative of the fact of infringement,' and circumstantial evidence may be sufficient." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1372 (Fed. Cir. 2009) (citations omitted) (quoting *Forest Labs. v. Abbott Labs.*, 239 F.3d 1305, 1312 (Fed. Cir. 2001)) (citing *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006)). The Federal Circuit has affirmed proof of infringement through representative products: "there is nothing improper about an expert testifying in detail about a particular device and then stating that the same analysis applies to other allegedly infringing devices that operate similarly, without discussing each type of device in detail." *TiVo,*

---

[4] Amazon incorrectly represented the number as 1,06**5** unique ASIN/FNSKU combinations.

*Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1308 (Fed. Cir. 2008); *see also Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1350 (Fed. Cir. 2010) (affirming finding that 52 models were representative of all accused products where expert explained why accused products not selected for testing could reasonably be expected to behave like the representative products).

### a.   Maglula's Expert Opined that Inspected Products Are Representative of Uninspected Products

Maglula's expert, Dr. Harrison, inspected thousands of accused products. He personally examined and operated over 165 accused products that Maglula had in its possession and opined that they all infringed. Dr. Harrison grouped the inspected products into nine "classes" based on certain criteria.[5] He also personally attended an inspection of accused products at an Amazon fulfillment center, determined that over one thousand infringed, and grouped those into the classes. Dr. Harrison further oversaw inspections of over a thousand more accused products at three additional Amazon fulfillment centers. He reviewed photographs of those products, assessed infringement, and grouped the products into the nine classes as well.

Dr. Harrison provided a claim-by-claim and limitation-by-limitation infringement analysis of one product in each class. He opined that, except for one,[6] all accused products in the other eight classes are structurally and functionally the same, both within and across classes. Ex. A (Harrison Opening Report), ¶¶ 151–152. He opined that, based on his inspection of hundreds of accused products and his understanding of Amazon identifiers (e.g., ASINs, FNSKUs), the products for which he provided an infringement analysis were the same and thus representative of the other

---

[5] Dr. Harrison described the classes and criteria for each. Ex. A (Harrison Opening Report) ¶¶ 82–83. Classes A–D are counterfeit products with the "UpLULA" name, which Dr. Harrison calls "Counterfeit UpLULA Products." Classes E–I are knockoff products with "Magload," "UpLood," "QBLoader," or "Castellan" names, or, with no branding, which he calls "Knockoff Products."

[6] Dr. Harrison opined that all Class H products he examined are structurally and functionally the same. There are minor differences between Class H and the other classes, and for that reason, Maglula has not accused Class H products of infringing '138 patent claims 9–19.

accused products. *See id.* ¶¶ 149–154. He further opined that all the accused products—both inspected and uninspected—infringed the asserted patents. *See id.* Dr. Harrison's opinion alone creates a material fact dispute regarding whether the uninspected products are representative of the inspected products and thus infringe for the same reasons that the inspected products infringe.

Dr. Harrison's opinions far exceed what is necessary to survive summary judgment. *See, e.g.*, *Network Prot. Scis., LLC v. Fortinet, Inc.*, No. C 12-01106 WHA, 2013 WL 5402089, at *3– 4 (N.D. Cal. Sept. 26, 2013) (denying summary judgment where an expert provided an infringement claim chart for one product and concluded that product was representative of over 70 uncharted products that operated in the same manner because a court could not conclude "as a matter of law, that [patent owner] has not supplied enough evidence to persuade a jury that all of the operating versions [of the uncharted products] worked like" the charted product); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 14-CV-2061-H (BGS), 2016 WL 7326609, at *8 (S.D. Cal. Jan. 12, 2016) (denying summary judgment because expert's opinion on representativeness—though disputed—was "sufficient to create a triable issue of fact" on representativeness), *aff'd*, 875 F.3d 1369 (Fed. Cir. 2017).[7]

### b.    Amazon Has Not Rebutted Representativeness

Amazon has not identified any material differences between the inspected and uninspected

---

[7] Beyond merely creating a fact dispute, *Dr. Harrison's representativeness analysis is sufficient to prove infringement*. *See Spansion*, 629 F.3d at 1351 (affirming infringement based on an expert's use of representative products because the expert "provided detailed evidence describing his selection process" and explained why the modeled and non-modeled products "operate similarly with respect to the claimed limitation"); *TiVo*, 516 F.3d at 1308 (affirming jury verdict of infringement where expert "testified in detail with respect to only one type of device" and "testified that the other models of [accused products] operate similarly"); *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 692 F. Supp. 2d 487, 509–10 (M.D. Pa. 2010) (denying motion for JMOL and new trial when an expert tested a sampling of connectors from each of the 30 models at issue at trial and opined that 17 million total connectors infringed, stating that if defendant "thought this evidence unrepresentative of the entire universe of . . . connectors, it had full opportunity to attack [the expert]'s testimony and present counter-testimony from its own witnesses").

products, confirming the strength of Maglula's representativeness position. Maglula served an interrogatory seeking Amazon's noninfringement contentions and twice moved to compel a complete response. *See* D.I. 84, D.I. 129. Maglula's second motion to compel requested Amazon's full factual basis for its contention that the accused products are not structurally and operationally the same for purposes of infringement. *See* D.I. 129. But Amazon *never* identified any structural or operational differences between the accused products that mattered for purposes of patent infringement (with one exception, Class H). Ex. B (Amazon's Rog. Responses) at 15–36. Indeed, Amazon's only noninfringement arguments were uniform ones that applied equally to all classes of accused products except Class H.[8] *See id.* This shows that Amazon, too, was treating all accused products the same for purposes of its noninfringement positions.[9]

Amazon's expert, Mr. Lauck, does not challenge Dr. Harrison's opinion that the accused products he inspected are structurally and functionally the same, even though some of these products have different ASINs. Ex. C (Lauck Rebuttal Report), ¶¶ 77, 101. In fact, *Mr. Lauck himself* grouped and analyzed the accused products collectively, which supports Maglula's claim of representativeness. *See TiVo*, 516 F.3d at 1308 (approving representativeness where accused infringer's expert "discussed the various models . . . collectively and made no relevant distinction

---

[8] Amazon's noninfringement interrogatory responses for Classes A–G and I are identical. For Class H, Amazon repeats the same arguments and adds a paragraph alleging the Class H products do not meet limitations of claims 9 and 16 of the '138 patent, which Maglula no longer asserts.

[9] *See Kenexa Brassring, Inc. v. Taleo Corp.*, 751 F. Supp. 2d 735, 747 (D. Del. 2010) ("This is not a case where plaintiff failed to ask the defendant questions, and is baldly asserting that the products in question are homogeneous without any form of proof. Here, . . . [plaintiff] specifically asked defendants why **each** product did not infringe the patents in suit, yet both defendants responded in the same manner for all." (emphasis in original)); *Longitude Licensing Ltd. v. Apple Inc.*, No. 14-cv-04275-EDL, 2015 WL 12778777, at *9 (N.D. Cal. Oct. 29, 2015) (where plaintiff asked defendant to identify any differences between the accused products in noninfringement interrogatory, finding defendant's application of the same response to 20 different products deficient, noting that "[t]hese largely identical responses for each product indicate that [defendant] has overstated the differences among its products throughout this case").

among them with respect to" the relevant limitation); *Kenexa*, 751 F. Supp. 2d at 747 ("Defendants cannot group their products together when asked whether they differ, then turn around and claim that plaintiff has failed to meet its burden of showing that they operate in the same way.").[10]

Amazon also makes two arguments with no legal support. First, it argues that Maglula has not shown that "any of the Accused Patent Products are made by the same manufacturer or in the same way." D.I. 421 at 28. But Amazon has not cited a single case holding that representativeness is *per se* inappropriate where products originate from different manufacturers or sources.[11] Second, Amazon argues that there is no "industry standard that mandates a particular structure or function for magazine loaders." D.I. 421 at 29. Again, Amazon cites no case holding that the lack of an industry standard precludes a plaintiff from asserting representativeness. Amazon's industry standard argument also makes no sense when considering the nature of the accused products in this case—the very purpose of counterfeit and knock-off products is to have the *exact same*

---

[10] The only material difference Mr. Lauck identified in the nine classes of accused products involved Class H. *See, e.g.*, Ex. C (Lauck Rebuttal Report) ¶¶ 139, 162; Ex. E (Lauck Rebuttal Report Ex. C), at 2–3. The only other differences Mr. Lauck identifies are "superficial or decorative features," which he correctly acknowledges are ***not*** relevant to infringement. Ex. C (Lauck Rebuttal Report), ¶ 95; *Infineon Techs. AG v. Volterra Semiconductor*, No. C-11-06239 MMC (DMR), 2013 WL 5366131, at *5 (N.D. Cal. July 31, 2013) ("The existence of product differences does not necessarily affect the question of whether a product is representative of others. The differences must be relevant to the infringement contentions."); *Kenexa*, 751 F. Supp. 2d at 747 (other than the claimed functionality, "[a]ny other functionality is irrelevant").

[11] Amazon improperly seeks to use the fact that it does not manufacture the accused products as both a sword (suggesting they *may* be different based on *possible* differences between what it claims to be different manufacturers or sources (D.I. 421 at 28–29)) and a shield (claiming it "lacks any information . . . regarding the technical specification, design, manufacturing tolerances, internal structure or measurements, and functional capabilities" (D.I. 421 at 25)). Amazon also incorrectly accuses Maglula of doing "virtually nothing" to investigate the suppliers or sellers of the accused products. D.I. 421 at 25, 27 n.17. Maglula served subpoenas on at least ten entities purported by Amazon to be its vendors for the accused products. *See* Ex. F (Compilation of Third-Party Subpoenas). Maglula's effort to enforce its intellectual property against a manufacturer is ongoing. In 2016, Maglula filed a complaint against an Amazon Selling Partner, Yuyao Jiadi Metal Products Co., Ltd. in the U.S. District Court for the District of Columbia (No. 1:16-CV-2344), but in four years has been unable to serve the Chinese defendant. *See* Ex. G at 178.

*structure and function* as the genuine products they are mimicking. In sum, nothing Amazon argues can change the fact that Dr. Harrison's infringement opinions based on representativeness create material fact disputes that make summary judgment inappropriate.

### 2. Additional Facts Support Representativeness and Preclude Summary Judgment for "Uninspected" Products

There are additional material disputes of fact for the so-called "uninspected" products.

#### a. Amazon's Own Documents and Testimony Establish that Products Having the Same ASIN are the Same

635 ASIN/FNSKU combinations in Amazon's Ex. 25 that Amazon alleges went uninspected have the same ASIN as accused products Dr. Harrison inspected (*see* Ex. H-1[12]), and Amazon's documents and testimony show that products having the same ASIN are the same. Thus, 635 of the ASIN/FNSKUs in Ex. 25 are *the same* as a product Dr. Harrison inspected, and there is a fact dispute precluding summary judgment for these 635 ASIN/FNSKUs.

Amazon assigns ASINs to identify products in its catalog. Ex. I, at MAGLULA00011326; Ex. J (Thatcher Dep. Tr.), at 18:7–12; Ex. K (Mukadam Dep. Tr.), at 72:24–73:1. ASINs have certain product information assigned to them, including product titles and descriptions. *See* Ex. L (Holland Dep. Tr.), at 141:3–10. Amazon witnesses explained that products having the same ASIN are the same. Ex. L (Holland Dep. Tr.), at 87:24–88:2 ("████████████████████ ████████████████████████████████████████████████████████ ████████████████████." (emphases added)); Ex. N (McKnight Dep. Tr.), at 187:4–13, 152:9–18, 151:19–21 ("████████████████████████████████████").

Indeed, Amazon's business relies on products with the same ASIN being the same. First, Amazon's ASIN creation policy requires sellers who want to sell a product already in Amazon's

---

[12] Ex. H-2 includes a list of the ASINs Amazon incorrectly contends Maglula did not inspect and indicates precisely where and how it inspected individual products for each ASIN.

catalog to "match it to the existing ASIN." Ex. M, at MAGLULA00010787. Next, Amazon *intentionally* commingles units under the same ASIN so it can ship from the closest location to the customer. *See* Ex. Q (U.S. House Committee Tr.), at MAGLULA00005830; Ex. L (Holland Dep. Tr.), at 85:19–88:8; *see also* Ex. O (Miller Dep. Tr.), at 60:10–61:5 ███████████████████

████████████████████████████████████████████████████████████████

██████████████████████████"); Ex. P, at MAGLULA00113241. An Amazon 30(b)(6) witness even confirmed that ASINs are █████████████████████ and products under the same ASIN are █████████████████ Ex. L (Holland Dep. Tr.), at 87:14–88:8 (emphasis added). Moreover, Amazon's patent-infringement notices are on an ASIN level (Ex. R, at AMZN00000613), it ███████████████████████ (Ex. N (McKnight Dep. Tr.), at 90:2, 190:5–6), and it █████████████████████ (Ex. L (Holland Dep. Tr.), at 96:15–25). Amazon cannot reasonably dispute that products having the same ASIN are the same.

Amazon does dispute this, however. In direct contradiction with its past representations, Amazon now argues that more is required to know if products are the same—i.e., they at least must have the same ASIN/FNSKU combination. D.I. 421 at 24 & nn.14–15.[13] The overwhelming evidence proves Amazon wrong—matching ASINs alone are sufficient to know that products are the same. Dr. Harrison has inspected products that match ASINs with 635 of the ASIN/FNSKUs in Amazon's Ex. 25. There is a material fact dispute regarding whether these products infringe on the grounds that they are the same as products that Dr. Harrison inspected and found infringing.

        **b.**        **Amazon Inaccurately Includes ASIN/FNSKU Combinations that Maglula Inspected on its List of "Uninspected" Products**

Amazon contends Maglula did not inspect any of the products in Ex. 25. D.I. 421 at 24.

---

[13] Notably, Amazon has not advanced any noninfringement arguments on an ASIN-by-ASIN basis, much less on an ASIN/FNSKU-by-ASIN/FNSKU basis.

Amazon is wrong—Maglula inspected 65 ASIN/FNSKUs in Ex. 25.[14] Most egregiously, Amazon includes B001HBHNHE/B001HBHNHE, which accounts for the highest volume of units accused of infringing in this case. *Maglula and Amazon* inspected B001HBHNHE/B001HBHNHE units at Maglula's counsel's office, and Maglula inspected them at Amazon fulfillment centers. Ex. H-3.

Amazon argues that certain products are "uninspected" because Dr. Harrison did not "physically test" each unit. *See* D.I. 421 at 27. But experts are not required to physically operate products to show infringement. Courts routinely permit experts to opine on infringement based on photographs of the accused products. *See Barry v. Medtronic, Inc.*, No. 1:14-cv-104, 2016 WL 7665773, at *4 (E.D. Tex. July 19, 2016) (permitting expert testimony using photographs of accused product and noting "[t]here is no requirement that an expert physically inspect an accused instrumentality in order to render an opinion as to infringement"). Dr. Harrison physically inspected and operated *hundreds* of accused products. This, combined with his credentials in areas relevant to this case (PhD in engineering, professional engineer, 23 years of service in the Marines and Army) qualify Dr. Harrison to conclude from photographs alone that accused loaders infringe. Amazon falsely contends that both experts agreed that infringement cannot be determined "by simply observing the Accused Patent Products in their packaging as sold." D.I. 421 at 27. Amazon mischaracterizes the testimony of Dr. Harrison; he repeatedly explained that *he could* make such a determination based on photographs alone. *See* Mag. Disp. Fact 31; Ex. S (Harrison Dep. Tr.), at 229:21–230:2 ("Based on the picture and my experience with thousands of these products in the

---

[14] Ex. H-3 is a list of the ASIN/FNSKUs that Amazon incorrectly contends Maglula did not inspect. Ex. H-3 indicates precisely where and how Maglula inspected products for the specific ASIN/FNSKU combination. The products in column 2, Maglula's expert personally inspected and physically operated at Maglula's counsel's office. Amazon's counsel physically inspected these products and Amazon's expert did so virtually. The products in column 3, Maglula's expert inspected at Amazon fulfillment centers, one of which (OAK4) he personally attended and three of which (BWI2, LEX1, and JAX2) he oversaw and reviewed photographs.

last four months, I can, based on the picture alone."); *id.* at 230:17–21, 231:14–15.[15]

Because Dr. Harrison physically operated, inspected through photographs, and/or inspected through packaging accused products for 65 of the ASIN/FNSKUs listed in Ex. 25 (all of which Amazon incorrectly contends were uninspected), the Court should deny summary judgment of noninfringement for at least those combinations.

### c.     A Jury Could Find Products of the *Truly* Uninspected ASIN/ FNSKU Combinations are the Same as Inspected Products

Although Maglula has not inspected a physical product corresponding to 335 ASINs on Amazon's Ex. 25, Maglula has a strong factual basis, ***including Amazon documents***, for accusing products having those ASINs. For ASINs (and ASIN/FNSKUs) in Ex. H-4 Maglula has identified:

- **272** ASINs (**337** ASIN/FNSKUs) contain "UpLULA" or a variation thereof (e.g., "UpLu LA," "Lula-up," "UP LU LA," "UPLA") in the "item name" and/or product description assigned to that ASIN in Amazon documents;

- **19** ASINs (**36** ASIN/FNSKUs) contain "UP60"[16] or a variation thereof (e.g., "UP 60," "UP-60") in the "item name" assigned to that ASIN in Amazon documents;

- **31** ASINs (**63** ASIN/FNSKUs) have images associated with product detail pages that show either an UpLULA product or a knockoff UpLULA product being offered for sale;

- **4** ASINs (**21** ASIN/FNSKUs) contain a combination of "Maglula" and "[universal pistol/universal magazine/pistol magazine] loader" in the item name and/or brand name;

- **9** ASINs (**33** ASIN/FNSKUs) are identified in contemporaneous correspondence from the CEO of Maglula, Guy Tal, to Amazon and/or its Selling Partners, or from an Amazon customer to Guy Tal complaining of counterfeit UpLULA products being offered for sale under the identified ASINs.

Ex. H-5.[17] A reasonable jury could rely on the information described above—most of which comes from Amazon and overlaps with information associated with inspected products—to conclude that

---

[15] Notably, Amazon did not permit Dr. Harrison to open the packaging in order to operate any of the accused products at the fulfilment center inspection. Ex. S (Harrison Dep. Tr.), at 117:17–21.
[16] "UP60" is the unique product code that Maglula assigned for its UpLULA® product.
[17] ███████████████████████████████████ (Ex. YYYY); regardless, Maglula withdraws its claim that products sold under this ASIN infringe Maglula's patents.

the uninspected products are the same as and infringe in the same way as inspected products. Thus, there is a material fact dispute precluding summary judgment of noninfringement for the 335 truly uninspected ASINs on Amazon's Ex. 25 (accounting for 429 ASIN/FNSKUs).

### d. Amazon's Destructions Prevented Maglula From Inspecting Products for Some ASIN/FNSKU Combinations

Amazon also fails to acknowledge its role in making inspections impossible. For 903 ASIN/FNSKUs on its Ex. 25, there are no longer any units in Amazon's inventory. Ex. H-6. 117 of those ASIN/FNSKUs were not available for inspection *because Amazon destroyed them*. Ex. H-6. Thus, the facts underlying Maglula's pending spoliation motion (D.I. 226) also preclude summary judgment for those 117 ASIN/FNSKUs.[18]

### B. Genuine Disputes of Material Fact Exist With Respect to Maglula's Trademark Infringement Claims

Amazon moves for summary judgment on Maglula's trademark infringement claims (federal, state, and common law) on three grounds:[19] a lack of evidence that Amazon used the StripLULA®, 1911AI®, or BenchLoader® marks in commerce; a failure to establish common law trademark rights; and a failure to establish the "required elements" of trademark infringement. *See generally* D.I. 421 at 8–15. Amazon is wrong as to all.

---

[18] *See Butler v. Kroger Ltd. P'ship I*, No. 2:19cv673, 2020 WL 7483447, at *9 (E.D. Va. Nov. 30, 2020) (denying motion for summary judgment because the defendant "lost the video, and it should not be able to profit by securing summary judgment after depriving [plaintiff] of her best evidence"), *report and recommendation adopted*, No. 2:19cv673, 2020 WL 7482186 (E.D. Va. Dec. 18, 2020).

[19] A common theme of Amazon's argument is alleged deficiencies in Maglula's responses to Interrogatory Nos. 5, 27, and 28. Until this motion, Amazon never complained that Maglula's responses were deficient, nor did it move to compel supplemental responses. Amazon has forfeited its right to do so now. *See Pandrol USA, LP v. Airboss Ry. Prod., Inc.*, 320 F.3d 1354, 1369 (Fed. Cir. 2003) ("Absent [a showing that a party filed a motion to compel in response to an alleged discovery violation], the defendants cannot complain of alleged discovery violations.").

### 1.    Amazon Used Maglula's Trademarks in Commerce

As explained in Maglula's response to Interrogatory No. 28, Amazon used the StripLULA®, 1911AI®, or BenchLoader® marks on product insert cards accompanying counterfeit products *shipped and sold by Amazon*. *See* Ex. LL. This constitutes use of all three marks in commerce. 15 U.S.C. § 1127 (mark used in commerce when "it is placed *in any manner* on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto" and the goods are sold or transported in commerce (emphasis added)); J. Thomas McCarthy, 4 McCarthy on Trademarks and Unfair Competition § 25:27 (5th ed.) (2021) (dealer who does not make the goods, but sells them, is liable for infringement). Maglula also cited examples of *Amazon's uses* of all three marks in commerce. Ex. X (Maglula's Rog. Responses), at 30–33. And Amazon produced documents showing these marks *used in Amazon's product detail pages* [20] (where customers go to view, learn about, and purchase products) and associated photographs for many products. Ex. Z; Ex. MM; Ex. IIII. Maglula has also produced evidence that Amazon sold a counterfeit 1911AI product. Ex. NN; Declaration of Guy Tal in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Tal Decl.") ¶ 30.

### 2.    Maglula Produced Ample Evidence of Its Common Law Rights

Maglula produced ample evidence of its common law trademark rights before[21] it obtained federal registrations.[22] D.I. 421 at 17–18. Amazon incorrectly claims that Maglula did not provide

---

[20] Although Amazon deactivated the actual product detail pages (in many instances, after Maglula filed this case), it produced photos and data reflecting the text in various sections of the product detail pages, such as the product description, item name, brand name, and bullet points.

[21] Amazon improperly focuses on registration dates, ignoring that Maglula has constructive *nationwide* use of its marks dating back to December 2016 (StripLULA® and BenchLoader®) and May 2017 (1911AI®). Ex. NNN (Compiled Trademark Registrations Certificates), at MAGLULA00000640, 410, 786; *see also* 15 U.S.C. § 1057(c) (application constitutes "constructive use of the mark, conferring a right of priority, nationwide in effect").

[22] The LULA® mark registered in 2005, and Maglula has nationwide constructive use and priority

support for its common law rights in response to "Amazon's trademark infringement contention interrogatory." D.I. 421 at 12. Amazon continues to confuse patent and trademark concepts. "Infringement contentions" are not required in trademark cases. Moreover, Interrogatory No. 27 does not ask Maglula to detail its common law trademark rights. Ex. X (Maglula's Rog. Responses), at 15. Nevertheless, Maglula provided substantial evidence of its nationwide common law rights going at least as far back as 2013.[23] *See generally*, Tal Decl. For example, Maglula's products are advertised, promoted, offered, and sold under Maglula's Trademarks through national, regional, independent, and specialty dealers located throughout the country,[24] including Virginia.[25] Ex. X (Maglula's Rog. Responses), at 4–8; Ex. FFFF (Maglula's Dealers and Distributors). Maglula's products and marks have been promoted annually at industry trade shows since 2014. Tal Decl. ¶¶ 23-27; Ex. PP. And Maglula's registrations reflect when each mark was first used in U.S. commerce.[26]

Amazon contends that Maglula did not identify when "each mark supposedly became well-known." D.I. 421 at 12. Amazon did not ask for this information, and it is not required for common law protection. Anne Gilson Lalonde & Jerome Gilson, 1 Gilson on Trademarks § 3.02[4][b] (2020) ("[A] mark need not be widely recognized to support trademark rights . . . ."). Amazon

---

for the LULA® mark dating back to March 29, 2004; Amazon's arguments in this section are inapplicable to that mark. Ex. G (Maglula's Rog. Responses), at 48; *see also* 15 U.S.C. § 1057(c).
[23] Maglula seeks damages back to January 2013 only because Amazon refused to produce sales data prior to that date. Maglula is entitled to damages for as long as Amazon's infringement.
[24] Maglula produced many documents showing these uses and sales, going at least as far back as 2008. *E.g.*, Ex. DDDD (Small Arms Review Magazine); Exs. QQQ–SSS, UUU–VVV, and AAAA (Maglula's distribution agreements from 2010–2014); Exs. PPP, TTTT (invoices/purchase orders from 2013–2020 for sales of Maglula's products in the U.S.); Exs. MMMM–PPPP (Maglula's annual sales of certain products in the U.S. from 2013–2020).
[25] Ex. PPP at MAGLULA00102122, MAGLULA00100913, MAGLULA00101928.
[26] *See* Ex. G (Maglula's Rog. Response), at 48–49; Ex. NNN (Trademark Registrations).

knows Maglula's products and marks are well known.[27]

### 3.     Maglula Has Presented Evidence of Trademark Infringement

#### a.     "Product-by-Product" Infringement Not Required

Amazon contends that Maglula did not explain "on a product-by-product basis what mark is at issue or how the alleged trademark infringement occurred . . . ." D.I. 421 at 14. Not so. Maglula produced ample evidence, including product detail pages showing Amazon's use of Maglula's Trademarks. *See*, *e.g.*, Ex. G (Maglula's Rog. Responses), at 26–30, 51–53. Amazon produced similar evidence from its databases. *See* Ex. Z; Ex. MM. Such evidence suffices to establish trademark infringement and counterfeiting. *See*, *e.g.*, *Shell Co. v. Los Frailes Serv. Station, Inc.* 596 F.Supp.2d 193, 200 (D.P.R. 2008) (use of DEFENDA trademark on gasoline pumps to sell non-DEFENDA gasoline was counterfeiting), *aff'd sub nom. Shell Co. (Puerto Rico) v. Los Frailes Serv. Station, Inc.* 605 F.3d 10 (1st Cir. 2010). Moreover, Maglula need not prove infringement on a "product-by-product basis." *Cf. Microsoft Corp. v. Grey Comput.*, 910 F. Supp. 1077, 1084–85 (D. Md. 1995) (rejecting defendants' argument that plaintiff's examination of "only one unit of each type of counterfeit software" was flawed, noting that "[b]y this argument Defendants attempt to have the Court place an unreasonably high burden on [plaintiff] to show that each and every unit of software Defendants ever shipped was counterfeit."). Maglula need only show Amazon used marks in commerce in connection with the sale, offer for sale, distribution, or advertising of goods in a manner likely to cause confusion, mistake, or deception. 15 U.S.C. § 1114(1)(a); *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 162 (4th Cir. 2014)

---

[27] Ex. X (Maglula's Rog. Responses), at 5 ("[U]sers of Maglula's Products number in the millions."); Ex. RR (Mukadam Dep. Ex. 5) (identifying the "Maglula Ltd. UpLULA" as #1 in Amazon's "Best Seller in Gun Magazine loaders"); Ex. ZZZZ (Holland Dep. Ex. 5) (same); Ex. L (Holland Dep. Tr.), at 121:2–9; Ex. QQ (Amazon's RFA Responses), at 933 ("[O]n November 17, 2019, Maglula's UpLULA loader was the #1 best seller in Amazon's Gun Magazine Loaders category.").

(Virginia law requires the same proof as Lanham Act claims).

**b.      Likelihood of Confusion Is Presumed**

Amazon ignores the likelihood of confusion presumption applied in counterfeiting cases. *See, e.g.*, *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) ("Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion."); *AMP Inc. v. Foy*, 540 F.2d 1181, 1186 (4th Cir. 1976); *Osem Food Indus. Ltd. v. Sherwood Foods, Inc.*, 917 F.2d 161, 164–65 (4th Cir. 1990) (explaining that intentional copying creates a presumption that "the newcomer is successful and that there is a likelihood of confusion").[28]

In addition to the presumption, the record contains ample evidence supporting a likelihood of confusion. For instance, in responding to discovery, Maglula cited hundreds of documents supporting its claims and provided a chart depicting "[r]epresentative examples of Amazon's infringing uses of the Maglula Copyrights and Maglula Trademarks." Ex. X (Maglula's Rog. Responses), at 19–33; Ex. G (Maglula's Rog. Responses), at 51–53.

**c.      Genuine Disputes of Material Fact Exist**

As for the specific likelihood of confusion factors, that analysis is "an 'inherently factual' issue that depends on the unique facts and circumstances of each case." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F. 3d 651, 666 (4th Cir. 2018) (quoting *Anheuser-Busch, Inc. v. L. & L.*

---

[28] *See also Shakespeare Co. v. Silstar Corp. of Am., Inc.*, 110 F.3d 234, 239 (4th Cir. 1997) ("one who tries to deceive the public should hardly be allowed to prove that the public has not in fact been deceived"); *ACT II Jewelry, LLC v. Zhu*, No. 2:09cv407, 2010 WL 11450782 (E.D. Va. Mar. 31, 2010) (applying presumption of confusion because the "sample items underlying this motion were made to look like [Plaintiff's] merchandise, and they bear [Plaintiff's] trademark," "[t]he only credible explanation . . . is that one or both Defendants intended to deceive the public and benefit from the mark's goodwill"); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("Indeed, confusing the customer is the whole purpose of creating counterfeit goods.").

*Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992)). Here, the relevant factors weigh decidedly in Maglula's favor. Specifically, Maglula's Trademarks are inherently distinctive and strong;[29] the marks, goods, and trade channels are identical;[30] there is evidence of actual confusion; Amazon's products are of poor quality;[31] Amazon intentionally used counterfeit and infringing marks; and Amazon's products are presented in such a way that even sophisticated consumers could not distinguish between genuine and counterfeit products. Regarding Amazon's intent, Amazon has been aware of Maglula's trademark rights since at least as early as March 2017 (if not earlier) when Maglula sent Amazon a memo detailing its rights and the rampant counterfeiting taking place by Amazon and on its website. Ex. GGG (Mar. 24, 2017, Memo); *see also* Exs. UUUU–WWWW (Mukadam Dep. Exs. 19–21) (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Despite this knowledge, and Maglula's repeated complaints to Amazon, Amazon ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. JJJ (Indemnification Letters); Ex. EEEE (Amazon's RFA Responses), RFA Nos. 103–04, 108, 110, 113–14, 118, 120, 133–34, 138, 140, 143–44, 148, 150, 153–54, 158, 160, 163–64, 168, 170.

Amazon also faults Maglula for not conducting a likelihood of confusion survey. D.I. 421 at 2. But "[c]onsumer survey evidence is not required to show a likelihood of confusion."

---

[29] Amazon faults Maglula for not conducting a survey. D.I. 421 at 2. Maglula's Trademarks are registered on the Principal Register, which is reserved for marks that are inherently distinctive or have acquired secondary meaning. 15 U.S.C. § 1052; J. Thomas McCarthy, 1 McCarthy on Trademarks and Unfair Competition § 4:12 (5th ed.) (2021). Moreover, Maglula's registrations are prima facie evidence of the validity of those marks, rendering such a survey unnecessary. 15 U.S.C. § 1115(a).

[30] *See* Ex. X (Maglula's Rog. Responses), at 19–30; Ex. B (Amazon's Rog. Responses), at 11–12.

[31] Ex. III (exemplary customer reviews on product detail pages for accused products: "The loader [] received was confirmed as a counterfeit by the manufacturer. The metal tab broke within a month"; "The one I received is a counterfeit. The metal is very weak and bends after only one use"; "This is a copy of the real product and the pin broke right away"; and "They [sic] one I received was a counterfeit and broke on the first day.").

*Swagway, LLC v. Int'l Trade Comm'n*, 934 F.3d 1332, 1340 (Fed. Cir. 2019). A survey is particularly unnecessary where a likelihood of confusion is presumed.[32] Here, the trier of fact can determine—without assistance from an expert witness—whether confusion is likely, for example, simply by looking at the counterfeit products designed deliberately to look like genuine products and confuse consumers. Indeed, because Amazon advertised and sold "counterfeit products on which [Maglula's] registered marks appear in their entirety" and because Amazon's advertising and sales of counterfeit products "act[] in direct competition with [Maglula]," "[i]t would be difficult to imagine a clearer case of consumer confusion than the instant case." *Microsoft Corp. v. CMOS Techs., Inc.*, 872 F. Supp. 1329, 1335 (D.N.J. 1994).

Finally, actual confusion—"the most compelling evidence of likelihood of confusion"—exists. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 937 (4th Cir. 1995). For example, Federal Trade Commission economist Mr. Kenneth Kelly purchased from Amazon what he believed to be a genuine UpLULA product.[33] Maglula has received and produced numerous instances where other Amazon customers were confused. Amazon has also produced communications with its customers reflecting confusion. Ex. LLL (Collection of Customer Correspondence to Amazon) ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮"); Ex. MMM (customer who discovered product was counterfeit after purchase). And Amazon's own witnesses were unable to distinguish between genuine and counterfeit UpLULA products, including Amazon's vendor manager who oversaw the sporting goods/hunting product category for Amazon and closely monitored Amazon's sale of Maglula products. *See* Ex. K

---

[32] Indeed, Amazon's expert, Dr. Steckel, "do[es] not believe that a consumer survey is always necessary" (Ex. XXXX (Steckel Report), ¶ 73) and did not recall whether he had ever conducted a likelihood of confusion survey in a counterfeiting case (Ex. SS (Steckel Dep. Tr.), at 36:17–19).
[33] Ex. AAA (Kelly Dep. Tr.), 5:5–7, 25:20–23, 91:14–18, 95:15–97:22; Ex. BBB (Kelly Dep. Ex. 13); Ex. CCC (Kelly Dep. Ex. 14); Ex. DDD (Kelly Dep. Ex. 15); Ex. EEE (Kelly Dep. Ex. 19).

(Mukadam Dep. Tr.), at 24:18–25:12; 27:13–28:7; 54:2–14; 58:8–17; 205:10–14; 227:23–228:11; 228:25–229:8; 229:21–230:4; 230:12–22; Ex. L (Holland Dep. Tr.), at 126:24–127:5.

### d.  Amazon's Use of UpLood and Magload Infringe

In responding to Interrogatory No. 27, Maglula explained "Amazon has . . . infringed the Maglula Trademarks by applying marks [including "UpLood" and "Magload"] which are likely to be confused with the Maglula Trademarks to labels, signs, prints, packages, wrappers, receptacles, and/or advertisements (e.g., product listing pages and invoices) intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of firearm magazine loaders and unloaders." Ex. X (Maglula's Rog. Responses), at 16–17. Maglula also explained that "[b]ecause Amazon . . . used marks [including 'UpLood' and 'Magload'][34] . . . likely to be confused with the Maglula Trademarks in connection with the sale, offering for sale, advertising, and/or distribution of the products for which the Maglula Trademarks are registered . . . and because such use is likely to cause confusion, to cause mistake, or to deceive, Amazon is directly liable to Maglula for trademark infringement." *Id.* at 17.

In other incorporated responses, Maglula identified evidence supporting these claims. *See* Ex. X (Maglula's Rog. Responses), at 16, 19–33; Ex. G (Maglula's Rog. Responses), at 47–53. Maglula cited documents and provided a chart depicting representative examples of Amazon's infringing uses of UpLood and Magload. Ex. X (Maglula's Rog. Responses), at 24–26.[35] A simple visual comparison of the infringing and genuine products shows confusion is likely and, as shown

---

[34] Although Amazon says otherwise, Maglula does not claim that "Castellan" infringes its trademark rights. D.I. 421 at 13; Ex. X (Maglula's Rog. Response) at 16.

[35] Maglula also cited product detail pages (MAGLULA00113317 and MAGLULA00008090) showing Amazon's use of "UpLood" and "Magload," *some of which even use Maglula's Trademarks*. Ex. G. (Maglula's Rog. Responses), at 29; Ex. KKK, at MAGLULA00008090.

in customer reviews[36] for these products, actually occurred.[37] Given the similarities between the marks and product packaging, it is clear that these products were designed to mimic genuine Maglula products and trade off Maglula's goodwill.

### e.      Amazon's Motion Should Be Denied

Given the "inherently factual" nature of this inquiry and the evidence showing the likelihood of confusion factors weigh in Maglula's favor, there is a genuine dispute of material fact, and Amazon's motion should be denied. *Variety Stores, Inc.*, 888 F. 3d at 666.

### C.      Genuine Disputes of Material Fact Exist With Respect to Maglula's Counterfeiting Claims

Amazon contends that it is not liable for counterfeiting of Maglula's Trademarks before registration. D.I. 421 at 15–16. Maglula agrees. That said, Amazon incorrectly asserts that "Maglula contends that Amazon is liable for trademark counterfeiting prior to the date its marks were registered." *Id.* at 16. Maglula's LULA mark registered in 2005 (Ex. G at 48–49) and that mark appears numerous times on the counterfeit product insert cards (Ex. UU).[38] In addition, Amazon produced documents showing that the LULA® marks were used in Amazon's product detail pages for numerous products. Ex. Z. These uses of a mark that is "identical with . . . a registered mark" constitute counterfeiting. 15 U.S.C. § 1127. *See also Phillip Morris USA Inc. v. Marlboro Express*, No. CV-03-1161 (CPS), 2005 U.S. Dist. LEXIS 40359, at *22–23 (E.D.N.Y.

---

[36] Ex. III ("This is not the original UpLULA loader made in Israel. This is a knockoff loader made in China. I am very dissapointed."; "works the same as a lula...is it a lula?"; "Bought this Uplula, after I receive it I discovered it is a Chinese counterfeit to Maglula Uplula Loader.").

[37] The "Magload" product comes in packaging that closely mirrors genuine Maglula packaging with its green color; nearly identical text, layout, and pictures; and use of the "no more pain!" thumb graphic. *See* Ex. OO (enlarged). The UpLood product packaging closely mirrors genuine Maglula packaging with its yellow color; nearly identical text, layout, and pictures; and use of the "no more pain!" thumb graphic. *See* Ex. TT (enlarged).

[38] Because the counterfeit product insert cards bear the LULA mark (Ex. UU), granting summary judgment on "all marks before 2017" as Amazon requests is inappropriate. D.I. 421 at 16 n.10.

Aug. 26, 2005) (awarding maximum statutory damages where defendant sold counterfeit cigarettes infringing four separate trademarks appearing on the packages).

Amazon's arguments that Maglula did not provide "trademark counterfeiting contentions" or confusion evidence repeat the positions taken relative to Maglula's trademark infringement claims as addressed above.[39] *See id.* at 12–15. As noted above, Amazon's motion should be denied.

### D. Genuine Disputes of Material Fact Exist With Respect to Whether Amazon Is Vicariously Liable for Trademark Infringement or Counterfeiting

Amazon wrongly contends that Maglula presented no evidence that (1) a legal partnership or agency between Amazon and its Selling Partners or (2) Amazon exercises sufficient control over or the right and ability to control the conduct of its Selling Partners. D.I. 421 at 35–36. Ample record evidence exists. Also, courts have found Amazon's control sufficient for product liability.[40]

"[L]iability for vicarious trademark infringement requires 'a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.'"

---

[39] Amazon also faults Maglula for not providing expert opinions regarding its trademark counterfeiting claims. D.I. 421 at 17. Such an opinion is not only unnecessary (the factfinder can observe the counterfeit marks simply by looking at the products), but impermissible. Fed. R. Evid. 704, 1972 advisory committee's note ("opinions which would merely tell the jury what result to reach" are inadmissible); *Eghnayem v. Bos. Scientific Corp.*, 57 F. Supp. 3d 658, 699 (S.D. W.Va. 2014) (excluding expert report that was rife with legal conclusions, including likelihood of confusion); *Va. Tech Found. Inc. v. Family Grp. Ltd. V*, 666 F. Supp. 856, 858 (W.D. Va. 1987) (opining that marks "look[ed] alike and sound[ed] alike" was "classic misuse of expert testimony").

[40] *See Oberdorf v. Amazon.com Inc.*, 930 F.3d 136, 146 (3d Cir.) ("Although Amazon does not have direct influence over the design and manufacture of third-party products, Amazon exerts substantial control over third-party vendors."), *reh'g en banc granted, opinion vacated pending certification to Pa. Supreme Court*, 936 F.3d 182 (3d Cir. 2019); *Bolger v. Amazon.com, LLC*, 53 Cal. App. 5th 431, 438–39, 441, 451–53, 456, *review denied* (Nov. 18, 2020) (Amazon controlled "both the product at issue and the transaction that resulted in its sale"; describing various aspects of Amazon's control); *State Farm Fire & Cas. Co. v. Amazon.com, Inc*., 390 F. Supp. 3d 964, 973 (W.D. Wis. 2019) ("Amazon bears responsibility for putting the defective product into the stream of commerce . . . and Amazon is well positioned to allocate among itself and its third-party sellers the risks that products sold on Amazon.com would be defective.").

*Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 165 (4th Cir. 2012) (quoting *Hard Rock I Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992)). Here, Amazon enters into an actual partnership with its Selling Partners by requiring them to enter into Amazon's "Business Solutions Agreement," or "BSA," which governs Amazon's "suite of optional services for sellers," including Selling on Amazon, Fulfillment by Amazon, Transaction Processing Services, and the Selling Partner API." Ex. XX (Amazon BSA) at AMZN00002478.

Amazon contends that its BSA "makes clear there is no agency or legal partnership" between Amazon and its Selling Partners. D.I. 421 at 36 (quoting Ex. XX (Amazon BSA) at AMZN00002485. But such disclaimers are not dispositive. *Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 218–19 (4th Cir. 2015) ("Notably, the parties' disclaimer of an agency relationship, even in a contract, is not dispositive.") (citing *Murphy v. Holiday Inns, Inc.*, 219 S.E.2d 874, 876 n.1 (1975)).

The record shows that Amazon controls all aspects of the advertising and sales process with its Selling Partners. For example, Amazon has the sole discretion to determine the content, appearance, design, functionality, labeling, and all other aspects of its listing (including those for the counterfeit and infringing products). Ex. XX (Amazon BSA) at AMZN00002500; Ex. VV at AMZN00044026 ("Amazon chooses what information to include on the product detail page based on manufacturer and seller contributions."); Ex. WW at MAGLULA00010631 ("Amazon determines which information to display for shoppers."). Amazon can redesign, modify, remove, or restrict access to any listing (including those for the counterfeit and infringing products). Ex. JJ at AMZN00001501; Ex. YY at AMZN00043259; Ex. N (McKnight Dep. Tr.) at 88:22–90:5, 293:15–294:3; Ex. J (Thatcher Dep. Tr.) at 122:23–123:6, 161:24–162:3. Amazon controls the fulfillment and distribution process by, for example, determining which Selling Partner appears in

the "Buy Box" on Amazon's website (i.e., which Selling Partner receives payment for an order) at any given time. Ex. II at AMZN00043234; Ex. FFF at AMZN00043256; Ex. GG (U.S. House Antitrust Subcommittee Report) at MAGLULA00011108, MAGLULA00011075–76. Amazon also controls which Selling Partner's inventory is used to fulfill an order via Amazon's Fulfillment by Amazon service. Ex. P at MAGLULA00113241; Ex. Q (U.S. House Committee Tr.) at MAGLULA00005830; Ex. EE at AMZN00043249. Due to Amazon's inventory commingling practices, the Selling Partner whose inventory is used to fulfill an order (which Amazon generally selects based on proximity to the customer) may not be the Selling Partner who receives payment for that order. Ex. P at MAGLULA00113242. Amazon does not disclose to the end customer which Selling Partner's inventory was used to fulfill the order. Ex. Q (U.S. House Committee Tr.) at MAGLULA00005832. In addition, Amazon controls communications between its Selling Partners and customers." Ex. XX (Amazon BSA) at AMZN00002496–97. Amazon collects fees from its Selling Partners and may also, at any time, in its sole discretion and without notice, suspend, prohibit, or remove product listings associated with Amazon and its Selling Partners. Ex. FF at AMZN00043275–81; Ex. HHH at AMZN00001452. Amazon requires its Selling Partners to agree that Amazon has the "exclusive right" to receive all proceeds from all of Amazon's sales on behalf of its Selling Partners. Ex. XX (Amazon BSA) at AMZN00002495–96. Amazon also controls aspects of processing payments, order cancellations, returns, and refunds for products sold on Amazon.com. *Id.* at AMZN00002497, AMZN00002507–08; Ex. ZZ at AMZN00001447–50; Ex. HH at MAGLULA00011276; Ex. OOO. There are thus genuine disputes of material fact as to whether Amazon is vicariously liable for trademark infringement and counterfeiting.

### E.  Genuine Disputes of Material Fact Exist with Respect to Maglula's Copyright Allegations

Maglula's valid copyright registrations and evidence of infringement support its

infringement claims and raise triable issues of fact.

### 1.    Maglula's Copyright Registrations Are Valid

Amazon asserts that Maglula's "design element" registrations are invalid because the "underlying materials" (i.e., magazine loaders/unloaders) (D.I. 421 at 20) and various "design elements" (*id*. at 21) are allegedly "useful articles." Amazon's motion, however, conflicts with the Copyright Act's protection for ornamental design elements of useful articles and fails to apply the Supreme Court's *Star Athletica* test for such elements. These flaws are fatal to Amazon's motion.

Under 17 U.S.C. § 101, the "design of a useful article" merits copyright protection if it "can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." Consistent with Section 101, in *Star Athletica, L.L.C. v. Varsity Brands, Inc*., 137 S. Ct. 1002, 1010 (Mar. 22, 2017), the Supreme Court found design elements of useful articles protectable under a two-part test if they (1) can be identified separately from, and (2) exist independently of, the utilitarian aspects of the article, i.e., as an independently copyrightable work.

Following the March 2017 *Star Athletica* decision, on July 24, 2017 the U.S. Copyright Office issued all eight of Maglula's "design element" copyright registrations that Amazon claims are invalid. *See* D.I. 421 at 20 n.12. In issuing those registrations, the Copyright Office considered their copyrightability under *Star Athletica*. Accordingly, the Court should defer to the judgment of the Copyright Office and presume the registrations are valid under 17 U.S.C. § 410(c).[41]

---

[41] Amazon wrongly asserts that 17 U.S.C. § 410(c) accords a rebuttable presumption to copyright registrations only "for five years after registration." D.I. 421 at 21. Not so. Section 410(c) requires only that the registration be made within five years of first publication for the presumption to attach automatically; the timing of any judicial proceeding is irrelevant. *See* 17 U.S.C. § 410(c); *see also* Melville B. Nimmer & David Nimmer, 3 Nimmer on Copyright § 12.11 [A] (Matthew Bender, Rev. Ed. 2021). Registration No. VA0002083625 issued within five years of publication and is thus entitled to all statutory presumptions. Because the other seven registrations challenged in Amazon's motion issued more than five years after publication, the Court has discretion to determine the evidentiary weight to be accorded those registrations. 17 U.S.C. § 410(c); *Religious*

The validity of a registered work may be rebutted by record evidence, *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc*., 618 F.3d 417, 430 (4th Cir. 2010), *amended by* (Aug. 24, 2010), but not conclusory assertions, *see, e.g.*, *Silver Ring Splint Co. v. Digisplint, Inc.*, 543 F. Supp. 2d 509, 513 (W.D. Va. 2008). *Sony Music Ent. v. Cox Commc'ns, Inc*., 426 F. Supp. 3d 217, 224 (E.D. Va. 2019) ("mere denial" or "conclusory statements" cannot rebut validity presumption).[42]

Trying to invalidate three registrations, Amazon misleadingly uses "a side-by-side comparison of the underlying copyright deposit materials and the patented features for which Maglula sought **utility** patent protection," claiming that the patent application drawings establish that Maglula's copyright registrations are invalid. D.I. 421 at 21–22.[43] Yet the issuance of a patent does not render a work non-copyrightable. *See M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 441

---

*Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1242 (N.D. Cal. 1995) (awarding the presumption of validity to copyrighted works registered more than five years after publication). Here, because those seven registrations issued after the *Star Athletica* decision, the Copyright Office applied the correct test to determine copyrightability, and Maglula requests the Court to accord them the same weight as a certificate issued within five years of publication.

[42] Amazon cites *Universal Furniture International, Inc. v. Collezione Europa USA, Inc*., 618 F.3d 417, 434 (4th Cir. 2010) for the proposition that evidence that the work is a "utilitarian article" may rebut the presumption of validity. D.I. 421 at 21. But in *Universal Furniture*, the Fourth Circuit found the design elements of a utilitarian article were protectable. *Universal Furniture*, 618 F.3d at 434–45. Clearly, then, *Universal Furniture* does not support Amazon's position. Moreover, *Universal Furniture* (and the Second Circuit decisions on which it relies) predate the Supreme Court's *Star Athletica* decision. *See id*. (citing *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997); *see also Fonar*, 105 F.3d at 104 (citing *Carol Barnhart Inc. v. Econ. Cover Corp*., 773 F.2d 411, 414 (2d Cir. 1985)). Of these cases, only in *Carol Barnhart* did a court find that the that the defendant presented sufficient evidence to establish that the registration covered a useful article, relying on the fact that the design elements of the mannequins were so "inextricably intertwined with the utilitarian feature" that any protectable expression was inseparable from utilitarian subject matter. *Carol Barnhart*, 773 F.2d at 419. Amazon has not shown, as it must, that Maglula's ornamental design elements are inseparable from the useful article.

[43] As Amazon's chart compares deposit materials to patent drawings from only three of the eight "design element copyrights," Amazon's chart cannot possibly demonstrate that all eight "design element copyrights" cover patented features.

n.19 (4th Cir. 1986) ("In *Mazer* the Supreme Court said: 'Neither the Copyright Statute nor any other says that because a thing is patentable it may not be copyrighted. We should not so hold.'" (citation omitted) (*quoting Mazer v. Stein*, 347 U.S. 201, 217 (1954))).

Amazon's chart fails to identify ***any*** ornamental and utilitarian features "inextricably intertwined" in the design of Maglula's loaders and unloaders. *See Carol Barnhart*, 773 F.2d at 419; *Star Athletica*, 137 S. Ct. at 1010. Amazon cannot make this showing because the three registrations featured in Amazon's chart (D.I. 421 at 22) cover conceptually and physically separable sculptural elements not covered by the utility patents.

With respect to Amazon's comparison of VA0002083626 and VA0002083624 (D.I. 421 at 22, Rows 1 and 2), the patent figures show the functional components of the press, plunger, aligner, and their relation to one another in the "close" position;[44] in contrast, the copyright registration covers the back and top views of the UpLULA as a sculptural work, encompassing the ornamental, non-functional aspects of the design, including, for example, the rectangular recession and surface ornamentation on the back view and the location of the arch on the top view. These elements are not necessary for the product to function, and the record reflects that these ornamental features can be removed without affecting the functionality of the product. Ex. T (arch removed); Ex. U (rectangular recession and surface ornamentation removed).

Maglula's "UpLula Arch" (VA0002083358) is an ornamental feature, and Amazon offers no evidence to rebut the record evidence showing it is. When asked if the arch (or "bridge") of the UpLULA loader was "purely ornamental," Maglula's CEO testified "[y]es, sir, you can cut it away and the UpLULA loader would work just the same." *See* Ex. V (Tal Dep. Tr.), at 104:8–12; *see*

---

[44] In Row 1, Amazon provides an erroneous comparison, showing the *rear* view of the loader from the copyright registration and a *front prospective* view from the patent.

*also* Ex. T (showing arch removed). The unrefuted testimony supports the conclusion that the "arch" element can (1) be identified separately from, (2) exist independently of the UpLULA loader and is protectable by copyright. *See Star Athletica*, 137 S. Ct. at 1010.

The same is true of Maglula's other copyright registrations. For example, Copyright Registration No. VA0002083628 covers the UpLULA bullet engraving image. Amazon claims, without evidence, that the engraving "is designed to show a user the direction of the bullet." D.I. 421 at 23. Yet the applicable test is whether the element, imagined separately from the useful article, can be protected as a separate work. *Star Athletica*, 137 S. Ct. at 1010. Even if Amazon could establish that the bullet engraving "show[s] a user the direction of the bullet" (D.I. 421 at 23), and "even if it makes th[e] [UpLULA loader] more useful," the engraving is an independently copyrightable work and thus protectable. *See Star Athletica*, 137 S. Ct. at 1014.

### 2.    The Evidence Supports a Jury Finding of Copyright Infringement

Amazon seeks pre-trial dismissal of Maglula's copyright claims, alleging Maglula did not disclose "factual or legal theories for its copyright infringement claims on the Accused Copyright Products" (D.I. 421 at 19), and responded to Amazon's Interrogatory No. 4 with no "evidence of direct or indirect copying" (D.I. 421 at 20); analysis of the infringement (*id*); or "expert opinions on copyright infringement issues"[45] (*id*). Maglula's response to Amazon's Interrogatory No. 4, reproduced below, in part, supports its copyright claims:

> Amazon has offered for sale, advertised, sold, and shipped Accused Products to
> Amazon customers that contain or are comprised of complete copies of Maglula's

---

[45] Amazon claims that Maglula should have proffered expert testimony supporting copyright infringement. First, there is no such requirement, especially where, as here, the products are identical, and an expert is no more capable of assessing substantial similarity than the jury. Second, Maglula's CEO, who designs firearm accessories, testified in support of copyright infringement. *See, e.g.*, Ex. V (Tal Dep. Tr.), at 102:21–103:11, 104:8–12. There is no legitimate dispute that Mr. Tal is an expert in the products his company makes and has the capacity to compare them against the accused products. Why, then, must a third-party expert testify about Maglula's products in order to support Maglula's copyright claims? Amazon does not say.

> copyrighted product packaging insert cards, Maglula's copyrighted photographs depicted on the UpLULA® product packaging insert card, and/or Maglula's copyrighted design elements of the UpLULA® loader itself and/or that are at least substantially similar to the Maglula Copyrights.

Ex. G (Maglula's Rog. Responses), at 42; *see also id.* at 43–44. Amazon complains that Maglula "parroted the allegations in its complaint." D.I. 421 at 19–20. But Maglula's complaint is precisely where "legal theories for its copyright infringement claims" (D.I. 421 at 19) ought to be set forth.

Amazon ignores its document and witness testimony when it asserts there is no "evidence of direct or indirect copying." *See, e.g.*, Ex. W at AMZN00027256 ("█████████████████ ██████████████████████████"); *see also id.* at AMZN00027257 ("██████████████ ███████████████████████████████████████████████" (emphasis added)); *id.* at AMZN00027258–60 (showing side-by-side comparisons of Maglula's loaders/unloaders with counterfeits that infringe Maglula's copyrights). That this case is, in large part, about counterfeit products and related product inserts and product images supports Maglula's copyright claims. *See Symantec Corp. v. Logical Plus, Inc.*, No. C 06-7963 SI, 2009 WL 3416178, at *6 (N.D. Cal. Oct. 20, 2009) (finding in a counterfeit products case that the counterfeit products was "direct evidence of copying." (citing *M. Kramer*, 783 F.2d at 445)).

Moreover, there is indirect evidence of copying. Amazon does not dispute it had access to Maglula's products. *See, e.g.*, Ex. B (Amazon Rog. Responses), at 45 (describing availability of genuine Maglula products on Amazon). All that remains to be determined is whether knock-offs and counterfeits (and related infringing product inserts, images, and materials) are substantially similar to Maglula's copyrighted designs, product inserts, and images—a determination for trial. *See Robinson v. New Line Cinema Corp.*, No. 99-2167, 2000 WL 380124 (4th Cir. 2000).

## IV.   CONCLUSION

Maglula respectfully requests that the Court deny Amazon's motion.

Dated: April 19, 2021

Respectfully submitted,

/s/ Jeffrey A. Berkowitz
Jeffrey A. Berkowitz (Virginia Bar No. 65149)
jeffrey.berkowitz@finnegan.com
John M. Mulcahy (*pro hac vice*)
john.mulcahy@finnegan.com
Jency J. Mathew (*pro hac vice*)
jency.mathew@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, VA 20190-6023
Telephone:   (571) 203-2700
Facsimile:   (202) 408-4400

Gerald F. Ivey (*pro hac vice*)
gerald.ivey@finnegan.com
Danny M. Awdeh (*pro hac vice*)
danny.awdeh@finnegan.com
David K. Mroz (Virginia Bar No. 94011)
david.mroz@finnegan.com
Naresh Kilaru (*pro hac vice*)
naresh.kilaru@finnegan.com
Sonja W. Sahlsten (*pro hac vice*)
sonja.sahlsten@finnegan.com
Jorge F. Gonzalez (*pro hac vice*)
jorge.gonzalez@finnegan.com
Zachery D. Olah (*pro hac vice*)
zachery.olah@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone:   (202) 408-4000
Facsimile:   (202) 408-4400

Morgan E. Smith (*pro hac vice*)
morgan.smith@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, CA 94304
Telephone:   (650) 849-6600
Facsimile:   (650) 849-6666

*Counsel for Plaintiff Maglula, Ltd.*

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 19, 2021, I electronically filed the PLAINTIFF MAGLULA,

LTD.'S OPPOSITION TO AMAZON'S MOTION FOR SUMMARY JUDGMENT with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)

to all counsel of record.

*/s/ Jeffrey A. Berkowitz*
Jeffrey A. Berkowitz (Virginia Bar No. 65149)
jeffrey.berkowitz@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,**
 **GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, VA 20190-6023
Telephone:     (571) 203-2700
Facsimile:      (202) 408-4400

*Counsel for Plaintiff Maglula, Ltd.*